QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 90378)
  Shon Morgan (Bar No. 187736)
865 S Figueroa St 10th Floor
Los Angeles, CA 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100
Email:         johnquinn@quinnemanuel.com
               shonmorgan@quinnemanuel.com

  David Eiseman (Bar No. 114758)
  Melissa J. Baily (Bar No. 237649)
  Carl G. Anderson (Bar No. 239927)
50 California Street, 22nd Floor
San Francisco, California  94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700
Email:         davideiseman@quinnemanuel.com
               melissabaily@quinnemanuel.com
               carlanderson@quinnemauel.com

Attorneys for Plaintiffs
Barnes & Noble, Inc. and barnesandnoble.com
LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARNES & NOBLE, INC. and BARNESANDNOBLE.COM LLC | CASE NO. 3:11-CV-2709-EMC |
| Plaintiffs, | **BARNES & NOBLE, INC.'S OPPOSITION TO LSI CORPORATION'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA** |
| vs. | |
| LSI CORPORATION and AGERE SYSTEMS, INC. | Date:   September 16, 2011 Time:   1:30 p.m. |
| Defendants. | Dept:   Courtroom 5, 17th Floor Judge:   Honorable Edward M. Chen |

02706.23503/4295296.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ................................................................................................................................ 2

I.       LSI ASSERTS INFRINGEMENT OF TEN OF "LSI'S PATENTS" ................................. 2

         A.      LSI Initiates Contact with Barnes & Noble in June 2010 ........................................ 3

         B.      LSI Follows Up with Barnes & Noble in August 2010 ........................................... 4

         C.      LSI Provides Infringement Contentions in November 2010 ..................................... 5

         D.      LSI Meets with Barnes & Noble in February 2011 ................................................. 6

         E.      LSI Meets with Barnes & Noble in March 2011 .................................................... 7

         F.      LSI Seeks an NDA Before Offering Licensing Terms to Barnes & Noble ............. 7

         G.      LSI Meets with Barnes & Noble in April 2011 ...................................................... 8

II.      BARNES & NOBLE FILES THIS ACTION IN JUNE 2011 ......................................... 9

III.     LSI AND AGERE FILE A SECOND ACTION IN JULY 2011 ...................................... 9

IV.      BARNES & NOBLE AMENDS ITS DECLARATORY JUDGMENT
         COMPLAINT ...................................................................................................... 9

V.       THE OVERWHELMING MAJORITY OF THE EVIDENCE RELATED TO THE
         PARTIES' DISPUTE IS LOCATED IN OR NEAR THE NORTHERN DISTRICT
         OF CALIFORNIA .............................................................................................. 9

ARGUMENT .................................................................................................................. 11

I.       LSI'S MOTION TO DISMISS SHOULD BE DENIED ................................................ 11

         A.      This Court Has Subject Matter Jurisdiction Over This Action ............................. 12

         B.      Neither Agere Nor Barnesandnoble.com Is an Indispensable Party ..................... 14

         C.      The First-To-File Rule Does Not Counsel in Favor of Dismissing This
                 Action ................................................................................................................ 15

II.      LSI'S MOTION TO TRANSFER SHOULD BE DENIED ............................................. 17

         A.      LSI's Assertion of Forum Shopping Is Meritless ................................................ 17

         B.      The Northern District of California Is Significantly More Convenient Than
                 the Eastern District of Pennsylvania ................................................................... 20

CONCLUSION ............................................................................................................... 23

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1

## **<u>TABLE OF AUTHORITIES</u>**

**Page**

2

### <u>Cases</u>

3

4
*A123 Sys., Inc. v. Hydro-Quebec*,
   626 F.3d 1213 (Fed. Cir. 2010) ..................................................................14

5
*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ..................................................................15

6

7
*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ..................................................................22

8
*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991) ......................................................................15

9

10
*BBC Int'l Ltd. v. Lumino Designs, Inc.*,
   441 F. Supp. 2d 438 (E.D.N.Y. 2006) ........................................................19

11
*DeMalherbe v. Int'l Union of Elevator Constructors*,
   438 F. Supp. 1121 (N.D. Cal. 1977) ..........................................................14

12

13
*Dumas v. Major League Baseball Props., Inc.*,
   52 F. Supp. 2d 1183 (S.D. Cal. 1999) ........................................................16

14
*EEOC v. Peabody W. Coal Co.*,
   400 F.3d 774 (9th Cir. 2005) ......................................................................14

15

16
*Elecs. for Imaging, Inc. v. Coyle*,
   349 F.3d 1341 (Fed. Cir. 2005) ..................................................................19

17
*Florens Container v. Cho Yang Shipping*,
   245 F. Supp. 2d 1086 (N.D. Cal. 2002) ......................................................21

18

19
*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
   93 F.3d 774 (Fed. Cir. 1996) ......................................................................15

20
*Genentech, Inc. v. Eli Lilly & Co.*,
   998 F.2d 931 (Fed. Cir. 1993) ....................................................................16

21

22
*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) ............................................................20, 23

23
*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
   544 F. Supp. 2d 949 (N.D. Cal. 2008) ..................................................16, 19

24

25
*Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*,
   186 F.R.D. 581 (N.D. Cal. 1999) ................................................................14

26
*MedImmune Inc. v. Genentech Inc.*,
   549 U.S. 118 (2007) ....................................................................................12

27

28
*Micron Technology, Inc. v. Mosaid Technologies, Inc.*,
   518 F.3d 897 (Fed. Cir. 2008) ..........................................................16, 17, 19

-ii-

02706.23503/4295296.1

*Ward v. Follett Corp.*,
   158 F.R.D. 645 (N.D. Cal. 1994) .................................................................................16

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) .....................................................................................................16

### **Statutes**

Fed. R. Civ. P 15(a)................................................................................................... passim

Fed. R. Civ. P. 19(a) (b) .....................................................................................................14

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

## PRELIMINARY STATEMENT

In its motion to dismiss or transfer, LSI seeks to have this case resolved in Pennsylvania, even though it is strikingly clear that – even putting aside who filed first – the case belongs here. None of LSI's arguments regarding dismissal or transfer remotely supports LSI's request that this case be decided somewhere other than the Northern District of California.

As an initial matter, by moving to dismiss this action, LSI seeks to benefit from its own bad faith conduct. For almost a year, LSI repeatedly represented to Barnes & Noble that LSI was the "owner or assignee" of the patents at issue in this case. For almost a year, LSI conveyed to Barnes & Noble that LSI was the entity asserting infringement of those patents. And, for almost a year, LSI told Barnes & Noble that LSI was the entity that could provide a license to those patents. Now, in an effort to have this case heard in its own preferred forum, LSI has changed its story wholesale – asserting, for the first time in its motion, that the "owner" of all but one of the patents at issue is Agere, LSI's wholly owned subsidiary. To the extent Agere –in addition to LSI – is a real party in interest in this case (which LSI has yet to prove), LSI should not be rewarded for making false and misleading statements to Barnes & Noble – especially where LSI's apparent intent, all along, was to use Barnes & Noble's reliance on its statements (which could not be independently verified) to seek dismissal of any first-filed declaratory judgment action brought against LSI in any venue other than LSI's preferred forum.

LSI's bad faith conduct and blatant gamesmanship alone should preclude LSI from having this case heard in its preferred forum (Pennsylvania). Even putting LSI's conduct aside, however, this case simply belongs in the Northern District of California. All relevant activities regarding the accused product – NOOK$^{TM}$ eReaders – take place at Barnes & Noble's offices in Palo Alto. More than 200 Barnes & Noble employees located in Palo Alto are responsible for designing NOOK$^{TM}$ products, developing the technical specifications for NOOK$^{TM}$ products, sourcing components for NOOK$^{TM}$ products, and managing fulfillment operations for NOOK$^{TM}$ products. Moreover, several third-party suppliers and original design manufacturers ("ODMs") – who provide Barnes & Noble with the chips that perform the accused NOOK$^{TM}$ functionalities and who integrate those chips into NOOK$^{TM}$ products during the manufacturing process – are located in

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1   this district.  When a technical issue comes up regarding a chip that performs one of the accused

2   NOOK^TM functionalities, that issue is resolved by engineers from Barnes & Noble and third-

3   parties who are present here in Silicon Valley.  Even the party accusing NOOK^TM products of

4   infringement – LSI – maintains its worldwide headquarters in Milpitas.

5        The Northern District of California is the most convenient forum for the parties, for a large

6   majority of relevant witnesses, for accessing nearly all sources of proof, and for compelling

7   attendance of key third-party witnesses at trial.  LSI's preferred forum should not even factor into

8   the analysis in light of LSI's bad faith conduct, which appears to have been pursued as part of a

9   calculated attempt to gain an advantage with respect to forum selection.  This Court has at all

10  times had subject matter jurisdiction over this action, all relevant parties have properly been joined

11  in this action, all of the parties' claims regarding all relevant patents are at issue in this action, and

12  this case should proceed before this Court.

13                                    **FACTS**

14  **I.    LSI ASSERTS INFRINGEMENT OF TEN OF "LSI'S PATENTS"**

15        Prior to the filing of this action, LSI Corporation ("LSI") asserted that NOOK^TM eReader

16  products sold by Barnes & Noble, Inc. ("Barnes & Noble") infringed ten patents – U.S. Patent

17  Nos. 5,546,420, 5,670,730, 5,862,182, 5,920,552, 6,044,073, 6,119,091, 6,404,732, 6,452,958,

18  6,707,867, and 7,583,582 (the "patents-in-suit").  Specifically, LSI contended that the

19  implementation of WiFi functionality by NOOK^TM products infringes five of the patents, the

20  implementation of 3G functionality by NOOK^TM products infringes three of the patents, and the

21  implementation of certain audio functionality in NOOK^TM products infringes two of the patents.

22        LSI repeatedly and consistently represented to Barnes & Noble (i) that the patents-in-suit

23  were owned by or assigned to LSI, (ii) that LSI was the entity alleging infringement, and (iii) that

24  any license to the patents-in-suit would be provided by LSI.  All communications with Barnes &

25  Noble regarding the patents-in-suit – including communications asserting infringement and

26  communications offering a potential license – were explicitly made on behalf of LSI by

27  representatives of LSI.

28

02706.23503/4295296.1

-2-

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

### A.   LSI Initiates Contact with Barnes & Noble in June 2010

LSI made its initial contact with Barnes & Noble by letter dated June 29, 2010. (Declaration of Jeffrey L. Snow in Support of Barnes & Noble, Inc.'s Opposition to LSI Corporation's Motion To Dismiss or, in the Alternative, To Transfer Venue ("Snow Decl.") ¶ 2 & Exh. 1.)  The letter, signed by Mr. Rick A. de Pinho, Senior Licensing Manager, begins as follows:

> "I am writing this letter on behalf of <u>LSI's</u> Intellectual Property Group.  <u>LSI has</u> an extensive patent portfolio relating to numerous technologies including E-book readers, portable digital media players, wireless networking, integrated circuits and optical components.  My responsibilities include the licensing of <u>LSI's</u> E-book reader intellectual property sub-portfolio within <u>LSI's</u> portable digital media player ("PDMP") intellectual property area."

*Id.* (emphasis added).  The letter goes on to assert that some or all of Barnes & Noble's "E-book readers" infringe nine of "<u>LSI's</u> E-book patents in the PDMP area."  (*Id.* (emphasis added).)  The letter further notes that "<u>LSI has</u> a number of additional patents related to Wi-Fi and multimedia services that may be of interest to B&N."  (*Id.* (emphasis added).)  And the letter concludes by proposing a meeting at which "<u>LSI</u> will provide an overview of <u>LSI's</u> patents in these areas, review <u>LSI's</u> findings with respect to B&N products, and offer the terms of <u>our</u> license program."  (*Id.* (emphasis added).)

The June 29, 2010 letter was sent on LSI letterhead.  (*Id.*)  The letter noted that Mr. de Pinho's mailing address was at "LSI Corporation" and that his email address was "@lsi.com."  (*Id.*)  And the letter was copied to four individuals – Mr. Al Torressen (Senior Licensing Director), Mr. Jason Grauch (Senior IP Counsel), Mr. Roger Fratti (Reverse Engineering Manager), and Mr. Diego deGarrido (Reverse Engineering Manager) – described as employees in either the "IP Business Group" or the "IP Law Group" of "LSI Corporation."  (*Id.*)

Thus, from the start, Mr. de Pinho represented to Barnes & Noble (i) that he was a representative of LSI, (ii) that the nine patents-in-suit referenced in the letter were "LSI's" patents, (iii) that any license to those patents would be offered by LSI, and (iv) that future meetings regarding the patents would be with representatives from LSI.

02706.23503/4295296.1

-3-

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1    Nowhere is Agere Systems Inc. ("Agere") mentioned in the June 29, 2010 letter.  (*Id.*)

2  Indeed, it is impossible to square the June 29, 2010 letter – which was the only communication

3  received by Barnes & Noble regarding any of the patents-in-suit in June or July 2010 (*id.*) – with

4  the declaration submitted to this Court by Mark C. Terrano, Managing Intellectual Property

5  Counsel of LSI,[1] which states:

6        "On or about June 2010, I understand that LSI <u>and Agere</u> informed
         BN of the nine <u>Agere patents</u> at issue in the California action, which
7        <u>they believed</u> to be infringed by BN's Nook devices."

8  (Declaration of Mark C. Terrano in Support of LSI Corporation's Motion To Dismiss or, in the

9  Alternative, To Transfer Venue to the United States District Court for the Eastern District of

10  Pennsylvania (the "Terrano Declaration") ¶ 12 (emphasis added).)

11       **B.     LSI Follows Up with Barnes & Noble in August 2010**

12    Mr. de Pinho followed up his initial letter to Barnes & Noble with a second letter dated

13  August 19, 2010.  (Snow Decl. ¶ 3 & Exh. 2.)  This second letter largely repeated the substance of

14  LSI's first letter.  (*Id.* ¶¶ 2, 3 & Exhs. 1, 2.)

15    Like the June letter, the August letter represented (i) that Mr. de Pinho was a representative

16  of LSI, (ii) that the nine patents-in-suit referenced in the letter were "LSI's" patents, (iii) that any

17  license to those patents would be offered by LSI, and (iv) that future meetings regarding the

18  patents would be with representatives from LSI.  (*Id.* ¶ 3 & Exh. 2.)  Also like the June letter, the

19  August letter was sent on LSI letterhead; it noted that Mr. de Pinho's mailing address was at "LSI

20  Corporation" and that Mr. de Pinho's email address was "@lsi.com"; and it was copied to four

21  individuals at "LSI Corporation."  (*Id.*)

22    Nowhere is Agere mentioned in the August 19, 2010 letter.  (*Id.*)

23

24

25

26    [1]  Mr. Terrano did not participate in any of the meetings with Barnes & Noble; LSI did not

27  provide any declarations from anyone present at those meetings in support of its motion.  (Snow Decl. ¶¶ 5, 11, 14.)

28

C.     **LSI Provides Infringement Contentions in November 2010**

On November 30, 2010, Mr. Torressen, Senior Director of LSI, sent Barnes & Noble "detailed claim charts for each of the nine <u>LSI</u> patents being asserted against Barnes & Noble products." (Snow Decl. ¶ 4 & Exh. 3 (emphasis added).) The first slide of the 125-page PowerPoint presentation attached to Mr. Torressen's email notes that "<u>LSI</u> has put Barnes & Noble on notice" of nine patents-in-suit and that "<u>LSI</u> believes that Barnes & Noble's Nook ebook reader infringes these patents":



(*Id.* at 1.) The presentation goes on to discuss LSI's infringement allegations with respect to each of the nine patents-in-suit – with respect to each of those patents, the presentation states that "<u>LSI</u> asserts that the Nook ebook reader infringes" certain patent claims. (*Id.* at 7, 21, 31, 40, 52, 65, 90, 108, 121 (emphasis added).)

The email attaching the PowerPoint presentation indicates that Mr. Torressen is a representative of LSI, with a mailing address at "LSI Corporation" and an email address "@lsi.com." (*Id.*) Each of the 125 slides in the presentation contains LSI's corporate logo. (*Id.*)

There is no mention of Agere anywhere in the November 30, 2010 presentation. (*Id.*)

02706.23503/4295296.1

-5-

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1

**D.    LSI Meets with Barnes & Noble in February 2011**

2    On February 2, 2011, representatives from LSI met with representatives from Barnes &

3  Noble to discuss LSI's previous allegations regarding the nine patents-in-suit as well as LSI's new

4  allegations regarding a tenth patent-in-suit.  (Snow Decl. ¶ 5.)  The representatives attending from

5  LSI were Mr. de Pinho, Mr. Torressen, and Mr. Jason Grauch.  (*Id.*)  Each brought a business card

6  indicating his affiliation with LSI.  (*Id.* ¶¶ 6-8 & Exhs. 4-6.)

7    On February 7, 2011, Mr. de Pinho sent Barnes & Noble "supplemental information LSI

8  [had] promised to provide" at the February 2, 2011 meeting.  (*Id.* ¶ 9 & Exh. 7.)  The PowerPoint

9  presentation attached to Mr. de Pinho's email provides LSI's "follow-up to three issues from the

10  February 2, 2011 meeting":

11

12

13

14

### LSI's Follow-up to Questions Posed

LSI has agreed to follow-up on three issues from the February 2, 2011 meeting.

• LSI is providing the last page to its assertion that the Nook eReader infringes US Patent 5,862,182.

•LSI is providing  an expanded explanation of its determination that the Nook eReader infringes US Patents 6,404,732 and 6,452,958.

•LSI is providing an expanded explanation of the testing done on the Nook Color regarding US Patent 6,119,091 and why the testing shows that the Nook Color infringes the '091 patent.

February 8, 2011    LSI Confidential.  For  Settlement Purposes Only.  Not Admissible Under FRE Rule 408    2    LSI

24  (*Id.*)  Each page of the PowerPoint contains LSI's corporate logo and is stamped with an "LSI

25  Confidential" legend.  (*Id.*)

26    There is no mention of Agere anywhere in the February 8, 2011 PowerPoint.  (*Id.*)

27

28

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

**E.    LSI Meets with Barnes & Noble in March 2011**

In advance of a further meeting between LSI and Barnes & Noble in March 2011, Mr. de Pinho sent Barnes & Noble "additional information from <u>LSI</u>."  (Snow Decl. ¶ 10 & Exh. 8 (emphasis added).)  In the PowerPoint presentation attached to Mr. de Pinho's email, LSI conveys information regarding certain of the positions it took at February 2011 meeting.  (*E.g.*, *id.* at 3 ("<u>LSI</u> cited to the Metha article because . . ."), 5 ("Regarding the '732 patent, <u>LSI</u> maintains that . . ."), 7 (Regarding the '091 patent <u>LSI</u> believes that . . .") (emphasis added).)  Each page of the PowerPoint presentation contains LSI's corporate logo and an "LSI Confidential" legend.  (*Id.*) Nowhere does the March PowerPoint mention Agere.  (*Id.*)

On March 9, 2011, representatives from LSI met with representatives from Barnes & Noble for a second time to discuss LSI's infringement allegations regarding the ten patents-in-suit. (*Id.* ¶ 11.)  Again in attendance were Mr. de Pinho, Mr. Torressen, and Mr. Grauch, who held themselves out as representatives from LSI.  (*Id.*)

**F.    LSI Seeks an NDA Before Offering Licensing Terms to Barnes & Noble**

Before providing Barnes & Noble with the terms on which LSI would offer a license to the patents-in-suit, LSI requested that Barnes & Noble enter into a Nondisclosure Agreement to ensure that such licensing terms would be kept confidential.[2]  LSI provided Barnes & Noble with a draft Nondisclosure Agreement (Snow Decl. ¶ 12 & Exh. 9), which was revised by Barnes & Noble and subsequently executed by <u>LSI</u> and Barnes & Noble on April 11, 2011 (*id.* ¶ 13 & Exh. 10).

Both the draft Nondisclosure Agreement provided by LSI as well as the final Nondisclosure Agreement executed by LSI state that:

> "<u>LSI</u> is the owner or assignee of certain patents and patent applications (referred to herein, collectively, as the "<u>LSI Patents</u>")."

---

[2]   None of the communications or documents described in this brief are protected by the Nondisclosure Agreement, which covers only information "concerning the terms of a potential patent license agreement."  (Snow Decl. ¶ 13 & Exh. 10.)

1  (*Id.* ¶¶ 12, 13 & Exhs. 9, 10 (emphasis added).)  The only patents that were ever the subject of

2  "discussions with respect to a possible patent license" – and thus contemplated by the

3  Nondisclosure Agreement – were the ten patents-in-suit.  (*Id.*)  The Nondisclosure Agreement

4  nowhere refers to Agere.  (*Id.*)

5         **G.**    **LSI Meets with Barnes & Noble in April 2011**

6        On April 27, 2011, LSI met again with Barnes & Noble.  (Snow Decl. ¶ 14.)  Attending on

7  behalf of LSI were Mr. de Pinho, Mr. Torressen, Mr. Grauch, and Mr. Fratti, all of whom had

8  previously been identified as LSI representatives and continued to hold themselves out as such.

9  (*Id.*; *see also*, *e.g.*, *id.* ¶¶ 2, 3, 6-8 & Exhs. 1, 2, 4-6.)  At the meeting, LSI presented 41

10  PowerPoint slides,[3] which provided an overview of "<u>LSI's</u> standard portable eBook reader

11  licensing proposal."  (*Id.* ¶¶ 14, 15 & Exh. 11 (emphasis added).)

12        The April 27, 2011 presentation includes a single reference to Agere.  Among other

13  preliminary notes – which state, for example, that the information contained in the presentation is

14  for discussion purposes only, shall not constitute a binding agreement, and shall be subject to FRE

15  408 and treated as confidential – there is a note that the "information is provided as part of the

16  ongoing patent licensing discussions between LSI Corporation, including its wholly-owned

17  subsidiary Agere Systems Inc., ("LSI") and Barnes and Noble ("B&N")."  Nothing in the

18  presentation indicates that Agere is the owner of the patents-in-suit or that Agere had made any

19  assertions of infringement.  Similarly, nothing in the presentation contradicts LSI's prior

20  representations that <u>LSI</u> was the owner or assignee of the patents-in-suit, that <u>LSI</u> was the entity

21  asserting infringement of the patents-in-suit by Barnes & Noble, or that any license to the patents-

22  in-suit would be provided by <u>LSI</u>.

26     [3]  Barnes & Noble has not provided the April 27, 2011 PowerPoint presentation to the Court,
27  because it arguably falls within the scope of the Nondisclosure Agreement entered into by the
parties.  (*See* Snow Decl. ¶ 13 & Exh. 10.)

28

-8-

## II.    BARNES & NOBLE FILES THIS ACTION IN JUNE 2011

At no time prior to the initiation of this lawsuit had LSI indicated that it was planning to sue Barnes & Noble imminently or at any specific time in the future.  (Snow Decl. ¶ 16.)  LSI had, however, repeatedly alleged that Barnes & Noble was infringing its patents for nearly a year.  (*See supra* pp. 3-8.)  Thus, on June 6, 2011, Barnes & Noble sought to have the infringement claims adjudicated by bringing this action seeking a declaratory judgment of non-infringement regarding the ten patents-at-issue.  (Docket No. 1.)

## III.    LSI AND AGERE FILE A SECOND ACTION IN JULY 2011

On July 27, 2011 – 51 days after commencement of this lawsuit – LSI and Agere filed a complaint against Barnes & Noble and its wholly-owned subsidiary Barnesandnoble.com LLC ("Barnesandnoble.com") in the Eastern District of Pennsylvania.  In the complaint initiating that action, LSI and Agere assert infringement of the ten patents-in-suit as well U.S. Patent No. 7,477,633 ("the '633 patent"), which had not been identified as infringed by LSI (or Agere) prior to the filing of the Pennsylvania action.

## IV.    BARNES & NOBLE AMENDS ITS DECLARATORY JUDGMENT COMPLAINT

Barnes & Noble has now filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a).  (Dkt. No. 25.)  The amendments made to the original Complaint include the following:

- Barnesandnoble.com has been added as a declaratory judgment plaintiff in this action.

- Agere has been added as a defendant in this action.

- Barnes & Noble has sought a declaratory judgment that it is not infringing the '633 patent.

## V.    THE OVERWHELMING MAJORITY OF THE EVIDENCE RELATED TO THE PARTIES' DISPUTE IS LOCATED IN OR NEAR THE NORTHERN DISTRICT OF CALIFORNIA

Barnes & Noble brought its action in the Northern District of California because it is the most convenient forum for the resolution of the parties' dispute.  Barnes & Noble's NOOK™ operations are based in Palo Alto.  LSI – Agere's corporate parent and the only entity that accused Barnes & Noble of infringement prior to the filing of this action – maintains its headquarters in

-9-

1    Milpitas.  And key third parties with information related to the accused NOOK[TM] functionality are

2    located throughout Silicon Valley.

3         Barnes & Noble.  Most activities related to Barnes & Noble's accused eReader

4    (NOOK[TM]) – including hardware design, software development, component sourcing, fulfillment

5    operations for retail stores, direct-to-consumer operations via the barnesandnoble.com website,

6    and customer service operations – take place at Barnes & Noble's Palo Alto offices.  (Declaration

7    of Daniel Gilbert in Support of Barnes & Noble, Inc.'s Opposition to LSI Corporation's Motion

8    To Dismiss or, in the Alternative, To Transfer Venue ("Gilbert Decl.") ¶¶ 2-4, 7.)  More than 200

9    full-time employees – including high level managers – work in Barnes & Noble's Palo Alto

10   offices.  (Id. ¶ 3.)  Nearly all of these employees' responsibilities include NOOK[TM]-related

11   activities.  (Id. ¶¶ 3, 7.)  Thus, the current (and, likely, the former) employees of Barnes & Noble

12   who know most about (i) NOOK[TM] generally and (ii) the accused functionality of NOOK[TM]

13   specifically are located in the Northern District of California.  Likewise, the Barnes & Noble

14   documents most relevant to the infringement allegations at issue in this case are located in this

15   district.  (Id. ¶¶ 4, 7.)

16        Third-Party Chipset Suppliers.  In large part, the NOOK[TM] functionality that is the subject

17   of this case – functionality related to WiFi, 3G, and audio – is implemented by components called

18   "chipsets" that are supplied to Barnes & Noble by third-parties.  (Id. ¶ 5.)  Two of Barnes &

19   Noble's five primary suppliers of chipsets – Marvell and Samsung Semiconductor, Inc. – are

20   headquartered in the Northern District of California, and a third primary supplier – Qualcomm – is

21   headquartered in Southern California.  (Id.)  Barnes & Noble's other two primary suppliers –

22   Sierra Wireless and Texas Instruments – maintain offices in this district.  (Id.)  Engineers

23   employed by each of these suppliers and located in this district frequently work with Barnes &

24   Noble employees based in Palo Alto when issues arise with respect to incorporating chipsets into

25   NOOK[TM] products.  (Id.)

26        Third-Party ODMs.  Barnes & Noble outsources the manufacturing of its NOOK[TM]

27   products to outside design manufacturers ("ODMs"), such as Invantec.  (Id. ¶ 6.)  Barnes &

28   Noble's ODMs  are headquartered in Asia and maintain offices in Northern California.  (Id.)

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1   Barnes & Noble employees in Palo Alto work with engineers employed by these ODMs to create

2   system-level designs, system-level layouts, and bills-of-materials for NOOK$^{TM}$ products.  (*Id.*)

3           Third-Party Inventors.  Four of the named inventors on the patents-in-suit are believed to

4   currently reside in the Northern District of California.  (*See* Declaration of Ryan Tyz in Support of

5   LSI Corporation's Motion To Dismiss or, in the Alternative, To Transfer Venue ("Tyz Decl.")

6   ¶ 14.)

7           LSI Corporation.  LSI maintains its headquarters in this district.  (Declaration of Carl

8   Anderson in Support of Barnes & Noble's Opposition to LSI Corporation's Motion To Dismiss or,

9   in the Alternative, To Transfer Venue ¶ 2 & Exh. 1.)  LSI's "Silicon Valley offices include

10  everything from corporate marketing and human resources to worldwide operations and customer

11  service."  (*Id.* ¶ 3 & Exh. 2.)

12                              **ARGUMENT**

13  **I.      LSI'S MOTION TO DISMISS SHOULD BE DENIED**

14          LSI's motion to dismiss is almost entirely premised on Barnes & Noble's failure to name

15  Agere as a defendant in this action.[4]  Barnes & Noble's failure to do so, however, was a direct

16  result of its reliance on LSI's repeated and consistent representations that (i) LSI was the owner or

17  assignee of the patents-in-suit, (ii) LSI was the entity alleging infringement against Barnes &

18  Noble, and (iii) LSI was the entity holding the rights necessary to license the patents-in-suit to

19  Barnes & Noble.  To the extent those representations are true, Barnes & Noble's original

20  Complaint named the correct defendant, and LSI's motion to dismiss should be denied.  To the

21  extent those representations are false with respect to nine of the ten patents-in-suit, LSI's motion

22  to dismiss should still be denied because this Court has had subject matter jurisdiction over this

23  action since its inception and because LSI should not be permitted to benefit from intentionally

24

25

26          [4]  As described below (*infra* Part I.B), LSI's contention that this action should also be
27  dismissed because Agere and Barnesandnoble.com LLC are indispensable parties that cannot be
    joined is contrary to the plain language of Federal Rule of Civil Procedure 19.

28

1  misleading Barnes & Noble so that LSI could later make an argument for having this case heard in

2  its own preferred forum.

### A.   This Court Has Subject Matter Jurisdiction Over This Action

4       In its motion, LSI argues that this entire action should be dismissed because it does not

5  present a case or controversy.  (Mot. at 13.)  This contention is premised on LSI's assertion that

6  Barnes & Noble's "complaint is incurably defective" because it "does not name as a party the

7  owner of nine of the patents at issue in the complaint."  (*Id.*)  LSI's position is untenable.

8       As an initial matter, LSI concedes that it is the owner of one of the patents-in-suit, United

9  States Patent No. 6,119,091.  (Terrano Decl. ¶ 9.)  There is thus no dispute that subject matter

10  jurisdiction has existed at all times over Barnes & Noble's declaratory judgment claim regarding

11  the '091 patent.  Accordingly, there is simply no basis for LSI's request that this entire action –

12  including that claim – be dismissed (Mot. at 14).

13       Moreover, as described in detail above, LSI has repeatedly admitted that it has legal

14  interests adverse to Barnes & Noble with respect to all of the patents-in-suit:

15       •   LSI asserted repeatedly that the ten patents-in-suit are "LSI's patents."

16       •   Individuals holding themselves out to be representatives of LSI (and only LSI)
            asserted infringement by Barnes & Noble.

17

18       •   LSI represented – in a contract executed by LSI – that the patents that were the
            subject of licensing discussions were "owned or assigned to LSI."

19  (*See supra* pp. 3-8.)  To the extent these admissions are true, Barnes & Noble named the proper

20  defendant with respect to all of its claims, and this Court has subject matter jurisdiction over this

21  entire action based on the allegations in the original Complaint.  *MedImmune Inc. v. Genentech*

22  *Inc.*, 549 U.S. 118, 127 (2007) (noting that declaratory judgment jurisdiction exists where "the

23  facts alleged, under all the circumstances, show that there is a substantial controversy, between

24  parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

25  of a declaratory judgment").

26       Furthermore, although LSI now alleges that Agere is "the owner of nine of the patents at

27  issue in the complaint" (Mot. at 13), LSI has nowhere contended that LSI is not an exclusive

28  licensee of those patents.  Indeed, based on LSI's repeated representations that LSI holds rights

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1    sufficient to enter into licensing agreements related to the patents-in-suit (*see supra* pp. 3-8), LSI

2    may well have the right to license patents purportedly owned by Agere.  If that is the case, Barnes

3    & Noble named the proper defendant in this case, and this Court has subject matter jurisdiction

4    over this entire action based on the allegations in the original Complaint.  8 Donald D. Chisum,

5    Chisum on Patents § 21.03[2][c] ("An exclusive licensee generally has standing to sue for

6    infringement against anyone operating without authority in the stated area of exclusivity.").

7            Finally, and perhaps most importantly, to the extent LSI's previous admissions (i) that all

8    of the patents-in-suit were owned or assigned to LSI, (ii) that LSI was the entity alleging

9    infringement of all those patents, and (iii) that LSI was the entity that could offer Barnes & Noble

10   a license to all of those patents were false, this Court may <u>still</u> exercise jurisdiction over this case.

11   LSI continues to contend that it is the owner of one of the patents-in-suit, the '091 patent.

12   (Terrano Decl. ¶ 9.)  Thus, subject matter jurisdiction has at all times existed over at least the Sixth

13   Claim of the original Complaint, and there is no basis for the dismissal of that claim.  Even if the

14   other claims in the original Complaint were dismissed for lack of jurisdiction as a result of Barnes

15   & Noble's reliance on LSI's misrepresentations, nothing would prohibit Barnes & Noble from

16   seeking to assert those claims against Agere via an Amended Complaint in this action.[5]  Pursuant

17   to Federal Rule of Civil Procedure 15(a), Barnes & Noble has filed just such an Amended

18   Complaint.  (Dkt. No. 25.)  Accordingly, this Court should retain jurisdiction over Barnes &

19   Noble's action based on the allegations of the original Complaint with respect to United States

20   Patent No. 6,119,091 and based on the allegations of the Amended Complaint with respect to the

21   remaining patents.

22           This Court has had jurisdiction over this action since its filing, and there is no basis for

23   dismissal of Barnes & Noble's Amended Complaint.  LSI's motion to dismiss should be denied.

24   _____

25       [5]  This would not be equivalent to an attempt to cure a jurisdictional defect by the addition of
     a party with standing (Mot. at 10).  Unlike the cases cited by LSI (Mot. at 10, 13), here it is

26   undisputed that the Court has had jurisdiction at all times – and continues to have jurisdiction –
     over at least one claim in the original Complaint.  Thus, there is no jurisdictional defect effecting

27   maintenance of the <u>action</u>, and Barnes & Noble may file an amended complaint <u>in this action</u> to
     assert claims against Agere.

28

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

**B.**     <u>Neither Agere Nor Barnesandnoble.com Is an Indispensable Party</u>

LSI further contends that this action should be dismissed because Agere and Barnesandnoble.com are "necessary and indispensable parties and cannot be joined as a matter of course." (Mot. at 14.) LSI, however, has made <u>no</u> showing that either of those parties cannot be joined and is thus indispensable. Accordingly, LSI's motion to dismiss on the basis of nonjoinder should be denied.

A three-part inquiry governs the analysis of a motion to dismiss on the basis of nonjoinder. *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005). First, a determination must be made as to whether the absentee is a necessary party who should be joined under Rule 19(a). *Id.* If the absentee is a necessary party, it must next be determined whether it is feasible to order that the absentee be joined. *Id.* Only if joinder is not feasible must the third part of the inquiry be addressed – namely, whether the case can proceed without the absentee or whether the absentee is an "indispensable party" such that the action must be dismissed pursuant to Federal Rule of Civil Procedure 19(b). *Id.*

Here, LSI contends that both Agere and Barnesandnoble.com are "necessary" parties under Rule 19(a). (Mot. at 14.) But LSI has made <u>no</u> showing that joinder of either party is not feasible – a necessary prerequisite to a finding that a party is indispensable. *Peabody*, 400 F.3d at 779-80. (*See also* Mot. at 10 ("If the absent party is necessary and cannot be joined, the court must next determine whether the party is 'indispensable.'").) Indeed, there is no impediment to joining Agere and Barnesandnoble.com in this action, either by order of this Court pursuant to Federal Rule of Civil Procedure 19(a) or by amendment as a matter of course pursuant to Federal Rule of Civil Procedure 15(a). *Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*, 186 F.R.D. 581, 583 (N.D. Cal. 1999) (finding that "leave of court is not required for an amendment adding a party" if made within the time prescribed by Rule 15(a)); *DeMalherbe v. Int'l Union of Elevator Constructors*, 438 F. Supp. 1121 (N.D. Cal. 1977); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane: Federal Prac. & Proc. § 1479.

Thus, there is no reason for this Court to consider whether Agere and Barnesandnoble.com are "indispensable parties" such that this action must be dismissed in light of their inability to be

-14-

02706.23503/4295296.1

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

joined.  Fed. R. Civ. P. 19(b).[6]  Both Agere and Barnesandnoble.com can be joined in this action, and Barnes & Noble's Amended Complaint properly joins those parties pursuant to Federal Rule of Civil Procedure 15(a).  Accordingly, there is no basis on which to dismiss this action for failure to join indispensable parties pursuant to Federal Rule of Civil Procedure 19(b).

### C.   The First-To-File Rule Does Not Counsel in Favor of Dismissing This Action

Finally, LSI argues that this case should be dismissed because "LSI and Agere's complaint in the Eastern District of Pennsylvania is the true first-filed complaint" because it is "the only action to include all appropriate parties to this litigation and all patents at issue."  (Mot. at 15.) LSI is wrong for three reasons.

First and foremost, the <u>only</u> reason why Agere is not named in Barnes & Noble's original Complaint is because LSI repeatedly and consistently represented that LSI was the owner of the patents-in-suit and that LSI was the entity alleging infringement of those patents.  Having prompted reliance on repeated and unverifiable assertions[7] that LSI was the entity with legal interests adverse to Barnes & Noble with respect to all of the patents cited in the original Complaint, LSI should not now be heard to argue the opposite in order to claim the benefit of the first-to-file rule.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042-43 (Fed. Cir. 1992) (noting that the doctrine of equitable estoppel may be applied where there is a

---

[6]  LSI's citation to *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1222 (Fed. Cir. 2010) (Mot. at 14) is not to the contrary.  In *A123*, the Federal Circuit considered the issue of whether a patent owner was an "indispensable" party only after concluding that the patent owner was a "necessary" party who could <u>not</u> be joined due to Eleventh Amendment sovereign immunity.  *A123 Sys., Inc.*, 626 F.3d at 1219-1220.

[7]  Although the face of a patent names the original assignee of the patent at the time of issuance, grants of exclusive licenses are not typically matters of public record, assignments are not required to be recorded, and even the recording of an assignment with the Patent & Trademark Office is not conclusive with respect to ownership.  *E.g.*, *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 778 n.3 (Fed. Cir. 1996) (stating "the mere fact that an assignemnt was recorded in the PTO does not, without more, prove that a valid assignment actually took place").  Barnes & Noble would thus have no way to independently verify whether Agere had assigned the patents-in-suit to its corporate parent LSI.  Similarly, Barnes & Noble would have no way to independently confirm whether LSI was the entity asserting infringement and whether LSI was the entity with the ability to license the patents-in-suit.

misleading communication and prejudicial reliance); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (noting that a party's bad faith in attempting to secure its preferred forum is properly considered in the context of a forum-selection dispute).

Second, LSI's assertion that its Pennsylvania action is the "true first-filed complaint" because it includes "all appropriate parties" and "all patents at issue" is wrong as a matter of law. Application of the first-to-file rule requires examination of three threshold factors: "the chronology of the two actions, the similarity of the parties, and the similarity of the issues." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). And proper application of these factors counsel against dismissing this action in favor the action filed in Pennsylvania.

With respect to "the chronology of the two actions," the general rule favors the forum of the first-filed action, whether or not it is a declaratory judgment action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (applying first-to-file rule to reverse dismissal of first-filed declaratory-judgment action). Here, Barnes & Noble's action was clearly the first-filed, as it was initiated 51 days prior to Agere and LSI bringing a second action in Pennsylvania.

To satisfy the "similarity of the parties" requirement, parties in the two actions need only be "substantially similar." *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008). "[E]xact identity is not required to satisfy the first-to-file rule. The rule is satisfied if some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Id.* Barnes & Noble's original Complaint satisfies this requirement because both of the parties named in that Complaint are also named in the Pennsylvania action.

Likewise, with respect to the "similarity of issues" requirement, "[t]he 'first-to-file' rule requires only sufficient similarity of issues." *Dumas v. Major League Baseball Props., Inc.*, 52 F. Supp. 2d 1183, 1193 (S.D. Cal. 1999), *vacated on other grounds by* 104 F. Supp. 2d 1224 (S.D. Cal. 2000), *aff'd*, 300 F.3d 1083 (9th Cir. 2002). Barnes & Noble's original Complaint satisfies this requirement because it asserted declaratory judgment claims regarding 10 of the 11 patents cited in the Pennsylvania action.

02706.23503/4295296.1

1    Moreover, the notion – espoused by LSI (Mot. at 15) – that the first-to-file rule favors

2    deference to a later-filed action simply because that action includes more parties or more issues

3    than the first-filed action has been explicitly rejected by the Federal Circuit.  In *Micron*

4    *Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 904-05 (Fed. Cir. 2008), the Federal

5    Circuit found that whether the "second-filed infringement action is broader than the first filed

6    declaratory judgment action" carried little weight in a venue transfer analysis "because a patent

7    holder may often easily file an artificially broader infringement suit to avoid declaratory judgment

8    jurisdiction."  *Id.*  The Federal Circuit reasoned that if "a patent holder could simply name another

9    defendant or add a few additional claims to the later filed infringement, then the Supreme Court's

10   more lenient standard for the declaratory judgment plaintiff would lose its primary intended

11   effect."  *Id.*

12   Third and finally, the convenience of the forum must always factor into a decision on

13   whether to dismiss an action in favor of a parallel action brought elsewhere.  *Id.* at 904 ("The first-

14   filed suit rule, for instance, will not always yield the most convenient and suitable forum.

15   Therefore, the trial court weighing jurisdiction additionally must consider the real underlying

16   dispute: the convenience and suitability of competing forums.").  And, as demonstrated below, it

17   is significantly more convenient for this case to proceed in the Northern District of California than

18   in the Eastern District of Pennsylvania.  (*Infra* Part II.B.)

19   In sum, LSI seems to have intentionally misled Barnes & Noble so that LSI might preserve

20   the opportunity to add parties and an additional patent to a second-filed suit and thereby attempt to

21   secure its preferred venue in an inconvenient forum.  Under such circumstances, the first-to-file

22   rule does not counsel in favor of dismissing Barnes & Noble's action, and LSI's motion to dismiss

23   should be denied.

24   **II.      LSI'S MOTION TO TRANSFER SHOULD BE DENIED**

25       **A.      LSI's Assertion of Forum Shopping Is Meritless**

26   In its Motion, LSI contends that "this case fits squarely within the forum shopping

27   exception to the first-to-file rule" and should thus "be transferred to Pennsylvania."  (Mot. at 17-

28   18.)  Nothing cited by LSI supports this assertion.

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

First, LSI alleges that the "most telling" evidence of forum shopping is Barnes & Noble's "attempt to relate this case to another case before Judge Alsup" and Barnes & Noble's "disregard[ of] a prior suit in the Eastern District of Texas." (Mot. at 17.)  LSI's allegation is without merit.

Pursuant to Civil Local Rule 3-12(b), Barnes & Noble was obligated to promptly notify the Court if it believed that this case "is" or "may be" "related to an action which is or was pending in this District."  Barnes & Noble fulfilled that obligation by filing an administrative motion stating that this case "may be" related to a prior action previously before Judge Alsup in which there was a common defendant (LSI) and one common patent at issue (U.S. Patent No. 5,670,730).  (Dkt. No. 6.)  Complying with the local rules does not constitute forum shopping.

Moreover, Barnes & Noble did not "disregard a prior suit in the Eastern District of Texas" (Mot. at 17) by choosing to bring this action in the Northern District of California.  Barnes & Noble did not consider bringing this action in the Eastern District of Texas because there is little, if any, apparent connection between this case and that forum and because – as a result – the Eastern District of Texas would not be a convenient forum in which to resolve the parties' dispute. Considering the relative conveniences and inconveniences of possible fora does not constitute forum shopping.[8]

Second, LSI simultaneously alleges (i) that Barnes & Noble's purported forum shopping is "evidenced" by its decision "to hastily file this action without performing even a cursory investigation into the ownership of the patents at issue" (Mot. at 3) and (ii) that Barnes & Noble's purported forum shopping is also evidenced by "its tactical decision to not name Agere, the actual owner of all but one of the patents, in its complaint despite its knowledge that Agere owned such patents" (Mot. at 15, 16).  These inconsistent allegations border on the absurd.

As described in detail above, Barnes & Noble did not name Agere as a defendant in this action because LSI represented, among other things, that LSI was the "owner or assignee" of the

---

[8]   Indeed, LSI complains elsewhere in its motion that Barnes & Noble filed this action without "considering the convenience of the parties and third parties."  (Mot. at 3.)  As demonstrated below (*infra* Part II.B), LSI's complaint is wholly unfounded.

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

patents-in-suit and because Barnes & Noble had to rely on LSI's representation as it could not be independently verified.  Barnes & Noble did not neglect to name Agere because it "hastily filed this action" (Mot. at 3), which was brought almost a year after LSI first asserted that Barnes & Noble infringed nine of the patents-in-suit.  And Barnes & Noble did not make a "tactical decision to not name Agere" (Mot. at 16), as such a decision would yield Barnes & Noble little if any added benefit in the context of a dispute over venue (*see infra* Part II.B) or in any other context.  Barnes & Noble did not name Agere because <u>LSI</u> made apparently false statements for the purpose of preserving its ability to secure its preferred forum.  To accuse Barnes & Noble of "forum gamesmanship" (Mot. at 15) under these circumstances is plainly untenable.

Third, LSI asserts that Barnes & Noble "prematurely filed this action" and implies that this is an "anticipatory" action.  (Mot. at 16, 17.)  But a suit "is 'anticipatory' for the purposes of being an exception to the first-to-file rule" only "if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent."  *Intersearch*, 544 F. Supp. at 960.  Barnes & Noble was in receipt of no such indications here.  (Snow Decl. ¶ 16.)

What is more, even if this Court were to find that Barnes & Noble engaged in forum shopping (which it should not), such a finding would be an insufficient basis on which to grant LSI's motion to transfer.  *E.g.*, *Elecs. for Imaging, Inc. v. Coyle*, 349 F.3d 1341, 1347 (Fed. Cir. 2005); *Micron*, 518 F.3d at 904; *BBC Int'l Ltd. v. Lumino Designs, Inc*., 441 F. Supp. 2d 438, 445 (E.D.N.Y. 2006) (noting that "the concern underlying [the forum shopping] exception has been largely, if not entirely, addressed by the establishment of the Federal Circuit" and that other factors must be analyzed in connection with evaluating a motion to dismiss or transfer).  Although "special circumstances" such as "forum shopping" may weigh against the general rule that a case should proceed in the "first-filed forum," any determination that an exception should be made to the first-to-file rule based on a "special circumstance" must be supported by an analysis of the "convenience factors."  *Micron*, 518 F.3d at 904.  As demonstrated below, these factors counsel strongly against making an exception to the first-to-file rule and thus counsel in favor of denying LSI's motion to transfer to the Eastern District of Pennsylvania.

**B.** **The Northern District of California Is Significantly More Convenient Than the Eastern District of Pennsylvania**

The balance of convenience in this case weighs decisively <u>against</u> proceeding in the Eastern District of Pennsylvania and thus does not support an exception to the first-to-file rule here. Accordingly, LSI's motion to transfer should be denied, and this action should proceed in the Northern District of California.

       1.      <u>All Private Interests Weigh Heavily in Favor of Proceeding in the Northern District of California</u>

<u>Access to Sources of Proof.</u> "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). "Consequently, the place where the [accused infringer's] documents are kept weighs in favor of transfer to that location." *Id.*

Here, all of Barnes & Noble's documents related to the accused functionality of its eReader products are located at Barnes & Noble's Palo Alto offices. (Gilbert Decl. ¶¶ 4, 7.) Such documents relate to the design of NOOK$^{TM}$ products, specifications for NOOK$^{TM}$ products, software development for NOOK$^{TM}$ products, and component sourcing for NOOK$^{TM}$ products. (*Id.*) Samples of the accused NOOK$^{TM}$ products – and samples of the chipsets that implement the accused functionality of NOOK$^{TM}$ products – are also located at Barnes & Noble's offices in Palo Alto.

These sources of proof will provide "the bulk of the relevant evidence in this case." *Genentech*, 566 F.3d at 1356. Indeed, it is a near certitude that the volume of proof located in the Northern District of California will far exceed the volume of the "hard copy file histories" purportedly located in the Eastern District of Pennsylvania (Mot. at 18).[9] Accordingly, access to sources of proof weighs heavily in favor of proceeding in the Northern District of California.

---

    [9] LSI also notes that "documents related to Agere's former mobility products division" (Mot. at 18) is located in LSI's offices in Pennsylvania, but LSI does not provide any explanation regarding the potential relevance of those documents.

02706.23503/4295296.1

<u>Convenience of the Witnesses and Parties.</u>  "The convenience of the witnesses is often the most important factor" in considering a transfer motion.  *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002).  Here, this factor weighs heavily in favor of resolving this dispute in California.

All of Barnes & Noble's employees who are most knowledgeable regarding the accused functionality of NOOK™ are among the more than 200 full-time employees located in the Northern District of California.  (Gilbert Decl. ¶¶ 3, 7.)  Also among those full-time employees in Palo Alto are potential Barnes & Noble witnesses knowledgeable about NOOK™ sales and fulfillment operations.  (*Id.* ¶ 2.)  These witnesses are likely to vastly outnumber the witnesses from "LSI's intellectual property and licensing group" in Pennsylvania – the only purportedly relevant party witnesses identified by LSI (Mot. at 19).  (*See* Gilbert Decl. ¶ 8.)

This forum is also convenient for several categories of third party witnesses.  For example, employees of Barnes & Noble's suppliers and ODMs – who have crucial knowledge regarding the chipsets that are used to implement the accused functionality in NOOK™ products – are located in and near this district.  (*Id.* ¶¶ 5, 6.)  Several inventors are located in and near this district.  (Tyz Decl. ¶ 14.)  And it is likely that former employees of Barnes & Noble with knowledge regarding the accused NOOK™ products reside in and near this district.

Moreover, it is undisputed that the Northern District of California is generally a convenient forum for the parties.  Barnes & Noble operates its NOOK™ operations in this district.  (Gilbert Decl. ¶¶ 3-8.)  And the fact that LSI maintains its worldwide headquarters in Milpitas makes this district convenient for both LSI and its wholly-owned subsidiary Agere.  (Anderson Decl. ¶¶ 2, 3 & Exhs. 1, 2.)  Accordingly, the convenience of parties and witnesses weighs heavily in favor of proceeding in the Northern District of California.

<u>Availability of Compulsory Process To Compel Attendance of Third Party Witnesses.</u>  The availability of compulsory process to compel attendance of third party witnesses is perhaps more important than any other relevant "convenience factor" to be considered in the context of this case.  This is because the chipsets supplied to Barnes & Noble by third parties implement much of the

-21-

02706.23503/4295296.1

CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1  NOOK<sup>TM</sup> functionality that is the subject of this case.  (Gilbert Decl. ¶ 5.)  Thus, evidence from

2  these third party suppliers will be highly relevant to the infringement allegations at issue here.

3       Two of Barnes & Noble's primary suppliers of chipsets for use in NOOK<sup>TM</sup> products –

4  Marvell and Samsung – are headquartered in the Northern District of California.  (*Id.*)  And

5  Barnes & Noble's other suppliers maintain offices in this district.  (*Id.*)  The engineers who are

6  employed by each of these suppliers and who have knowledge regarding the workings of the

7  chipsets that implement the accused functionality in NOOK<sup>TM</sup> are located in this district.  (*Id.*)

8       Moreover, Barnes & Noble outsources the manufacturing of its NOOK<sup>TM</sup> products to

9  ODMs.  (*Id.* ¶ 6.)  Those ODMs are headquartered in Asia but maintain offices in the Northern

10 District of California.  (*Id.*)  Again, the engineers who are employed by these ODMs and who

11 have knowledge regarding the manufacturing of NOOK<sup>TM</sup> products implementing the accused

12 functionality are located in this district  (and in Asia).  (*Id.*)

13      In addition, former employees of Barnes & Noble, its chipset suppliers, and its ODMs who

14 have knowledge of the implementation of the accused NOOK<sup>TM</sup> functionality are all likely to

15 reside in or near the Northern District of California.  And, four of the named inventors on the

16 patents-in-suit are believed to currently reside in the Northern District of California.  (Tyz Decl.

17 ¶ 14.)

18      Thus, key third-party witnesses regarding the infringement allegations at issue in this case

19 are located in the Northern District of California.  Accordingly, the availability of compulsory

20 process strongly favors proceeding with this action in this district.

21      2.  The Sole Non-Neutral Public Interest Weighs in Favor of Proceeding in the Northern District of California

22

23 **Localized Interests.**  The Northern District of California is the district in which the

"development, testing, research, and production" of the accused NOOK<sup>TM</sup> products takes place.

24 (Gilbert Decl. ¶¶ 3-8.)  Thus, this district is the center of the allegedly infringing activity and has

25 the greatest local interest in addressing that activity.  *E.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252,

26 1256 (Fed. Cir. 2010) ("[I]f there are significant connections between a particular venue and the

27

28
02706.23503/4295296.1
CASE NO. 11-CV-02709 EMC
BARNES & NOBLE, INC.'S OPP. TO LSI CORP.'S MOT. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

1   events that gave rise to the suit, this factor should be weighed in that venue's favor.").

2   Accordingly, this factor also weighs in favor of proceeding in the Northern District of California.

3        Because all non-neutral private and public convenience factors weigh so heavily in favor

4   of proceeding in the Northern District of California, LSI cannot meet its burden to show that "the

5   transferee venue is clearly more convenient than the venue chosen by the plaintiff." *Genentech*,

6   566 F.3d at 1342.  Accordingly, LSI's motion to transfer should be denied.

7   **CONCLUSION**

8        For all of the foregoing reasons, Barnes & Noble respectfully requests that the Court deny

9   LSI's motion to dismiss or transfer in its entirety.

10

11  DATED:  August 10, 2011            QUINN EMANUEL URQUHART & SULLIVAN, LLP

12

13              By *s/ Melissa J. Baily*

14                 Melissa J. Baily

15                 Attorneys for Plaintiffs
                   Barnes & Noble, Inc. and

16                 Barnesandnoble.com LLC

17

18

19

20

21

22

23

24

25

26

27

28

-23-