UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARNES & NOBLE, INC., *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>LSI CORPORATION, *et al.*, <br><br>　　　　Defendants. | No. C-11-2709 EMC <br><br> **ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT AND FIRST AMENDED COMPLAINT** <br><br> **(Docket Nos. 21, 45)** |

## I.　INTRODUCTION

Plaintiffs Barnes & Noble ("BN") and Barnesandnoble.com ("BN.com") have filed a declaratory judgment suit for non-infringement of eleven patents against Defendants Agere Systems, Inc. ("Agere") and LSI Corp. ("LSI"). Defendants' motions to dismiss Plaintiffs' complaint ("Compl.") and first amended complaint ("FAC"), Docket Nos. 21, 45, came on for hearing on October 7, 2011. Having considered the parties' submissions and oral argument, the Court enters the following order.

## II.　FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs BN and BN.com are manufacturers and sellers of the Nook e-reader. On June 29, 2010, BN received a letter from LSI informing them that LSI believed the Nook's 3G, WiFi, and audio technology was infringing on some of LSI's patents. Snow Decl., Docket No. 29, Exh. 1. Thereafter, the parties engaged in negotiations, including meetings and exchanged emails and documents, regarding LSI's contention that the Nook infringed its patents. Opp. 1 at 3-8; Snow Decl. Before their fourth meeting which both parties characterized (at the hearing) as unproductive,

BN filed this declaratory judgment action for non-infringement of ten patents against LSI on June 6, 2011. Docket No. 1. The complaint alleged that LSI held the rights to all of the patents-in-suit. Compl. ¶ 11. On July 27, 2011, LSI and Agere filed suit against both BN and BN.com in the Eastern District of Pennsylvania alleging infringement of the same patents plus one additional patent (the '633 patent). Tyz Decl., Docket No. 23, Exh. 1. In that complaint, Defendants allege that LSI only controls one of the patents-in-suit in this action, and Agere controls the rest. *Id*. ¶¶ 4-5. On the same day, LSI filed its first motion to dismiss in this action, Docket No. 21, for lack of subject matter jurisdiction, nonjoinder, and under the first-to-file rule, as well as an alternative motion to transfer on the basis of forum shopping and the convenience of the parties. Plaintiffs amended their complaint as of right on August 10, 2011. Docket No. 25. The FAC adds two parties, BN.com as a plaintiff and Agere as a defendant. FAC ¶¶ 6, 8. The FAC also adds a non-infringement claim for declaratory relief against the '633 patent, *see* FAC ¶¶ 73-77, and invalidity claims as to all patents. Defendants filed a second motion to dismiss on August 29, 2011, Docket No. 45, alleging the same bases for dismissal or transfer. Both motions remain pending before the Court.[1]

### III. DISCUSSION

A. <u>Motion to Dismiss under 12(b)(1)</u>

Defendants first move to dismiss on the grounds of lack of subject matter jurisdiction for failure to present a justiciable case or controversy. Mot. 1 at 9. Though they present their motion as a 12(b)(6) motion, it is more properly characterized as a 12(b)(1) motion since they challenge the Court's subject matter jurisdiction under Article III.

Declaratory judgment actions must present an actual controversy between parties in order for the Court to exercise jurisdiction. "[W]hether a case or controversy exists for a lawsuit seeking a declaratory judgment of patent noninfringement and/or invalidity is governed by the law of the Federal Circuit." *See MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005). As the Supreme Court has explained, in a declaratory judgment action, a plaintiff must show "a

---

[1] For ease of reference, the Court refers to the parties' moving papers with respect to the first motion to dismiss as "Mot. 1," "Opp. 1," and "Reply 1," and the papers with respect to the second motion to dismiss as "Mot. 2," "Opp. 2," and "Reply 2."

1 substantial controversy, between parties having adverse legal interests, of sufficient immediacy and
2 reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549
3 U.S. 118, 126 (2007).

4 "In the area of patent infringement, in order for the court to exercise subject matter
5 jurisdiction over any controversy, only the patentee (and those holding exclusive licenses) have
6 standing to adjudicate their rights under the patent." *Newmatic Sound Sys., Inc. v. Magnacoustics,
7 Inc.*, NO. C10-0129 JSW, 2010 WL 1691862, at *2 (N.D. Cal. Apr. 23, 2010) (citing 35 U.S.C. §
8 281). "In a case brought as a declaratory relief claim, a district court must dismiss the complaint
9 where the party sued is neither the patent owner or the exclusive licensee of the patent owner." *Id.*
10 (citing *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1091 (Fed. Cir. 1998)); *see also Top
11 Victory Electronics v. Hitachi Ltd.*, No. C 10-01579 CRB, 2010 WL 4722482, at *2 (N.D. Cal. Nov.
12 15, 2010) ("In order for a plaintiff to have standing in a declaratory action involving allegations of
13 patent infringement, the defendant must have a legal right in the patent at issue that would allow the
14 defendant to bring suit for infringement.") (citing *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479,
15 1481 (Fed.Cir.1998)). The burden is on the plaintiff "to establish that jurisdiction over its
16 declaratory judgment action existed at, and has continued since, the time the [complaint] was filed."
17 *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1340 (Fed. Cir. 2001)
18 (quotations omitted).

19 Defendants argue that because Plaintiffs failed to sue the true owner of nine of the ten
20 patents in the initial complaint, the Court lacks subject matter jurisdiction over those claims because
21 there is no case or controversy between BN and LSI with respect to those patents and LSI has no
22 standing to assert any rights with respect to those patents. *See* Mot. 1 at 13. In response, Plaintiffs
23 state that they were misled by Defendants through the parties' negotiations – in which LSI claimed
24 to own the rights to all the patents – and that in light of this new information, they have already
25 amended their complaint as of right to add Agere as a proper defendant for those patents. *See* Opp.
26 1 at 12.

27 While the Court might have been compelled to dismiss those nine causes of action in which
28 Plaintiffs named the wrong defendant, Plaintiffs have amended their complaint as of right under Fed.

1 R. Civ. P. 15 to name the correct defendant – Agere – with respect to those nine patents. "[T]hat
2 [Plaintiffs] named [the proper defendant] in their Amended Complaint and not in their original
3 pleading does not require dismissal of the [] action for lack of subject matter jurisdiction." *eBay Inc.*
4 *v. PartsRiver, Inc.*, No. C 10-4947 CW, 2011 WL 1522389, at *3 (N.D. Cal. Apr. 21, 2011) (citing
5 *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007)). As the Supreme Court has
6 explained, when "a plaintiff files a complaint in federal court and then voluntarily amends the
7 complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell*, 549 U.S. at
8 473. That is because "[t]he state of things and the originally alleged state of things are not
9 synonymous." *eBay*, 2011 WL 1522389 at *3 (quoting *Rockwell*, 549 U.S. at 473). Rather, "while
10 '[l]ater events may not create jurisdiction where none existed at the time of filing,' the proper focus
11 in determining jurisdiction are 'the facts existing at the time the complaint *under consideration* was
12 filed.'" *Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008)
13 (emphasis in original) (quoting *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir.
14 1996)) (additional citations omitted); *see also Williams Adv. Materials, Inc. v. Target Tech. Co.*, No.
15 03-CV-00276(A)(M), 2009 WL 3644357, at *6 (W.D.N.Y. Oct. 28, 2009) ("The critical date for
16 determining whether Target's has standing to sue for patent infringement is June 8, 2009, the date of
17 its most recently filed pleadings asserting infringement claims . . . since 'it is well established that an
18 amended [pleading] ordinarily supercedes the original, and renders it of no legal effect.'") (quoting
19 *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 68 (2d Cir. 1998)).
20 Accordingly, in the instant case, a controversy exists between BN and Agere with respect to
21 the complaint *under consideration – i.e.*, the Amended Complaint. *See eBay*, 2011 WL 1522389 at
22 *3 ("Neither PartsRiver nor Kelora dispute that eBay and Microsoft had an actual controversy with
23 Kelora at the time the 4947 action was filed. Thus, that eBay and Microsoft named Kelora in their
24 Amended Complaint and not in their original pleading does not require dismissal of the 4947 action
25 for lack of subject matter jurisdiction.") (citing *Rockwell*, 549 U.S. at 473).
26 Cases cited by Defendants, do not mandate a different result. In *Schreiber Foods, Inc. v.*
27 *Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005), the Federal Circuit articulated the
28 general rule that lack of standing cannot be cured by adding a party with standing. However, the

4

Court faced a much different scenario than the instant case. *Schreiber* considered the impact of a temporary loss of standing on the court's jurisdiction over the action. The court concluded that it maintained jurisdiction where the patentee had standing when suit was initiated, lost it briefly by transferring rights to the patent, but regained those rights before the entry of judgment. *Id.* at 1203-04. Similarly, the court in *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) found a party to be without standing to assert rights to a patent where it did not actually obtain license to the patents in writing until after the suit had commenced. Thus, in *Enzo*, the plaintiff had no actual or alleged standing at the time it filed suit and the holder of the title was never joined to the action.

Neither *Schreiber* nor *Enzo* considered a situation where there was a timely amendment filed as of right, as opposed to a party's request for leave to amend after its one-time amendment rights had expired. Thus, neither court confronted the scenario the Federal Circuit and Supreme Court later considered in *Prasco* and *Rockwell*, where the complaint under consideration was the amended complaint, which the court used to determine jurisdiction. *See also ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 96 (1st Cir. 2008) ("[W]here, as here, a plaintiff amends its complaint as of right, the Civil Rules operate mechanically, and the judge's authority over the case is not brought to bear.").

More significantly, there is no dispute that this Court had federal jurisdiction over the original complaint herein since LSI was the owner of one of the patents at issue (the '901 patent). Thus, this is not a case where the district court had no jurisdiction at the time the amended complaint was filed. Since Plaintiffs had standing to assert at least one cause of action, Defendants fail to explain why Plaintiffs could not timely amend their complaint as a matter of right under Rule 15(a). Indeed, at oral argument, Defendants admitted that had BN only presented one declaratory judgment claim for the LSI patent-in-suit correctly naming LSI as the defendant, nothing would have prevented BN from amending the complaint as of right and adding the remaining Agere patents – plus Agere as a new defendant – in its amended complaint. Since at least one of the patents – the '091 patent – was owned by LSI, *see* Mot. 1 at 7; Tyz Decl., Exh. 1, ¶ 5, the Court had subject matter jurisdiction over the action since its inception, and the amendment merely added certain claims and parties and deleted certain claims, as Plaintiffs were permitted to do under Rule 15(a).

*See Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*, 186 F.R.D. 581, 583 (N.D. Cal. 1999) ("[L]eave of court is not required for an amendment adding a party prior to the filing of a responsive pleading."); *De Malherbe v. International Union of Elevator Constructors*, 438 F. Supp. 1121, 1127-28 (N.D. Cal. 1977) (same); *City Bank v. Glenn Const. Corp.*, 68 F.R.D. 511, 513 (D. Haw. 1975) (plaintiff had right to amend complaint to drop non-diverse party so as to secure diversity jurisdiction); *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) ("[T]he doctrine of futility only applies when the plaintiff seeks leave of court to amend and does not have a right to amend. The plaintiff's right to amend once is absolute."); *U.S. ex rel. Precision Co. v. Koch Industries, Inc.*, 31 F.3d 1015, 1018 (10th Cir. 1994) (plaintiffs could amend once as of right to add new plaintiffs).

Accordingly, the Court **DENIES** the motion to dismiss for lack of jurisdiction.

B. <u>Motion to Dismiss under 12(b)(7)</u>

Defendants also move to dismiss under Rule 12(b)(7) for failure to join a necessary party pursuant to Rule 19. They argue that both Agere and BN.com are necessary and indispensable parties, and that their absence mandates dismissal of this action. Mot. 1 at 14.

Rule 19(a) requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests, or would subject any of the parties to the danger of inconsistent obligations. *See* Fed. R. Civ. P. 19(a).

> A necessary party is one "having an interest in the controversy, and who ought to be made [a] party, in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." This standard is met when failure to join will lead to separate and redundant actions.

*IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). If the party is indispensable yet cannot be joined, then the action must be dismissed. *See E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005).

Regardless of whether BN.com and/or Agere are necessary parties, Defendants' motion fails because it makes no attempt in either motion or reply to explain how these parties cannot be joined to the current action as Plaintiffs have already done in their FAC. *See* Mot. 1 at 14 ("Given that Agere and BN.com are necessary and indispensable parties and cannot be joined as a matter of course, BN's complaint . . . is fatally flawed . . . ."); *Cf. A123 Systems, Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1219-20 (Fed. Cir. 2010) (finding that the absent party could not be joined because it was immune from suit in that jurisdiction). In fact, their only argument (raised in reply) is that these parties cannot be joined because Plaintiffs' first complaint failed to establish subject matter jurisdiction. *See* Reply 1 at 12. However, as discussed above, the Court did have jurisdiction over the action, though certain allegations may have been defective as to some claims. In addition, Plaintiffs had the right under Rule 15 to amend their complaint once to add new claims and parties.

Accordingly, the motion to dismiss for nonjoinder be **DENIED**.

C. First-to-File Rule

Defendants next argue that this Court should dismiss this action because the Pennsylvania case is the *de facto* first-filed action. *See* Mot. 1 at 15. "When two actions involving nearly identical parties and closely related patent infringement questions are filed in separate districts, which happens with some frequency in contemporary litigation, the general rule is that the case first filed takes priority, and the subsequently filed suit should be dismissed or transferred or stayed." 14D Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Juris. § 3823 (3d ed. 2011). In patent litigation, "[t]he first-filed action is preferred, even if it is declaratory, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (quoting *Genentech*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

The rule, however, is discretionary. "The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-84

7

1  (1952)); *see also Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). Thus,
2  "the trial court's discretion tempers the preference for the first-filed suit, when such preference
3  should yield to the forum in which all interests are best served." *Genentech*, 998 F.2d at 938 (citing
4  *Kerotest*, 342 U.S. at 184). A court's decision to depart from this general rule must present a "sound
5  reason that would make it unjust or inefficient to continue the first-filed action." *Id*.

6  In this case, now that Plaintiffs have amended their complaint, the two actions are now
7  essentially, if not literally, identical. Chronologically, the instant case was filed first. However, the
8  Pennsylvania action was filed before Plaintiffs amended their complaint in this action. Defendants
9  thus argue that the FAC does not relate back to the original complaint, such that the Pennsylvania
10 action should be considered the first-filed action relative to the FAC in the instant case. *See* Mot. 1
11 at 15. Moreover, even if this action is still technically the first-filed, Defendants argue that
12 exceptions such as forum shopping and convenience apply here such that the Court should defer to
13 the Pennsylvania action. The Court addresses their contentions in turn.

14     1.    <u>First Filed Regardless of Amendment</u>

15 A number of courts have held that the filing of a complaint triggers the first-filed rule,
16 regardless of whether the plaintiff later amends the complaint. *See, e.g.*, *Mattel, Inc. v. Louis Marx*
17 *& Co.*, 353 F.2d 421, 424 (2d Cir. 1965) ("The fact that these issues were not all spelled out in the
18 New Jersey action until Marx had amended its complaint is immaterial. Marx amended its complaint
19 as of right as allowed by Rule 15 . . . . Thus, the New Jersey suit was the first suit which made
20 possible the presentation of all the issues and which, by amendment of the complaint did raise all the
21 substantial issues between the parties."); *Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 267 (D.
22 Del. 1997) ("A 'relation-back' inquiry is unnecessary; the point of inquiry is the original complaint,
23 not the amended complaint."); *Advanta Corp. v. Visa U.S.A., Inc.*, 1997 U.S. Dist. LEXIS 2007,
24 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997) ("Advanta cannot avoid application of the first-filed
25 rule simply by asserting that it was not initially a party to the earlier filed action. The first-filed rule
26 turns on which court first obtains possession of the subject of the dispute, not the parties of the
27 dispute.") (citing *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. Pa. 1988) ("In all cases of
28 federal concurrent jurisdiction, the court which first has possession of the subject must decide it."));

*U. S. v. Northern Paiute Nation*, 393 F.2d 786, 790 & n.* (Ct. Cl. 1968) (in relation back inquiry, "By the 'original pleading' to be looked to, we do not mean only the first petition filed, but mean to include within the quoted phrase all timely petitions, original or amended."); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 & n.3 (9th Cir. 1982) (noting that the first-to-file rule applies to the filing of the complaint, not to the service of process or other events).

These cases are persuasive because they comport with the general liberality of Rule 15. *See generally Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).; *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) ("In exercising its discretion, a court must be guided by the underlying purpose of Rule 15-to facilitate decision on the merits, rather than on the pleadings or technicalities"). Such an interpretation of the first-to-file rule would also comport with the Supreme Court's analysis in *Rockwell*, as discussed above, that it is a complaint's allegations *as amended* that the court addresses. *Rockwell*, 549 U.S. at 473.

2. Relation Back

Other courts have applied the relation back doctrine to determine which case is filed first. *See Halo Electronics, Inc. v. Bel Fuse Inc.*, No. C-07-06222 RMW, 2008 WL 1991094, at *2 (N.D. Cal. May 5, 2008). "An action is considered to have been the first filed, even if it was not chronologically first, if the claims relate back to an original complaint that was chronologically filed first" (citing *Mann Design, Ltd. P'ship v. Bounce, Inc.*, 138 F. Supp. 2d 1174, 1178 (D. Minn. 2001)). *See, e.g.*, *National Foam v. Williams Fire & Hazard Control*, 1997 U.S. Dist. LEXIS 16734, at *13-15 (E.D. Pa. Oct. 28, 1997) (finding that plaintiff who had mistakenly sued company instead of its licensee could amend complaint and amendment would relate back); *Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.*, 87 F.R.D. 398, 403 (W.D.N.Y. 1980) (finding relation back where amendment added a subsequently-issued patent); *Cf. Halo*, 2008 WL 1991094 at *2 (denying relation back where the first complaint alleged completely different patent and product than amendment which had already been asserted in another action, and where the

1 plaintiff was not amending as of right under Rule 15); *Mallinckrodt Medical Inc. v. Nycomed Imaging AS*, 49 U.S.P.Q. 2d 1474 (E.D. Mo. 1998) (declining to relate amended complaint back for first-to-file purposes where the only defendant in first complaint was dismissed entirely for lack of personal jurisdiction and where the "undisputed facts suggest that Mallinckrodt did not make a mistake within the meaning of Rule 15(c) but proceeded as it did as a strategic act").

Rule 15(c) provides that an amendment adding a new defendant will relate back to the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading," and if, within 120 days of the initial complaint, the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Rule 15(c)(1)(C). The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2494 (2010).

The relation back doctrine is designed for circumstances in which the timeliness of an amendment is at issue, for example, with respect to the statute of limitations. *See* Fed. R. Civ. P. 15(c), 1966 advisory committee notes ("Relation back is intimately connected with the policy of the statute of limitations."); 6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1498 (3d ed. 2011) (describing Rule 15(c) as "alter[ing] the generally accepted rule that new parties, either plaintiffs or defendants, cannot be added to an action by amendment after the applicable limitations period has expired"). Nonetheless, as noted, some courts have applied relation back analysis to the first-filed rule.

If Plaintiffs were required to show relation back, Plaintiffs' FAC would relate back in the instant case. As the Supreme Court recently affirmed, the relation back doctrine under Rule 15(c) is appropriate in a case of mistaken identity. In *Krupski*, an injured plaintiff had originally sued Costa Cruise Lines as the owner and operator of the cruise ship on which she was injured, but she later discovered that the ship was actually owned by Costa Crociere S. p. A. *Krupski*, 130 S. Ct. at 2494.

The operative question, according to the Court, is "what the prospective defendant knew or should have known during the Rule 4(m) period [120 days], not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.* at 2493. If the proposed defendant knew or should have known that its exclusion from the lawsuit was "only because of [Plaintiff's] misunderstanding," then it may properly be added. *Id.* at 2497. Thus, under the Supreme Court's test for relation back, the proposed defendants must have notice that they would have been named in the complaint but for the fact that Plaintiff made an error. *See Krupski*, 130 S. Ct. at 2496. However, the Court cautioned that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id.* at 2494; *cf. Nelson v. Adams*, 529 U.S. 460, 467-68 (2000) (noting that Rule 15(c) did not apply because Respondent "knew of Nelson's role and existence and, until it moved to amend its pleading, chose to assert its claim for costs and fees only against OCP"); *In re Network Assoc., Inc. II Securities Litig.*, 2003 WL 24051280, at *8 (N.D. Cal. Mar. 25, 2003) ("Relation back is only allowed for a mistake in identity, not liability.").

    Here, though Defendants argue to the contrary, the Court finds BN's failure to name Agere in the original complaint was not deliberate. Plaintiffs persuasively argue and provide documentation to support their claim, that they believed they were suing the owners of the patents. *See* Opp. 1 at 208; Compl. ¶ 11 ("Barnes & Noble is informed and believes . . . that LSI is the assignee of the LSI Patents."). Though Defendants contend it would have been obvious that Agere owned the patents, the evidence they cite provides far less certainty than they claim. *See, e.g.*, Reply 1 at 2-3 (showing slide with Agere named as original assignee of only four of the patents at the time the patents were registered); *id*. at 3 (noting that a presentation stated LSI included its wholly-owned subsidiary Agere); *id*. at 3-4 (noting that Agere was the assignee of one of the patents at issue during prior litigation). As Plaintiffs point out, none of these small clues indicate that Agere owned rights to the patents at the relevant time for this litigation, especially in the face of LSI's affirmative representations that it owned the patents. *See, e.g.*, Snow Decl. ¶ 12 & Exh. 9 (nondisclosure agreement stating, "LSI is the owner or assignee of certain patents . . . the 'LSI Patents.'").

1 Furthermore, BN gained no tactical advantage in not naming Agere, and thus BN had no reason not
2 to name Agere other than inadvertence. Significantly, Defendants were clearly on notice that Agere
3 was a proper defendant since it had the rights to nine of the patents.

4 Accordingly, under *Krupski*, Plaintiffs' amendment adding Agere as a defendant relates back
5 to the original complaint.

6 Defendants also argue that relation back can never apply to amendments adding plaintiffs
7 such as BN.com. *See* Reply 1 at 9-10. However, despite the advisory committee's notes indicate
8 that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to
9 amendments changing plaintiffs." *See* Fed. R. Civ. P. 15(c), 1966 advisory committee notes. In
10 their second reply, Defendants argue that there would be no relation back with respect to the
11 addition of BN.com because the original complaint failed to give Defendants notice of BN.com's
12 claims. *See* Reply 2 at 2-3. This argument is not persuasive given that a central reason for
13 Defendants' motion to dismiss was for nonjoinder of a necessary party, BN.com. *See* Mot. 1 at 14
14 ("BN.com is also a necessary and indispensible party. Given that BN.com sells the same Nook
15 devices that form the basis of Agere's claims against BN, and that it uses the accused WiFi and 3G
16 functionalities in these devices to supply digital content to its customers, BN.com is also liable for
17 infringement of the patents at issue."); *see also Immigrant Assistance Project of Los Angeles County*
18 *Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 857 (9th Cir. 2002) ("An amendment adding a
19 party plaintiff relates back to the date of the original pleading only when: 1) the original complaint
20 gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back
21 does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original
22 and newly proposed plaintiff.") (quotations omitted). Defendants had notice of BN.com's role, and
23 adding BN.com as an additional plaintiff via a timely filed amended complaint caused no unfair
24 prejudice to them.

25 Accordingly, the Court finds that the amendment adding BN.com relates back to the original
26 complaint.

27 Finally, Defendants contend that Plaintiffs' amendment adding new claims of invalidity and
28 non-infringement cannot relate back. *See* Reply 1 at 10; Mot. 2 at 4. Rule 15(c)(1)(B) provides that

12

a new claim or defense relates back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Plaintiffs contend that their new claims of invalidity relate to the same accused products, the same accused functionality, and the same patents that were in the original complaint. Opp. 2 at 4. The cases on which Defendants rely do not negate that contention. For example, while the *Tenneco* court noted that infringement is a "distinct and separate issue" from validity, it did not address relation back but rather whether the plaintiff should be granted leave to amend after a five-year delay. *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630 (Fed. Cir. 1985). Thus, the crux of its analysis focused on delay and prejudice; indeed, it noted that these patent issues are "are normally addressed together," and therefore that Tenneco's multi-year delay in seeking to amend his complaint could easily be read by the opposing party as an indication that validity would not be an issue in the case. *See Tenneco*, 752 F.2d at 635 & n.4.

Similarly, Plaintiffs point out that their new infringement claim (adding the '633 patent) relates back because it is "part and parcel" of the same controversy regarding the same accused product and the same WiFi technology. *See* Opp. 2 at 4 (citing *Halo*, 2008 WL 1991094 at *2 ("[A] claim for infringement of one patent is the same 'conduct or occurrence' as a claim for infringement of another patent only where the second patent was 'part and parcel' of the controversy surrounding the earlier patent.")). Indeed, Defendants' own complaint in the Eastern District of Pennsylvania describes the '633 as similar to the '867, '182, '732, '958, and '582 patents in that all involve the "Institute of Electrical and Electronics Engineers ("IEEE") 802.11 wireless standards." *See* Tyz Decl., Docket No. 23, Exh. 1 ¶¶ 59-60, 71-72, 83-84, 95-96, 107-08. In addition, the '633 and '091 patents both relate to the specific portions of the Nook devices which contain "audio decoders capable of producing keyboard sound effects." *Id*. ¶¶ 119, 129-30. Such a similarity between claims is sufficient for relation back. *Cf. Halo*, 2008 WL 1991094 at *2 (finding no relation back where new patents "involve different technologies and products" than those asserted in first-filed action); *Foreign Candy Co.*, 2011 WL 1706511, at *3 (W.D. Pa. May 4, 2011) (finding first-filed rule inapplicable where "[t]he only similarity between the two cases is the identity of the parties," as they each "involve different marks that would require different evidence").

13

1    Accordingly, to the extent Plaintiffs must demonstrate relation back, the Court finds that the
2    amended complaint relates back for purposes of the first-filed rule.

3        3.    <u>Exceptions to the First-Filed Rule</u>

4    Even if this action is the first-filed, Defendants contend that the Court should exercise its
5    discretion to find an exception to the first-filed rule. "The circumstances under which an exception
6    to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum
7    shopping." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *see also*
8    *Alibaba.com v. Litecubes, Inc.*, No. C 03-5574 MHP, 2004 U.S. Dist. LEXIS 3492, at *5 n.3 (N.D.
9    Cal. Mar. 8, 2004) (stating that the first-to-file rule may be relaxed if the first-filed suit is "plainly
10   anticipatory" or the party has engaged in "transparent forum shopping"). Other circumstances may
11   also warrant a rejection of the first-to-file rule–*e.g.*, balance of convenience or sound judicial
12   administration. *See, e.g.*, *Z-Line Designs, Inc. v. Bell'O Internat'l, LLC*, 218 F.R.D. 663, 665 (N.D.
13   Cal. 2003) (noting that court may refuse to apply first-to-file rule if balance of convenience weighs
14   in favor of later-filed action); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350,
15   1354 (S.D.N.Y. 1992) (stating that, even though there was no forum shopping by plaintiff, wise
16   judicial administration favored the Delaware forum rather than the New York forum; the Delaware
17   court had previously tried litigation involving the same patent).

18   In the instant case, Defendants have provided little evidence of bad faith, anticipatory suit, or
19   forum shopping that would distinguish this case from virtually any declaratory judgment action in
20   which a party could show a reasonable threat of suit so as to satisfy the case or controversy
21   requirement. For example, Defendants provide evidence that the parties had been engaged in good
22   faith negotiations and that rather than attend their next-scheduled meeting, BN filed suit. *See* Mot. 1
23   at 5, 15-16. However, without more, there is little to suggest that BN acted in bad faith simply by
24   declining to continue with the negotiations. As mentioned above, both the parties agreed that the
25   last meeting between the parties prior to the filing of this suit was unproductive.

26   In addition, improper anticipatory suits typically involve a more direct threat of suit than is
27   present in the instant case. *Compare* Snow Decl., Docket No. 29, Exh. 1 (letter from LSI to BN
28   stating that LSI believes the Nook infringes some of its patents and inviting BN to meetings to

14

"initiate discussion on the licenses available at this time."); *Bryant v. Oxxford Express, Inc.*, 181 F. Supp. 2d 1045, 1047-48 (C.D. Cal. 2000) (holding that there was no anticipatory filing; letter from Oxxford suggested it was considering filing suit against Bryant but did not give any indication to Bryant that lawsuit was imminent or that Oxxford was doing anything more than "blowing smoke" about potential lawsuit – even though letter from Oxxford to Bryant said that it would suffer damages for which it would seek indemnification if Bryant did not honor contract and Oxxford asked Bryant to respond by next business day whether he intended to comply with contract); *with Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 217-19 (2d Cir. 1978) (finding that lower court did not abuse its discretion in concluding that a declaratory judgment action "was filed in apparent anticipation of Factors' New York suit" where Pro Arts had received a letter "warning Pro Arts that if it did not discontinue sale of the [allegedly infringing] poster, it would be subject to a lawsuit for injunctive relief, damages and an accounting"); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2006) (finding a suit anticipatory where a letter stated that suit would be filed within 5 days if not settlement was reached). No such immediate suit was threatened by LSI.

In the instant case, BN's conduct can be reasonably interpreted as BN's effort to "cut to the chase" and resolve the conflict as soon as possible once it reasonably believed it was not infringing the subject patents. The declarations submitted by the parties also indicate that BN had experienced certain delays in obtaining requested documents from LSI in the course of their negotiations. *See, e.g.*, Snow Decl., Exhs. 3, 8 at 2. As there was no indication that LSI had immediate plans to file suit, BN could have reasonably believed that a declaratory judgment action was its best option to expedite a resolution. Indeed, the point of the Declaratory Judgment Act is to "afford[] a measure of relief to the potential infringer who is under the shadow of threatened infringement litigation." *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995). Given this purpose, the mere potential of future litigation would not render a declaratory judgment suit

"anticipatory" so as to vitiate the first-filed rule.[2]

Finally, while Defendants allege forum shopping, the only evidence to which they point besides the fact that Plaintiffs filed suit first is that they filed suit in their chosen forum over Defendants' chosen forum. For example, Defendants make no showing of different substantive law between this District and the Eastern District of Pennsylvania that would motivate forum-shopping. *Cf. Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) ("Mission states that the burden of proof in regard to the loss may differ in California and Texas, an important fact in this case since even proving that the thefts occurred may require resort to complicated accounting analyses."). Unlike in *National Foam*, cited by Defendants, here there is no indication that Plaintiffs rushed to the courthouse, as the parties engaged in negotiations for months before they filed suit. *Cf. National Foam v. Williams Fire & Hazard Control*, No. 97-3105, 1997 U.S. Dist. LEXIS 16734, at *25 (E.D. Pa. Oct. 28, 1997) ("The day after Williams' counsel denied the allegations made against its customer by National Foam, National Foam filed the instant law suit."). Nor did BN choose a forum with no relevance to the parties, so as to suggest the possibility of forum-shopping; instead, BN filed suit in the district in which it makes the accused products and in which LSI is headquartered. Gilbert Decl., Docket No. 28, ¶¶ 3, 4, 7; Anderson Decl., Docket No. 33, Exh. 1. Thus, the Court finds no evidence of forum shopping.

As for convenience factors, the Court employs the same analysis with respect to the first-to-file rule as for a motion to transfer under 28 U.S.C. § 1404. *Heartland Payment Systems, Inc. v. Verifone Israel Ltd.*, No. C 10-0654 MHP, 2010 WL 1662478, at *4 (N.D. Cal. Apr. 22, 2010). Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court has discretion in deciding whether to transfer pursuant to § 1404(a). *See Steward Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (stating that the statute is "intended to

---

[2] Indeed, the Federal Circuit in *Serco* placed special emphasis on the fact that the district court had considered the anticipatory suit as only one factor along with the convenience of the parties and witnesses, as the Court noted that "[t]here is some merit to Serco's suggestion that dismissing its suit as anticipatory is inconsistent with *Genentech*'s repudiation of the [rule favoring infringement actions] in patent cases," but that it was not an abuse of discretion to consider such anticipatory action as one factor in the analysis. *Serco*, 51 F.3d at 1039-40.

place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'"); *see also Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (stating that a "district court's decision to change venue is reviewed for abuse of discretion"; adding that "'[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge'"). The Ninth Circuit has noted that, in making the decision, a court may consider factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" . . . .

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (discussing private and public factors affecting the convenience of a forum).

Consistent with the above, courts in this District have commonly articulated the relevant factors as follows:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (Illston, J.); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (Walker, J.). "The burden of showing that transfer is appropriate is on the moving party . . . ." *Id*. As a general matter, a plaintiff's choice of forum should be afforded deference. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Thus, "[i]n order to upset a plaintiff's choice of forum, a defendant must make a 'strong showing of inconvenience.'" *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 536 (N.D. Cal. 2005) (quoting *Decker*, 805 F.2d at 843); *see also In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) ("A motion to transfer venue should be granted upon a showing that the

1  transferee venue is clearly more convenient than the venue chosen by the plaintiff.") (internal
2  quotations omitted).
3      In the instant case, neither forum provides a clear advantage with respect to the factors listed
4  above. Rather, each party simply prefers its chosen forum, and each forum would offer some
5  benefits as well as hardships to parties and witnesses. The first factor weighs in Plaintiffs' favor as
6  this is their chosen forum, and the forum is connected to this action because the employees
7  responsible for designing and developing the accused Nook product work in BN's Palo Alto offices.
8  Gilbert Decl. ¶¶ 1-2; *Cf. Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *4
9  (N.D. Cal. Dec. 19, 2008) ("[T]he deference given to plaintiff's choice of forum is slight, if any,
10 when . . . the plaintiff's chosen forum lacks a significant connection to the events that gave rise to
11 the complaint."). LSI is also headquartered in this district. Terrano Decl., Docket No. 22, ¶ 2.
12     The second and third factors – convenience of the parties and witnesses – do not counsel in
13 favor of transfer. Defendants point out that Agere employees and documents as well as some patent
14 inventors and other third-party witnesses reside on the East Coast within a 100-mile radius of the
15 Eastern District of Pennsylvania (and hence within its subpoena power), *see* Terrano Decl. ¶ 25
16 (explaining that LSI and Agere employees most knowledgeable about the patents-in-suit are located
17 in Pennsylvania); Tyz Decl., Docket No. 23, ¶¶ 14-16 (listing six patent inventors and fourteen
18 prosecuting attorneys located near Pennsylvania). However, Plaintiffs similarly note that BN's
19 Nook offices are located in this district along with other patent inventors and third-party witnesses
20 related to its chip-suppliers, *see* Gilbert Decl., Docket No. 28 (explaining that most BN employees
21 with information and documents related to the Nook are located in the Palo Alto office, and that
22 many relevant employees of the third-parties that supply the chipsets employing the accused
23 functionality are located in the district); Tyz Decl. ¶ 14 (listing five patent inventors located in
24 California). Thus, either forum would offer some conveniences and inconveniences to both the
25 parties and witnesses. "[I]t is not appropriate to transfer a case on convenience grounds when the
26 effect would be simply to shift the inconvenience from one party to another, especially when the
27 plaintiff's choice of forum has been made in good faith rather than as a matter of forum shopping."
28 *Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2008 WL 1902698, at *9 (N.D. Cal. Apr. 28,

18

1    2008) (citing *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal.1988); *Decker Coal*,
2    805 F.2d at 843); *see also Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964) ("Section 1404(a)
3    provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient
4    or inconvenient."). In addition, "[i]n patent infringement cases, the bulk of the relevant evidence
5    usually comes from the accused infringer," in this case Plaintiffs. *Genentech*, 566 F.3d 1338 at
6    1345. Plaintiffs' Nook-related documents are largely located here. Gilbert Decl. ¶ 4.

7    Beyond the location of witnesses and evidence, there is no indication of any difference
8    between the forums with respect to familiarity with the law or degree of congestion. *See* Mot. 1 at
9    22-23 (conceding these factors are neutral). Despite Defendants' claims to the contrary, there is no
10   difference in the ability of each forum to consolidate claims.[3] Moreover, both fora arguably have an
11   interest in this suit, as parties are located within both districts. Thus, the Section 1404 factors do not
12   clearly weigh in favor of rejecting Plaintiffs' choice of forum.

13   Accordingly, the Court determines that application of the first-to-file rule is appropriate in
14   this instance, and because this action is the first-filed, the Court DENIES Defendants' motion to
15   dismiss. Because the considerations that illuminate a motion to transfer analysis are the same as
16   those that factor into the Court's discretion with respect to convenience under the first-filed rule, *see*
17   *Heartland Payment Systems*, 2010 WL 1662478 at *4, the Court also DENIES Defendants' motion
18   to transfer.

19   ///
20   ///
21   ///
22   ///
23   ///
24   ///

---

[3] Defendants cite *Pacesetter* for the proposition that the first-filed rule need not be heeded where that suit does not include the "major contestants" that are present in the second suit. *See* Reply 1 at 8; *Pacesetter*, 678 F.2d at 96. However, here, Plaintiffs' amended complaint includes all relevant parties and claims. In addition, in *Kerotest*, the parties included in the second action could not be joined in the first-filed action. *See Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185-86 (1952). That is not the case here.

For the foregoing reasons, the Court **DENIES** Defendants' motions to dismiss or transfer.

The Court also **DENIES** as moot Defendants' motion for leave to file a supplemental declaration. Docket No. 60.

This order disposes of Docket Nos. 21, 45, and 60.

IT IS SO ORDERED.

Dated: October 18, 2011

_____
EDWARD M. CHEN
United States District Judge