1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 90378)
2    Shon Morgan (Bar No. 187736)
   865 S Figueroa St 10th Floor
3  Los Angeles, CA 90017
   Telephone:      (213) 443-3000
4  Facsimile:      (213) 443-3100
   Email:          johnquinn@quinnemanuel.com
5                  shonmorgan@quinnemanuel.com

6    David Eiseman (Bar No. 114758)
     Melissa J. Baily (Bar No. 237649)
7    Carl G. Anderson (Bar No. 239927)
   50 California Street, 22nd Floor
8  San Francisco, California  94111
   Telephone:      (415) 875-6600
9  Facsimile:      (415) 875-6700
   Email:          davideiseman@quinnemanuel.com
10                 melissabaily@quinnemanuel.com
                   carlanderson@quinnemauel.com
11
   Attorneys for Plaintiffs
12 Barnes & Noble, Inc. and barnesandnoble.com
   LLC
13
                  UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15

16 BARNES & NOBLE, INC. and                    CASE NO. 3:11-CV-2709-EMC
   BARNESANDNOBLE.COM LLC
17                                             **BARNES & NOBLE, INC. AND**
                  Plaintiffs,                  **BARNESANDNOBLE.COM LLC'S**
18                                             **ANSWER AND AFFIRMATIVE**
          vs.                                  **DEFENSES TO LSI CORPORATION**
19                                             **AND AGERE SYSTEMS, INC.'s**
   LSI CORPORATION and AGERE                   **COUNTERCLAIMS**
   SYSTEMS, INC.
20
                  Defendants.
21

22
          Barnes & Noble, Inc. and Barnesandnoble.com LLC (collectively "BN") answer the
23
   allegations of the Counterclaims of LSI Corporation ("LSI") and Agere Systems, Inc. ("Agere,"
24
   collectively "Counterclaimants" or "LSI/Agere") as follows:
25
                          **THE NATURE OF THE ACTION**
26
          1.      BN admits that the Counterclaims purport to be a civil action for patent
27
   infringement.  BN further admits that U.S. Patent No. 5,670,730 (the "'730 patent") is entitled
28

02706.23503/4466328

1  "Data Protocol and Method for Segmenting Memory for a Music Chip"; that U.S. Patent No.

2  5,862,182 (the "'182 patent") is entitled "OFDM Digital Communications System Using

3  Complementary Codes"; that U.S. Patent No. 5,920,552 (the "'552 patent") is entitled "Variable

4  Rate Coding for Wireless Applications"; that U.S. Patent No. 6,044,073 (the "'073 patent") is

5  entitled "Methods of and Devices for Enhancing Communications that Use Spread Spectrum

6  Technology by Using Variable Power Techniques"; that U.S. Patent No. 6,404,732 (the "'732

7  patent") is entitled "Digital Modulation System Using Modified Orthogonal Codes to Reduce

8  Autocorrelation"; that U.S. Patent No. 6,452,958 (the "'958 patent") is entitled "Digital

9  Modulation System Using Extended Code Set"; that U.S. Patent No. 6,707,867 (the "'867 patent")

10  is entitled "Wireless Local Area Network Apparatus"; that U.S. Patent No. 7,583,582 (the "'582

11  patent") is entitled "M-ary Orthogonal Keying System"; that U.S. Patent No. 7,477,633 (the "'633

12  patent") is entitled "Method and Apparatus for Varying the Number of Pilot Tones in a Multiple

13  Antenna Communication System"; and that U.S. Patent No. 6,119,091 (the "'091 patent") is

14  entitled "DVD Audio Decoder Having a Direct Access PCM FIFO."  BN denies that U.S. Patent

15  No. 5,546,420 (the "'420 patent") is entitled "Methods of and Devices for Enhancing

16  Communications that Use Spread Spectrum Technology by Using Variable Power Techniques."

17  The '420 patent is entitled "Methods of and Devices for Enhancing Communications that Use

18  Spread Technology by Using Variable Code Techniques" (collectively with the '730, '182, '552,

19  '073, '732, '958, '867, '582, '633, and '091 patents, the "Asserted Patents").

20                                    <u>**JURISDICTION AND VENUE**</u>

21          2.      BN admits that the Counterclaims purport to be actions under the patent laws of the

22  United States, and that the Counterclaims purport to invoke this Court's jurisdiction under 28

23  U.S.C. §§ 1331 and 1338(a).

24          3.      BN admits the allegations in Paragraph 3 of the Counterclaims.

25          4.      BN denies the allegations in Paragraph 4 of the Counterclaims.

26

27

28

1    5.    BN admits that venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and

2  1400(b).  BN admits that Counterclaimants purport to reserve the right to object to this forum as

3  inconvenient under 28 U.S.C. § 1404.

4  **PARTIES**

5    6.    BN admits that LSI purports to be a Delaware corporation with its headquarters and

6  principal place of business at 1621 Barber Lane, Milpitas, California 95035.  BN lacks knowledge

7  or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 6

8  of the Counterclaims and therefore denies those allegations.

9    7.    BN admits that Agere purports to be a Delaware corporation with its principal place

10  of business at 110 American Parkway, N.E., Allentown, Pennsylvania 18109.  BN further admits

11  that Agere purports to be a wholly owned subsidiary of LSI.  BN lacks knowledge or information

12  sufficient to form a belief as to the truth of the remaining allegations of Paragraph 7 of the

13  Counterclaims and therefore denies those allegations.

14    8.    BN admits that Barnesandnoble.com is a Delaware corporation with its

15  headquarters and principal place of business in New York, New York.  BN further admits that

16  Barnesandnoble.com offers to sell and sells the NOOK™ and digital content for the NOOK™.

17  Because certain of the language used in Paragraph 8 of the Counterclaims is vague and

18  ambiguous,  BN lacks knowledge or information sufficient to form a belief as to the truth of the

19  remaining allegations of Paragraph 8 of the Counterclaims and therefore denies those allegations.

20    9.    BN admits that Barnes & Noble is the parent company of Barnesandnoble.com.

21  BN admits that Barnes & Noble is a Delaware corporation with its headquarters and principal

22  place of business in New York, New York.  BN further admits that Barnes & Noble offers for sale

23  and sells the NOOK™.  Because certain of the language used in Paragraph 9 of the Counterclaims

24  is vague and ambiguous,  BN lacks knowledge or information sufficient to form a belief as to the

25  truth of the remaining allegations of Paragraph 9 of the Counterclaims and therefore denies those

26  allegations.

27

28

02706.23503/4466388

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

1

## FIRST COUNTERCLAIM

2

### (Infringement of U.S. Patent No. 5,670,730)

3        10.      BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9

4   of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats

5   its responses in Paragraphs 1 through 9 as if set forth fully herein.

6        11.      BN admits that the '730 patent is entitled "Data Protocol and Method for

7   Segmenting Memory for a Music Chip."  BN further admits that Exhibit A appears to be a copy of

8   the '730 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere

9   currently owns the '730 patent and whether Agere owned the '730 patent throughout the period of

10  BN's allegedly infringing acts.  Except as expressly admitted, BN denies the remaining allegations

11  in Paragraph 11 of the Counterclaims.

12        12.      BN admits that Agere disclosed the '730 patent to BN through filing and service of

13  its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble,*

14  *Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN

15  denies the remaining allegations in Paragraph 12 of the Counterclaims.

16        13.      BN denies the allegations in Paragraph 13 of the Counterclaims.

17        14.      BN denies the allegations in Paragraph 14 of the Counterclaims.

18        15.      BN denies the allegations in Paragraph 15 of the Counterclaims.

19        16.      BN denies the allegations in Paragraph 16 of the Counterclaims.

20        17.      BN denies the allegations in Paragraph 17 of the Counterclaims.

21        18.      BN denies the allegations in Paragraph 18 of the Counterclaims.

22        19.      BN denies the allegations in Paragraph 19 of the Counterclaims.

23        20.      BN denies the allegations in Paragraph 20 of the Counterclaims.

24        21.      BN denies the allegations in Paragraph 21 of the Counterclaims.

25

26

27

28

**SECOND COUNTERCLAIM**

**(Infringement of U.S. Patent No. 5,546,420)**

22.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

23.     BN admits that the '420 patent is entitled "Methods of and Devices for Enhancing Communications That Use Spread Spectrum Technology by Using Variable Code Techniques." BN further admits that Exhibit B appears to be a copy of the '420 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '420 patent and whether Agere owned the '420 patent throughout the period of BN's allegedly infringing acts. Except as expressly admitted, BN denies the remaining allegations in Paragraph 23 of the Counterclaims.

24.     BN admits that Agere disclosed the '420 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 24 of the Counterclaims.

25.     BN denies the allegations in Paragraph 25 of the Counterclaims.

26.     BN denies the allegations in Paragraph 26 of the Counterclaims.

27.     BN denies the allegations in Paragraph 27 of the Counterclaims.

28.     BN denies the allegations in Paragraph 28 of the Counterclaims.

29.     BN denies the allegations in Paragraph 29 of the Counterclaims.

30.     BN denies the allegations in Paragraph 30 of the Counterclaims.

31.     BN denies the allegations in Paragraph 31 of the Counterclaims.

32.     BN denies the allegations in Paragraph 32 of the Counterclaims.

33.     BN denies the allegations in Paragraph 33 of the Counterclaims.

**THIRD COUNTERCLAIM**

**(Infringement of U.S. Patent No. 5,920,552)**

34.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

35.     BN admits that the '552 patent is entitled "Variable Rate Coding for Wireless Applications."  BN further admits that Exhibit C appears to be a copy of the '552 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '552 patent and whether Agere owned the '552 patent throughout the period of BN's allegedly infringing acts.  Except as expressly admitted, BN denies the remaining allegations in Paragraph 35 of the Counterclaims.

36.     BN admits that Agere disclosed the '552 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 36 of the Counterclaims.

37.     BN denies the allegations in Paragraph 37 of the Counterclaims.

38.     BN denies the allegations in Paragraph 38 of the Counterclaims.

39.     BN denies the allegations in Paragraph 39 of the Counterclaims.

40.     BN denies the allegations in Paragraph 40 of the Counterclaims.

41.     BN denies the allegations in Paragraph 41 of the Counterclaims.

42.     BN denies the allegations in Paragraph 42 of the Counterclaims.

43.     BN denies the allegations in Paragraph 43 of the Counterclaims.

44.     BN denies the allegations in Paragraph 44 of the Counterclaims.

45.     BN denies the allegations in Paragraph 45 of the Counterclaims.

**FOURTH COUNTERCLAIM**

**(Infringement of U.S. Patent No. 6,004,073)**

46.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

47.     BN admits that the '073 patent is entitled "Methods of and Devices for Enhancing Communications that Use Spread Spectrum Technology by Using Variable Power Techniques." BN further admits that Exhibit D appears to be a copy of the '073 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '073 patent and whether Agere owned the '073 patent throughout the period of BN's allegedly infringing acts. Except as expressly admitted, BN denies the remaining allegations in Paragraph 47 of the Counterclaims.

48.     BN admits that Agere disclosed the '073 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 48 of the Counterclaims.

49.     BN denies the allegations in Paragraph 49 of the Counterclaims.

50.     BN denies the allegations in Paragraph 50 of the Counterclaims.

51.     BN denies the allegations in Paragraph 51 of the Counterclaims.

52.     BN denies the allegations in Paragraph 52 of the Counterclaims.

53.     BN denies the allegations in Paragraph 53 of the Counterclaims.

54.     BN denies the allegations in Paragraph 54 of the Counterclaims.

55.     BN denies the allegations in Paragraph 55 of the Counterclaims.

56.     BN denies the allegations in Paragraph 56 of the Counterclaims.

57.     BN denies the allegations in Paragraph 57 of the Counterclaims.

**FIFTH COUNTERCLAIM**

**(Infringement of U.S. Patent No. 6,707,867)**

58.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

59.     BN admits that the '867 patent is entitled "Wireless Local Area Network Apparatus."  BN further admits that Exhibit E appears to be a copy of the '867 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '867 patent and whether Agere owned the '867 patent throughout the period of BN's allegedly infringing acts.  Except as expressly admitted, BN denies the remaining allegations in Paragraph 59 of the Counterclaims.

60.     BN admits that Agere disclosed the '867 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 60 of the Counterclaims.

61.     BN denies the allegations in Paragraph 61 of the Counterclaims.

62.     BN denies the allegations in Paragraph 62 of the Counterclaims.

63.     BN denies the allegations in Paragraph 63 of the Counterclaims.

64.     BN denies the allegations in Paragraph 64 of the Counterclaims.

65.     BN denies the allegations in Paragraph 65 of the Counterclaims.

66.     BN denies the allegations in Paragraph 66 of the Counterclaims.

67.     BN denies the allegations in Paragraph 67 of the Counterclaims.

68.     BN denies the allegations in Paragraph 68 of the Counterclaims.

69.     BN denies the allegations in Paragraph 69 of the Counterclaims.

## SIXTH COUNTERCLAIM

### (Infringement of U.S. Patent No. 5,862,182)

70.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

71.     BN admits that the '182 patent is entitled "OFDM Digital Communications System Using Complementary Codes."  BN denies that a copy of the '182 patent was attached to the Counterclaims as Exhibit F.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '182 patent and whether Agere owned the '182 patent throughout the period of BN's allegedly infringing acts.  Except as expressly admitted, BN denies the remaining allegations in Paragraph 71 of the Counterclaims.

72.     BN admits that Agere disclosed the '182 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 72 of the Counterclaims.

73.     BN denies the allegations in Paragraph 73 of the Counterclaims.

74.     BN denies the allegations in Paragraph 74 of the Counterclaims.

75.     BN denies the allegations in Paragraph 75 of the Counterclaims.

76.     BN denies the allegations in Paragraph 76 of the Counterclaims.

77.     BN denies the allegations in Paragraph 77 of the Counterclaims.

78.     BN denies the allegations in Paragraph 78 of the Counterclaims.

79.     BN denies the allegations in Paragraph 79 of the Counterclaims.

80.     BN denies the allegations in Paragraph 80 of the Counterclaims.

81.     BN denies the allegations in Paragraph 81 of the Counterclaims.

02706.23503/4466383.8

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

## SEVENTH COUNTERCLAIM

### (Infringement of U.S. Patent No. 6,404,732)

82.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

83.     BN admits that the '732 patent is entitled "Digital Modulation System Using Modified Orthogonal Codes to Reduce Autocorrelation."  BN further admits that Exhibit G appears to be a copy of the '732 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '732 patent and whether Agere owned the '732 patent throughout the period of BN's allegedly infringing acts.  Except as expressly admitted, BN denies the remaining allegations in Paragraph 83 of the Counterclaims.

84.     BN admits that Agere disclosed the '732 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 84 of the Counterclaims.

85.     BN denies the allegations in Paragraph 85 of the Counterclaims.

86.     BN denies the allegations in Paragraph 86 of the Counterclaims.

87.     BN denies the allegations in Paragraph 87 of the Counterclaims.

88.     BN denies the allegations in Paragraph 88 of the Counterclaims.

89.     BN denies the allegations in Paragraph 89 of the Counterclaims.

90.     BN denies the allegations in Paragraph 90 of the Counterclaims.

91.     BN denies the allegations in Paragraph 91 of the Counterclaims.

92.     BN denies the allegations in Paragraph 92 of the Counterclaims.

93.     BN denies the allegations in Paragraph 93 of the Counterclaims.

02706.23503/4466388

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

## EIGHTH COUNTERCLAIM

### (Infringement of U.S. Patent No. 6,452,958)

94.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

95.     BN admits that the '958 patent is entitled "Digital Modulation System Using Extended Code Set."  BN further admits that Exhibit H appears to be a copy of the '958 patent. BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '958 patent and whether Agere owned the '958 patent throughout the period of BN's allegedly infringing acts.  Except as expressly admitted, BN denies the remaining allegations in Paragraph 95 of the Counterclaims.

96.     BN admits that Agere disclosed the '958 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 96 of the Counterclaims.

97.     BN denies the allegations in Paragraph 97 of the Counterclaims.

98.     BN denies the allegations in Paragraph 98 of the Counterclaims.

99.     BN denies the allegations in Paragraph 99 of the Counterclaims.

100.    BN denies the allegations in Paragraph 100 of the Counterclaims.

101.    BN denies the allegations in Paragraph 101 of the Counterclaims.

102.    BN denies the allegations in Paragraph 102 of the Counterclaims.

103.    BN denies the allegations in Paragraph 103 of the Counterclaims.

104.    BN denies the allegations in Paragraph 104 of the Counterclaims.

105.    BN denies the allegations in Paragraph 105 of the Counterclaims.

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

**NINTH COUNTERCLAIM**

**(Infringement of U.S. Patent No. 7,583,582)**

106.    BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

107.    BN admits that the '582 patent is entitled "M-ARY Orthogonal Keying System." BN further admits that Exhibit I appears to be a copy of the '582 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '582 patent and whether Agere owned the '582 patent throughout the period of BN's allegedly infringing acts. Except as expressly admitted, BN denies the remaining allegations in Paragraph 107 of the Counterclaims.

108.    BN admits that Agere disclosed the '582 patent to BN through filing and service of its complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble, Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.).  Except as expressly admitted, BN denies the remaining allegations in Paragraph 108 of the Counterclaims.

109.    BN denies the allegations in Paragraph 109 of the Counterclaims.

110.    BN denies the allegations in Paragraph 110 of the Counterclaims.

111.    BN denies the allegations in Paragraph 111 of the Counterclaims.

112.    BN denies the allegations in Paragraph 112 of the Counterclaims.

113.    BN denies the allegations in Paragraph 113 of the Counterclaims.

114.    BN denies the allegations in Paragraph 114 of the Counterclaims.

115.    BN denies the allegations in Paragraph 115 of the Counterclaims.

116.    BN denies the allegations in Paragraph 116 of the Counterclaims.

117.    BN denies the allegations in Paragraph 117 of the Counterclaims.

02706.23503/4466388

**TENTH COUNTERCLAIM**

**(Infringement of U.S. Patent No. 7,477,633)**

118.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

119.     BN admits that the '633 patent is entitled "Method and Apparatus for Varying the Number of Pilot Tones in a Multiple Antenna Communication System."  BN further admits that Exhibit J appears to be a copy of the '633 patent.  BN lacks knowledge or information sufficient to form beliefs as to whether Agere currently owns the '633 patent and whether Agere owned the '633 patent throughout the period of BN's allegedly infringing acts.  Except as expressly admitted, BN denies the remaining allegations in Paragraph 119 of the Counterclaims.

120.     BN denies the allegations in Paragraph 120 of the Counterclaims.

121.     BN denies the allegations in Paragraph 121 of the Counterclaims.

122.     BN denies the allegations in Paragraph 122 of the Counterclaims.

123.     BN denies the allegations in Paragraph 123 of the Counterclaims.

124.     BN denies the allegations in Paragraph 124 of the Counterclaims.

125.     BN denies the allegations in Paragraph 125 of the Counterclaims.

126.     BN denies the allegations in Paragraph 126 of the Counterclaims.

127.     BN denies the allegations in Paragraph 127 of the Counterclaims.

128.     BN denies the allegations in Paragraph 128 of the Counterclaims.

**ELEVENTH COUNTERCLAIM**

**(Infringement of U.S. Patent No. 6,119,091)**

129.     BN admits that Counterclaimants incorporate by reference Paragraphs 1 through 9 of the Counterclaims as though fully set forth therein.  BN incorporates by reference and repeats its responses in Paragraphs 1 through 9 as if set forth fully herein.

130.     BN admits that the '091 patent is entitled "DVD Audio Decoder Having a Direct Access PCM FIFO."  BN further admits that Exhibit K appears to be a copy of the '091 patent.

02706.23503/4466388.1

1   BN lacks knowledge or information sufficient to form beliefs as to whether LSI currently owns the

2   '420 patent and whether LSI owned the '420 patent throughout the period of BN's allegedly

3   infringing acts.  Except as expressly admitted, BN denies the remaining allegations in Paragraph

4   130 of the Counterclaims.

5          131.    BN admits that LSI disclosed the '420 patent to BN through filing and service of its

6   complaint in the Eastern District of Pennsylvania, *Agere Systems Inc., et al. v. Barnes & Noble,*

7   *Inc., et al.*, Civil Action No. 5:11-cv-04751-LS (E.D. Pa.) and through correspondence between

8   March 2011 and April 2011.  Except as expressly admitted, BN denies the remaining allegations

9   in Paragraph 131 of the Counterclaims.

10         132.    BN denies the allegations in Paragraph 132 of the Counterclaims.

11         133.    BN denies the allegations in Paragraph 133 of the Counterclaims.

12         134.    BN denies the allegations in Paragraph 134 of the Counterclaims.

13         135.    BN denies the allegations in Paragraph 135 of the Counterclaims.

14         136.    BN denies the allegations in Paragraph 136 of the Counterclaims.

15         137.    BN denies the allegations in Paragraph 137 of the Counterclaims.

16         138.    BN denies the allegations in Paragraph 138 of the Counterclaims.

17         139.    BN denies the allegations in Paragraph 139 of the Counterclaims.

18         140.    BN denies the allegations in Paragraph 140 of the Counterclaims.

19                                  **PRAYER FOR RELIEF**

20         BN denies that Counterclaimants are entitled to any relief sought in their Prayer for Relief.

21                                  **AFFIRMATIVE DEFENSES**

22                                  **FIRST AFFIRMATIVE DEFENSE**

23                                       **(Non-Infringement)**

24         1.      BN has not infringed and does not infringe, either directly, indirectly, contributorily

25   or by inducement, any valid and enforceable claims of the Asserted Patents either literally or under

26   the doctrine of equivalents, willfully or otherwise.

27

28

02706.23503/4466388.1

**SECOND AFFIRMATIVE DEFENSE**

**(Invalidity)**

2.      The claims of the Asserted Patents are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and 112.

**THIRD AFFIRMATIVE DEFENSE**

**(Unenforceability)**

3.      Counterclaimants and/or their predecessors-in-interest with respect to one or more of the Asserted Patents have engaged in standards-setting misconduct, including without limitation breach of the commitment to license one or more of the Asserted Patents on fair, reasonable, and nondiscriminatory terms.

**A.      The WiFi Coding Patents**

4.      LSI/Agere have alleged that certain products having wireless capability compliant with IEEE 802.11 standards infringe the '182 patent, the '732 patent, the '958 patent, and the '582 patent (collectively, the "WiFi Coding Patents").

5.      LSI/Agere have represented that they are the owners or assignees of the WiFi Coding Patents.

6.      The '182 patent issued from Application No. 08/688,574, filed on June 30, 1996.

7.      The '732 patent issued from Application No. 09/057,310, filed on April 8, 1998.

8.      The '958 patent issued from Application No. 09/064,188, filed on April 22, 1998.

9.      The '582 patent issued from Application No. 11/484,443, filed on July 10, 2006.

10.      The '732, '958, and '582 patents each refer to Application No. 08/688,574 and/or the '182 patent under the heading "Related U.S. Application Data."

11.      On information and belief supported by publicly available documents, Lucent Technologies, Inc. ("Lucent") is a predecessor-in-interest of LSI/Agere with respect to certain of the WiFi Coding Patents.

12.     On information and belief supported by publicly available documents, Agere Systems Guardian Corp. is a predecessor-in-interest of LSI/Agere with respect to certain of the WiFi Coding Patents.

**B.     The IEEE's Rules And Policies**

13.     The Institute of Electrical and Electronics Engineers ("IEEE") is a professional association and leading developer of technical standards.  IEEE members include engineers, scientists and allied professionals whose technical interests relate to electrical and computer sciences, engineering, and related disciplines.  Members may participate in the standards-setting process in working groups and/or subgroups called task groups.

14.     The IEEE instituted policies and rules regarding the disclosure and licensing of patents, in part to protect against unscrupulous conduct by any member who seeks to benefit unfairly from, or to manipulate to its advantage, the IEEE's standard-setting process, and to enable the IEEE and its members to develop standards free from potentially blocking patents.

15.     The IEEE's rules and policies required fairness and candor with respect to intellectual property.  By way of example only, the IEEE required its members to submit letters of assurance ("LOAs") including either a general disclaimer to the effect that the patentee will not enforce any of its present or future patents the use of which would be required to implement the proposed IEEE standard against any person or entity using the patents to comply with the standard, or a statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.  For example, the IEEE's Standards Board Bylaws state that "IEEE standards may include the known use of patent(s), including patent applications, if there is technical justification in the opinion of the standards-developing committee and provided the IEEE receives assurance from the patent holder that it will license applicants under reasonable terms and conditions for the purpose of implementing the standard."

16.     Additionally, the IEEE's Standards Board Bylaws state that the assurance "shall be a letter that is in the form of either a) A general disclaimer to the effect that the patentee will not

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

enforce any of its present or future patent(s) whose use would be required to implement the proposed IEEE standard against any person or entity using the patent(s) to comply with the standard or b) A statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination."

17.     The IEEE formed the 802.11 working group in 1990.  The IEEE 802.11 standard is entitled "Wireless LAN Media Access Control (MAC) and Physical Layer (PHY) Specifications" and concerns wireless local area networking ("wireless LAN").

18.     In 1997, the IEEE formed two task groups:  the 802.11a and 802.11b.  The 802.11a task group ("TGa") was concerned with a standard for wireless LAN in the 5 GHz frequency band.  The 802.11b task group ("TGb") was concerned with a standard for wireless LAN in the 2.4 GHz frequency band.

19.     Members of the IEEE participating in the standards-setting process for 802.11a and 802.11b included representatives of Lucent, a predecessor-in-interest of LSI/Agere.

20.     As a result of its representatives' participation in the IEEE, LSI/Agere's predecessor Lucent agreed, both explicitly and implicitly, that it would abide by the rules and policies of the IEEE.

**C.     Misrepresentations and Omissions by LSI/Agere's Predecessor Lucent**

21.     LSI/Agere's predecessor Lucent intentionally and knowingly made material misrepresentations and/or omissions in connection with standards-setting organizations, including as alleged below.

22.     On or about December 18, 1996, Gene G. Partlow of LSI/Agere's predecessor Lucent submitted a LOA to the IEEE.

23.     On or about January 13, 1998, Roger E. Stricker of LSI/Agere's predecessor Lucent submitted a LOA to the IEEE.

24.     On or about April 27, 1998, John T. Dickson of LSI/Agere's predecessor Lucent submitted a LOA to the IEEE.

25.     On or about April 29, 1998, Roger E. Stricker of LSI/Agere's predecessor Lucent submitted a LOA to the IEEE.

26.     On or about July 2, 1998, Roger E. Stricker of LSI/Agere's predecessor Lucent submitted a LOA to the IEEE.

27.     On or about January 24, 2003, Stephen R. Pomraning of Agere submitted a LOA to the IEEE.

28.     On or about September 13, 2004, Kapu A. Kumar of Agere submitted a LOA to the IEEE.

29.     On or about January 19-23, 1998, the 802.11 TGb group met in Lynnwood, Washington in connection with the standards-setting process.

30.     On information and belief supported by publicly available documents, representatives of LSI/Agere's predecessor Lucent, including Vic Hayes, Jan Boer, Richard van Nee, Jan Haagh, Ad Kamerman, Cees Links, and Henri Moelard attended the January 1998 802.11 TGb meeting in Lynnwood.

31.     Richard van Nee is a named inventor on each of the WiFi Coding Patents.   Ad Kamerman is a named inventor on the '182 patent.

32.     Vic Hayes was the Chairman of the 802.11 working groups.  At this meeting Vic Hayes explained the IEEE Patent Policy and specifically asked for notification from members as to patents applicable to standards or draft standards.

33.     On or about March 9-13, 1998, the 802.11 TGb group met in Irvine, California in connection with the standards-setting process.

34.     On information and belief supported by publicly available documents, representatives of LSI/Agere's predecessor Lucent, including Jan Boer, Wim Diepstraten, Jan Haagh, Vic Hayes, Ad Kamerman, Henri Moelard, Richard van Nee, Tie-Jun Shan, and Bruce Tuch attended the March 1998 802.11 TGb meeting in Irvine.

35.     At this meeting Vic Hayes explained the IEEE Patent Policy and specifically asked for notification from members as to patents applicable to standards or draft standards.

36.     On or about July 6-11, 1998, the 802.11 TGb group met in La Jolla, California in connection with the standards-setting process.

37.     On information and belief supported by publicly available documents, representatives of LSI/Agere's predecessor Lucent, including Vic Hayes, Jan Boer, and Richard van Nee, attended the July 1998 802.11 TGb meeting in La Jolla.

38.     Numerous proposals had been submitted to the 802.11 TGb group for consideration prior to the July 1998 TGb meeting in La Jolla, including proposals from Alantro Communications ("Alantro"), Micrilor Inc. ("Micrilor"), Raytheon, KDD, Golden Bridge Technology, Harris Semiconductor ("Harris"), and LSI/Agere's predecessor Lucent.

39.     On or about June 25, 1998, Jan Boer and Carl Andren submitted "Lucent/Harris TGb proposal comparison matrix input" in anticipation of the upcoming July 1998 TGb meeting.

40.     The "Lucent/Harris TGb proposal comparison matrix input" submitted by Jan Boer and Carl Andren included under the heading of "Applicable patent numbers" the statement "none."

41.     On or about the first day of the 802.11 TGb meeting, July 6, 1998, Harris and LSI/Agere's predecessor Lucent submitted a joint proposal (the "Harris/Lucent Proposal") to the 802.11 TGb group.

42.     Materials circulated in connection with the Harris/Lucent Proposal included the "Harris/Lucent TGb Compromise CCK (11 Mbps) Proposal, Selection Criterion," by Jan Boer and Richard van Nee, both of LSI/Agere's predecessor Lucent.

43.     The "Harris/Lucent TGb Compromise CCK (11 Mbps) Proposal, Selection Criterion" includes material on "Patent Submissions" stating "Lucent has not done any patent search and is not aware of any relevant patents" and "The CCK waveform is public domain."

44.     On or about July 6-9, 1998, Alantro, Micrilor, and Harris/Lucent presented their proposals to members of the 802.11 TGb group.

45.     On or about July 8, 1998, Karl Hannestad circulated a "TGb proposal comparison matrix" in connection with the Alantro, Micrilor, and Harris/Lucent proposals to members of the 802.11 TGb group.

46.     The "TGb proposal comparison matrix" circulated by Karl Hannestad included under the heading of "Applicable patent numbers" statements for each of the three proposals from Alantro, Micrilor, and Harris/Lucent; the Alantro statement "TBD," the Micrilor statement "Pending," and the Harris/Lucent statement "None."

47.     On or about July 9, 1998, the 802.11 TGb group voted in favor of pursuing the Harris/Lucent Proposal and decided not to pursue other proposals.  For example, the 802.11 TGb group also considered but rejected the proposals submitted by Alantro and Micrilor.

48.     On information and belief supported by publicly available documents, LSI/Agere's predecessor Lucent, Jan Boer, and Richard van Nee intentionally and knowingly made material misrepresentations and/or omissions to the 802.11 TGb group regarding its U.S. Patent Applications, including the Applications that led to the WiFi Coding Patents.

49.     On information and belief supported by publicly available documents, LSI/Agere's predecessor Lucent, Jan Boer, and Richard van Nee intentionally and knowingly made material misrepresentations and/or omissions to the 802.11 TGb group knowing and intending the same to be further communicated to the IEEE, its members, and others who rely on 802.11 activities, including the public and relevant third-parties.

50.     LSI/Agere's predecessor Lucent, Jan Boer, and Richard van Nee had a duty to disclose facts regarding their alleged intellectual property, including as a result of their representations and commitments to the IEEE.

51.     On information and belief supported by publicly available documents, the foregoing misrepresentations and/or omissions were knowingly false and made in bad faith with the intent to deceive and to induce reliance.

52.     On information and belief supported by publicly available documents, the IEEE, its members, their successors, and customers throughout the supply chain who rely on 802.11

1  activities, including BN and relevant third-parties, reasonably and justifiably relied on the

2  foregoing misrepresentations and/or omissions in adopting 802.11 standards and by investing

3  substantial resources designing, developing, and marketing products accused of alleged

4  infringement in this action.

5      53.     The foregoing actions and conduct have caused damage and continue to cause

6  damage to BN and relevant third-parties.

7      **D.    The 3G Patents**

8      54.     LSI/Agere have alleged that certain products having wireless capability compliant

9  with Third Generation Wideband Code Division Multiple Access cellular standards infringe the

10  '552 patent, the '420 patent, and the '073 patent (collectively, the "3G Patents").

11      55.     LSI/Agere have represented that they are the owners or assignees of the 3G Patents.

12      56.     The '552 patent issued from Application No. 08/656,119, filed on May 30, 1996.

13      57.     The '420 patent issued from Application No. 08/235,752, filed on April 29, 1994.

14      58.     The '073 patent issued from Application No. 09/129,774, filed on August 6, 1998.

15      59.     The '073 patent refers to Application No. 08/235,577, filed on April 29, 1994,

16  under the heading "Related U.S. Application Data."

17      60.     On information and belief supported by publicly available documents, Lucent is a

18  predecessor-in-interest of LSI/Agere with respect to certain of the 3G Patents.

19      **E.    3GPP and ETSI Rules and Policies**

20      61.     The Third Generation Partnership Project ("3GPP") is a collaborative project that

21  develops globally applicable standard specifications for third generation ("3G") mobile phones

22  and other telecommunications systems.

23      62.     3GPP was established on or around December 1998.

24      63.     3GPP's standardization efforts include Third Generation Wideband Code Division

25  Multiple Access cellular standards.

26      64.     3GPP is composed of Organizational Partners and Individual Members.

27  Organizational Partners are standard-setting organizations.  The European Telecommunications

02706.23503/4466328.8

1   Standards Institute ("ETSI") is an Organizational Partner of 3GPP.  The Individual Members of

2   3GPP are members of the Organizational Partners of 3GPP, including members of ETSI.

3       65.   On information and belief supported by publicly available documents, LSI, Agere

4   and their predecessor-in-interest Lucent have been members of ETSI and Individual Members of

5   3GPP.

6       66.   As individual members of 3GPP, LSI/Agere and their predecessor-in-interest

7   Lucent were required to comply with 3GPP's intellectual property rights policy ("IPR Policy").

8       67.   On information and belief supported by publicly available documents, 3GPP's IPR

9   Policy states that its Individual Members are bound by the IPR Policy of their respective

10  Organizational Partner.  3GPP's IPR Policy requires its Individual Members to declare to their

11  Organizational Partners any Intellectual Property Rights ("IPR") that they believe to be essential,

12  or potentially essential, to any work being conducted within 3GPP; the IPR Policy also requires

13  Organizational Partners to "encourage their respective members to grant licenses on fair,

14  reasonable terms and conditions and on a non-discriminatory basis."

15      68.   As members of ETSI, LSI/Agere and their predecessor-in-interest Lucent were

16  required to comply with ETSI's IPR Policy.

17      69.   The ETSI IPR Policy states, in part, "each member shall use its reasonable

18  endeavours, in particular during the development of a standard or technical specification where it

19  participates, to inform ETSI of essential IPRs in a timely fashion."

20      70.   The ETSI IPR Policy also states that ETSI shall request from members "an

21  irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair,

22  reasonable and non-discriminatory terms and conditions under such IPR. . . ."

23      71.   As Individual Members of 3GPP and members of ETSI, LSI/Agere and their

24  predecessor-in-interest Lucent were obligated to declare any patents that they believed to be

25  essential, or potentially essential, to the standardization efforts underway at 3GPP, including the

26  development of the UMTS (W-CDMA) standards.

27

02706.23503/4466382.1

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

72.     To the extent LSI/Agere contend that the 3G Patents are infringed by devices that provide connectivity in compliance with Third Generation Wideband Code Division Multiple Access cellular standards, LSI/Agere and their predecessor-in-interest Lucent were obligated to disclose those 3G Patents and their underlying applications in accordance with the 3GPP and ETSI rules and policies.

**F.     Failure To Disclose the 3G Patents**

73.     On information and belief supported by publicly available documents, LSI/Agere and their predecessor Lucent intentionally and knowingly made material omissions in connection with standards-setting organizations, including as alleged below.

74.     On or about January 20, 1998, Roger E. Stricker of LSI/Agere's predecessor Lucent submitted a LOA to ETSI.

75.     On or about March 1, 1999, Roger E. Stricker of LSI/Agere's predecessor Lucent submitted a LOA to ETSI.

76.     3GPP is composed of specification groups responsible for drafting and amending technical specifications associated with the 3GPP.

77.     3GPP specification group TSG RAN WG1 ("WG1") was formed on or around January 1999.  WG1 was responsible for specification of the physical layer of the radio interface. In particular, WG1 was responsible for drafting 3GPP Technical Specification ("TS") 25.211, 25.212, and 25.213.  LSI/Agere have alleged that certain products having wireless capability compliant with TS 25.211-213 standards infringe the '420 patent and the '073 patent.

78.     On information and belief supported by publicly available documents, representatives of Lucent attended WG1 meetings and participated in drafting and revising TS 25.211-213.  For example, the following Lucent employees attended WG1 meetings:  Ian Corden, Jan Meyer, Sergio Benedetto, Spase Drakul, Guido Montorsi, Shunichi Tanaka, David Bhataloul, Lee Jung Ah, Inhyok Cha, Kaiping Li, Said Tatesh, Gerhard Ammer, Christopher Barroso, Reza Mardami, Jung-Tao Liu, Man Hung Ng, A. Sampath, Arnab Das, Teck Hu, Rupert Rheinschmitt, Fang-Chen Cheng, Christian Gerlach, Nidal Khrais, and Chris Scarisbrick.

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

79.     On information and belief supported by publicly available documents, representatives of Agere attended WG1 meetings.  For example, the following Agere employees attended WG1 meetings:  Ferial Chummun, Matthew Cooke, and Syed Aon Mujtaba.

80.     On information and belief supported by publicly available documents, LSI representative Jeffrey Saunders attended at least one WG1 meeting on May 5-9, 2008.

81.     On information and belief supported by publicly available documents, during WG1 meetings attendees were informed that 3GPP Individual Members have the obligation under the IPR Policies of their respective Organisational Partners to inform their respective Organisational Partners of essential IPRs of which they became aware.

82.     3GPP specification group TSG RAN WG2 ("WG2") was formed on or around January 1999.  WG2 was responsible for Radio Interface architecture and protocols, the specification of the Radio Resource Control protocol, the strategies of Radio Resource Management, and the services provided by the physical layer to the upper layers.  In particular, WG2 was responsible for drafting 3GPP TS 25.331.  LSI/Agere have alleged that certain products having wireless capability compliant with TS 25.331 infringe the '552 patent.

83.     On information and belief supported by publicly available documents, representatives of Lucent attended WG2 meetings and participated in drafting and revising TS 25.331.  For example, the following Lucent employees attended WG2 meetings:  Gordon Young, Michael Roberts, Ian Corden, Mauro Costa, Byron Chen, Michael Dolan, Mike Wang, Babul Miah, Qiang Cao, Michael Lawrie, Mohamed Ould Elmoustapha, Robert Beeson, Gordon Young, Achilles Kogiantis, Farooq Khan, Jens Mueckenheim, Mirko Schacht, Osman Aydin, Hajo Bakker, Stanislas Bourdeaut, Hua Chao, Antonella Faniuolo, Denis Fauconnier, Sudeep Palat, Cyrille Royer, and Tao Yang.

84.     On information and belief supported by publicly available documents, Agere representative Ferial Chummun attended WG2 meetings.

85.     On information and belief supported by publicly available documents, LSI representatives Jeffrey Saunders and Rick Stuby attended at least one WG2 meeting on May 5-9, 2008.

86.     On information and belief supported by publicly available documents, during WG2 meetings attendees were informed that 3GPP Individual Members have the obligation under the IPR Policies of their respective Organisational Partners to inform their respective Organisational Partners of essential IPRs of which they became aware.

87.     On information and belief supported by publicly available documents, LSI, Agere and Lucent representatives intentionally and knowingly failed to disclose any of the 3G Patents as essential, or potentially essential, to the specifications being drafted and revised at WG1 and WG2, including TS 25.211-213 and TS 25.331.

88.     On information and belief supported by publicly available documents, the foregoing failure to disclose the 3G patents was made in bad faith with the intent to deceive and induce reliance.

89.     LSI/Agere and their predecessor Lucent had a duty to disclose the 3G patents essential to standards drafted and revised in WG1 and WG2 as a result of their membership in ETSI and 3GPP, including their obligations to disclose essential IPRs under the IPR policies of ETSI and 3GPP.

90.     On information and belief supported by publicly available documents, LSI/Agere and their predecessor-in-interest Lucent's failure to disclose led to the adoption and propagation of 3GPP standards without consideration of the 3G Patents.

91.     As a consequence of LSI/Agere and their predecessor-in-interest Lucent's failure to disclose, ETSI members, 3GPP members, their successors, and customers throughout the supply chain, including BN and relevant third parties, thereafter designed, manufactured, and marketed products meant to comply with those 3G cellular standards, thereby reasonably and justifiably relying on LSI/Agere and their predecessor-in-interest Lucent's promises to abide by ETSI and 3GPP IPR Policies, to their detriment.

92.     The foregoing actions and conduct have caused damage and continue to cause damage to BN and relevant third-parties.

93.     As a result of the conduct described above, the Asserted Patents are unenforceable against BN on the grounds of estoppel, fraud, laches, waiver, implied waiver, unclean hands, patent exhaustion, implied license, and/or other equitable doctrines.

**FOURTH AFFIRMATIVE DEFENSE**

**(Prosecution History Estoppel/Judicial Estoppel)**

94.     Counterclaimants are estopped from construing the claims in the Asserted Patents in such a way as to cover BN's activities because of prior statements made in or to this Court or any other court, prior rulings of this or any other court, Counterclaimants' prior conduct, the amendment, cancellation, or abandonment of claims before the United States Patent and Trademark Office, and/or admissions or other statements made to the United States Patent and Trademark Office.

**FIFTH AFFIRMATIVE DEFENSE**

**(No Injunctive Relief)**

95.     Counterclaimants are not entitled to injunctive relief because of commitments made by them and/or their predecessors-in-interest to standards-setting organizations to license one or more of the Asserted Patents on fair, reasonable, and nondiscriminatory terms.  Counterclaimants are further not entitled to injunctive relief because any alleged injury is not immediate or irreparable, and Counterclaimants have an adequate remedy at law.

**SIXTH AFFIRMATIVE DEFENSE**

**(License)**

96.     To the extent that any of the Asserted Patents are essential to an IEEE, 3GPP, Standards Committee T1 Telecommunications ("T1"), ETSI, or Alliance for Telecommunications Industry Solutions ("ATIS") standard, BN has an irrevocable right to a license under such patents.

02706.23503/4466382

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC

## SEVENTH AFFIRMATIVE DEFENSE

### (35 U.S.C. § 287 and § 288)

97.     Counterclaimants have failed to comply with the provisions of 35 U.S.C. § 287, and any claim for damages for patent infringement is limited to those damages occurring after legally proper notice of alleged infringement.  To the extent that any claim of the Asserted Patents is held invalid, Counterclaimants are precluded under 35 U.S.C. § 288 from recovering costs relating to this action.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure To State a Claim)

98.     The Counterclaims fail to state a claim upon which relief can be granted.


DATED:   November 28, 2011                    QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP



                                    By:   /s/ David Eiseman
                                          John B. Quinn (Bar No. 90378)
                                          Shon Morgan (Bar No. 187736)
                                          865 S Figueroa St 10th Floor
                                          Los Angeles, CA 90017
                                          Telephone:   (213) 443-3000
                                          Facsimile:   (213) 443-3100
                                          Email: johnquinn@quinnemanuel.com
                                                 shonmorgan@quinnemanuel.com

                                          David Eiseman (Bar No. 114758)
                                          Melissa J. Baily (Bar No. 237649)
                                          Carl G. Anderson (Bar No. 239927)
                                          50 California Street, 22nd Floor
                                          San Francisco, California  94111
                                          Telephone:   (415) 875 6600
                                          Facsimile:   (415) 875 6700
                                          Email: davideiseman@quinnemanuel.com
                                                 melissabaily@quinnemanuel.com
                                                 carlanderson@quinnemauel.com

                                          Attorneys for Plaintiffs
                                          Barnes & Noble, Inc. and barnesandnoble.com
                                          LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2011, I served true copies of the following

document(s) described as:

**BARNES & NOBLE, INC. AND BARNESANDNOBLE.COM LLC'S ANSWER
AND AFFIRMATIVE DEFENSES TO LSI CORPORATION AND AGERE
SYSTEMS, INC.'s COUNTERCLAIMS**

on the parties in this action as follows:

**FENWICK & WEST LLP**
Charlene M. Morrow
cmorrow@fenwick.com
Virginia K. Demarchi
vdemarchi@fenwick.com
Hector J. Ribera
hribera@fenwick.com
Ryan Tyz
rtyz@fenwick.com

Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

**BY ELECTRONIC MAIL:**  I caused said document(s) to be transmitted by electronic mail.  The

transmission was complete and without error.

Executed on November 28, 2011 at San Francisco, California.


                                              /s/ David Eiseman
                                              *David Eiseman*

02706.23503/4466382.1

-28-

BARNES & NOBLE AND BARNESANDNOBLE.COM'S
ANSWER AND AFFIRMATIVE DEFENSES TO LSI AND
AGERE'S COUNTERCLAIMS

CASE NO. 3:11-CV-2709-EMC