UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| BARNES AND NOBLE, INC., et al., | No. C 11-02709 EMC (LB) |
| Plaintiffs, | **ORDER REGARDING THE PARTIES' JOINT DISCOVERY LETTER DATED MARCH 14, 2012** |
| v. | |
| LSI CORPORATION, et al., | [Re: ECF No. 90] |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Barnes & Noble, Inc. and barnesandnoble.com LLC (collectively, "B&N") filed the instant action seeking a declaratory judgment of non-infringement and patent invalidity against defendants LSI Corporation and Agere Systems, Inc. (collectively, "Defendants"). Original Complaint, ECF No. 1.[1] Defendants answered B&N's First Amended Complaint and brought counterclaims against B&N for patent infringement. Answer and Counterclaims, ECF No. 62.

On March 14, 2012, the parties filed a joint letter describing a discovery dispute. 03/14/2012 Joint Letter, ECF No. 90. Upon review of it, the parties are instructed to meet and confer once more, as described below.[2]

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument.

C 11-02709 LB

## II. BACKGROUND

The current discovery dispute, which is a continuation of an earlier one, arises because the parties cannot reach agreement on the terms of a protective order. *See* 01/10/2012 Joint Letter, ECF No. 78; 02/23/2012 Order, ECF No. 88; 03/14/2012 Joint Letter, ECF No. 90. B&N's first proposed protective order would have allowed two of its in-house attorneys – Eugene DeFelice, Vice President, General Counsel and Corporate Secretary, and Brad Feuer, Vice President and Assistant General Counsel – access to most material designated by Defendants as "Highly Confidential – Attorneys' Eyes Only" ("AEO"). B&N's Revised Proposed Protective Order, ECF No. 85-2 at 12, § 7.3(b).[3] Defendants opposed such access, so their first proposed protective order prohibited B&N's in-house attorneys from having access to any material designated as such. Defendants' Revised Proposed Protective Order, ECF No. 85-1 at 11-12, § 7.3.

The court heard oral argument on the parties' 01/10/2012 Joint Letter on February 10, 2012. Minute Entry, ECF No. 87. At the hearing, B&N eventually admitted that what it wanted access to was Defendants' license agreements. In the order following the hearing, the court found both B&N's and Defendants' proposed protective orders to be insufficient. 02/23/2012 Order, ECF No. 88. The court explained that B&N's proposed protective order inappropriately allowed its in-house counsel access to "a broad swath of Defendants' AEO-designated material," while Defendants' proposed protective order inappropriately barred B&N's in-house attorneys from "license agreements that likely will be necessary for those attorneys to participate in meaningful settlement negotiations." *Id.* at 10. With respect to the license agreements, the court wrote:

> . . . B&N argues that "the details of [Defendants'] licensing practices are essential to determining the scope of potential damages." Indeed, several courts have recognized that disclosure of sensitive financial information to an opponent's in-house counsel may be necessary for evaluating settlement. *See*, *e.g.*, *Shared Memory Graphics, LLC v. Apple, Inc.*, No. C-10-2475 VRW (EMC), 2010 WL 4704420, at *2 (N.D. Cal. Nov. 12, 2010) (finding that the protective order should permit in-house counsel access to sensitive sales and profit information so that in-house counsel could fully participate in settlement negotiations); *Vasudevan Software, Inc. v. International Business Machines*, No. C09-05897 RS (HRL), 2010 WL 3629830, at *2 (N.D. Cal. Sept. 14, 2010) ("[T]he Court is sensitive to the fact that in-house counsel to a party,

---

[3] B&N's first proposed protective order also would have allowed two of Defendants' in-house counsel to have access to B&N's AEO material as well. B&N's Revised Proposed Protective Order, ECF No. 85-2 at 12, § 7.3(b).

C 11-02709 LB

2

     in most circumstances, needs to have some access to the opposing party's confidential financial information to understand the potential damages at issue and thus make an informed decision with respect to any possible settlement of the lawsuit."). Here, given that Defendants seek damages against B&N for patent infringement, the sensitive financial information that will be needed for settlement purposes necessarily includes Defendants' license agreements. As B&N noted at oral argument, it is with these license agreements that a reasonable royalty rate, and hence Defendants' potential damages, will be determined.[]

     B&N's proposed protective order is not limited to Defendants' licensing agreements, though. As described above, under its order, its in-house attorneys would have access to a plethora of confidential information. *See* B&N's Revised Proposed Protective Order, ECF No. 85-2 at 3-4, § 2.5. In fact, the only information that its in-house attorneys would not have access to would be future business plans, source code, technical documentation related to source code, and technical information related to in-process research and development. *Id*. at 4, § 2.6.[] Given the court's reasoning, it makes sense to limit B&N's in-house attorneys' access to Defendants' relevant licensing agreements and to not allow access to the remainder of the items listed in B&N's proposed protective order.

*Id*. at 8-9 (internal footnotes omitted). Thus, the court ordered the parties to meet and confer with the court's reasoning in mind and to submit a joint stipulated protective order. *Id*. at 10.

    The parties never submitted such an order. Instead, they filed another joint discovery letter with two new proposed protective orders. 03/14/2012 Joint Letter, ECF No. 90. Defendants' second proposed protective order adds a confidentiality tier for "Highly-Confidential — License Agreements," and limits the license agreements to which the parties' designated in-house counsel would be permitted access "fully executed agreement[s] (I) reflecting a license to one or more of the patents-in-suit, but excluding non-royalty bearing cross-licenses of multiple patents, or (ii) reflecting a license of patents for use by or in any of the accused products in this action." Defendants' Second Proposed Protective Order, ECF No. 90-1, ¶ 2.7.[4] B&N's second proposed protective order, on the other hand, would allow the parties' in-house counsel access to broadly-defined "license information" and "financial information related to the value of the patents-in-suit." B&N's Second Proposed Protective Order, ECF No. 90-4, ¶ 2.5. "License information" is defined to include, "by

---

[4] Defendants' second proposed protective order allows two of its in-house counsel – Marie MacNichol and Mark Terrano – to have access to discovery designated as "Highly Confidential — License Agreements," and, like B&N's two in-house attorneys, they both submitted declarations stating that they do not engage in competitive decisionmaking. Defendants' Second Proposed Protective Order, ECF No. 90-1, ¶ 2.7; Terrano Declaration, ECF No. 90-2; MacNichol Declaration, ECF No. 90-3.

1  way of example, executed and draft license agreements, correspondence and presentations regarding
2  licensing, information regarding licensing policies, and licensing plans and projections," and
3  "financial information related to the value of the patents-in-suit" is defined to include, "by way of
4  example, royalty reports, royalty projections, assessments of the value of the patents-in-suit, and
5  financial data related to any products made or sold under the patents-in-suit or alleged to infringe the
6  patents-in-suit." *Id.* In light of the parties' continued disagreement, the court will again provide
7  guidance on an appropriate protective order.

## II. LEGAL STANDARD

9   Upon a showing of "good cause," a court may "protect a party or person from annoyance,
10  embarrassment, oppression, or undue burden or expense" in discovery by "requiring that trade secret
11  or other confidential . . . commercial information not be revealed, or be revealed only in a specified
12  way." Fed. R. Civ. P. 26©; s*ee In re Violation of Rule 28(D)*, 635 F.3d 1352, 1357 (Fed. Cir. 2011).
13  The party seeking a protective order has the burden of showing that the protection is warranted. *Id.*
14  Generally, good cause requires the moving party to show that specific prejudice or harm will result
15  if the protective order is not issued. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 826 (9th Cir. 2004). And,
16  in this context, the courts administer a balancing test of the conflicting interests between the
17  protection of Rule 26© of the Federal Rules of Civil Procedure and the broad mandate of the
18  admissibility of information in discovery conferred by Rule 26(b)(1). *See*, *e.g.*, *Brown Bag Software*
19  *v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

20  This District's model protective order, upon which the parties have based their own proposed
21  protective orders, has been approved by the court and governs discovery unless the court enters a
22  different protective owner. *See* United States District Court for the Northern District of California's
23  Stipulated Protective Orders webpage, *at* http://cand.uscourts.gov/stipprotectorder ("The protective
24  orders on this page are court-approved model forms to which counsel may stipulate in a particular
25  case."); N.D. Cal. Patent L.R. 2-2 ("The Protective Order authorized by the Northern District of
26  California shall govern discovery unless the Court enters a different protective order."); *see*
27  *generally Acer America Corp. v. Technology Properties*, Nos. C08-00877 JF (HRL), 08-00882-JF,
28  08-00884-JF, 2009 WL 1363551, at *1 (N.D. Cal. May 14, 2009). Accordingly, the court treats the

1 model protective order as setting forth presumptively reasonable conditions regarding the treatment
2 of highly confidential information.

### III. DISCUSSION

This court, in its 02/23/2012 Order, previously discussed the relevant legal standard for allowing in-house counsel access to highly confidential material, so that discussion need not be repeated here.

Neither of the two new proposed protective orders fully complies with court's 02/23/2012 Order. At oral argument on February 10, 2012, the parties made clear that what really was at issue was the license agreements. Indeed, B&N's counsel stated that it is with the license agreements that a reasonable royalty rate, and hence Defendants' potential damages, will be determined. Based on those representations and the applicable legal authority, the court ordered that the parties' in-house counsel should have access to "relevant licensing agreements." 02/23/2012 Order, ECF No. 88 at 9.

Admittedly, this begs the question: Which license agreements are relevant? As described above, Defendants want to limit them to fully executed agreements "(I) reflecting a license to one or more of the patents-in-suit, but excluding non-royalty bearing cross-licenses of multiple patents, or (ii) reflecting a license of patents for use by or in any of the accused products in this action," while B&N wants not only "executed and draft license agreements," but " correspondence and presentations regarding licensing, information regarding licensing policies, . . . licensing plans and projections," "royalty projections, assessments of the value of the patents-in-suit, and financial data related to any products made or sold under the patents-in-suit or alleged to infringe the patents-in-suit."  Defendants' Second Proposed Protective Order, ECF No. 90-1, ¶ 2.7; B&N's Second Proposed Protective Order, ECF No. 90-4, ¶ 2.5.

To decide this question, it is necessary to look at how the patent damages in this case will be calculated. "A patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty.'" *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (quoting 35 U.S.C. § 284). "A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific*

1  *Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)." *Id.* (citing *Lucent Techs. v.*
2  *Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Minks v. Polaris Indus.*, 546 F.3d 1364, 1372
3  (Fed. Cir. 2008)).  Among the *Georgia-Pacific* factors are the following: "(1) [t]he royalties received
4  by the patentee for the licensing of the patent in suit, proving or tending to prove an established
5  royalty"; and "(2) [t]he rates paid by the licensee for the use of other patents comparable to the
6  patent in suit." *Georgia-Pacific*, 318 F.Supp at 1120.

7  Based on these factors and applicable case law, the court believes that Defendants' second
8  proposed protective order is a bit too limited.  Defendants attempt to limit the discoverable
9  documents to only executed licenses that resulted in royalty payments is too narrow.  They argue
10 that because "no court or jury could rely on mere drafts, or on licenses that, because of their
11 cross-license/no-royalty structure, cannot inform the hypothetical license negotiation, there is no
12 reason in-house counsel should have need to access this material." Joint Letter, ECF No. 90 at 2.
13 This conflates the standard for admissibility of evidence at trial and the much broader standard for
14 relevancy for discovery, and it is a too-narrow view of what in-house counsel needs access to (as
15 described in the court's prior order).  *See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.* 254
16 F.R.D. 568, 582-83 (N.D. Cal. 2008) (quoting *Eggleston v. Chicago Journeymen Plumbers' Local*
17 *Union No. 130*, U.A., 657 F.2d 890, 903 (7th Cir. 1981) ("'Relevancy for discovery is flexible and
18 has a broader meaning than admissibility at trial.'").  While cross-licenses may be different in
19 structure than licenses that simply provide for royalty payments, both are relevant for discovery
20 purposes and may lead to the discovery of admissible evidence.  Moreover, the Federal Circuit has
21 held that draft license agreements and proposals, depending on their comparability, may be relevant
22 to determining a reasonable royalty.  *See Unidisply S.A. v. Am. Elc. Sign Co.*, 69 F.3d 512, 519 (Fed.
23 Cir. 1995) (finding evidence of proposed license terms helpful for determining a reasonable royalty);
24 *Sorenson v. Lexar Media, Inc.*, No. C-08-00095 JW (RS), 2008 WL 5383513, at *2 (N.D. Cal. Dec.
25 22, 2008) ("The drafts, for example, could lead to the discovery of relevant evidence on the issue of
26 what value should be placed on the patents-in-suit.  Even those drafts that did not lead to a fully
27 executed licensing agreement could have relevance on the damages question of what constitutes a
28 reasonable royalty."); *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94 , 100 (D.N.H. 1995)

C 11-02709 LB

6

(Among the *Georgia-Pacific* factors "is the prior or existing royalties received by the patentee for the licensing of the patent in question. Related to this factor is evidence of prior offers to license by the patentee) (citing Donald S. Chisum, 5 Patents § 20.03[3] (1994)).[5] Simply put, the parties' in-house counsel should have access to executed license agreements, and any drafts of them, that involve the patents-in-suit, regardless of whether they are cross-licenses or not.

On the other hand, B&N's second proposed protective order overreaches. The court's 02/23/2012 Order clearly states that only "relevant licensing agreements" need be included. B&N's attempt to include "correspondence and presentations regarding licensing, information regarding licensing policies, . . . licensing plans and projections," "royalty projections, assessments of the value of the patents-in-suit, and financial data related to any products made or sold under the patents-in-suit or alleged to infringe the patents-in-suit" within the court's "relevant license agreements" language violates both the letter and the spirit of the court's prior order. The place and time for making an argument for these items was in the parties' January 10, 2012 joint letter or at oral argument on February 10, 2012. The court will not reconsider them now, particularly in light of B&N's representations at the last hearing about what it was seeking access to.

## IV. CONCLUSION

Based on the foregoing, the court again finds both B&N's and Defendants' proposed protective orders to be insufficient. The court ORDERS the parties to meet-and-confer again and to submit, within 10 days from the date of this order, a joint stipulated protective order that complies with this order and follows the court's guidance.

This disposes of ECF No. 90.

///

---

[5] Defendants attempt to downplay the significance of *Unidisply* by mentioning that it came out before other more recent Federal Circuit decisions emphasizing that courts are to consider only comparable license agreements when determining damages. *See Wordtech Sys., Inc. v. Integrated Network Solutions., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010); *ResQNet, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009). This is true, but those decision – none of which suggest that the decision in *Unidisply* is on shaky ground – dealt with license agreements that were entered into evidence at trial and did not deal with what license agreements are discoverable.

///

**IT IS SO ORDERED.**

Dated: March 26, 2012

_____
LAUREL BEELER
United States Magistrate Judge