UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| BARNES AND NOBLE, INC., et al., | No. C 11-02709 EMC (LB) |
| Plaintiffs, | **ORDER REGARDING THE PARTIES' JOINT DISCOVERY LETTER DATED APRIL 5, 2012** |
| v. | |
| LSI CORPORATION, et al., | [Re: ECF No. 95] |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Barnes & Noble, Inc. and barnesandnoble.com LLC (collectively, "B&N") filed the instant action seeking a declaratory judgment of non-infringement and patent invalidity against defendants LSI Corporation and Agere Systems, Inc. (collectively, "Defendants"). Original Complaint, ECF No. 1.[1] Defendants answered B&N's First Amended Complaint and brought counterclaims against B&N for patent infringement. Answer and Counterclaims, ECF No. 62.

On April 5, 2012, the parties filed a third joint discovery dispute letter describing the parties' difficulties in crafting a protective order to govern confidential information produced and received in this action. 4/5/2012 Joint Letter, ECF No. 95; *see* 01/10/2012 Joint Letter, ECF No. 78; 03/14/2012

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

Joint Letter, ECF No. 90. Upon review of the parties' 4/5/2012 Joint Letter, the rules as follows.[2]

## II. BACKGROUND

This discovery dispute arises because the parties still cannot reach agreement on the terms of a protective order. *See* 1/10/2012 Joint Letter, ECF No. 78; 2/23/2012 Order, ECF No. 88; 3/14/2012 Joint Letter, ECF No. 90; 3/26/2012 Order, ECF No. 93; 4/5/2012 Joint Letter, ECF No. 95. The parties first argued over whether two of B&N's in-house attorneys – Eugene DeFelice, Vice President, General Counsel and Corporate Secretary, and Brad Feuer, Vice President and Assistant General Counsel – should have access to material designated by Defendants as "Highly Confidential – Attorneys' Eyes Only" ("AEO"). 1/10/2012 Joint Letter, ECF No. 78 at 3-5.[3] Defendants opposed such access, and the court heard oral argument on February 10, 2012. *Id.* at 1-3; Minute Entry, ECF No. 87. At the hearing, B&N eventually admitted that what it wanted its in-house attorneys to have access to was Defendants' license agreements to determine the value of the case and to discuss settlement. In the order following the hearing, the court explained:

> . . . B&N argues that "the details of [Defendants'] licensing practices are essential to determining the scope of potential damages." Indeed, several courts have recognized that disclosure of sensitive financial information to an opponent's in-house counsel may be necessary for evaluating settlement. *See*, *e.g.*, *Shared Memory Graphics, LLC v. Apple, Inc.*, No. C-10-2475 VRW (EMC), 2010 WL 4704420, at *2 (N.D. Cal. Nov. 12, 2010) (finding that the protective order should permit in-house counsel access to sensitive sales and profit information so that in-house counsel could fully participate in settlement negotiations); *Vasudevan Software, Inc. v. International Business Machines*, No. C09-05897 RS (HRL), 2010 WL 3629830, at *2 (N.D. Cal. Sept. 14, 2010) ("[T]he Court is sensitive to the fact that in-house counsel to a party, in most circumstances, needs to have some access to the opposing party's confidential financial information to understand the potential damages at issue and thus make an informed decision with respect to any possible settlement of the lawsuit."). Here, given that Defendants seek damages against B&N for patent infringement, the sensitive financial information that will be needed for settlement purposes necessarily includes Defendants' license agreements. As B&N noted at oral argument, it is with these license agreements that a reasonable royalty rate, and hence Defendants' potential damages, will be determined.[]

---

[2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument.

[3] B&N's first proposed protective order also would have allowed two of Defendants' in-house counsel to have access to B&N's AEO material as well. B&N's Revised Proposed Protective Order, ECF No. 85-2 at 12, § 7.3(b).

C 11-02709 EMC (LB)
ORDER RE: 4/5/2012 JOINT LETTER

2

*Id*. at 8-9 (internal footnotes omitted).  Given this reasoning, as well as the court's determination that Mr. DeFelice and Mr. Feuer were not engaged in "competitive decisionmaking," the court decided that it made sense "to limit B&N's in-house attorneys' access to Defendants' relevant licensing agreements and to not allow access to the remainder of the [AEO-designated] items listed in B&N's proposed protective order." *Id*. at 7, 9.  The court then ordered the parties to meet and confer with the court's reasoning in mind and to submit a joint stipulated protective order.  *Id*. at 10.

    The parties never submitted such an order.  Instead, they filed another joint discovery letter with two new proposed protective orders.  03/14/2012 Joint Letter, ECF No. 90.  In light of the court's 2/23/2012 Order, Defendants' second proposed protective order added a confidentiality tier for "Highly-Confidential — License Agreements," and limited the license agreements to which the parties' in-house attorneys would have access to "fully executed agreement[s] (i) reflecting a license to one or more of the patents-in-suit, but excluding non-royalty bearing cross-licenses of multiple patents, or (ii) reflecting a license of patents for use by or in any of the accused products in this action."  Defendants' Second Proposed Protective Order, ECF No. 90-1, ¶ 2.7.  B&N's second proposed protective order, on the other hand, allowed the parties' in-house counsel access to a broad swath of  "license information" and "financial information related to the value of the patents-in-suit."  B&N's Second Proposed Protective Order, ECF No. 90-4, ¶ 2.5.  "License information" was defined to include, "by way of example, executed and draft license agreements, correspondence and presentations regarding licensing, information regarding licensing policies, and licensing plans and projections," and "financial information related to the value of the patents-in-suit" is defined to include, "by way of example, royalty reports, royalty projections, assessments of the value of the patents-in-suit, and financial data related to any products made or sold under the patents-in-suit or alleged to infringe the patents-in-suit."  *Id*.

    Neither of the two new proposed protective orders fully complied with court's 02/23/2012 Order.  3/26/2012 Order, ECF No. 93 at 5.  To determine whether the parties' in-house counsel should have access to drafts of the "relevant license agreements," the court needed to examine what license agreements would be relevant.  *Id*.  The court explained:

> "A patentee is entitled to 'damages adequate to compensate for the infringement,

but in no event less than a reasonable royalty.'" *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (quoting 35 U.S.C. § 284). "A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *Id*. (citing *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Minks v. Polaris Indus.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008)). Among the *Georgia-Pacific* factors are the following: "(1) [t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty"; and "(2) [t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." *Georgia-Pacific*, 318 F. Supp at 1120.

Based on these factors and applicable case law, the court believes that Defendants' second proposed protective order is a bit too limited. Defendants attempt to limit the discoverable documents to only executed licenses that resulted in royalty payments is too narrow. They argue that because "no court or jury could rely on mere drafts, or on licenses that, because of their cross-license/no-royalty structure, cannot inform the hypothetical license negotiation, there is no reason in-house counsel should have need to access this material." Joint Letter, ECF No. 90 at 2. This conflates the standard for admissibility of evidence at trial and the much broader standard for relevancy for discovery, and it is a too-narrow view of what in-house counsel needs access to (as described in the court's prior order). *See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.* 254 F.R.D. 568, 582-83 (N.D. Cal. 2008) (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, U.A., 657 F.2d 890, 903 (7th Cir. 1981) ("'Relevancy for discovery is flexible and has a broader meaning than admissibility at trial.'"). While cross-licenses may be different in structure than licenses that simply provide for royalty payments, both are relevant for discovery purposes and may lead to the discovery of admissible evidence. Moreover, the Federal Circuit has held that draft license agreements and proposals, depending on their comparability, may be relevant to determining a reasonable royalty. *See Unidisply S.A. v. Am. Elc. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (finding evidence of proposed license terms helpful for determining a reasonable royalty); *Sorenson v. Lexar Media, Inc.*, No. C-08-00095 JW (RS), 2008 WL 5383513, at *2 (N.D. Cal. Dec. 22, 2008) ("The drafts, for example, could lead to the discovery of relevant evidence on the issue of what value should be placed on the patents-in-suit. Even those drafts that did not lead to a fully executed licensing agreement could have relevance on the damages question of what constitutes a reasonable royalty."); *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94 , 100 (D.N.H. 1995) (Among the *Georgia-Pacific* factors "is the prior or existing royalties received by the patentee for the licensing of the patent in question. Related to this factor is evidence of prior offers to license by the patentee) (citing Donald S. Chisum, 5 Patents § 20.03[3] (1994)). [Footnote omitted.] Simply put, the parties' in-house counsel should have access to executed license agreements, and any drafts of them, that involve the patents-in-suit, regardless of whether they are cross-licenses or not.

*Id*. at 5-7. The court then ordered the parties to meet and confer once more and to submit a joint stipulated protective order. *Id*. at 7.

Again, the parties did not do so. Again, they filed a joint discovery dispute letter with competing proposed protective orders. 4/5/2012 Joint Letter, ECF No. 95; Defendants' Third Proposed Protective Order, ECF No. 95-1; B&N's Third Proposed Protective Order, ECF No. 95-5. The

parties still do not agree on what constitutes the "relevant license agreements" that the court previously ordered should be available to the parties' in-house attorneys. In short, B&N contends that the "relevant license agreements" include licenses (and their drafts) for Defendants' "WiFi, 3G, and multimedia patent portfolios." 4/5/2012 Joint Letter, ECF No. 95 at 3.[4] Defendants, on the other hand, contend that the "relevant license agreements" include only their licenses (and their drafts) for the patents-in-suit. *Id*. at 2.[4]

## II. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome,

---

[4] Under B&N's Third Proposed Protective Order, the "license agreements" accessible to the parties' in-house attorneys are "limited to any Disclosure or Discovery Material that constitutes (i) a license to one or more patents within LSI's WiFi, 3G, and/or multimedia patent portfolios, (ii) draft terms proposed to or by a prospective licensee for a license to one or more patents within LSI's WiFi, 3G, and/or multimedia patent portfolios, whether or not the proposed terms were included in a final executed license, (iii) a license of any patent for use by or in any of the accused products in this action, or (iv) draft terms proposed to or by a prospective licensee for a license to any patent for use by or in any of the accused products in this action, whether or not the proposed terms were included in a final executed license." B&N's Third Proposed Protective Order, ECF No. 95-5, § 2.7.

[4] Under Defendants' Third Proposed Protective Order, the "license agreements" accessible to the parties' in-house attorneys are "limited to any Disclosure or Discovery Material that constitutes (i) a license to one or more of the patents-in-suit, (ii) draft terms proposed to or by a prospective licensee for a license to one or more of the patents-in-suit, whether or not the proposed terms were included in a final executed license, (iii) a license of any patent related to WiFi, 3G, and/or multimedia technology for use by or in any of the accused products in this action, or (iv) draft terms proposed to or by a prospective licensee for a license to any patent related to WiFi, 3G, and/or multimedia technology for use by or in any of the accused products in this action, whether or not the proposed terms were included in a final executed license." Defendants' Third Proposed Protective Order, ECF No. 95-1, § 2.7.

C 11-02709 EMC (LB)
ORDER RE: 4/5/2012 JOINT LETTER
5

1  or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the
2  information by discovery in the action; or (iii) the burden or expense of the proposed discovery
3  outweighs its likely benefit, considering the needs of the case, the amount in controversy, the
4  parties' resources, the importance of the issues at stake in the action, and the importance of the
5  discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

In addition, upon a showing of "good cause," a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery by "requiring that trade secret or other confidential . . . commercial information not be revealed, or be revealed only in a specified way." Fed. R. Civ. P. 26(c); s*ee In re Violation of Rule 28(D)*, 635 F.3d 1352, 1357 (Fed. Cir. 2011). The party seeking a protective order has the burden of showing that the protection is warranted. *In re Violation of Rule 28(D)*, 635 F.3d at 1357. Generally, good cause requires the moving party to show that specific prejudice or harm will result if the protective order is not issued. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 826 (9th Cir. 2004). And, in this context, the courts administer a balancing test of the conflicting interests between the protection of Rule 26(c) of the Federal Rules of Civil Procedure and the broad mandate of the admissibility of information in discovery conferred by Rule 26(b)(1). *See*, *e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

### III. DISCUSSION

Defendants raise two main points in arguing for its more limited view of "relevant licensing agreements." First, Defendants note that the court stated in its 3/26/2012 Order that, "[s]imply put, the parties' in-house counsel should have access to executed license agreements, and any drafts of them, that involve the patents-in-suit, regardless of whether they are cross-licenses or not." 3/26/2012 Order, ECF No. 93 at 7. With this statement, the court did not specifically mean to limit "relevant license agreements" to only those that involve the patents-in-suit. The court made this statement when discussing language proposed in Defendants' Second Proposed Protective Order, which would have given the parties' in-house attorneys access to "fully executed agreement[s] (i) reflecting a license to one or more of the patents-in-suit, but excluding non-royalty bearing cross-licenses of multiple patents, or (ii) reflecting a license of patents for use by or in any of the

accused products in this action." Defendants' Second Proposed Protective Order, ECF No. 90-1, ¶ 2.7. Although it acknowledges the ambiguity, the court merely was making clear that Defendants' proposed language was insufficiently broad.

Second, Defendants contend that while the first and second *Georgia-Pacific* factors provide that relevant evidentiary facts used to determine a reasonable royalty include (1) "[t]he royalties received by the <u>patentee</u> [here, Defendants] for the licensing of the <u>patents in suit</u>, proving or tending to provide an establish royalty," and (2) "[t]he rates paid by the <u>licensee</u> [here, B&N] for the use of <u>other patents comparable to the patent in suit</u>," no *Georgia-Pacific* factors explicitly provide that royalties received by the <u>patentee</u> for the licensing of <u>other patents comparable to the patents-in-suit</u> are relevant. 4/5/2012 Joint Letter, ECF No. 95 at 2 (emphasis added); *see Georgia-Pacific*, 318 F. Supp at 1120.

In its previous order, the court explained that "[a] patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty.'" *Wordtech*, 609 F.3d at 1319 (quoting 35 U.S.C. § 284). The court also explained that "[a] reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)." *Id.* (citing *Lucent Techs.*, 580 F.3d at 1324; *Minks*, 546 F.3d at 1372). It is true that numerous courts, including the Federal Circuit, have relied on the fifteen *Georgia-Pacific* factors when analyzing reasonable royalties, but the court is not aware of any binding authority – and the parties have not cited any – holding that the these factors are exhaustive. In fact, at least one Federal Circuit case suggests otherwise. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003) ("Factors relevant in a reasonable royalty determination using this method <u>include</u> those set out in *Georgia-Pacific*.") (emphasis added). And B&N has cited two cases in which courts have considered the <u>patentee's</u> licenses for <u>comparable patents</u> in their reasonable royalty discussions. *See Lucent Tech., Inc. v. Microsoft Corp.*, No. 07-CV-2000 H(CAB), - - - F. Supp. 2d. - - - -, 2011 WL 5513225, at \*14-15 (S.D. Cal. Nov. 10, 2011); *Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*, No. C-03-1431 SBA (EDL), 224 F.R.D. 644, 653 (N.D. Cal. 2004).

In *Fresenius*, the court was guided by the broad mandate in favor of the relevance that is conferred by Rule 26(b)(1). *See Fresenius*, 224 F.R.D. at 653 ("[The licensee's] request for [the patentee's] licenses of comparable products is reasonably calculated to lead to admissible evidence."). That Rule provides that, subject to the limitations imposed by subsection (b)(2)(C), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information," it goes on, "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. This court is similarly guided by Rule 26. Here, the parties dispute whether some possibly-comparable license agreements are relevant and, thus, discoverable. Under Rule 26's broad mandate, the court believes that they are. Should B&N seek to enter into evidence any of Defendants' license agreements that are not for the patents-in-suit to establish a reasonable royalty, Defendants may challenge their admissibility at that time. For now, though, the court – and the parties' protective order – is concerned with discoverability.

The court also does not see the harm in allowing the parties' in-house counsel to have access to Defendants' licenses for their WiFi, 3G, and/or multimedia patent portfolios. These are the functionalities at issue in this case, and the court has already determined that B&N's two in-house attorneys are not engaged in competitive decisionmaking. Although Defendants state that their patent portfolios "include thousands of patents, a significant number of which likely relate to 'WiFi, 3G, and/or multimedia technology,'" they do not, at least at this time, argue that producing the licenses and draft licenses that relate to their WiFi, 3G, and/or multimedia technology patent portfolios would be unduly burdensome. 4/5/2012 Joint Letter, ECF No. 95 at 3. Given these licenses and draft licenses' relevance, and given Defendants' failure to show that harm would result from their inclusion here, the court will enter B&N's Third Proposed Protective Order.

## IV. CONCLUSION

Based on the foregoing, the court will enter B&N's Third Proposed Protective Order, ECF No. 95-5.

This disposes of ECF No. 95.

///

**IT IS SO ORDERED.**

Dated: May 2, 2012

_____
LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

C 11-02709 EMC (LB)
ORDER RE: 4/5/2012 JOINT LETTER