Pages 1 - 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

| | | |
|---|---|---|
| BARNES AND NOBLE, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | No. C 11-2709 EMC |
| | ) | |
| LSI CORPORATION, et al., | ) | |
| | ) | San Francisco, California |
| Defendant. | ) | Tuesday |
| | ) | June 19, 2012 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**:        Quinn Emanuel Urquhart & Sullivan
                50 California Street, 22nd Floor
                San Francisco, California 94111
           BY:  **DAVID EISEMAN, ESQUIRE**
                **ADAM BOTZENHART, ESQUIRE**

**For Defendant**:        Fenwick & West
                801 California Street
                Mountain View, California 94041-2008
           BY:  **CHARLENE MARIE MORROW, ESQUIRE**
                **RAVI RAGAVENDRA RANGANATH, ESQUIRE**

                Sidley Austin LLP
                1001 Page Mill Road, 1st Floor
                Palo Alto, California 94304
           BY:  **DIANE GABL, ESQUIRE**

**Reported By:**      *Katherine Powell Sullivan, CSR #5812*
             *Official Reporter - U.S. District Court*

**P R O C E E D I N G S**

**JUNE 19, 2012**                                    **11:00 A.M.**

**THE CLERK:** Calling Case C-11-2709, Barnes & Noble versus LSI.

Counsel, please come to the podium and state your name.

**MR. EISEMAN:** Good morning, Your Honor. David Eiseman and Adam Botzenhart from Quinn Emanuel on behalf of the Barnes & Noble plaintiffs.

**THE COURT:** All right. Thank you, Mr. Eiseman.

**MS. MORROW:** Good morning, Your Honor. Charlene Morrow from Fenwick and West. And with me in court today is Ravi Ranganath from Fenwick, as well as Diane Cabl from our co-counsel Sidley Austin.

**THE COURT:** All right. Welcome, everyone.

I guess I'm not sure I understand what the dispute is about, whether or not this agreement or promise to respond to the interrogatories by the 24th and whether that should be embodied in a stipulation or not. I'm not sure I understand what the beef is here.

**MS. MORROW:** Well, Your Honor, let me speak to that. I think it's just a question of fairness. We have a set deadline to provide our infringement contentions.

We were hoping to get Barnes & Noble to agree to a

similarly set deadline to provide their non-infringement contentions so we can both go into claim construction fully informed about the issues.

Barnes & Noble has indicated that they will attempt to get the contentions to us by the set date, but when we tried to reduce that to a stipulation that would form a part of the, you know, orders before the Court, they were reluctant to do that.

We obviously think that a date that is set by the Court is something that is much less likely to slip than a date that is imposed by one's self.  And so we would ask that the Court add that to the calendar dates in this case so that we have a disclosure of first our non-infringement -- our infringement contentions, then their non-infringement contentions and invalidity contentions.  And then we can all get ready for claim construction.

MR. EISEMAN:  Your Honor, our position is that, as Your Honor knows, the patent local rules provide that in our case a declaratory judgment of plaintiff has to provide invalidity contentions, but the patent local rules don't address non-infringement contentions.

We've told LSI we will provide our responses to interrogatories on non-infringement.  They've already brought this issue up to Magistrate Judge Beeler.  It was fully briefed, and she denied their requests.

And so we don't understand why we're even talking about it, at this point, since they could have objected to Magistrate Judge Beeler's order in the first place.

**THE COURT:**  Judge Beeler indicated -- and I think there's no disagreement -- that this is a reasonable course to -- even though not required by the local rules, it's a reasonable way to advance litigation and tee it up and get us moving towards claim construction.

**MR. EISEMAN:**  She did.

And then she went on to say that if -- if and when we fail to respond fully to the interrogatories, then LSI is free to raise the issue.  And that's where it should be left, Your Honor.

**THE COURT:**  The problem I have with that -- and I understand that.  The problem I have with that is that come the 24th of September, if for some reason you decide not to do it or there's a problem with it, then we go back into motion mode, and then, you know, on the 25th of October there's supposed to be an exchange of both terms and claim elements for construction.

And by November 15th -- it's just stuff is happening and it's moving forward.  And my concern and my experience with these cases is that once you have a glitch in something, throw something off, it often has implications for the rest of the schedule.

So I just don't see why we can't -- whether it's by stipulation or amendment to the scheduling order of this Court that we just clarify that.  Although I understand not necessarily required by the local rules, certainly not prohibited by the local rules.  It seems like in the end that, substantively, this is a reasonable thing to do.

MR. EISEMAN:  And then, Your Honor, would we come back to Your Honor or to Magistrate Judge Beeler, asking her to set a similar date for their invalidity contentions?  Is Your Honor going to order that, as well, to be part of the case management --

THE COURT:  Well, that hasn't been raised before me. I didn't know that was an issue.  But I'm in favor of making sure things happen in an orderly way and in a timely way.

MR. EISEMAN:  Would Your Honor ask LSI if they're willing to stipulate to dates certain to be part of the case management order for those similar times of contention responses from LSI?

MS. MORROW:  I think that that would be fair.  If we get their responses on non-infringement, we provide our responses on validity.

There are also a couple of subsidiary issues. There's their defense of prosecution history estoppel, which goes to whether claims were amended during prosecution in such a way as to bar the infringement claim.

And I believe we had spoken with the Court before about that being taken up as part of the claim construction schedule.  So we'd want that disclosure as well as the substantive response on why they think the patents don't read on the standard.

THE COURT:  Well, those are the four interrogatories, right?

MS. MORROW:  Yes, Your Honor.

THE COURT:  And what about the time frame then for your -- for your responses?

MS. MORROW:  They have, I believe, 60 days from our -- I believe -- and you can correct me if I'm wrong -- it was 60 days from our infringement contentions that you were going to be providing your responses.

If that's the case on invalidity, unless there's a startling amount of invalidity contentions, I would say the same time period would be appropriate.

MR. EISEMAN:  That's fine, Your Honor.

THE COURT:  Okay.  Why don't you all just do -- submit to me either a stipulation or proposed form of order, and we'll get both those, and we'll get that on track so we don't have to come back for more disputes.  That will help assure that we're on track and teeing this up for claim construction.

MS. MORROW:  Thank you, Your Honor.

**MR. EISEMAN:**  That you, Your Honor.

The only thing I would ask -- and perhaps Ms. Morrow and I can work together -- I just want to make sure that the 60 days will still give the parties, in particular our side, time to consider it as part of the joint claim construction process. So I haven't had a chance to go back and look at those dates.

**MS. MORROW:**  Let's confer about that.  I'm sure now we have direction, we should be able to work it out.

**MR. EISEMAN:**  Fair enough.

**THE COURT:**  All right.  Good.  Then I will expect, hopefully, a stip and order from you all memorializing what we just agreed to.

**MR. EISEMAN:**  Thank you, Your Honor.

**THE COURT:**  Then do we need -- oh, I do want to bring up the scheduling.  I want to alert you to our claim construction dates, which are in mid-March.

I do have right now on schedule a criminal trial, which obviously, for Speedy Trial Act issues, takes precedent. Now, 99 percent of the cases resolve.  But if this is that 1 percent case, what I'd like to do is have you pencil in kind of a plan B date so we don't slip too much time.

I'm pretty confident, you know, it will go, but it's a case which is scheduled to go from March 4th to the 21st, so it's a fairly long trial.

I do have dates in April -- April 29, 30, May 1, and

May 2.  If you could pencil those in as kind of a, like I say, contingency date, we'll hold those off and make sure that we don't slip in terms of too much time.

We can move the tutorial back a little bit before that, April 22 or so.  The 22nd and 23rd I also have available. So all those four dates we have available for tutorial/construction.

**MR. EISEMAN:**  That's fine, Your Honor.

**THE COURT:**  Okay.  When is the next time you think we should check in with each other?

Given the schedule, things are happening --

**MS. MORROW:**  I'm not sure we'll need to before the tutorial.

**THE COURT:**  Yeah.

**MR. EISEMAN:**  That's fine with Barnes & Noble, Your Honor.

**THE COURT:**  All right.  Then I won't schedule anything.  Why don't I -- well, we're set for a tutorial date, and we'll make that our next status conference date as well.

Right now it's scheduled for the 25th of February, right?

Yeah, if we need to change it, we'll let you know, and then we'll move the tutorial back to April.  But for now we'll keep the dates that we have because I think, in all likelihood, we'll be able to go.  And we'll just designate

February 25th as a status conference date as well.

THE CLERK:  That's at 2:30.

MR. EISEMAN:  Thank you very much.

MS. MORROW:  We had a couple of questions about how the Court wants to conduct the tutorial and claim construction, if the Court has time to permit those.

THE COURT:  Sure.

MS. MORROW:  The first one was just that we were planning on asking technical experts to present at the tutorial.  I'm assuming that's what the Court wanted.

THE COURT:  Uh-huh.

MS. MORROW:  And then we were wondering if we could have an instruction that the materials presented at the tutorial were things that would not be, you know, admissible or subject to cross later.  We'd be presenting some materials that probably aren't as polished as we would ultimately present to a jury.

THE COURT:  I assume that that would be the case.

MR. EISEMAN:  That's fine with Barnes & Noble, Your Honor.

THE COURT:  Okay.

MS. MORROW:  And then with regard to the claim construction briefing, we've had some judges indicate they want to see the claim construction briefing just on the intrinsic evidence about the patents, and others say they want to see

more information about the accused product so they understand what they're deciding.  And we wanted guidance on what the Court would prefer.

THE COURT:  Well, not having seen it, it's a little hard to know, but I -- that would be my preference, is the latter.  You know, some of the judges, couple of them asked for summary judgment, they get a full context, and I think to see -- to see it in context is helpful.  It would be helpful.  So I would prefer that.

MS. MORROW:  Thank you, Your Honor.

MR. EISEMAN:  And on the tutorial, Your Honor, is Your Honor's rule that you only want to hear from technical experts?  If we decided that we'd want to present through lawyers, is that also acceptable?

THE COURT:  I'm not adverse to that.  I just want to understand it.

If you can do a better job or supplement what an expert has to say, as long as it doesn't -- I don't want it to turn into argument.  That's the only concern I have, that it turns into a preview or mini version of a *Markman* hearing.

MR. EISEMAN:  Understood.

THE COURT:  Which lawyers sometimes tend to do.  But if you can restrain yourself -- I've had lawyers explain things more clearly than experts.  And, you know, that's fine with me.

MR. EISEMAN:  Thank you.

THE COURT:  All right.

MR. EISEMAN:  Yeah.

THE COURT:  Good.

MS. MORROW:  Thank you, Your Honor.

THE COURT:  Look forward to it.  Thank you.

(At 11:11 a.m. the proceedings were adjourned.)

- - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Monday, June 25, 2012

s/b Katherine Powell Sullivan
_____

Katherine Powell Sullivan, CSR #5812, RPR, CRR
U.S. Court Reporter