# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| BARNES AND NOBLE, INC., et al.,<br><br>               Plaintiffs,<br>    v.<br>LSI CORPORATION, et al.,<br><br>               Defendants.<br>_____/ | No. C 11-02709 EMC (LB)<br><br>**ORDER REGARDING THE PARTIES' JOINT DISCOVERY LETTER DATED NOVEMBER 19, 2012**<br><br>[Re: ECF No. 140] |

## INTRODUCTION

On November 19, 2012, the parties filed a ninth joint discovery dispute letter, which once again concerns the discoverability of certain draft licenses. *See* 11/19/2012 Joint Letter, ECF No. 140.[1] Upon consideration of the parties' arguments and applicable authority, the court rules as follows.[2]

## STATEMENT

Plaintiffs Barnes & Noble, Inc. and barnesandnoble.com LLC (collectively, "B&N") filed the instant action seeking a declaratory judgment of non-infringement and patent invalidity against defendants LSI Corporation and Agere Systems, Inc. (collectively, "Defendants"). Original Complaint, ECF No. 1. Defendants answered B&N's First Amended Complaint and brought

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[2] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument.

C 11-02709 EMC (LB)
ORDER RE: 11/19/2012 JOINT LETTER

counterclaims against B&N for patent infringement. Answer and Counterclaims, ECF No. 62.

The court previously issued several orders with respect to the terms of a protective order for this case. *See* 2/23/2012 Order, ECF No. 88; 3/26/2012 Order, ECF No. 93; 5/2/2012 Order, ECF No. 112. In doing so, the court addressed the relevance and discoverability of license agreements and draft license agreements. In its February 23, 2012 Order, the court explained that, "given that Defendants seek damages against B&N for patent infringement, the sensitive financial information that will be needed for settlement purposes necessarily includes Defendants' license agreements. As B&N noted at oral argument, it is with these license agreements that a reasonable royalty rate, and hence Defendants' potential damages, will be determined." 2/23/2012 Order, ECF No. 88 at 9 (footnote omitted). Thus, the court ordered the parties to submit a stipulated protective order that allows B&N's two in-house attorneys access to Defendants' relevant license agreements." *Id*.

Next, after the parties did not submit a stipulated protective order, the court, in its March 26, 2012 Order, ruled that the "relevant license agreements" included the "executed license agreements, and any drafts of them, that involve the patents-in-suit, regardless of whether they are cross-licenses or not." 3/26/2012 Order, ECF No. 93 at 7. In so ruling, the court explained that, on one hand, "Defendants attempt to limit the discoverable documents to only executed licenses that resulted in royalty payments is too narrow," but, on the other hand, "B&N's attempt to include 'correspondence and presentations regarding licensing, information regarding licensing policies, . . . licensing plans and projections,' 'royalty projections, assessments of the value of the patents-in-suit, and financial data related to any products made or sold under the patents-in-suit or alleged to infringe the patents-in-suit' within the court's 'relevant license agreements' language violates both the letter and the spirit of the court's prior order." *Id*. at 6, 7. The court again ordered the parties to submit a stipulated protective order that complied with the court's rulings. *Id*. at 7.

Then, after the parties again did not submit a stipulated protective order, the court ruled in its May 2, 2012 Order that the "relevant license agreements" also included Defendants' licenses and draft licenses "for their WiFi, 3G, and/or multimedia patent portfolios." 5/2/2012 Order, ECF No. 112 at 8. The court thus entered B&N's Third Proposed Protective Order, which incorporated this understanding of the term. *Id*. The court noted that Defendants did not, at least at that time, argue

1  that producing these licenses and draft licenses would be unduly burdensome. *Id*.

2  The court thought the dispute about what the "relevant license agreements" are and, thus, which
3  of Defendants' license agreements are discoverable, was finished until November 19, 2012, when
4  the parties filed their ninth discovery dispute letter. *See* 11/19/2012 Joint Letter, ECF No. 140.

**ANALYSIS**

6  Taking the court's prior orders together, the court has already determined that the following are
7  relevant to this action: Defendants' executed license agreements, and any drafts of them (regardless
8  of whether they are cross-licenses or not), that involve the patents-in-suit or Defendants' WiFi, 3G,
9  and/or multimedia patent portfolios. Nevertheless, Defendants now oppose producing drafts of
10 license agreements and related licensing communications to B&N because of "intervening" judicial
11 opinions. In the parties' letter, Defendants essentially asks the court (1) to reconsider its
12 determination in light of an opinion issued by the Federal Circuit and an opinion issued by Judge
13 Illston of this Court, and/or (2) to now consider their argument that producing the draft licenses is
14 unduly burdensome.

15 First, Defendants argue that the Federal Circuit's opinion in *In re MSTG*, 675 F.3d 1337 (Fed.
16 Cir. 2012) requires B&N to make a heightened showing to get draft licenses and licensing
17 communications. It does not. Defendants characterize *In re MSTG* as follows:

> Recent Federal Circuit authority establishes that draft licenses and licensing communications (collectively, "licensing negotiations") are not routinely discoverable. Instead, a party seeking licensing negotiations must make a "heightened, more particularized showing of relevance." *In re MSTG*, 675 F.3d 1337, 1347 (Fed. Cir. 2012) (explaining that the rule furthers "public policy goals" of promoting free flow of information and dispute resolution). Because B[&]N does not, and cannot, meet this heightened standard, [Defendants] seek[] a protective order prohibiting discovery of licensing negotiations requested by B[&]N's RFP 20.
>
> Under authority endorsed by the Federal Circuit in *MSTG*, to make this "heightened" showing of relevance, B[&]N must demonstrate (1) a special need for [Defendants'] confidential licensing material; (2) resulting unfairness to B[&]N from a lack of discovery; and (3) that B[&]N's need for the material outweighs the interest in maintaining confidentiality. *See id*. (noting that the public policy goals of promoting dispute resolution can be appropriately achieved by limiting the scope of discovery) (internal citations omitted).

27 11/19/2012 Joint Letter, ECF No. 140 at 1 (footnote omitted). But here is what *In re MSTG* actually
28 says, in relevant part, and at the pages cited by Defendants:

C 11-02709 EMC (LB)
ORDER RE: 11/19/2012 JOINT LETTER

3

> We note that other courts have imposed heightened standards for discovery in order to protect confidential settlement discussions. In the context of confidential mediation communications, the Second Circuit has held that because "confidentiality in [mediation] proceedings promotes the free flow of information that may result in the settlement of a dispute," a party seeking discovery of confidential communications must make a heightened showing "demonstrat[ing] (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *In re Teligent, Inc.*, 640 F.3d 53, 57–58 (2d Cir. 2011) (internal quotation mark omitted). Many district courts also require heightened showings for discovery of settlement negotiations. *See, e.g., Eisai Inc. v. Sanofi–Aventis U.S., LLC*, No. 08–4168, 2011 WL 5416334, at *8 (D.N.J. Nov. 7, 2011) (finding that party seeking discovery "failed to make a heightened, more particularized showing of relevance" (internal quotation mark omitted)); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 226–27 (D. Mass. 2003); *Young v. State Farm Mut. Auto. Ins. Co.*, 169 F.R.D. 72, 76 (S.D.W. Va. 1996); *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 866 F. Supp. 1560, 1576 (D.N.M. 1994). *But see Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 650–51 (N.D. Ill. 1994) (rejecting the approach of placing a burden upon the proponent of discovery to make some "particularized showing" of a likelihood that admissible evidence will be generated by discovery of the information). Because the issue is not before us, we reserve for another day the issue of what limits can appropriately be placed on discovery of settlement negotiations. But the existence of such authority, whatever its scope, strongly argues against the need for recognition of a privilege. In other words, the public policy goals argued to support a privilege can more appropriately be achieved by limiting the scope of discovery.
>
> Therefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege. *See In re Gen. Motors*, 594 F.2d at 1124 n.20.

*In re MSTG*, 675 F.3d at 1347-48. In short, the Federal Circuit did not hold that "a party seeking licensing negotiations must make a 'heightened, more particularized showing of relevance.'" Rather, the Federal Circuit mentioned that one appellate court employs such a standard when confidential mediation communications are sought. *Id.* at 1347. The opinion, then, does not change the court's prior reasoning about the relevance of Defendants' executed and draft license agreements, or the legal authority underlying that reasoning.

Second, Defendants argue that Judge Illston's June 5, 2012 decision in *Implicit Networks, Inc. v. Juniper Networks, Inc.*, which relies on *In re MSTG*, also prevents discovery of their draft licenses and licensing communications. *See Implicit Networks, Inc. v. Juniper Networks, Inc.*, No. C 10-04234 SI, slip op. at 2 (N.D. Cal. June 5, 2012). It does not, either. Defendants describe her order as follows:

> In applying *MSTG*, [Judge Illston] explained that documents relating to negotiations

>or settlements were not discoverable unless they had been placed "directly in dispute" by the party from whom discovery is sought. *See Implicit Networks, Inc. v. Juniper Networks, Inc.*, No. C 10-04234 SI, slip op. at 2 (N.D. Cal. June 5, 2012) ("Implicit I") (Illston, J.) (declining to compel discovery of licensing drafts and negotiations "in light of the special concerns surrounding the disclosure of settlement negotiation information).

11/19/2012 Joint Letter, ECF No. 140 at 1. As explained above, *In re MSTG* holds that "settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege"; it does not hold that license negotiations are not discoverable unless they are placed "directly in dispute" by a party. *See In re MSTG*, 675 F.3d at 1347-48. In addition, in making their arguments regarding whether the discoverability of settlement and negotiation, the parties in *Implicit Networks* only cited and discussed two cases (*In re MSTG*, and *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, Case No. C-05-3148 MMC (JCS), 2007 U.S. Dist. LEXIS 27437 (N.D. Cal. Mar. 30, 2007)), both of which focus on whether settlement and negotiation information is protected by a settlement negotiation privilege. *See Implicit Networks*, No. C 10-04234 SI, Joint Statement regrading Juniper's Motion to Compel Implicit to Provide Discovery regarding Patent Licensing and Alleged Embodiments, ECF No. 81 (May 22, 2012). The parties did not cite or discuss any of the other judicial decisions, cited by the parties in this case and discussed in the court's prior orders, that bear upon the relevance of draft license agreements and license negotiations. *See id*. Judge Illston's order also discussed only *In re MSTG* and *Matsushita*. *See Implicit Networks*, No. C 10-04234 SI, slip op. at 2 (N.D. Cal. June 5, 2012).

Third, Defendants argue that the burden of producing the draft licenses and licensing communications substantially outweighs any possible benefit to B&N.[3] The court is not persuaded. These documents and communications are relevant to the potential damages in this case, and B&N cannot gain access to these documents or communications in any other less burdensome way. In addition, while Defendants' initial projected costs of producing this discovery indeed are high, the court is confident that the parties can work together in good faith to narrow the scope of the search

---

[3] The court does not summarize Defendants' argument in much detail because this portion of the parties' letter has been filed under seal. *See* Order Granting Administrative Motion to File under Seal, ECF No. 139.

C 11-02709 EMC (LB)
ORDER RE: 11/19/2012 JOINT LETTER

5

and limit the custodians to those who are most likely to have responsive documents. *See Sorensen v. Lexas Media, Inc.*, No. C 08-0095 JW (RS), 2008 WL 5383513, at *2 (N.D. Cal. Dec. 22, 2008) ("While Sorensen must produce the requested documents, the parties are ordered to work together to minimize the burden on the producing party."). In fact, the court orders them to do so.

**CONCLUSION**

The new cases that LSI cites does not change what the court ordered previously: Defendants must disclose the agreements and the drafts in response to B&N's RFP No. 20.

To the extent that there are issues of burden, the parties ought to be able to work those out. The court sets a hearing for January 3, 2013 at 11 a.m. to discuss the joint letter filed on December 14, 2012. That hearing will provide an opportunity to discuss ways to address burden (but the parties should talk about it first).

If the date is inconvenient, the parties should arrange a different date by calling courtroom deputy Lashanda Scott at 415-522-3140.

This disposes of ECF No. 140.

**IT IS SO ORDERED.**

Dated: December 23, 2012

_____
LAUREL BEELER
United States Magistrate Judge