**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

| | |
|---|---|
| Barnes & Noble, Inc., and Barnesandnoble.com LLC, ) ) | |
| Plaintiffs, ) ) | |
| VS. ) ) | NO. C 11-02709 EMC |
| LSI Corporation and Agere Systems LLC, ) ) ) | |
| Defendants. ) ) | |

San Francisco, California
Thursday, February 21, 2013

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:          **(via CourtCall)**
                         QUINN, EMANUEL, URQUHART & SULLIVAN
                         50 California Street - 22nd Floor
                         San Francisco, California  94111
                    **BY:  CARL G. ANDERSON, ATTORNEY AT LAW
                         ADAM BOTZENHART, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:          Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                      Official Reporter

**APPEARANCES**:   (CONTINUED)

For Defendants:              **(via CourtCall)**
                             FENWICK & WEST LLP
                             Silicon Valley Center
                             801 California Street
                             Mountain View, California  94041
                      BY:   **CHARLENE M. MORROW, ATTORNEY AT LAW**

                             FENWICK & WEST LLP
                             555 California Street - 12th Floor
                             San Francisco, California  94104
                      BY:   **BRYAN A. KOHM, ATTORNEY AT LAW**

Thursday - February 21, 2013                          12:04 p.m.

THE CLERK:  Calling Civil Action C 11-2709, Barnes & Noble, Inc., versus LSI Corporation, et al.

Counsel, please state your appearances for the record?

MR. ANDERSON:  This is Carl Anderson of Quinn, Emanuel, Urquhart & Sullivan, for plaintiff Barnes & Noble, and with me is Adam Botzenhart.

THE COURT:  Okay.

MS. MORROW:  This is Charlene Morrow from the firm of Fenwick & West representing LSI and Agere, and with me is my colleague Brian Kohm.

THE COURT:  All right.  So hang on a second.  I'm just grabbing my envelope behind me.

Okay.  Sorry, you guys.  As you heard me say to everybody else, we had two add-ons that kind of threw the calendar off and you've been on CourtCall.

All right.  So let's -- one, the prior pending joint letter.  The two issues that I have here, one is the prior joint letter that you filed that I tried to get you guys on in late January.

Going forward, one of the things I'm trying to do, mostly because it helps me keep up with all the information flow, is I'm trying to get things on calendar faster.

So with a discovery letter dispute, keep that in mind about I'll try to remember to be more flexible in trying to

accommodate you if you have other scheduled scheduling issues, because we can often arrange a time where we can talk on the record, since it's really Judge Chen's case, consistent with your schedules and also consistent with my desire now to try to move discovery issues along realtime within a couple of days, and that didn't happen because I went out of town for two weeks.

So here we are. I reglanced at your letter. As far as the joint letter brief, you know, look, I understand the arguments -- and I'm just going to pull out my notes again.

I understand what the different arguments -- I understand your arguments you made, and I just -- from LSI's perspective, I understand that you're saying that Barnes & Noble says that they can answer it based on the patent history. Barnes & Noble says that its unenforceability defenses are still being explored by discovery. I just -- it feels to me like it's just premature now.

And just looking at the test, the *Convergent Technologies* test, I just couldn't see why, from your filing, why this kind of earlier -- compelling an earlier, more robust response in the context of -- it's not as if there's no response at all.

I understand that Judge Chen's was just in the context of a motion to strike, his observations about it, but still it was pretty robust as these things go at this point; and I just didn't understand now why it would really contribute

meaningfully to any of the issues at play now when it just seems like if Barnes & Noble can answer more robustly later.

So that was my big question.  I wanted to give you an opportunity to explain to me what I'm missing.

**MS. MORROW:**  Thank you, Your Honor.  This is Charlene Morrow.

We think that further responses from Barnes & Noble at this time would help clarify and narrow the scope of discovery.

As you know, LSI is asserting two patents from its wireless portfolio and two patents from its 3G portfolio, and we think it would be helpful to have a patent-by-patent delineation of which patents these defenses apply to and why for each patent so that LSI can take discovery on those contentions and be able to respond to them as well.

The standards activities that Barnes & Noble summarizes in its response took place over the course of many years.  There were literally hundreds of different technology proposals during those time frames, and the resulting standards have hundreds of pages of detailed specifications for various aspects of the technology.

And, so, we're concerned that without knowing more about what specifically Barnes & Noble believes gave rise to disclose the specific claims of the specific patents that are now in suit, we think it will be hard for LSI to get discovery to respond to those contentions.

And the reason that LSI needs to take discovery to respond to those contentions is that, at least certainly with regard to the IEEE and also with regard to most of the Espy allegations, the actions at issue took place while the IP at issue was owned by AT&T or Lucent; and LSI, which has acquired these patents through a series of very complicated corporate transactions, has very limited information available to it.

We think that this is like what the Court does under the patent local rules.  They recognize that, given that people take really complex positions in patent cases, it's often a good idea to require disclosures so that discovery can be taken in order to respond to them; and, so, under the patent local rules, we've disclosed our infringement contentions and the defendants have disclosed their invalidity contentions.

Now, the local rules don't address unenforceability defenses in patent cases because they're not raised, you know, as a matter of course; however, we think the same concern about otherwise creating unnecessary confusion in the preparation of a case for trial still exists; and, so, we would ask that Barnes & Noble be required to disclose the contentions well before the close of discovery so that LSI can take whatever discovery is necessary to rebut them.

We're concerned that if Barnes & Noble is permitted to wait until the end of their investigation of the claims, which seems to be what they're proposing, that they'll delay the

investigation till the last minute and try to play hide the ball with what their claims really are in the hopes of disadvantaging LSI in discovery.

So our concern is one of fairness in preparation for trial, and we think that Barnes & Noble should be required to at the very least provide its contentions after these two depositions that it's identified have been completed.

**THE COURT:** Okay. Briefly, Barnes & Noble?

**MR. ANDERSON:** Carl Anderson for plaintiff. If I may respond.

**THE COURT:** Briefly, because we need to get onto the Rogatory and we're stacked up today. So, I mean, you heard what I said already.

**MR. ANDERSON:** If you look at our responses, we do identify patent by patent. We give names and dates. This is what we have from the public record.

I don't disagree that there will be more discovery ongoing, and Barnes & Noble is not refusing to update its interrogatory responses as documents and testimony becomes available.

**THE COURT:** Okay. That's a good compromise. So after your two depositions, you ought to do that.

Okay. Perfect.

So just give me one second because I want to switch to the other document.

(Pause in proceedings.)

**THE COURT:**  Sorry.  I've got to write one thing down.

(Pause in proceedings.)

**THE COURT:**  Okay.  So turning to the Letters Rogatory issue, let me just quickly tell you my thoughts.  It seems like -- it seems a lot of it's an easy fix.  Highly relevant can be relevant.  I don't really feel like doing a word-by-word scrivetting; but with LSI's, and I think maybe Barnes & Noble said this in its response, I don't think you necessarily had any enormous concerns.

You don't need to over -- there are easy ways of fixing it.  I could probably kick out a quick little order saying, "This could be changed to this.  This could be changed to this. This could be changed to this," and that kind of takes care of what I'm going to call more of the scrivetting issues.

As to the -- which are -- you know, we can avoid overcategorization, because "relevant" is as good as "highly relevant," "important" is a strong word that's different than "highly relevant."  So that was that issue.

The second issue about the depositions and the argument about how they're not going to have -- about oral examinations and the stenographer, I guess I just -- I've never had any -- in fact, a stenographer was allowed.  That's part of the request; and I, personally, in all the overseas depositions that I did, even when the procedures were different, it seemed

that there was compliance with the requested procedures because, after all, evidence is being sought for use in American courts.

And, again, you tell me if I'm missing something enormous, but it just -- if there's an issue, they'll raise it; and my guess is they won't, and they've already permitted stenographers already.

So I -- plus Barnes & Noble is only asking -- its request is specifically limited to something to the extent allowed by Dutch law, or whatever the magic words are.

So I just didn't see that as a big deal that we ought to get overly worried about, because I just think practically it's going to be fine, and that's been my personal experience in overseas depositions pursuant to Letters Rogatory or Mutual Legal Assistance Treaties.

As to the overbreadth issue -- this is what I really wanted to talk with you about, unless you really wanted to talk about those other two things -- when I looked at Request 18 and Depo Topic 22, it seemed that that was -- that made sense as a narrowing of the request.

At the same time, one of the problems with -- and I understand the sort of relevance arguments that LSI is making, at the same time what ends up happening when you do depositions -- sorry, we're running 15 minutes behind so, thanks.  My next case is sitting here cooling its heels for me.

At the same time, just as a very, very practical matter, when you're doing depositions, when you overly constrain in your request what you're asking for, it ends up hand-tying in a way that sometimes isn't very effective once you get there.

And, so, I just sort of had that practical reaction to the situation even as I didn't think that LSI had a bad argument about narrowing Request 18 and Depo Topic 22.

Okay.  So that was the main thing I wanted to talk about.

So, LSI, why don't you tell me what you think about that.

There's just sort of a practical way these things go.  You have a limited amount of time.  You set up your depositions.  You make your normal objections and it just seems like these things tend to sort themselves out fine even, as I do -- I didn't think it was a bad argument at all that you made about what I'm calling overbreadth.

**MR. KOHM:**  Hi, Your Honor.  This is Brian Kohm.

As far as the overbreadth goes, it should -- the only issues that have been raised by Barnes & Noble with respect to these witnesses relate to their conduct with the IEEE.

**THE COURT:**  No, that's why I said I got your argument on the merits.  I thought it was a fine argument on the merits.  I just wondered, as a practical matter, whether sometimes the constraints just end up crippling the utility of the deposition process for everybody once you're there.

**MR. KOHM:**  Your Honor, our focus is really just trying

to get the Court's request to comply with the Dutch rules.  We do not want to have the Court be in a position where it was asking the Dutch court to overreach to address issues that were not relevant to this case.

THE COURT:  Okay.

MR. KOHM:  I fully appreciate your position on practicality; but, you know, as the Dutch court requires, that the topics and requests be relevant to the case, we just felt that it was inappropriate for the Court to, on the face of the request, to be seeking materials that did not meet that standard of relevance to the present case.

THE COURT:  Well, so from Barnes -- so from --

MR. ANDERSON:  From Barnes & Noble's perspective, Your Honor --

THE COURT:  Yes.

MR. ANDERSON:  -- I mean, it is a practical issue. We're just trying to give proper notice of what we will ask about.

It's true the primary concern is the IEEE, and we'll ask about that; but I want -- I would like to draw your attention to the fact that in the briefing on the other letter, LSI was talking about the obligations to disclose at a different body, JEDC.  And I don't have any reason to think that will come up in Mr. Diepstraten's deposition; but if he has knowledge about that, I will need to explore it.

THE COURT: Okay. All right. Well --

MR. ANDERSON: So that's the reasoning behind our topic.

THE COURT: Okay. All right. Good. So I'll think about it and I'll kick out some kind of order today.

Probably what I'm going to do, from Barnes & Noble's perspective, is to send it back to you to do a little bit of reworking of the Letter Rogatory request as I've described. I'll think about this issue.

So the problem I was having is, you know, relevance and the difficulties of assessing that in a vacuum, even though I fully appreciated LSI's argument, which is a fair one, that it more really is about the IEEE and the '867 and '958 patents.

All right. Let me just think about the practicalities a little bit. I'll issue some sort of short little order with some directives about the resubmission; but then when you resubmit it, I'll process it expeditiously.

MR. KOHM: Your Honor, this is Brian Kohm. If I could raise one more issue.

THE COURT: Okay.

MR. KOHM: One other issue for LSI is that, for the matter of fairness, if this is going to proceed, we would like the opportunity also to attend and ask questions as well; and I believe that the way the current request is phrased, it would authorize only Barnes & Noble's counsel to ask questions. And,

so, what we would ask is that the request be updated to authorize us and that the parties equally allocate time to do so.

**THE COURT:**  And, Barnes & Noble, you don't object to that; right?

**MR. ANDERSON:**  We don't, Your Honor.  This is the first -- I mean, you know, we filed this and we didn't know if they were going to oppose it or not.

**THE COURT:**  Okay.

**MR. ANDERSON:**  If we want to do a joint request so that they can ask questions as well, we will not oppose them asking questions.

**THE COURT:**  Okay.  That takes care of it.  Perfect.

Well, I'll issue just a short little order; but if you're doing a joint request, that will take care of some magic words, but don't get overly consumed, either of you, with modifying it overly.

So, from LSI's perspective, if what you want is participation and you think that can be done as part of Barnes & Noble's request so you don't have to overly scriven to get on board with everything that they're saying, that might be a more practical approach; and then my order will clarify that Barnes & Noble should, you know, omit some of those words that are maybe overly argumentative addressing issues that are more easily characterized as relevance and whatever.

So I'll put that in my order, too, because you guys want to get moving along on this process and not get bogged down with the back and forth.  Okay.  So I'll set up a process for that.

Thank you very much.

**MS. MORROW:**  Thank you, Your Honor.

**MR. ANDERSON:**  Thank you, Your Honor.

**MR. KOHM:**  Thank you, Your Honor.

(Proceedings adjourned at 12:21 p.m.)

- oOo -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Monday, February 25, 2013




_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR
U.S. Court Reporter