**Pages 1 - 23**

            UNITED STATES DISTRICT COURT

         NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

BARNES & NOBLE, INC., and        )
BARNESANDNOBLE.COM LLC,          )
                                 )
          Plaintiffs,            )
                                 )
   VS.                           )      NO. C 11-02709 EMC
                                 )
LSI CORPORATION AND AGERE        )
SYSTEMS LLC,                     )
                                 )
          Defendants.            )
                                 )

                         San Francisco, California
                         Thursday, April 11, 2013

              **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    1299 Pennsylvania Avenue NW - Suite 825
                    Washington, D.C.  20004
               BY:  **DAVID EISEMAN, ATTORNEY AT LAW**

                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    50 California Street - 22nd Floor
                    San Francisco, California  94111
               BY:  **ADAM BOTZENHART, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                    Official Reporter

**APPEARANCES**:   (CONTINUED)

For Defendants:

FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California   94041
BY:   **VIRGINIA K. DEMARCHI, ATTORNEY AT LAW**

SIDLEY AUSTIN LLP
1001 Page Mill Road
Building 1
Palo Alto, California   94304
BY:   **DIANE GABL, ATTORNEY AT LAW**

Thursday - April 11, 2013                                    10:35 a.m.

**P R O C E E D I N G S**

          **THE CLERK:**  Calling case C 11-2709, Barnes & Noble versus LSI.

     Counsel, please come to the podium and state your name for the record.

          **MR. EISEMAN:**  Good morning, Your Honor.  David Eiseman and Adam Botzenhart for Quinn Emanuel on behalf of Barnes & Noble.

          **THE COURT:**  All right.  Good morning.

          **MS. DeMARCHI:**  Good morning, Your Honor.  Virginia DeMarchi of Fenwick & West representing defendants LSI and Agere, and with me is cocounsel Diane Gabl of Sidley Austin.

          **THE COURT:**  All right.  Good morning.

     So I see that you did have a mediation before Judge Michel but no resolution.  Are there any further plans, any -- what's -- any further discussions about further ADR efforts?

          **MR. EISEMAN:**  I think, Your Honor, that Judge Michel offered to continue to help the parties; and I think that at least from Barnes & Noble's perspective it's going to take claim construction to probably get the parties back on track, although there's been a new development.

     I don't know if Your Honor saw that LSI has filed a motion for leave to amend its counterclaims to add five new patents to the case; and, so, I don't know how that's going to all play

out.  They filed that last evening.

THE COURT:  I think there was some allusion to that possibility.  I haven't reviewed that.

MS. DeMARCHI:  For LSI's part, Your Honor, there are no current plans that we're aware of for further settlement discussions at this time.

THE COURT:  Do you share the view that after claims construction might be the next occasion to have this discussion?

MS. DeMARCHI:  That may well be, Your Honor.

THE COURT:  There's also -- you seem to be at some loggerheads with respect to amendment, needed amendment, with respect to infringement contentions and timing of that with respect to further discovery and exchange of -- or obtaining more additional source code information.

And I know that Judge Beeler is the magistrate judge in this case.  Have you sat down with her and actually had like a discovery conference to coordinate, for instance -- I mean, if the position is, "We don't want to amend to give more specific contentions until we have additional source code information," then I hear, "Well, you already have source code information for many of these," have you sat down with her and worked out a schedule or sequencing?

MS. DeMARCHI:  Your Honor, if I may, we have actually been to Judge Beeler already on the question of source code

production, and that dispute was alluded to in the Joint Case Management Conference Statement that we submitted.

There was an order in September; and since then there have been exchange of correspondence, at least from LSI's side, identifying the specific code modules we're still missing.

And, as we understand Barnes & Noble's position from the statements they've made to us and from the statements they've included in the claim construction statement, they are still examining our request and are willing to meet and confer with us further on that, and we fully expect that we will get additional code.

We would like that to be promptly so that we can complete the amendments to the infringement contentions, which we understand both Barnes & Noble wishes and we wish to make as well.

And, so, as soon as we get the code, we can have an opportunity to review it, and then we can make those amendments.

**THE COURT:** All right. But the codes that you've gotten so far, is there any reason why you can't give at least a partial amendment with respect to those claims that are now informed by that source code?

**MS. DeMARCHI:** We could do a piecemeal amendment, but we don't think that would really be a practical or appropriate approach here.

These are lengthy charts in the first place.  They contain a lot of detail already.  They include third-party source code citations.  We think the better course would be to have Barnes & Noble complete its source code, and then we can provide our amended contentions on a rolling basis as our experts have an opportunity to review that code and make the identifications that have been requested and that we wish to make as well.

THE COURT:  What's your view?

MR. EISEMAN:  Well, there are two issues, perhaps three, Your Honor.  First of all, Ms. DeMarchi alluded to the fact that we were ordered to produce source code.  It's our position that we have produced all the source code that Judge Beeler ordered us to produce.

They have since then -- they, LSI -- have made additional requests for additional source code.  That's what we're still meeting and conferring about.  So I don't want to leave the impression that we haven't complied with Judge Beeler's order, because it is our strong position that we have.  That's number one.

Number two is, what we were asking them to do was to amend their infringement contentions with respect to source code that they've had since even before this case was filed, because much of it's open source source code, where in their original infringement contentions they cited to various directories of

source code but gave us no pinpoint citations to the actual parts of the code that they claim supported their position.

And, so, that's what we've been complaining about, and they should have been able to do that in their very first infringement contentions.

**THE COURT:** It's their contention that they don't want to do it piecemeal.

**MR. EISEMAN:** Well, Your Honor, they should have done it the first time around. And, so, the fact that they're asking for more source code doesn't change their additional obligations.

And then I guess the third issue, Your Honor, is this motion for leave to amend that they filed last night where they are now adding five new patents; and how -- you know, we haven't had a chance to fully analyze that motion or discuss it with our client, but that's going to impact the schedule in the case as well.

**THE COURT:** All right. Well, let me ask you on your first point with respect to ongoing discussions about the additional source codes that you feel are beyond what Judge Beeler had ordered, how long will it take you to resolve that question?

**MR. EISEMAN:** I think within the next couple of weeks we can resolve that, Your Honor.

**THE COURT:** Okay. You don't think you'll need

Judge Beeler's help in that regard?

MR. EISEMAN:  We're hopeful that we won't.

THE COURT:  So then that raises the larger question, I guess.  What's the impact and what is this going to do to the scheduling if five new patents are allowed to be amended into this case?

MS. DeMARCHI:  So let me address the contentions and the amendments to the Complaint separately, if I may.

With respect to the contentions and the amendments that we are discussing at the present time about the existing patents in the case, there should be no change to the existing claim construction schedule, which is as far as the schedule extends at this point is through claim construction hearing.

As to the five new patents that we propose to add to the Complaint, which I should say, although I realize the Court may not have had an opportunity to see our pleading, they are based on -- they are claims directed to products that are currently at issue in this case.  So they're the same products that are at issue already.

And we believe that it would be efficient and appropriate for all of the patent infringement claims relating to products that are currently at issue in this case to be resolved in a single proceeding.  We think that could be accomplished by having the new patents proceed with the appropriate disclosures under the patent local rules and claim construction exchange,

and that whole proceeding could happen in parallel with the Court's effort on the existing case.

And because we do not have a discovery cut-off at the present time and because we expect that the discovery will be substantially overlapping as between claims addressed to the new patents and claims already at issue in the case because, as I said before, it's the same products at issue, we don't believe that there will be a substantially -- a substantial addition to the schedule that may ultimately be in place for the close of discovery and expert reports.

In sum, Your Honor, I think that we can catch up with respect to the new patent claims if they are allowed --

THE COURT:  So you're just getting obviously a completely new second round of claim construction?

MS. DeMARCHI:  There would need to be claim construction proceedings addressed to these same patents.  They do --

THE COURT:  And given the pace at which we've been proceeding, you think that can be done realistically when?

MS. DeMARCHI:  So, Your Honor, I think, with due respect, now that we know what the products are, we have the products already at issue in the existing case, we have this effort to collect source code, we think there will be a relatively modest additional discovery burden placed on both parties as a result of the addition of these new patent claims.

And, so, the length of time that we've experienced so far in this case will not be replicated if the amendments are permitted.  There will be a shorter period of time required to accomplish these other tasks.

We have not proposed a formal schedule, but we'd be happy to do that for what the case schedule would look like if we were to add these patent claims in at the present time; but I think what would make the most sense is to proceed with the claim construction schedule we currently have on the five patents that are at issue now, and then have proceed in parallel a disclosure and claim construction schedule as to the additional five patents.

We have, of course, not had an opportunity to discuss this with Barnes & Noble yet, nor have they had an opportunity to --

THE COURT:  All right.  Well, we're now getting almost into the merits of the motion, and I don't want to -- not even having read it, I'm not going to drill down at this point.

MR. EISEMAN:  And as I said, Your Honor, we haven't even had a chance to consult with our client.

But it does lead to another point, which is, with respect to the five patents already in this case, LSI is asserting 123 patent claims, and now we're going to add five new patents or they've asked to add five new patents.

And, so, I think realistically we're all going to have to step back and try and figure out, if you allow them to add the

new patents, what that does to the overall schedule.

**THE COURT:**  Well, all right.  So I'm not going to address that motion now.  We've already got enough stuff on our plate; and, obviously, even without the amendment of these five new patents, 125 claims, I mean, realistically we're not going to trial on 125 claims.

**MS. DeMARCHI:**  Certainly.

**THE COURT:**  So you're going to have to do something.

**MS. DeMARCHI:**  Yes, Your Honor, but the time to do something about that is not before claim construction.  It's after.  And if I can be heard on that point, this issue was, I think, brought at issue in the statement that we submitted.

The issue in this case is how many terms the Court is required to construe at the present time, not how many claims those terms may impact.

And as the Court may appreciate from reviewing the joint claim construction statement, there are 10 terms that the parties have agreed should be given priority for construction.  We've agreed on 11 terms or phrases that can be construed.  We've agreed on those constructions.  And then the parties have additionally proposed some additional terms they think are most significant.

And with one exception, those additional claim terms, two for Barnes & Noble and four for LSI, are terms that appear in claims the Court will already be having claim construction on.

So, for example, there's a term that is already on the top 10 list for Claim 1 of the '552 patent, and Barnes & Noble proposes yet an additional term in that same claim, in that same patent, to be construed in addition to the 10.

So, in essence, Your Honor, the Court is being asked to construe 16 total claim terms across these five patents. That's an average of three per patent; not, we think, excessive given the scope of this case. And we have, as Your Honor will appreciate, reduced the number of patents at issue over time through discovery down to the five that are asserted now.

So we think that at this point the claim terms that need to be construed are those that are most important to the questions of infringement and invalidity; and to require LSI to reduce its asserted claims now before we have the benefit of the Court's construction is really premature. There's not been any --

THE COURT: Well, I'm not intending to do that right now.

MS. DeMARCHI: Yes, Your Honor.

THE COURT: I'm just indicating that at the end of the day, we're not going to try 125 claims.

MS. DeMARCHI: LSI agrees with that.

THE COURT: Okay. Well, let me ask you about the scope of the claim construction hearing, the number of terms.

Term number 10 is a half page long, which is broken up --

looking at your Appendix B -- and, to be frank, I didn't study this carefully but enough to realize there wasn't an easy way to access exactly how many terms within this cluster of terms just term 10 involves.

It appears that there are terms within terms, which is not unusual, but a lot of terms within terms. I couldn't tell, for instance, whether there's one key phrase in here that's critical because your Appendix B is 82 pages long.

**MS. DeMARCHI:** Yes. Your Honor, if I may address that.

The parties did, in putting together this list, agree that with respect to the listings of the 10 terms and -- claim terms and phrases, that there is a single dispute as to each group that they believe is the dispute that needs to be resolved in the claim construction.

**THE COURT:** All right. Maybe just as a for instance you can look at term 10 and tell me where that is. What is the single dispute that's critical?

**MS. DeMARCHI:** I'm sorry that I don't think I could articulate that off the top of my head, Your Honor, but I believe there is one for each of these phraseology -- the phrases that have been included here. The time stamp having a value M, there are different formulations of that concept --

**THE COURT:** Yes.

**MS. DeMARCHI:** -- across many claim terms, but there

is only one dispute as to meaning.

So my apologies that I can't do that justice today, but I do believe the parties are in agreement on this point as they recited in their Joint Claim Construction Statement at page 3.

So we do think our 10 --

**THE COURT:**  Looking at this Appendix B I couldn't discern that because it looks like there are lots of things -- lots of phrases within phrases.

**MR. EISEMAN:**  And, Your Honor, with respect to number 10, our position is that those various claim elements relate generally to the use of a timer.

We grouped them in an effort to try to reach an agreement with LSI to present a uniform position to the Court, but this is a good example.  The '867 patent currently has 60 asserted claims; and if Your Honor were to order LSI to reduce the number with respect to the '867 patent, it's very likely that number 10 would be reduced by quite a bit and the Court wouldn't have to address all these other claims.

**THE COURT:**  But do you agree or disagree that Claim 10, somewhere in here there's a critical phrase or clause that needs to be construed that would run throughout 10?

**MR. EISEMAN:**  I think our position is not quite that there's one particular phrase; that, in fact, they're grouped because we're talking about generally the same subject matter, which is use of the time stamp --

**MS. DeMARCHI:**  Your Honor, if I --

**MR. EISEMAN:**  -- or use of time.

**MS. DeMARCHI:**  I'm sorry to interrupt.

Your Honor, if I may, on page 3, it states:  (reading)

"Where the parties have listed groups of claim terms, the parties believe there is a single dispute that will resolve construction of the grouped claim terms."

That's the position that Barnes & Noble and LSI agreed on when we submitted this joint claim construction statement.  So it is news to us if Barnes & Noble has a different view of that.

**THE COURT:**  Well, I read that and -- which is fine, which is good, but just when looking at it, it's not like you all highlighted --

**MS. DeMARCHI:**  We did not.

**THE COURT:**  -- and said the phrase is time stamp having a value M is the critical word, or is it transmitter timer, or is it, you know, one of these other things, time stamp having value M for synchronizing is key, synchronizing a receiver.  I don't know where amongst these half page --

**MS. DeMARCHI:**  My apologies, Your Honor, but all I can say is that I do believe that our briefs will make that abundantly clear on what the single issue is.

**THE COURT:**  All right.  Good.  I'll remember that.

Well, it seems to me that if you feel that these six

additional terms are critical, and they may be critical in terms of both ADR as well as moving forward on these five, and with the representation that there are, with respect to those first 10, a single dispute that's critical that you're going to ask the Court to help you with, that's something that's worth the effort and I will do.

MS. DeMARCHI:  Thank you, Your Honor.

THE COURT:  What I didn't want to do is say, "Well, within Claim 10, there's actually about 15 subclaims or subterms, phrases, clauses, et cetera, that need to be construed," and then we're actually talking about 40 or something.  That would be a problem.

MS. DeMARCHI:  We understand, Your Honor.

MR. EISEMAN:  Your Honor, that, I guess, leads to another question that we were going to ask of Your Honor, which is, the 25-page limit for opening briefs and responsive briefs, does Your Honor have a view about whether that's going to apply here or can there be some leeway?

THE COURT:  Well, you know, if we're speaking in earnest of having resolved sort of 16 disputes, you know, we can exceed that by a bit, but I don't see this as a 50-page -- you know, if you want to go 30 pages or something, I would think that's enough, unless there's something -- I mean, it's hard for me to make that judgment because I don't know how much you have to explain.  I mean, you've already indicated the

degree of supportive evidence, both extrinsic and intrinsic evidence. I assume some of that may overlap and kind of be replicated in certain terms, but I don't know.

What are you asking for?

MR. EISEMAN: I'm not asking. I just wanted guidance from the Court.

MS. DeMARCHI: Your Honor, we were under the impression that because it's a claim construction brief and not a motion, the Court didn't have the 25-page limit. We, of course, are not planning to submit 50 pages. We agree that would be too much, but we also are happy to comply with whatever guidance the Court gives us as to its expectations.

THE COURT: You know, I'm not going to be a stickler on that. You know, if you want to do 30 pages or slightly in excess of 30 pages, I mean, it's not a big deal. I'll say 35 pages and that should give you plenty.

MR. EISEMAN: And for the reply and surreply, Your Honor?

THE COURT: Well, 35, 35, and 20; how's that?

MR. EISEMAN: That's perfect. Thank you.

THE COURT: Maintain that ratio of the threaded key.

And with respect to live testimony, expert witness testimony, I mean, you know, if it's relevant and you feel that it is necessary, I'm not at this point prepared to preclude that. You may -- I may get a better sense once I read the

papers, but I'm not going to say no at the outset.

MS. DeMARCHI:  At this point, Your Honor, I believe that LSI is planning to submit expert declarations but not to have an expert witness testify at the claim construction hearing.

THE COURT:  And that might be enough.

MR. EISEMAN:  And that's our position as well, and I think it's the position the parties presented to Your Honor back in the original Case Management Statement; and if we could just have that be the way we're proceeding, that would be perfect.

THE COURT:  I think why don't we start with that as a presumption.  If as it develops and in the briefing it appears that there's some nuances and issues or testimony that are contested from which it might be beneficial to have an evidentiary hearing, we can talk about that as we -- after I've had a chance to look at the briefs.  But I'm assuming, unless you point out a reason why we need live testimony, that that's not necessary, but I'm not necessarily foreclosing that.  And after reading it, I might want to ask.

MR. EISEMAN:  Understood, Your Honor.

THE COURT:  In many ways a tutorial is probably more important than an evidentiary hearing at the claim construction.

So in terms of getting back to our first issue, then, if

you're going to -- if you think you can resolve this issue of getting the source code question handled in the next couple of weeks, I'd like to just meet and confer and figure out a time line.  Hopefully if that gets done in two weeks, how long will it take you to then file amended contentions that have the pinpoint cites and that sort of thing?

MS. DeMARCHI:  It is somewhat difficult to say until we have the code in hand and have our experts lined up.  There is some scheduling.  As you can appreciate, we have to come in person to the cite that Barnes & Noble has designated and arrange that with experts who are out of town.  So if we have advance notice about when the code will be available, we can certainly expedite that.

We have already provided an amended infringement chart for one of the patents that is currently at issue.  So, you know, it can be a couple of weeks.  It might be longer, but I do think that we would expect to move on this very promptly.  It's just difficult for me to say without knowing our expert's availability on a particular date or week.

MR. EISEMAN:  And, Your Honor, just to be clear, what I meant was that we think we can get back to LSI and respond to their request within two weeks.  Because having not analyzed their request with our client, I'm not sitting here saying that we are producing everything they've requested.  So it's possible there could be a dispute down the road, but my point

was that we would get back with them within two weeks.

**THE COURT:**  Let me ask whether the infringement contentions chart has any material impact on the ability to commence briefing, which starts May 10th, on the claim construction.

**MS. DeMARCHI:**  We don't believe it does, Your Honor.

And I should mention that the bulk of the requests that we made for additional code were made in January of this year; and, so, we still don't have a substantive response on that request from Barnes & Noble.

So we can move expeditiously as soon as we have the code, and we plan to do so; but nothing about this dispute, we believe, should hold up the claim construction proceeding.

**THE COURT:**  All right.

**MR. EISEMAN:**  We agree with that, Your Honor.

**THE COURT:**  Okay.  Well, you know, I'm hoping that you can resolve the source code.  My desire is that you all resolve the additional source code provision dispute quickly, that that would put LSI in a position to amend its charts quickly.  On the other hand, relatively quickly, not months and months down the road but, you know, within a reasonable time, weeks thereafter.

If that doesn't happen, then I think what you call piecemeal provision of infringement contentions should be done because there's no reason to withhold -- you know, if you can

do it all -- in other words, if you can do it all within the next couple of months, that's not going to upset any schedule because it's going to take some time to get through claim construction and everything else.

On the other hand, if this is going to take longer than that, then I think that the infringement, the amended infringement contentions should be done in phases.

**MR. EISEMAN:** Your Honor, why can't they amend now with respect to their original contentions from July that have nothing to do with their request for additional source code? It doesn't seem unreasonable that they should have met their obligations to begin with and now we're almost nine months later.

**MS. DeMARCHI:** Your Honor, first of all, we don't think our claim charts are deficient in the first place. We have cited to things where there are modules and missing code within the modules. We need the code in order to complete the amended contentions, otherwise it will, indeed, be piecemeal. We'll have to do this again. It requires us to use our experts each time we get additional code, and it's just completely burdensome and inefficient to have to operate in this way.

We've identified the pieces that are missing. We usually get some pieces of code and then from that we can tell there are pieces missing. That's what's happened in the past.

We need to be able to do this completely. We have

provided contentions that are sufficiently specific to satisfy the local rules, and we certainly dispute the characterization that the contentions as they exist now are inadequate.

We desire to cite the specific code modules and we desire, most importantly, to have the code.  That's what we need in order to make our case.

And there's no question, though, that Barnes & Noble has the notice that it needs certainly to proceed with claim construction.

**THE COURT:**  All right.  I'm going to order you to have a discovery conference with Judge Beeler to discuss exactly what we're talking about now, but to convey to her that if this is going to be, it looks like, an extended and prolonged effort beyond weeks, we're talking about months, then it is my preference, despite the problem potential piecemeal, is to get this process going because it has been pending for a long time.

On the other hand, if it can be wrapped up in the next, you know, six weeks, eight weeks, something like that, then I don't -- then it makes sense to just do it all at once; but without -- you know, she has the familiarity with what you all have done so far, and this will also get her ready in terms of any potential dispute you might have over source codes.  I'd like her to referee and make sure that we're on some kind of schedule to get this thing done.

**MR. EISEMAN:**  Thank you, Your Honor.

MS. DeMARCHI:  So just to understand, is it the Court's desire that we have Magistrate Beeler involved immediately or only after the parties have discussed?

THE COURT:  I think she should get involved now and start talking about a schedule.  We may not be able to fill in all the blanks until we know more in two weeks; so maybe, you know, it makes sense to see her in two weeks or so after you've got a response.  But within the next couple of weeks or so I think you should schedule a settlement -- a scheduling conference with her.

MR. EISEMAN:  Thank you, Your Honor.

THE COURT:  All right?

MS. DeMARCHI:  Thank you.

THE COURT:  So I guess we'll see you the next thing will be at the claims construction or the tutorial; is that right?

MR. EISEMAN:  Well, unless Your Honor has a hearing.

THE COURT:  The motion, right.

MR. EISEMAN:  May 16th.

THE COURT:  We've got the motion.  So we'll see you then.

MR. EISEMAN:  Thank you, Your Honor.

MS. DeMARCHI:  Thank you, Your Honor.

THE COURT:  All right.  Thank you.

(Proceedings adjourned at 11:02 a.m.)

- oOo -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Monday, April 15, 2013

_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR
U.S. Court Reporter