**Pages 1 – 8**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LAUREL BEELER, MAGISTRATE JUDGE

| | |
|---|---|
| BARNES & NOBLE, INC.,        ) | |
|            ) | |
|       Plaintiff,     ) | |
|            ) | |
|   VS.            ) | NO. C 11-2709 |
|            ) | |
| LSI CORPORATION, et al.,    ) | |
|            ) | San Francisco, California |
|       Defendants.   ) | Thursday |
|            ) | May 16, 2013 |
| _____) | 9:54 a.m. |

TRANSCRIPT OF PROCEEDINGS

APPEARANCES (By Telephone):

For Plaintiff:      QUINN EMANUEL URQUHART
                        OLIVER AND HEDGES, LLP
                    50 California Street
                    22nd Floor
                    San Francisco, California 94111
                BY: CARL GUNNAR ANDERSON, ESQ.
                    ADAM BOTZENHART, ESQ.
                    SETH A. STILES, ESQ.

For Defendants:     FENWICK & WEST, LLP
                    Silicon Valley Center
                    801 California Street
                    Mountain View, California  94041-2008
                BY: HECTOR J. RIBERA, ESQ.
                    and
                    SIDLEY AUSTIN, LLP
                    1001 Page Mill Road
                    First Floor
                    Palo Alto, California  94304
                BY: DIANE GABL, ESQ.


Reported by:        BELLE BALL, CSR #8785, CRR, RDR
                    Official Reporter, U.S. District Court

**THURSDAY, MAY 16, 2013**                                    **9:54 A.M.**

**P R O C E E D I N G S**

**THE CLERK:**  Calling Civil Action C-11-2709, Barnes & Noble, Inc. versus LSI Corporation, et al.

Counsel, please state your appearances for the record.

**MR. ANDERSON:**  This is Carl Anderson of Quinn Emanuel for Plaintiff Barnes & Noble.  And with me are Adam Botzenhart and Seth Skiles.

**THE COURT:**  Okay.  And for Defendant?

**MR. RIBERA:**  Hector Ribera of Fenwick & West, for Defendant LSI Corporation and Agere Systems.

And also on the line is Diane Gabl of Sidley Austin for the Defendants.

**THE COURT:**  Okay.  So, I put this on calendar just for a brief touch-base.  I'm jumping you to the beginning of a merits hearing.  So, I didn't necessarily think this would take an enormous amount of time.

Look, I -- I read your letter about -- with your different positions about whether LSI accuses only the NOOK devices. And, I guess I'm just having a tough time in -- you know, the, my view is, and it's captured in my previous orders, including the one that you all referred to which is my order at -- I think it's ECF 130, the September order, the -- the arc that I've taken towards your case is that LSI has articulated a theory of relevance about the subject matter of the -- of the

accused patents that is not limited to the NOOK.

The whole case is about LSI's patents directed to technologies for wireless communications, and for the delivery and playback of digital content.  We talked before in the context of the operating system going a few levels out.

And, and, so -- and then, on top of all of at that -- so, that's my reaction to the letter.

And then on top of that, since Barnes & Noble, subject to the reservations -- I skimmed on a pretty high level, but I mean, I still read the whole filing about the proposed amendments, LSI's proposed amendments.

Since Barnes & Noble doesn't object to them, you know, the quote that I wrote down is "Barnes & Noble does not object to LSI's proposed amendments regarding Barnes & Noble's purported in-store wireless and 'sales of downloads and digital content.'"

And then, Judge Chen did express reservations on the Record about avoiding piecemeal amendments to the contentions. And given all of that, I just didn't see how the protective order doesn't address the issue.

But I wanted to give Barnes & Noble an opportunity to tell me if I am missing something, because that was my reaction to your joint letter.

**MR. ANDERSON:**  Thank you, Your Honor.  This is Carl Anderson.

First, let me give you a little update.  Since you got our letter on May 5th, Barnes & Noble produced a large amount of additional code, it's about 20 additional gigabytes.

So, to update what we said in our letter, we have now produced about 1 million files --

THE COURT:  But in your letter you said -- see if I can go look for it -- you said you accepted from your productions source code relevant only to Barnes & Noble servers and in-store wireless service.  And you did that on -- as beyond the scope of the infringement contentions and the RFPs.

Are you saying now that you produced it anyway, and this moots your letter?

MR. ANDERSON:  No.  I'm saying -- you referred to the earlier dispute about --

THE COURT:  I understand.  Okay.

MR. ANDERSON:  Right.

THE COURT:  So, it's more on the earlier part.  I get it.  Okay.

MR. ANDERSON:  That's been produced.  LSI has had people reviewing that since May 6th.

THE COURT:  Okay.  But just for this letter, with this source code for the servers --

MR. ANDERSON:  -- for this letter --

THE COURT:  Yeah.

MR. ANDERSON:  Our -- we have an issue about the gaps

in Barnes & Noble's infringement contentions.

But to get to what we think is out of bounds, the main thing we think that is really objectionable here is LSI's asking for server code.

And the problems are, first, there's no way for Barnes & Noble to tell what we're being asked to look for.  Servers are not mentioned in any RFPs.  They're not anywhere in the infringement contentions.

You know, wifi communications can't be practiced by servers --

**THE COURT:**  But, but, I understand that, but there's the interaction with the technology.

And that's just like -- I mean, I analogized -- again, I'm going back to September, to my previous order, about -- you know, you know it's the -- it's the accused patents that are at issue.

And to the extent there's interaction with the servers and that's relevant -- and -- and they've amended the -- I mean, how does the amended contention change your analysis?

**MR. ANDERSON:**  Well, we haven't -- Your Honor, we haven't seen the amended contention.

**THE COURT:**  Well, they've told you --

**MR. ANDERSON:**  They've represented to the Court in their motion for leave to amend, that's Docket No. 200, I believe --

**THE COURT:** No, I read it.  I read it.

**MR. ANDERSON:** -- Page 12 --

**THE COURT:** I read it.

**MR. ANDERSON:** They said that the proposed amendments regarding the existing patents will not significantly expand the scope of discovery.  They do not introduce new theories of infringement or add previously unasserted patent claims.

So, we don't know what the amended contentions are going to look like, because we haven't seen them.  But LSI has represented that they don't introduce new theories of infringement.

**THE COURT:** No, I understand.  I understand.  Let me just ask LSI.

I mean, I understand what your argument is.  You're saying that at some point it begins to implicate the server code, and it's not about the patents here that implicate, sort of, the wireless technology attached to the devices, themselves, are implicated by the digital sales.

LSI, what's your -- I mean, how do -- you understand what the issue is.  It's not dissimilar from the operating system.

I would just observe that, you know, knowing what's at issue, there's a certain level of compliance that's expected from Barnes & Noble to produce what's relevant to what's at issue with the accused patents.

But, what's your reaction to what Barnes & Noble said?

**MR. RIBERA:**  Your Honor, Hector Ribera.

Our reaction is that there is code in the server that is used in providing these in-store wifi access while the customers are in the bookstores.

And, that's what we are asking for.  It is called out in our infringement contentions.  We point out that there's this Read in Store feature in our claim charts.

**THE COURT:**  Right.

**MR. RIBERA:**  And I think it -- it's clearly accused.  We don't understand why they have refused to provide the relevant code.  And, we agree that the protective order should take care of any concerns they may have.

They earlier told you that they were very concerned about providing the operating system for the products, and they -- ultimately, they told you in the letter, they produced all of the operating systems for all the products, which is more than we asked for.

So, we don't understand why they cannot provide the code that is called for in the contentions.

**THE COURT:**  Okay.  All right.  Well, I understand the arguments.

Thank you for being available by phone.  I'll issue an order later today.

**MR. RIBERA:**  Thank you, Your Honor.

**THE COURT:**  All right.

**MR. ANDERSON:**  Thank you, Your Honor.

(Conclusion of Proceedings)

Belle Ball, CSR #8785, CRR, RDR
Official Reporter – U.S. District Court
(415) 373–2529

<u>**CERTIFICATE OF REPORTER**</u>

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/  Belle Ball

Monday, May 20, 2013

Belle Ball, CSR 8785, CRR, RDR