UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| BARNES AND NOBLE, INC., et al., | No. C 11-02709 EMC (LB) |
| Plaintiffs, | **ORDER REGARDING THE PARTIES' JOINT DISCOVERY LETTER DATED AUGUST 23, 2013** |
| v. | |
| LSI CORPORATION, et al., | [Re: ECF No. 237, 242] |
| Defendants. | |

## INTRODUCTION

The parties filed a letter with more discovery disputes. *See* 8/23/2013 Joint Letter, ECF No. 237.[1] The court held a telephonic hearing on September 5, 2013 and orders the following.[2]

## ANALYSIS

**I. PRODUCTION OF SOURCE CODE**

The lawsuit involves whether the Nook's 3G, WiFi, and audio technology infringes on LSI's patents. The court previously ordered source code to show the subject matter of the accused patents.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

[2] Going forward, as the court's standing order on discovery requires, issues must be side-by-side (as opposed to the two separate lists in the current letter). It also makes it hard to have to cross-reference exhibits to find the parties' proposed compromise. Instead, they should be included in the letter brief even if in summary form with a cite to the exhibit.

C 11-02709 EMC (LB)
ORDER

9/6/12 Order, ECF No. 130 at 1. The relevant source code is the code that plays a role in 3G and wifi communications (including code deployed in NOOK devices and in B&N servers for in-store communications), MP3 playback, sound effects for system and keyboard events, and coding and decoding of audio data. The code is modular, and code modules build on each other. Joint Discovery Brief, ECF No. 237 at 1. LSI's expert says it needs certain identified modules (reflected in Exhibit 4) to understand the operation of the accused functionality. *Id.* (citing Exs. 4 nd 5).

The court orders the production of the code modules discussed in Exhibits 4 and 5. LSI said at the hearing that based on what it knows, this should be enough. There is no substantial burden (at least right now looking at this only as a stand-alone issue), and the protective order continues to address any disclosure concerns. This order is consistent with the undersigned's prior orders ordering disclosure of the code that shows the subject matter of the accused patents. That being said, the court appreciates B&N's argument that the burdens are implicit in a process that involves ongoing and iterative disclosures, and the court will be mindful of this going forward.

## II. FINANCIAL INFORMATION

B&N produced financial information through December 2012, and LSI wants it to supplement it now. Joint Letter Brief, ECF No. 237 at 1, 4. B&N does not oppose production but given the burdens, wants the parties to do so on a schedule tied to need. Its view is that LSI does not need updates to already-produced information particularly given that any settlement discussions will be after claims construction. *Id.* at 4.

As discussed on the record, the parties should submit their proposals for financial information identified by category (because LSI said that some information is more easily produced than other information, and breaking it out will illuminate this). The court suggests that the parties submit a chart that has columns for the category of financial information, LSI's proposed schedule, B&N's proposed schedule, and a blank column for the court's resolution. The parties may provide text explanation by category but should try to limit their explanation to 250 words per category. A word-processible copy of the chart should be emailed to the court's orders box at lbpo@cand.uscourts.gov.

## III. MARKETING AND STRATEGY

C 11-02709 EMC (LB)
ORDER

1   LSI seeks marketing, planning, and strategy documents for all NOOK devices going back to
2   2009 and suggests that B&N is producing only information relevant to the accused functionalities.
3   As the court ruled previously, the mix of information relevant to sales for accused and non-accused
4   devices can illuminate what combination of features drives sales. *See* 1/9/13 Order, ECF No. 156 at
5   2-3 (citing *Elan Microelectronics v. Apple*, No. C 09-1531 RS (PSG), ECF No. 423 (N.D.Cal. Sept.
6   9, 2011)). B&N says that producing all of the information LSI seeks is unduly burdensome because
7   its historical advertisements are not easily identified or accessed. Joint Letter, ECF No. 237 at 4. Its
8   proposed compromise is to produce responsive, non-privileged documents sufficient to show the
9   marketing or promotion of the accused devices regardless of whether they relate to the accused
10  functionalities "to the extent that such documents are located as the result of a reasonable search."
11  Ex. 7, ECF No. 237-2, at 4.

12  As discussed on the record, companies have sales forces and marketing strategies. Usually there
13  is annual training. Usually there are materials and training agendas distributed in advance. Usually
14  the marketing personnel can identify this information fairly easily and should be able to do so for the
15  time period that is relevant to this litigation. The court provides this only as context for B&N's
16  proposed solution for a "reasonable search" for non-privileged "marketing and promotion of the
17  accused devices." A reasonable search is what this order requires, and the court's view is that B&N
18  can do this without undue burden. Once LSI has the information, it can evaluate the disclosures. If
19  it thinks it ought to get more, it needs to say what else it expects B&N has, why it needs it, and why
20  these disclosures are not sufficient. B&N must identify specifically its burdens (and the court
21  cannot see why there is not information that can be provided easily and without burden). At the
22  same time, at some point, there is a sufficient snapshot of the hypothetical negotiation landscape.

23  **IV. LICENSES**

24  In RFP 34, LSI seeks "[a]ll documents relating to any licensing agreements you have entered
25  into or considered entering into relating to any Accused Device." B&N objects, arguing that it has
26  to produce only executed licenses that cover WiFi, 3G, and/or audio technology used in the accused
27  Nook products.

28  First, taking the court's prior orders together, the court has already determined that the following

are relevant to this action: executed license agreements, and any drafts of them (regardless of whether they are cross-licenses or not), that involve the patents-in-suit or the parties' WiFi, 3G, and/or multimedia patent portfolios. This means that B&N's argument that it needs to produce only executed licenses fails.

Second, in rethinking the issue in the context of the entire discussion at the hearing, the court's order is that B&N does not need to produce all licenses or draft licenses relating to any accused device but instead must produce only those related to the patents-in-suit and the accused technologies. LSI contends that the court previously ruled that B&N needs to produce licenses "for any patent for use by or in any of the accused products in this action." In support of that conclusion, LSI quotes the parties' protective order, which states that such licenses constitute "Highly Confidential—License Agreement" information or items and may be disclosed to certain in-house counsel. But the court never stated that licenses "for any patent for use by or in any of the accused products in this action" must be produced. Indeed, the court's May 2, 2012 order, which LSI cites in support of its argument, discusses only the relevance of licenses related to LSI's WiFi, 3G, and/or multimedia patent portfolios. ECF No. 112 at 8. And aside from the court's previous orders, LSI cites no authority for why B&N should be required to produce all of the licenses it seeks through RFP 34.

As to why the court orders disclosure only of licenses and drafts regarding the accused technology, it is more apparent with other categories how the mix of functionalities is relevant to assessing the value that ought to be attached to the accused functionalities. This is why, for example, the court has taken its approach to discovery into B&N's sales of digital content to third-party eReader devices and B&N's marketing strategy. With licenses, maybe the mix of functionalities – shown by licenses relating to other functionalities such as batteries – provides some illumination about the accused technology (along the lines of, "is the device valuable because of its long battery life or is it valuable because of its 3G/wifi capability"). That being said, it seems backwards and burdensome to analyze the other licenses (a universe that B&N categories as being very large) and then back out a value for the accused functionalities.

Third, as far as communications related to the executed or draft licenses agreements, the court

C 11-02709 EMC (LB)
ORDER
4

gave them to B&N as to LSI's licenses, and given the narrowed universe here, orders the same only as to the accused functionalities. The court appreciates B&N's arguments about the difference in relevance given the different corporate entities (LSI versus B&N) but the issue is narrowed sufficiently.

## V. PATENT SEARCH AND INFRINGEMENT ANALYSIS

RFP 24 seeks "all documents relating to any patent searches or patent analysis in regard to the accused devises." ECF No. 237-1 at 21. RFP 71 seeks "all documents and communications relating to patents covering any compoent of the accused devises or their use...." *Id.* at 25.

B&N agreed to produce information concerning patent searches and B&N's infringemenet analyses implicating the asserted patents or the technology accused in the case. Joint Letter Brief, ECF No. 237 at 2, 5. It says more is irrelevant, but LSI counters that patent searches regarding the broader category of "accused products" "likely will shed light on the question of whether BN willfully avoided learning of LSI's patents, which is relevant to inducement." *Id.* at 2, 5.

On this record, and at this time, the court orders disclosure only of the patent searches and patent analysis implicating the asserted patents or accused technology. The court has allowed broad discovery relevant to damages, and at some point, the burden trumps relevance.

## VI. MICROSOFT TRANSACTION

RFPs 164 to 168 seek the following information about B&N's partnership with Microsoft in 2012 called Nook Media LLC.

<u>RFP 164</u>: All documents relating to Microsoft's investment in BN (including specifically NewCo), including without limitation any presentations, analyses, or opnions regarding the value of BN's eBook business and any forecasts or projections of sales and revenues from the Accused Devises or revenue from downloads of Digital Content from your websites, eBookstore, or digital newsstand.

<u>RFP 166</u>: All agreements between Microsoft and BN, including but not limited to the agreements governing Microsoft's investment in BN (including specifically NewCo), agreements governing BN's use of Microsoft intellectual property and/or Microsoft use of BN intellectual property; and settlement agreements relating to any litigation between Microsoft and BN.

<u>RFP 167</u>: All licenses from Microsoft to BN or from BN to Microsoft, relating to the Accused Devices.

<u>RFP 168</u>: Document sufficient to show your corporate ownership and organizational structure, including but not limited to documents to show the ownership, management, and other relationships between and among Microsoft, BN and NewCo, and the divsions and/or business

owned or operated by NewCo and BN.

ECF No. 145-1 at 6-10.

This issue first came up in the joint discovery letter filed at ECF No. 145. There, LSI said that it wanted documents concerning the valuation of Nook Media and its eReader and digital content businesses, documents regarding any reserve for satisfying a judgment, and unredacted copies of documents filed with the U.S. Securities and Exchange Commission. ECF No. 145 at 2. All of this was aimed at information relevant to the reasonable royalty inquiry, including business plans, projections, and valuations. *Id.* LSI's theory was that projection for future sales near the time of the hypothetical negotiation were relevant. *Id.*

B&N previously resisted disclosure of this information on the ground that it had nothing to do with LSI's damages analysis regarding the 3G, WiFi, and audio technologies at issue in this lawsuit. *See* 1/9/13 Order at 3. The court agreed on the ground that the 2012 Microsoft-B&N transactions occurred roughly three years after the hypothetical negotiations would have taken place in this case and after the lawsuit was filed. Thus, they were not relevant to determining a reasonable royalty. *See id.* at 3.

LSI says that the situation is different because it now has asserted U.S. Patent 8,041,394. *See* ECF No. 228. It says that damages for that patent likely will be calculated based on a hypothetical negotiation occurring as of October 18, 2011, the date of the first infringement. Joint Letter Brief, ECF No. 237 at 2. The Microsoft transaction was announced on April 30, 2012, roughly only six months later. *Id.*

B&N responds that the time period does not alter the fact that the Microsoft investment took place after the proposed hypothetical negotiation date. *Id.* at 5. Also, a company-level investment is much different and thus not probative of a reasonable royalty for the asserted patents. *Id.*[3]

On this record, the court does not reconsider its prior decision. First, the investment still was

---

[3] B&N also argues that the documents are privileged because they were produced to B&N confidentially in connection with investment discussions, they are work product, and they are protected by the common interest privilege (which LSI contests). *Id.*

C 11-02709 EMC (LB)
ORDER

approximately six and one-half months later (even though the court appreciates LSI's point that negotiations had to have started by the time of the first infringement in October 2011). But B&N said previously that all documents were prepared in 2012. *See* Joint Letter Brief, ECF No. 145 at 5. Two, B&N's argument about company-level investment has resonance. Three, the court asked B&N specifically about whether there was information relevant to the reasonable royalty inquiry because its objection was a blanket objection as opposed to a contextualized one. The court's point was that while much of the information may well be about a company-level investment, it seemed conceivable that some information would be responsive. B&N responded that whatever information it had would be provided anyway (although not in a Microsoft-specific context), so ordering a production is cumulative. Looking at the requests for production provides context for a conclusion that information could be cumulative, and information can be provided without reference to the Microsoft transaction.

In sum, the court has given expansive discovery into licenses, draft licenses, communications, and other information aimed at illuminating and recreating a hypothetical negotiation. B&N has represented that the documents that LSI seeks were prepared in 2012. The discovery feels aimed at a sensitive company-level investment and implicates highly sensitive information such as future Microsoft products. *See* Joint Letter, ECF No. 145 at 5. The Microsoft lawsuit also involved different technologies. *Id.*

The court did tell the parties that their arguments, which total about a page, do not provide much context or any analysis about legal issues such as the common-interest privilege. The court's approach – here and in the prior order – did not address these legal issues because it reached a fact-based conclusion only on this record. The court also reminded the parties at the hearing that the court's page limits are meant to avoid invective and focus parties on the real issues regarding discovery. To that end, they may file letter briefs that address only one issue if they need to.

As to LSI's suggestion that the parties file simultaneous two-page briefs within two days after the court issues this order, *see* ECF No. 242, the court denies the request without prejudice to complying with the joint letter brief process. The court's order is only on this record and does not foreclose LSI's raising the issue again in a new joint letter brief that provides fact context and legal

C 11-02709 EMC (LB)
ORDER
7

citations supporting any arguments. These two things are missing from the current brief. That being said, the court has laid out an analysis based on its understanding of the facts, and LSI needs to show why this analysis is wrong.

## CONCLUSION

This disposes of ECF Nos. 237 and 242.

**IT IS SO ORDERED.**

Dated: September 13, 2013

_____
LAUREL BEELER
United States Magistrate Judge