PAGES 1 - 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LAUREL BEELER, MAGISTRATE JUDGE

BARNES & NOBLE, INC. AND          )
BARNESANDNOBLE.COM LLC,           )
                                  )
          PLAINTIFFS,             )
                                  )
  VS.                             ) NO. C 11-2709 EMC (LB)
                                  )
LSI CORPORATION AND AGERE SYSTEMS, )
INC.,                             )
                                  )  SAN FRANCISCO, CALIFORNIA
          DEFENDANTS.             )
                                  )  SEPTEMBER 12, 2013
_____)  9:50 O'CLOCK A.M.

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDINGS OF PHONE CONFERENCE**

**APPEARANCES:**

**FOR PLAINTIFF**S:          **QUINN EMANUEL URQUHART & SULLIVAN LLP**
                          50 CALIFORNIA STREET
                          SAN FRANCISCO, CALIFORNIA 94111
                      BY: **MELISSA J. BAILY, ATTORNEY AT LAW**
                          **(BY PHONE)**


**FOR DEFENDANTS:**          **FENWICK & WEST LLP**
                          555 CALIFORNIA STREET, 12TH FLOOR
                          SAN FRANCISCO, CALIFORNIA 94104
                      BY: **VIRGINIA K. DEMARCHI, ATTORNEY AT LAW**
                          **HECTOR RIBERA, ESQUIRE**
                          **(BOTH BY PHONE)**
FURTHER APPEARANCES ON NEXT PAGE.
TRANSCRIBED BY:  KATHERINE WYATT, OFFICIAL REPORTER USDC

              WYATTKATHY994@GMAIL.COM

              925-212-5224

**FURTHER APPEARANCES:**

**ALSO FOR DEFENDANTS:**

**SIDLEY AUSTIN LLP**

1001 PAGE MILL ROAD

1ST FLOOR

PALO ALTO, CALIFORNIA 94304

**BY:   DIANE GABL, ATTORNEY AT LAW**

SEPTEMBER 12, 2013                                  9:50 O'CLOCK  A.M.

P R O C E E D I N G S

THE CLERK:  CALLING CIVIL ACTION C 11-2709, BARNES & NOBLE, INC. VERSUS LSI CORPORATION, ET AL.

COUNSEL, IF YOU COULD PLEASE STATE YOUR APPEARANCE FOR THE RECORD, AND EACH TIME YOU SPEAK IF YOU COULD PLEASE STATE YOUR APPEARANCE.

THANK YOU.

MS. BAILY (BY PHONE):  GOOD MORNING, YOUR HONOR. THIS IS MELISSA BAILY FOR PLAINTIFF BARNES & NOBLE.

THE COURT:  ALL RIGHT, MS. BAILY.

MS. DEMARCHI (BY PHONE):  GOOD MORNING, YOUR HONOR. THIS IS VIRGINIA DEMARCHI FROM FENWICK & WEST FOR DEFENDANT LSI AND AGERE.  AND WITH ME ON THE PHONE IS HECTOR RIBERA, FROM MY FIRM AND DIANE GABL FROM SIDLEY AUSTIN.

THE COURT:  OKAY.  GREAT.  SO LET ME JUST GO BACK AND LOOK AT SOME OF MY NOTES THAT I TOOK ON YOUR LETTER.  SO FIRST ISSUE, THE PRODUCTION OF SOURCE CODE, WHICH IS A REPEAT.

I MEAN, AT THE END OF IT, JUST TO KIND OF ALERT YOU, I HAVE A REALLY BIG CALENDAR TODAY.  THERE ARE LITERALLY OVER 20 MATTERS ON CALENDAR TODAY, SO WE'RE GOING TO MOVE THIS ALONG AS MUCH AS WE CAN.

I'M GOING TO HAVE SOME QUESTIONS ABOUT WHAT I'M DUBBING "THE MICROSOFT TRANSACTION," ISSUE NUMBER SIX.  WE'LL GET TO

THAT AT THE END.

BUT I WANT TO TICK THROUGH SOME OF THESE OTHER THINGS WHICH I THINK ARE SHORTER, AND JUST REALLY TRY TO KEEP IT SHORT.

YOU GUYS KNOW HOW THIS WORKS.  YOU ASKED FOR SOURCE CODE. YOU DESCRIBE WHY YOU NEED IT.  IT'S RAISED IN A DISCOVERY FORMAT.  YOU KNOW YOUR CASE BETTER THAN I DO, SO I'M ALWAYS GOING TO OPERATE WITH THAT PROCEDURAL DETRIMENT.

BUT, YOU KNOW, THE WHOLE POINT HERE IS THAT I'VE BEEN TAKING THIS APPROACH, PERHAPS IN SORT OF COLLOQUIAL LANGUAGE, WHICH MORE PRECISELY WAS DESCRIBED BY LSI'S EXPERTS AS THE MODULAR APPROACH WHERE THE CODE MODULE IS BUILT ON EACH OTHER.

LSI HAS IDENTIFIED CERTAIN MODULES THAT ARE REFLECTED IN EXHIBIT FOUR THAT SAYS IT NEEDS TO UNDERSTAND THE OPERATION OF THE ACCUSED FUNCTIONALITY.  AND FIRST FROM LSI'S PERSPECTIVE, YOU KNOW, YOUR ANTICIPATION BASED ON WHAT YOUR EXPERT HAS SAID IS THIS SHOULD BE ENOUGH FOR YOU TO UNDERSTAND THE OPERATION OF THE ACCUSED FUNCTIONALITY AT ISSUE IN THE LAWSUIT, RIGHT?  I MEAN, THAT'S WHAT YOU -- IS THAT CORRECT?

**MR. RIBERA (BY PHONE):**  WELL, YOUR HONOR, THIS IS HECTOR RIBERA.  THE PROBLEM IS THAT WE HAVE ASKED FOR THE SOURCE CODE FOR THESE FEATURE.  THEY --

**THE COURT:**  I UNDERSTAND YOU WANT IT.  I'M SAYING IF YOU GET IT, DO YOU THINK IT WILL BE ENOUGH.

**MR. RIBERA (BY PHONE):**  IF WE GET THE SOURCE CODE FOR

THE FEATURE, YES.  BUT --

**THE COURT:**  OKAY.

**MR. RIBERA (BY PHONE):**  -- WE DON'T KNOW --

**THE COURT:**  I UNDERSTAND.  SO PLEASE BEAR WITH ME BECAUSE I'M GOING TO BE SPECIFIC ABOUT MY QUESTIONS.  YOU IDENTIFIED THEM IN EXHIBIT FOUR AND FIVE.

THOSE ARE THE CODE MODULES.  MY INCLINATION IS TO ORDER THEM, BECAUSE YOUR EXPERT SAYS YOU NEED THEM.  AND I'M JUST VERIFYING WITH YOU THAT IF I DO THAT, THAT THAT SHOULD BE ENOUGH, BASED ON YOUR UNDERSTANDING OF WHAT YOUR EXPERT HAS TOLD YOU, TO UNDERSTAND THE OPERATION OF THE ACCUSED FUNCTIONALITY; IS THAT CORRECT?

**MR. RIBERA (BY PHONE):**  THAT IS NOT CORRECT, YOUR HONOR.

**THE COURT:**  THEN, WHY DID THEY SAY THAT IN EXHIBITS FOUR AND FIVE?

**MR. RIBERA (BY PHONE):**  BECAUSE THAT IS THE SOURCE CODE THAT OUR EXPERT, LOOKING AT WHAT THEY HAVE PRODUCED SO FAR, CAN TELL IS MISSING.

**THE COURT:**  RIGHT. BUT --

**MR. RIBERA (BY PHONE):**  IF THEY PRODUCE THE SOURCE CODE --

(SIMULTANEOUS COLLOQUY).

**THE COURT:**  -- IF THEY PRODUCE IT, THAT'S WHAT YOU WANT.  AND THAT SHOULD BE ENOUGH.  THAT'S MY QUESTION.

**MR. RIBERA (BY PHONE):** IF THEY PRODUCE THE SOURCE CODE, THAT SHOULD BE ENOUGH AS TO THIS SOURCE CODE.  BUT THERE MAY BE ADDITIONAL SOURCE CODE --

**THE COURT:** BUT --

**MR. RIBERA (BY PHONE):** -- AS TO THE MODULES THAT WE DON'T KNOW ABOUT.

**THE COURT:** -- BASED ON WHAT YOU KNOW NOW, THIS SHOULD BE ENOUGH.

**MR. RIBERA (BY PHONE):** YES, YOUR HONOR, BASED ON WHAT WE KNOW NOW --

**THE COURT:** OKAY.  OKAY.  OKAY.

**MS. BAILY (BY PHONE):** YOUR HONOR, I KNOW TIME IS REALLY SHORT.  CAN I HAVE TWO SENTENCES?

**THE COURT:** YES.  OF COURSE.

**THE CLERK:** PLEASE STATE YOUR APPEARANCE.

**MS. BAILY (BY PHONE):** THIS IS EXACTLY THE PROBLEM THAT WE HAVE.  SO EVERY TIME WE PRODUCE MORE SOURCE CODE THERE'S OBVIOUSLY SOURCE CODE REFERENCED IN THAT SOURCE CODE. AND SO EVERY TIME YOU PRODUCE NEW SOURCE CODE LSI POINTS --

**THE COURT:** NO, I UNDERSTAND.  I UNDERSTAND.

SO THAT'S MS. BAILY, JUST FOR THE RECORD, RIGHT?

I DO APPRECIATE --

**MS. BAILY (BY PHONE):** YES, I APOLOGIZE.

**THE COURT:** I REALLY DO APPREICATE WHAT YOU'RE SAYING, BUT WHEN YOU GUYS -- AGAIN, THIS IS NOT A CRITICISM.

IT'S JUST A DESCRIPTION.  I MEAN, I FEEL AS IF I KNOW YOUR CASE PRETTY WELL AT THIS POINT.

I UNDERSTAND, EVEN IF IT'S FROM A USER PERSPECTIVE, HOW THE TECHNOLOGY WORKS.  I UNDERSTAND HOW YOU ALL DESCRIBED IT TO ME.  AND UNLESS LITERALLY WE ALL ROLL UP OUR SLEEVES, SPEND A GOOD AMOUNT OF TIME SITTING AT A TABLE WHERE EVERYONE ON A VERY SOFTWARE ENGINEERING LEVEL EXPLAINS TO ME WHY AT SOME POINT THE RELEVANCE BECOMES SO ATTENUATED THAT IT SHOULDN'T BE PRODUCED, I CAN'T -- NO PERSON SITTING IN MY SEAT CAN KNOW THE FACTUALLY CORRECT ANSWER.

WE USE THE PROXIES OF YOUR DESCRIPTIONS FOR ME TO STAND AS RELEVANCE.  IT HASN'T BEEN ARTICULATED AS BURDEN.

I UNDERSTAND, AND I DON'T NECESSARILY DISAGREE WITH THE PROPOSITION THAT AT SOME POINT DOWN A LONG ROAD OF CONTINUED DISCLOSURES, AT SOME POINT IT BEGINS TO FEEL AS IF:

"OH, COME ON.  WE HAVE DONE IT TWENTY TIMES ALREADY."

**MS. BAILY (BY PHONE):**  YOUR HONOR?

**THE COURT:**  I UNDERSTAND THAT YOU'RE NOT ARTICULATING BURDEN, AND IT IS RELEVANT.  AND SO I UNDERSTAND.  I COMPLETELY UNDERSTAND.

**MS. BAILY (BY PHONE):**  YOUR HONOR, I DO WANT TO SAY ONE THING ABOUT BURDEN, BECAUSE WE ARE ARTICULATING BURDEN HERE.

**THE COURT:**  YOU DIDN'T ARTICULATE IT IN YOUR LETTER,

SO WHAT IS -- THE BURDEN IS THAT --

**MS. BAILY (BY PHONE):**  WELL, THE BURDEN IS FIRST THAT WE'VE DONE THIS ALREADY TWENTY TIMES WITH RESPECT TO LSI COMING BACK AND FORTH.  BUT, SECOND, I MEAN THEY ARE REQUESTING SOURCE CODE FILES FROM, FOR EXAMPLE, THE FIRST GENERATION NOOK PRODUCTS.

THERE'S NOBODY AT BARNES & NOBLE WHO WAS AROUND AT THAT TIME.  THERE'S NOBODY FAMILIAR WITH THEM.  AND EVERY TIME WE DO THIS ITERATION -- AND IT'S NOT JUST EVERY ITERATION WHERE WE COME BACK TO THE COURT.  IT'S ITERATIONS AMONGST OURSELVES WHERE WE AGREE TO DO IT -- IT IS VERY, VERY BURDENSOME AND EXPENSIVE.

THEY HAVE REQUESTED THAT AND L FILES THAT ARE DYNAMICALLY GENERATED, HUNDREDS OF THEM A DAY.  AND SO I JUST DON'T WANT TO LEAVE THE COURT WITH THE IMPRESSION THAT THIS IS NOT A BURDENSOME PROCESS, WHICH WE'VE ALREADY ACCOMMODATED LSI WITH MANY, MANY TIMES.

I JUST DON'T WANT TO LEAVE THAT IMPRESSION.  AND AT SOME POINT, IT HAS TO STOP.  IF IT'S THIS TIME, GREAT.  BUT WE CAN'T DO THIS ANOTHER TWENTY TIMES.

**THE COURT:**  OKAY.  I COMPLETELY APPRECIATE THE POINT. YOU UNDERSTAND WHAT I'M SAYING IS THAT IT BECOMES DIFFICULT --

**MS. BAILY (BY PHONE):**  YES.

**THE COURT:**  -- FOR ME TO TELL.

**MS. BAILY (BY PHONE):**  I UNDERSTAND.

**THE COURT:** AND WHILE I'D BE SO HAPPY TO TRY TO FIGURE OUT A MECHANISM FOR US TO DO THAT TOGETHER, IT'S -- ALL RIGHT.  SO I APPRECIATE THE ARGUMENT.

OKAY.  SO LET'S MOVE ON TO THE FINANCIAL INFORMATION.

**MS. BAILY (BY PHONE):** YOUR HONOR, I HATE TO DO THIS. THERE'S ONE RELATED THING TO THE SOURCE CODE.

**THE COURT:** OKAY.

**MS. BAILY (BY PHONE):** I REALLY AM SORRY, BUT THERE'S AN ISSUE OF THE SUPPLEMENTAL INFRINGEMENT CONTENTIONS.  SO WE WERE BEFORE JUDGE CHEN ON APRIL 11.  HE ACTUALLY INSTRUCTED US TO CONVEY TO YOUR HONOR THAT LSI WAS NOT TO USE DISCOVERY AS AN EXCUSE TO REFUSE TO SUPPLEMENT THEIR CONTENTIONS.

**THE COURT:** SAY IT AGAIN.  SAY IT SLOWER.

**MS. BAILY (BY PHONE):** SORRY ABOUT THAT.  I'M JUST COGNIZANT OF THE TIME.

**THE COURT:** NO, THAT'S OKAY.

**MS. BAILY (BY PHONE):** ON APRIL 11TH WE WERE BEFORE JUDGE CHEN.  THE PARTIES WERE IN A STATUS CONFERENCE.  AND HE ACTUALLY INSTRUCTED US TO CONVEY TO YOUR HONOR THAT LSI WAS NOT TO USE THIS PRECISE DISCOVERY ISSUE AS AN EXCUSE TO REFUSE TO SUPPLEMENT THEIR INFRINGEMENT CONTENTIONS.  THAT WAS APRIL 11TH.

HE SAID LSI HAD A FEW WEEKS, NOT MONTHS.  IT'S FIVE MONTHS LATER.  WE DON'T HAVE ANY INFRINGEMENTS CONTENTIONS.  AND THE PROBLEM WITH THAT IS WE WERE SUPPOSED TO THE START CLAIM

CONSTRUCTION PROCESS NEXT MONTH WITH EXCHANGE OF PROPOSED CONSTRUCTIONS, AND WHATNOT.

AND SO WE REALLY NEED THESE AMENDED INFRINGEMENT CONTENTIONS, AND WE NEED SOME TIME TO REVIEW THEM.

**THE COURT:** OKAY.

**MS. BAILY (BY PHONE):** AND THIS DISCOVERY DISPUTE IS BEING SORT OF USED AS AN EXCUSE NOT TO PROVIDE THAT TO US. BUT --

**THE COURT:** OKAY. I THINK IT'S AN EXCELLENT POINT, MS. BAILY. I WILL BE MINDFUL OF IT. I LITERALLY AM READY TO -- YOU KNOW, I DRAFT MY OWN ORDERS. I WROTE A WHOLE SENTENCE ABOUT THIS. I'LL BE MINDFUL OF IT. I THINK IT'S A GREAT POINT.

SO LET'S JUST MOVE ON TO A COUPLE OF OTHER POINTS. FINANCIAL INFORMATION. BARNES & NOBLE PRODUCED FINANCIAL INFORMATION ALREADY THROUGH DECEMBER 12TH. YOU KNOW, JUST TO CAPTURE YOUR POSITION.

BARNES & NOBLE, YOU DON'T OPPOSE PRODUCTION. BUT GIVEN THE BURDENS AND THE SCHEDULING ISSUES THAT YOU'VE IDENTIFIED, AND AMENDING PRELIMINARY INFRINGEMENT CONTENTIONS AND ALL THE OTHER THINGS THAT ARE GOING ON IN YOUR LITIGATION, GIVE THAT LSI HAS SAID THAT IT'S AMENABLE TO SETTLEMENT DISCUSSIONS ONLY AFTER CLAIM CONSTRUCTION, YOU WANT THIS TIED ON SOME KIND OF A SCHEDULE THAT'S SORT OF ORDERLY AND TIED TO NEED, WHICH --

**MS. BAILY (BY PHONE):** THAT'S EXACTLY CORRECT.

**THE COURT:**  AND SO FROM -- THAT SEEMS REASONABLE, LSI.  WHY ISN'T IT?

**MS. DEMARCHI (BY PHONE):**  YOUR HONOR, THIS IS VIRGINA DEMARCHI.  THE REASON IT'S NOT REASONABLE IS BECAUSE THE FINANCIAL INFORMATION IS INFORMATION WE NEED NOT ONLY FOR SETTLEMENT, WHICH BOTH PARTIES AGREED WOULD BE APPROPRIATE TO REVISIT AFTER CLAIM CONSTRUCTION, BUT BECAUSE WE NEED TO PREPARE OUR DAMAGES CASE.

WE HAVE THE BURDEN OF PROOF ON DAMAGES --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  NO, I UNDERSTAND.  I UNDERSTAND.

**MS. DEMARCHI (BY PHONE):**  SO, YOUR HONOR, THE TIMING ISSUE THAT WE'VE PROPOSED IS AN ANNUAL SUPPLEMENTATION.  THERE ARE TWO ISSUES THAT DICTATE, FROM OUR PERSPECTIVE, A NEED TO SUPPLEMENT NOW.

AND THERE IS INFORMATION THAT IS NOT MERELY SUPPLEMENTATION, BUT HAS NEVER BEEN PRODUCED.  THEY DON'T DISPUTE IT'S RELEVANT.  IT JUST HASN'T BEEN PROVIDED, AND WE NEED IT.  SO LET ME ADDRESS BOTH THOSE ISSUES QUICKLY.

FIRST OF ALL, THERE'S BEEN A MATERIAL MISSTATEMENT IN THE FINANCIAL INFORMATION THAT BARNES & NOBLE --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  I UNDERSTAND THAT.  I UNDERSTAND THAT. ACTUALLY, I DO READ YOUR PAPERS.  I DO READ YOUR PAPERS.

**MS. DEMARCHI (BY PHONE):**  OKAY.  THANK YOU.  THEN I

WON'T BELABOR THAT POINT.

THE BURDENSOMENESS OBJECTION IS NOT SUPPORTED.  THIS IS A SOPHISTICATED COMPANY.  WE'RE ASKING FOR MERELY AN ANNUAL BASIS OF SUPPLEMENTATION.  THEIR QUARTER -- THEIR YEAR END CLOSE WAS IN APRIL.  WE COULD HAVE A SUPPLEMENTATION THROUGH THE END OF APRIL, AND THEN ANOTHER ONE THEREAFTER UNTIL WE GET CLOSER TO EXPERT REPORTS.

THE SECOND ISSUE, YOUR HONOR, IS WE NEED COST OF GOODS SOLD AND ALLOCATED EXPENSES FOR THE ACCUSED PRODUCTS AND SERVICES.  THERE'S NO DISPUTE SO FAR AS I UNDERSTAND THAT THAT INFORMATION IS ABSOLUTELY RELEVANT TO A DAMAGES ANALYSIS.

AND IF WE ARE TO BE ADVISING OUR CLIENT ABOUT WHERE TO DEVOTE THEIR RESOURCES IN THIS LITIGATION, WE ABSOLUTELY NEED TO HAVE ACCURATE AND UP-TO-DATE REVENUE PROFIT AND COST INFORMATION FOR THESE ACCUSED PRODUCTS --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  NO, I UNDERSTAND.  WELL, LISTEN.  HERE'S THE THING THAT I REALLY THOUGHT ABOUT WHEN I SAW YOUR LETTERS.

ONE, MY LETTERS -- MY LETTER PROCESS IS NOT -- I DON'T WANT TO ENCOURAGE YOU TOO MUCH THAT ON EVERY DISPUTE STRETCH IT OUT TO FIVE PAGES, BECAUSE I DON'T KNOW IF YOU HEARD THE LAST CALL, BUT LITERALLY TWO-AND-A-HALF PAGES WERE INVECTIVE, AND TWO-AND-A-HALF PAGES WERE USEFUL FACT INFORMATION.

AND THEN, I HAD TO -- THERE WERE HUNDREDS AND HUNDREDS OF PAGES OF EXHIBITS.  AND ONE THEM WAS REALLY IMPORTANT.

AND THE REST OF IT WAS JUST CONTEXT.  AND WHILE CONTEXT, I DON'T WANT TO DISCOURAGE IT, BUT REALLY WHAT I WANT ARE FACTS TO HELP PEOPLE PROBLEM SOLVE PRAGMATICALLY WHAT SHOULD BE DISCLOSED AT A TIME PERIOD THAT MAKES SENSE.

SO THIS LETTER IS A GOOD EXAMPLE OF HOW YOU DON'T HAVE TO CRAM ALL YOUR ISSUES INTO ONE LETTER.  IT IS OKAY TO HAVE, YOU KNOW, A LETTER WITH AN ISSUE.

SO HERE MY REACTION TO THIS IS, ONE, THERE ARE DIFFERENT CATEGORIES OF FINANCIAL DOCUMENTS THAT HAVE BEEN -- THAT LSI SAYS IT NEEDS.  IT DOESN'T SEEM ENORMOUSLY BURDENSOME.

ON THE OTHER HAND -- AND THEY PROPOSE A SCHEDULE THAT IS ANNUAL.  BUT MAYBE THAT THERE ARE CATEGORIES THAT COULD BE STAGED.  SOME THINGS ARE NOT THAT BIG A DEAL.  SOME THINGS ARE MORE OF A BIG DEAL.

ON THE OTHER HAND, BARNES & NOBLE RAISES A GOOD POINT THAT YOU WANT TO TIE THINGS COMPARED TO NEED.  THERE ARE A LOT OF THINGS GOING ON.  I GET THEY ARE A SOPHISTICATED COMPANY.  I UNDERSTAND THERE ARE RESOURCES.  BUT IN THE END, EVERYBODY'S INTERESTS ARE BEST SERVED, THE CLIENTS ARE BEST SERVED ON BOTH SIDES IF YOU BOTH CAN MANAGE YOUR RESPECTIVE NEED FOR INFORMATION IN A WAY THAT MAKES SENSE FROM WHERE YOU ARE IN THE LITIGATION.

AND I DON'T HAVE ANY PROPOSED SCHEDULES.  AND I DON'T HAVE THAT BREAKDOWN BY CATEGORY.  SO WHAT I PROPOSE TO YOU IS THIS: AND I DON'T -- ALSO I'M MINDFUL THAT I DON'T WANT TO EMPLOY THE

APPROACH WHICH I USED TO JOKE AS A LAWYER IS MEET AND CONFER UNTIL YOU'RE DEAD.  AND THEN, I'LL TALK WITH YOU.

I DON'T MEAN THAT.  BUT IF YOU COULD JUST CONTEXTUALIZE IT A LITTLE BIT FOR ME, I WOULD SO APPRECIATE IT.  AND COME UP WITH A SCHEDULE.  AND THE EASIEST WAY TO DO IT IS -- I WOULD SUGGEST CHARTS.

YOU KNOW, THESE ARE THE CATEGORIES OF FINANCIAL INFORMATION.  THESE THINGS ARE -- THESE ARE THE THINGS WE WANT. THIS IS THE SCHEDULE WE PROPOSE.  THIS IS OUR ALTERNATIVE. BLANK COLUMN.  I'LL GET YOU ON THE PHONE.

I MEAN, THIS WAS THE END OF THE SUMMER.  ALL THESE LETTERS, I CAN'T REMEMBER WHERE YOUR LETTERS WERE ALL FILED.  I USUALLY TRY TO GET TO THEM WITHIN A WEEK.

I WAS ON VACATION SO I AM STACKED UP WITH SEVEN LOVELY DISCOVERY DISPUTES TO GET THROUGH IN A PRETTY SHORT PERIOD OF TIME.

BUT IF YOU WOULD DO THAT FOR ME, THAT'S THE GUIDANCE THAT I SUGGEST TO YOU.  YOU OUGHT TO BE ABLE TO WORK THESE SORTS OF THINGS OUT.  AND IF YOU CAN'T, I'M HAPPY TO PROBLEM SOLVE THE SCHEDULE THAT YOU PROPOSE TO COME UP WITH SOMETHING ORDERLY IN A WAY THAT MAKES SENSE FOR YOU.  OKAY?

AND WE CAN DO IT -- IT CAN BE VERY INFORMAL.  IT DOESN'T HAVE TO BE PRETTY.  IT JUST HAS TO BE AN INFORMATION COMMUNICATION DEVICE SO THAT WE CAN TALK ABOUT IT CONSTRUCTIVELY.

**MS. DEMARCHI (BY PHONE):** THANK YOU, YOUR HONOR.

**THE COURT:** OKAY. SAME THING. SO LET'S TALK ABOUT MARKETING AND STRATEGY.

OF COURSE I NOW LOST MY NOTES IN THE SHUFFLE OF ALL OF THIS.

SO LSI. OKAY. LSI WANTS -- BARNES & NOBLE IS ARGUING BURDEN HERE. THEIR PROPOSED -- SO LSI SAID THAT BARNES & NOBLE ONLY WANTED TO RELEASE WHAT IT ADDRESSED THE ACCUSED FUNCTIONALITY ABOUT THE 3G AND WI-FI. BUT YOU THOUGHT THAT, YOU KNOW, IT'S A WHOLE MIX OF THINGS THAT WE TALKED ABOUT PREVIOUSLY, WHICH WE TALKED ABOUT IN THE ATLANTA CASE IN ONE OF MY EARLIER ORDERS.

BUT FROM BARNES & NOBLE'S ARGUMENT IT SEEMS THAT THEY ARE PROPOSING THE COMPROMISES IN THEIR EXHIBIT SEVEN AND EXHIBIT TWENTY, WHICH BOIL DOWN LOOK TO ME LIKE WHAT CAN BE LOCATED WITH A REASONABLE SEARCH.

AND SO MY QUESTIONS WERE SORT OF TWO FOR BARNES & NOBLE, ONE FOR LSI. WITH REGARD TO NOBLE: HAVE YOU PRODUCED ANYTHING YET? AND WHAT, FOR EXAMPLE, DO YOU PROPOSE PRODUCING?

YOU KNOW, WHAT CAN BE LOCATED WITHIN A REASONABLE SEARCH?

AND THEN, FROM LSI -- AND IF YOU HEARD ME ON MY LAST CALL, IT SEEMS TO ME THAT, YOU KNOW, THERE IS THE SCRUB OR THERE'S THE REASONABLE SEARCH.

I GET THAT BOTH OF YOU MIGHT DISTRUST WHAT IS REASONABLE FROM THE OTHER SIDE'S PERSPECTIVE. BUT IF YOU START -- IF YOU

DESCRIBE WHAT YOU ARE GOING TO DO, START THERE.  PRODUCE WHAT IT IS.  THEN, YOU CAN TELL ME IN THE CONTEXT OF AN ACTUAL PRODUCTION ABOUT WHAT IT DOES AND DOESN'T SHOW AND WHY I SHOULD ORDER MORE.

AND, AGAIN, APPRECIATING BARNES & NOBLE'S PERSPECTIVE, AND LSI'S, TOO, BECAUSE YOU'RE BUMPING UP AGAINST ANY DEADLINES. BUT IT ALSO SEEMS THAT A LOT OF THIS ABOUT THE -- YOU KNOW, IT'S RELEVANT TO THE ANALYSIS OF CONSUMER DEMAND IS RELEVANT TO DAMAGES.  BUT YOU'RE STILL NOT EVEN AT CLAIM CONSTRUCTION YET. ANYWAY --

**MS. DEMARCHI (BY PHONE):**  I'M SORRY.  VIRGINIA DEMARCHI.

SO, IF I MAY, I'LL RESPOND TO THE QUESTION DIRECTED TO LSI.

**THE COURT:**  YES.

**MS. DEMARCHI (BY PHONE):**  SO THERE HAS BEEN SOME PRODUCTION BY BARNES & NOBLE OF MARKETING MATERIAL, BUT IT HAS BEEN NARROW.  AND WHAT WE'RE DOING IS DIRECTED TO OUR -- YOU KNOW, RESPONDING TO OUR BURDEN TO APPORTION DAMAGES BETWEEN ACCUSED FUNCTIONALITY AND NONACCUSED FEATURES AND OTHER FEATURES IN THE PRODUCT.

**THE COURT:**  RIGHT.

**MS. DEMARCHI (BY PHONE):**  SO WHAT WE'RE ASKING FOR IS NOT LITERALLY EVERY SHRED PAPER RELATING TO SOMETHING THAT IS CALLED "MARKETING" OR "PROMOTION" OR "STRATEGY."

WHAT WE WANT ARE NONDUPLICATIVE ADVERTISEMENTS, MARKETING MATERIALS, STRATEGY DOCUMENTS FOR HOW THEY PROMOTED THE PRODUCT AND THE SERVICE SO THAT WE CAN SEE HOW THEY TELL THE WORLD WHAT IS VALUABLE IN THEIR PRODUCT.  AND WE CAN THEN MAKE APPORTIONMENT, AS WE ARE REQUIRED TO DO.

AND, AGAIN, YOUR HONOR, I WOULD JUST SAY, YOU KNOW, PARTIES ARE ENCOURAGED TO ADDRESS THESE ISSUES EARLY IN THE CASE, NOT JUST SAVE DAMAGES FOR THE END --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  NO, I TOTALLY AGREE.  I TOTALLY UNDERSTAND WHY.  THEY SAID IN THE ARGUMENT PREVIOUSLY THAT -- OR IF YOU DON'T DO IT EARLY ENOUGH, YOU DON'T KNOW WHAT DAMAGES ARE.

IF YOU DON'T KNOW WHAT DAMAGES ARE, YOU CAN'T TALK ABOUT IT MEANINGFULLY.  AND ALL SORTS OF REASONS YOU WANT TO DO IT EARLY.  THE PRACTICAL ONES ARE IMPORTANT SO YOU KNOW WHAT'S REALLY AT STAKE.

TOTALLY FAIR. I GET IT.  I GET IT.

(SIMULTANEOUS COLLOQUY)

**MS. DEMARCHI (BY PHONE):**  THANK YOU, YOUR HONOR. AND WE DON'T THINK THAT THE PRODUCTION THAT WE HAVE HAD IS SUFFICIENT FOR THAT PURPOSE FOR US TO MAKE THAT DETERMINATION.

**THE COURT:**  OKAY.  SO FROM BARNES & NOBLE'S PERSPECTIVE, YOU PROPOSE WHAT COULD BE LOCATED WITH A REASONABLE SEARCH; THAT LSI IS SAYING WHAT THEY HAVE GOTTEN SO

FAR ISN'T ENOUGH.

WHAT DO YOU PROPOSE PRODUCING?  SO THEY SAY YOU HAVE PRODUCED INFORMATION.  I COULDN'T TELL FROM YOUR LETTERS.  WHAT DO YOU PROPOSE PRODUCING, OR WHAT DO YOU MEAN BY "REASONABLE SEARCH"?

**MS. BAILY (BY PHONE):**  WELL, WE PROPOSED PRODUCING THE MARKETING, PLANNING AND STRATEGY DOCUMENTS RELATED TO THE ACCUSED FUNCTIONALITIES.  AND THAT'S WHAT WE'VE PRODUCED.

I CAN'T REPRESENT WITH CERTAINTY THAT WE HAVE PRODUCED ALL OF THAT.  I WOULD HAVE TO CHECK WITH MY TEAM.  BUT WE WILL PRODUCE ALL OF THAT.

THE CONCERN HERE IS THAT, YOU KNOW, AS MS. DEMARCHI JUST ARTICULATED IT, THEY ARE ACTUALLY REQUESTING EVERY AD, EVERY MARKETING DOCUMENT, EVERY STRATEGY DOCUMENTS, WHAT EXACTLY SHE JUST SAID.

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  CAN YOU IDENTIFY SOME?  I MEAN, IS THERE A PROCESS?  I HEAR WHAT YOU'RE SAYING.  AND WE TALKED ABOUT THIS BEFORE IN EARLIER DISCOVERY DISPUTES.  IT'S THE MIX OF THE ACCUSED FUNCTIONALITIES AND THE ENTIRE PRODUCT.

AND I CAN BRING MY OWN CONSUMER-BASED REACTION TO THE ARGUMENT, WHICH IS ESSENTIALLY WE ALL HAVE TO DEAL WITH UNDERSTANDING TECHNOLOGY, RIGHT?

SO I THINK THERE IS A FAIR ARGUMENT THAT LSI HAS MADE. IT'S THE MIX OF IT THAT'S IMPORTANT TO UNDERSTAND.  THAT IT

ISN'T -- WITHOUT DOING A SCRUB -- I APPRECIATE THE SCRUBBED PRODUCTION -- FOR THINGS TALKING ABOUT THE ACCUSED FUNCTIONALITY.  AND I CAN CONSIDER FROM HOW I SEE MARKETING FOR SIMILAR PRODUCTS WHAT THAT INFORMATION IS.

ISN'T THERE SOME REASONABLE APPROACH YOU CAN DEVISE TO PROVIDE SOME INSIGHT INTO ADVERTISING THAT PROVIDES AN ILLUMINATION INTO WHAT LSI IS DESCRIBING AS RELEVANT?

IT IS HARD FOR ME TO SAY IT'S NOT RELEVANT, BECAUSE IT IS. WHAT I'M FOCUSING HERE IS ON THE BURDEN ARGUMENT.  AND THEN, LOOKING AT A SOLUTION OF YOUR OWN PROPOSAL OF A REASONABLE SEARCH, IT SEEMS TO ME THAT YOU SHOULD BE ABLE TO CONSTRUCT SOMETHING THAT ACCOMPLISHES THAT.

**MS. BAILY (BY PHONE):**  SURE.  AND I THINK WE MIGHT BE ABLE TO.  I MEAN, WE HAVE PROPOSED THINGS LIKE, YOU KNOW, SUFFICIENT TO SHOW X, Y AND Z.  THAT'S BEEN REJECTED.  YOU KNOW, LSI HAS NOT COME FORWARD WITH ANYTHING LESS FLAWED THAT WOULD BE ACCEPTABLE TO THEM.

WE COULD CERTAINLY TAKE --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  OKAY.  WELL, I'M GOING TO TAKE A STAB AT WRITING SOMETHING.

OKAY.  I UNDERSTAND.  I UNDERSTAND THE ISSUE REALLY WELL. OKAY.  SO THAT'S FINE.

I UNDERSTAND THE POSITIONS.  THERE'S A TENSION HERE THAT BARNES & NOBLE SAYS BETWEEN RELEVANCY AND BURDEN.

AND THERE'S AN ARGUMENT.  IT'S THEIR ARGUMENT THAT I THINK THAT LSI MAKES ABOUT RELEVANCE IS ABOUT ACCUSED FUNCTIONALITY HAS TO, BY DEFINITION, THE PRODUCT BE EVALUATED IN A BUNDLE OF ATTRIBUTES THAT ATTACHES TO THE PRODUCT.  SO I UNDERSTAND THAT.

AND I THINK THAT THERE'S A MIDDLE GROUND THAT COULD BE DONE TO NOT EXCAVATE EVERYTHING ABOUT MARKETING.  BUT THERE'S GOT TO BE -- I MEAN, LOOK.  AGAIN, JUST BEING VERY PRACTICAL, THERE'S GOT TO BE THINGS LIKE -- THE WAY COMPANIES WORK IS THEY COME UP WITH MARKETING PLANS.

THEY COME UP WITH THINGS THAT -- TO SHOW THE POSITIONING OF THEIR PRODUCT AGAINST COMPETITORS AND WHAT THEY CHOOSE TO EMPHASIZE OR NOT.  THAT HAS TO BE DONE THE WAY COMPANIES WORK ON SOME KIND OF A REGULARIZED BASIS.

IN A DIFFERENT CASE THAT I DEALT WITH RECENTLY, IT'S ABOUT, YOU KNOW, THEIR REGULAR -- THEIR ANNUAL SALES FORCE MEETINGS, FOR EXAMPLE, THERE ARE THE PACKETS THAT ARE DISTRIBUTED TO PEOPLE ON AN ANNUAL BASIS.  AND SOMETIMES THEY ARE -- AND THEN, YOU COULD -- AND THEN, FROM A COMPANY PERSPECTIVE -- AND THESE ARE ALL -- THERE'S ONE PERSON WHO IS IN CHARGE OF THIS, YOU KNOW, WHATEVER THEIR TITLE IS, WITHIN THE COMPANY.  AND WOULD BE ABLE TO PROVIDE EASY ACCESS TO THAT IN A WAY THAT'S NOT ENORMOUSLY BURDENSOME.

AND THEN, DIFFERENT COMPANIES WORK ON DIFFERENT -- YOU KNOW, PROBABLY LSI COULD DO SOME -- OR I DON'T KNOW.  I THINK THEY COULD DO SOME INVESTIGATION AND FIGURE IT OUT, AS COULD I.

BUT THEN PEOPLE HAVE QUARTERLY MEETINGS.  AND I DON'T KNOW WHAT THE APPROACH IS TO UPDATING INFORMATION.  BUT IT SEEMS BY DISCLOSING -- GENERALLY, HOW IT WORKS BY DISCLOSING ANNUAL DOCUMENTS THAT ARE PUT TOGETHER THAT ARE PRETTY ROBUST THAT CAN BE VETTED BY THE LAWYERS FOR ANYTHING THAT OUGHT NOT TO BE DISCLOSED, THAT SEEMS TO BE A PRETTY EASY WAY TO GET ILLUMINATION INTO MARKETING AND STRATEGY.

BUT THAT'S JUST WITHOUT KNOWING FULLY THE CORPORATE STRUCTURE OF BARNES & NOBLE AND HOW IT WORKS FOR THE COMPANY. THAT'S ONLY MY REACTION TO WHAT IS JUST A -- YOU HAVE TO JUST THINK ABOUT IT.  AND YOU MAY TELL ME I'M WRONG WHEN I TRY TO RAISE THIS.  BUT YOU JUST GOT TO LOOK AT THE COMPANY VERY PRACTICALLY.  AND IT'S NOT JUST THE LAWYERS WHO KNOW HOW THIS IS DONE.  IT'S THE MARKETING PEOPLE.

AND THERE'S USUALLY INFORMATION THAT CAN BE PRODUCED THAT IS NOT THAT BIG A DEAL.

AND I KNOW IT FROM PHARMACEUTICAL -- INVESTIGATIONS INTO PHARMACEUTICAL COMPANIES, IT'S PRETTY EASY TO GET UP THAT INFORMATION.

OKAY.  SO LET'S LOOK AT LICENSES.  LOOK, I -- HERE'S THE THING ABOUT LICENSES.  EVERYBODY WAS PAINED ALL THE WAY AROUND ON SOME OF MY PREVIOUS ORDERS ABOUT LICENSES AND DRAFT LICENSES.

AND I KNOW IT'S THE SORT OF THING THAT EVERYBODY FIGHTS TO KEEP -- YOU KNOW, NOBODY WANTS ANYONE TO GET ACCESS TO ANY OF

IT.

BARNES & NOBLE ALREADY GOT THIS INFORMATION FROM LSI.  ON THE OTHER HAND, YOU KNOW, I ALREADY ORDERED THE DRAFTS.  I ALREADY ORDERED THE LICENSES.  I DON'T REALLY UNDERSTAND WHY COMMUNICATIONS ARE NECESSARY TO DO THE ANALYSIS FOR A DRAFT, YOU KNOW, HYPOTHETICAL DRAFT NEGOTIATION.

SO VERY QUICKLY ON BOTH SIDES TELL ME YOUR REACTION.  AND LET'S START WITH BARNES & NOBLE.

YOU GOT THIS INFORMATION FROM LSI.  WHY SHOULDN'T IT BE RECIPROCAL?

**MS. BAILY (BY PHONE):**  WELL, BECAUSE WITH RESPECT TO LSI, A LOT OF THOSE LICENSES ACTUALLY WERE FOR THE PATENTS-IN-SUIT, THE ACTUAL PATENTS-IN-SUIT.

WHAT LSI IS SEEKING IS SOMETHING LIKE IF WE HAVE A LICENSE, HYPOTHETICALLY, FOR A BATTERY LIGHT TECHNOLOGY, RIGHT?  THAT HAS NOTHING TO DO WITH WI-FI.

AND SO, YOU KNOW, THE BURDEN OF THEN GOING BACK AND TRYING TO FIND COMMUNICATIONS WITH A THIRD PARTY ABOUT BATTERY --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  I UNDERSTAND.  I UNDERSTAND PERFECTLY.

BUT THEN, YOU WOULD SAY IF THERE WERE LICENSES THAT WERE SORT OF MORE DIRECTLY RELEVANT TO THE PATENTS-IN-SUIT, THEN RECIPROCITY WOULD INCLUDE COMMUNICATIONS REGARDING THOSE.

BUT OTHER THAN THAT, THE DRAFTS AND THE LICENSES THEMSELVES OUGHT TO BE ENOUGH.  WOULD THAT BE FAIR?

**MS. BAILY (BY PHONE):**  I THINK THAT'S FAIR, EXCEPT THERE'S STILL THE DISTINCTION THAT LSI'S LICENSES ARE ACTUALLY FOR THE PATENTS-IN-SUIT.  BUT I SEE YOUR POINT.

**THE COURT:**  OKAY.  ALL RIGHT.  SO FOR LSI'S PERSPECTIVE, REACTIONS?

**MS. DEMARCHI (BY PHONE):**  YES.  THIS IS VIRGINIA DEMARCHI.

SO THE PROTECTIVE ORDER, AS YOUR HONOR RECALLS, FOR BARNES & NOBLE'S PART REQUIRES THEM TO PRODUCE LICENSES FOR ANY PATENT FOR USE BY OR IN ANY OF THE ACCUSED PRODUCTS IN THE ACTION, INCLUDING DRAFT LICENSES.  THAT IS WHAT WE WOULD LIKE TO HAVE PRODUCED.

AND THE REASON THAT THAT WAS ORDERED, AS WE UNDERSTOOD IT, IS THAT THE COURT WAS DECIDING WHAT WAS DISCOVERABLE, NOT ADMISSIBLE.

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  RIGHT.  NO, I UNDERSTAND.  WITHIN REASON. WITHIN REASON.

**MS. DEMARCHI (BY PHONE):**  FOR PURPOSES OF LSI BEING ABLE TO APPORTION THE VALUE OF THE ACCUSED FUNCTIONALITY IN THE PRODUCT FROM OTHER I.T. THAT MIGHT BE IN THE ACCUSED PRODUCTS. GEORGIA-PACIFIC FACTORS 11 AND 13 --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  NO, I UNDERSTAND.  I UNDERSTAND THE ARGUMENTS REALLY WELL.

**MS. DEMARCHI (BY PHONE):** SO, YOUR HONOR, WE BELIEVE WE'VE ALREADY DONE OUR HALF OF WHAT THE COURT ORDERED.  AND IT WAS BURDENSOME.  AND THE LICENSES THAT WE PRODUCED WERE NOT LICENSES JUST TO THE PATENTS-IN-SUIT.  AS WE ARGUED BEFORE, THEY WERE MULTIPATENT LICENSES THAT WE THOUGHT WERE NOT AT ALL COMPARABLE, BUT WE HAVE PRODUCED THEM ALL NOW, AS WELL AS ALL DRAFTS, AS WELL AS ALL COMMUNICATIONS.

IT'S TIME FOR BARNES & NOBLE TO DO THEIR PART OF THE DEAL.

**THE COURT:** RIGHT.  AND BARNES & NOBLE, WELL IT DOES SEEM TO ME THAT THE LICENSES THAT ARE IMPLICATED BY THEIR PORTFOLIO OF BUSINESS ARE DIFFERENT THAN THOSE THAT YOU'VE DESCRIBED THAT ARE IMPLICATED BY YOURS.

**MS. DEMARCHI (BY PHONE):** BUT THAT'S BECAUSE THEY ARE THE LICENSEE, YOUR HONOR.

SO IN THE GEORGIA-PACIFIC ANALYSIS THE EXTENT TO WHICH THE INFRINGER HAS MADE USE OF THE INVENTION AND ANY EVIDENCE PROBATIVE OF THE VALUE OF THAT USE IN THE CONTEXT OF THE ACCUSED PRODUCT --

(SIMULTANEOUS COLLOQUY)

**THE COURT:** IT WAS A PRETTY BIG DEAL FOR ME.  IT WAS A PRETTY BIG DEAL FOR ME TO ORDER DRAFTS AND LICENSES.  THAT WAS A PRETTY BIG DEAL FOR BOTH PARTIES.

**MS. DEMARCHI (BY PHONE):** YES, BUT BARNES & NOBLE HAS NOT PRODUCED ALL OF THE LICENSES --

**THE COURT:** NO, I UNDERSTAND.  OKAY.  I UNDERSTAND.

(SIMULTANEOUS COLLOQUY)

**MS. DEMARCHI (BY PHONE):**  -- AND THEIR PRODUCTS.

**THE COURT:**  OKAY.  ALL RIGHT.

**MS. DEMARCHI (BY PHONE):**  THANK YOU.

**THE COURT:**  OKAY.  SO MAYBE -- I MEAN, AGAIN, MAYBE IF THERE WAS -- I MEAN, YOU HAVE THE PRODUCTIONS THAT ARE GOING TO INCLUDE -- YOU KNOW, IT'S KIND OF LIKE THE MODULE APPROACH. I MEAN, I'VE BEEN SUSCEPTIBLE TO THE MIX OF INFORMATION.  BUT, YOU KNOW, COMMUNICATIONS EVEN FROM THE BEGINNING HAD PRETTY TANGENTIAL -- WELL, LESS DIRECT RELEVANCE AND MORE TANGENTIAL RELEVANCE, BECAUSE YOU CAN KIND OF SEE THE COURSE OF THINGS TO THE DRAFTS, TO THE FINAL LICENSES.

AND AT SOME POINT YOU'VE GOT A GOOD ENOUGH SNAPSHOT OF WHAT A HYPOTHETICAL NEGOTIATION WOULD HAVE LOOKED LIKE, THAT WHILE I UNDERSTAND THE POINT OF IT BEING RELEVANT, IT DOES SEEM THAT THE BURDENS EXCEED THE UTILITY WITHOUT SOME SPECIFIC EXAMPLE THAT SHOWS ME SOMETHING DIFFERENT.

**MS. DEMARCHI (BY PHONE):**  YES, YOUR HONOR?  THIS IS VIRGINIA DEMARCHI.  WE APPRECIATE THE BURDEN OF PRODUCING COMMUNICATIONS, BECAUSE WE HAVE ALREADY DONE IT --

**THE COURT:**  I UNDERSTAND.

**MS. DEMARCHI (BY PHONE):**  -- ON THE COURT'S ORDER.

BUT AS FAR AS BARNES & NOBLE'S CONCERNED, THEY HAVE NOT EVEN PRODUCED THE INBOUND LICENSES FOR THEIR ACCUSED PRODUCTS APART FROM THE VERY NARROW SLICE OF SOMETHING THEY CONSIDER

RELATED TO WI-FI OR 3G OR AUDIO TECHNOLOGY.

SO WE DON'T HAVE A COMPLETE PICTURE OF THE OTHER IP THAT IS IN THEIR PRODUCT.  AND THEY ARE GOING TO ARGUE THAT THEIR PRODUCT IS BURDENED BY LOTS OF OTHER IP.  AND WE NEED TO UNDERSTAND THAT FULLY TO UNDERSTAND THE PORTION OF THE VALUE OF THAT PRODUCT THAT THEY WILL CLAIM ULTIMATELY IS ATTRIBUTABLE TO OTHER IP.

SO WE AT LEAST NEED ALL OF THOSE LICENSES.  AND THAT'S ALREADY BAKED INTO THE PROTECTIVE ORDER PROPOSAL THAT THEY --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  BUT I ALREADY ORDERED THE DRAFTS.  I ALREADY ORDERED THE LICENSES.  THIS IS JUST ABOUT THE COMMUNICATIONS.

**MS. DEMARCHI (BY PHONE):**  NO.  NO, YOUR HONOR.  NO. THIS IS THE POINT.  THEY HAVE REFUSED TO PRODUCE ALL OF THE LICENSES FOR INTELLECTUAL PROPERTY IN THEIR PRODUCT, UNLESS THEY -- OR THE DRAFT LICENSES, UNLESS THOSE LICENSES CORRESPOND TO WHAT THEY DEFINED AS "WI-FI, 3G OR AUDIO TECHNOLOGY."

SO THERE ARE OTHER FEATURES THAT DON'T FALL INTO THOSE BUCKETS THAT THEY HAVE LICENSES FOR IN THEIR PRODUCT.  THEY HAVE REFUSED TO PRODUCE THOSE EXECUTED LICENSES.

**THE COURT:**  HOW MANY LICENSES ARE IMPLICATED BY THIS FROM BARNES & NOBLE'S PERSPECTIVE, UNDERSTANDING YOU MAY NOT KNOW, AND I WON'T HOLD YOU TO PRECISION, BUT JUST AS A KIND OF A PROXY?

**MS. BAILY (BY PHONE):**  YOUR HONOR, I DON'T KNOW.  I JUST KNOW THAT THERE ARE A LOT OF PEOPLE AND A LOT OF HISTORY? AND SO THERE'S JUST A LOT TO GO THROUGH TO FIGURE THAT OUT.  I APOLOGIZE, BUT I DON'T KNOW THE ANSWER.

**THE COURT:**  OKAY.  BECAUSE THAT WASN'T MY UNDERSTANDING FROM THE LETTER.  I THOUGHT THEY WERE JUST TALKING ABOUT COMMUNICATIONS, NOT THE DRAFTS AND LICENSES THEMSELVES.

YOU KNOW, MY -- YOU KNOW, IN THE -- WE HAVE A PROTECTIVE ORDER ABSENT -- YOU KNOW, SO MY INCLINATION -- SO I'M -- MY REACTION IS SOMEWHAT POSITIVE TO THE PRODUCTION OF COMMUNICATIONS TO THE EXTENT THERE ARE COMMUNICATIONS ABOUT LICENSES THAT AREN'T LICENSES FOR THE ACCUSED FUNCTIONALITIES.

BUT IT WAS MY UNDERSTANDING -- I DID NOT REALIZE THAT YOU HADN'T PRODUCED THE OTHERS.  AND ABSENT A -- I DON'T SEE WHAT THE BURDEN WOULD BE.  THERE IS A PROTECTIVE ORDER.

I HAVE ALREADY GONE DOWN THE ROAD OF -- AND I THINK IT'S -- I MEAN, YOU KNOW, AGAIN, I CAN'T SEE HOW -- WELL, I CAN'T NECESSARILY SEE HOW IT HURTS YOU.  AND I THINK IT MIGHT EVEN HELP YOU.  AND IT SEEMS LIKE IT DOES GIVE INSIDE INTO A REALISTIC DAMAGES APPROACH.  OKAY.

**MS. BAILY (BY PHONE):**  YOUR HONOR, JUST TO BE CLEAR I DIDN'T UNDERSTAND THE PROTECTIVE ORDER.  I MEAN, I JUST WANT TO -- THE PROTECTIVE ORDER GOVERNING, YOU KNOW, HOW WE DO DISCOVERY IN THIS CASE, THAT IT ACTUALLY ORDERED US TO PRODUCE

ANYTHING.  SO I JUST --

**THE COURT:**  OKAY.  I THOUGHT -- OKAY.  MAYBE I'M WRONG.  I THOUGHT I ALREADY ORDERED A DRAFT -- I MEAN, AGAIN, I'VE DONE SO MANY DISCOVERY DISPUTES AT THIS POINT, I'M A LITTLE -- OF THEM -- BUT I THOUGHT I ALREADY ORDERED THE DRAFT LICENSES AND THE LICENSES THEMSELVES PURSUANT TO THE PROTECTIVE --

**MS. BAILY (BY PHONE):**  THAT WASN'T OUR UNDERSTANDING, BUT I UNDERSTAND EVERYONE'S POSITION.

**THE COURT:**  OKAY.  SO QUICKLY TO PATENT SEARCH AND INFRINGEMENT ANALYSIS.  YOU WANT IT FOR THE ACCUSED PRODUCTS, LSI.  IT'S THE SAME ARGUMENT ALL OVER AGAIN.  BARNES & NOBLE WANTS TO LIMIT IT TO THE ACCUSED PATENTS AND TECHNOLOGY. WHAT'S BEEN PRODUCED?

**MS. DEMARCHI (BY PHONE):**  NOTHING AS FAR AS WE KNOW.

**MS. BAILY (BY PHONE):**  WELL, YOUR HONOR, MUCH OF THIS IS OBVIOUSLY GOING TO BE OF A PRIVILEGED NATURE, SO I'M NOT SURE, YOU KNOW, WHAT ACTUALLY COULD BE PRODUCED.

BUT THIS IS ACTUALLY EVEN A LITTLE BIT MORE FARTHER AFIELD THAN SOME OF THESE OTHER ISSUES WITH RESPECT TO ACCUSED FUNCTIONALITY VERSUS NONACCUSED FUNCTIONALITY.

I MEAN, THIS IS REALLY ABOUT, YOU KNOW, NOTICE OF LSI'S PATENTS.  WE'VE AGREED TO PRODUCE, YOU KNOW, EVERYTHING RELATED TO LSI'S PATENTS.  WE'VE AGREED TO PRODUCE EVERYTHING RELATED TO, YOU KNOW, THE ACCUSED FUNCTIONALITIES.

AND THE CASE LSI CITES IS PRETTY FAR AFIELD --

**THE COURT:** YEAH. YEAH. YEAH. I APPRECIATE THE ARGUMENT. OKAY. SO LOOK, AND THE RELEVANCE IS -- I MEAN, YOU GUYS HAVE BEEN VERY COMBATIVE. AND YOU ALL HAVE YOUR DIFFERENT STRATEGIES.

AND I'M ONLY BEGINNING TO UNDERSTAND THE APPROACHES THAT DIFFERENT FIRMS HAVE AND THE -- TO HOW THEY PROTECT THEIR CLIENTS' INTERESTS BY THEIR APPROACH TO DISCOVERY.

AND THAT CAN ENGENDER SOME IRE ON THE LAWYERS' PART WHEN THEY FEEL STIMIED BY ACCESS TO INFORMATION.

BUT THIS IS ABOUT DISCOVERY ABOUT WILLFULLY AVOIDING LEARNING OF LSI'S PATENTS, WHICH IS RELEVANT TO INDUCEMENT. AND IT JUST -- I THINK WHAT WE SHOULD DO IS FOCUS ON ALL OF THIS OTHER -- I FEEL LIKE WE SHOULD JUST ILLUMINATE THE LICENSES, THE DRAFT LICENSES, THE DAMAGES THEORIES ON AN ORDERLY SCHEDULE THAT ILLUMINATES THE LANDSCAPE.

AND YOU SAID THAT BARNES & NOBLE HAS AGREED TO PRODUCE ITS NONPRIVILEGED DOCUMENTS. I MEAN, I HEAR WHAT YOU'RE SAYING. WHO KNOWS WHAT THOSE ARE? REGARDING TO POSSIBLY RELEVANT SEARCHES ANALYSIS, IMPLICATING THE ACCUSED PATENTS. THAT SEEMS LIKE IT'S A GOOD PLACE TO START GIVEN THAT THE KNOWLEDGE OF LSI'S PATENTS IS WHAT IS RELEVANT TO THE ACCUSED -- IS IT RELEVANT TO THE INDUCEMENT AND THE, YOU KNOW, WILLFULLY AVOIDING LEARNING ABOUT LSI'S PATENTS?

WE'LL START THERE. AND THAT WILL BE THE ORDER FOR NOW.

I GUESS THIS IS THE FINAL THING I REALLY HAD THE MOST QUESTIONS. BUT I WANT TO SEE IF I CAN BE MORE PRECISE. LET ME JUST LOOK AT A SEPARATE SHEET OF PAPER WHERE I WROTE IT OUT.

OKAY. SO HANG ON ONE SEC. TOO MANY CASES.

ALL RIGHT. SO HERE'S THE THING ABOUT SORT OF THE ISSUES REGARDING TO THE MICROSOFT TRANSACTION. BEFORE I SAID IT'S THREE YEARS LATER. IT'S JUST -- IT'S A LONG WAYS AWAY FROM THE HYPOTHETICAL NEGOTIATION. AND NOW IT'S SIX MONTHS LATER AS OPPOSED TO -- I DON'T KNOW -- YOU KNOW, NOVEMBER, DECEMBER, JANUARY, FEBRUARY, MARCH, APRIL, LITTLE BIT MORE THAN SIX-AND-A-HALF MONTHS LATER.

AND THEN, BARNES & NOBLE MAKES AGAIN -- IT'S HARD FOR ME TO TELL, BECAUSE I DON'T HAVE ALL THE INFORMATION. SO THIS IS WHY I'M ASKING THESE QUESTIONS.

BARNES & NOBLE SAYS:

"LOOK, THIS IS A COMPANY LEVEL INVESTMENT, AND IT'S NOT PROBATIVE OF A REASONABLE ROYALTY ANALYSIS."

AND THAT, YOU KNOW, THAT HAS A RESONANCE TO ME.

ON THE OTHER HAND, WHAT I'D SORT OF TAKE A CLOSER LOOK, YOU KNOW, IS THERE A -- IT SEEMS -- MY REACTION IS: SURE, IT DOES SEEM LIKE A LOT OF INFORMATION MIGHT BE INVESTMENT LEVEL DECISIONS. BUT YOU'VE RAISED A BLANKET OBJECTION.

WHY CAN'T YOU REVIEW, AS OPPOSED TO A BLANKET OBJECTION, AND WHY ISN'T THERE -- YOU'RE SAYING A LOT OF THINGS TO ME ON A VERY, VERY, VERY HIGH LEVEL. BUT EVEN THOUGH I'M -- AND I

UNDERSTAND IT'S STILL -- AND THEN, JUST TO BE FAIR TO BARNES & NOBLE AGAIN -- IT'S STILL AFTER THE FACT.  IT'S STILL SIX-AND-A-HALF MONTHS AFTER THE FACT.  IT DOES SEEM LIKE A COMPANY LEVEL INVESTMENT.

BUT IT DID SEEM TO ME THAT MAYBE THERE WAS INFORMATION ABOUT A REASONABLE ROYALTY INQUIRY, NOT NECESSARILY SO MUCH IN THE BUNDLE OF ATTRIBUTES, BUT JUST RELEVANT TO THE ACCUSED TECHNOLOGY THAT MIGHT BE INFORMATIVE AND MIGHT BE ILLUMINATING.

SO FROM BARNES & NOBLE'S PROSPECTIVE, HEARING THAT YOU ARE AT COMPANY LEVEL INVESTMENT MAKES SENSE TO ME ON A PRACTICAL BUSINESS PERSPECTIVE.  WHY ISN'T IT POSSIBLE TO HAVE SOME KIND OF AN ANALYSIS BY YOU ABOUT WHETHER THERE IS INFORMATION PROBATIVE OF THE HYPOTHETICAL NEGOTIATION?  I MEAN, LEAVING ASIDE YOUR ARGUMENT IT'S AFTER THE FACT.  LSI WOULD SAY RELEVANCE IS DIFFERENT THAN ADMISSIBILITY AND IT'S CONTEXT. BUT, YOU KNOW, IT'S A BLANKET OBJECTION.

SO WHY DON'T YOU RESPOND TO THAT SMALL POINT THAT I'M MAKING, WHICH IS NOT A BIG POINT?

**MS. BAILY (BY PHONE):**  SURE.  AND I ONLY HAVE TWO QUICK THINGS TO SAY.  THE FIRST THING IS I UNDERSTAND YOUR POINT.  AND THE FIRST THING THAT I WOULD SAY IS THAT IT'S JUST CUMULATIVE, RIGHT?  SO WE ALREADY AGREED TO PRODUCE EVERYTHING ABOUT THE ACCUSED DEVICES AND THE FINANCIAL DATA, ET CETERA.

AND SO TO THE EXTENT THAT WE THEN COMMUNICATED THAT TO MICROSOFT, IT WOULD JUST BE THE SAME INFORMATION AGAIN.

(SIMULTANEOUS COLLOQUY)

**THE COURT:** OKAY. SO WHAT YOU'RE TELLING ME IS THAT TO THE EXTENT THAT THERE WERE COMMUNICATIONS WITH MICROSOFT THAT ARE RELEVANT TO A REASONABLE ROYALTY ANALYSIS OF THE ACCUSED FUNCTIONALITY, THAT WOULD BE PRODUCED UNDER THE APPROACH THAT YOU'RE TAKING TO DISCOVERY NOW.

**MS. BAILY (BY PHONE):** WELL, NO. SO NOT EXACTLY. SO --

**THE COURT:** IT WOULD BE CUMULATIVE.

**MS. BAILY (BY PHONE):** -- THE INFORMATION WOULD HAVE BEEN PRODUCED, PERHAPS NOT IN A DOCUMENT THAT WAS PROVIDED TO MICROSOFT.

**THE COURT:** OKAY. BUT --

(SIMULTANEOUS COLLOQUY).

**THE COURT:** -- BUT THE INFORMATION WOULD HAVE BEEN PRODUCED. OKAY.

**MS. BAILY (BY PHONE):** EXACTLY. AND THE SECOND TANGENTIAL POINTS IS JUST TO THE EXTENT WE COMMUNICATED TO MICROSOFT THE, YOU KNOW, RELEVANT INFORMATION ABOUT THE ACCUSED FUNCTIONALITY, FOR EXAMPLE, IN THE CONTEXT OF A COMMUNICATION ABOUT THE LITIGATION IS VERY, VERY CLEAR THAT THAT IS COVERED BY WORK PRODUCT AND NOT WAIVED BY THE DISCLOSURE TO MICROSOFT.

AND SO IF THAT IS WHAT LSI IS SEEKING THEN WE HAVE A VERY STRONG WORK PRODUCT --

**THE COURT:** I UNDERSTAND. I UNDERSTAND.

(SIMULTANEOUS COLLOQUY)

**MS. BAILY (BY PHONE):**  -- OBJECTION.  CUMULATIVE AND WORK PRODUCT.

**THE COURT:**  WE'RE LOOKING FOR INFORMATION HERE RELEVANT TO THE REASONABLE ROYALTY INQUIRY, AND THAT'S IT. THAT WAS ALL --

**MS. DEMARCHI (BY PHONE):**  THIS IS --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  OKAY.  SO LSI, FROM YOUR PERSPECTIVE --

**MS. DEMARCHI (BY PHONE):**  YES, YOUR HONOR.

**THE COURT:**   MS. DEMARCHI, YES.

**MS. DEMARCHI (BY PHONE):**  YES.  SO I THINK IT'S IMPORTANT TO BREAK DOWN WHAT WE'RE ASKING FOR, BECAUSE MS. BAILY HAS PAINTED THE PICTURE WITH A VERY BROAD BRUSH THAT IS NOT ACCURATE.

SO, FIRST OF ALL, WE HAVE ASKED FOR LICENSES BETWEEN MICROSOFT AND BARNES & NOBLE.  FROM MICROSOFT TO BARNES & NOBLE OR FROM BARNES & NOBLE TO MICROSOFT.

THOSE LICENSES ARE NOW CONTEMPORANEOUS WITH THE HYPOTHETICAL NEGOTIATION.  THEY WERE NEGOTIATED PROBABLY EXACTLY THE SAME TIME AS THE HYPOTHETICAL NEGOTIATION WOULD BE.

SO THAT'S NOT A HIGH LEVEL INVESTMENT --

(SIMULTANEOUS COLLOQUY)

**THE COURT:**  SO I UNDERSTAND, SO FROM BARNES & NOBLE'S PERSPECTIVE ASSUME LICENSES THAT ONLY IMPLICATE THE ACCUSED

TECHNOLOGY.

**MS. DEMARCHI (BY PHONE):** NO. NO. NO. I'M SORRY, YOUR HONOR.

**THE COURT:** I KNOW YOU'RE ASKING FOR MORE. I KNOW YOU'RE ASKING FOR MORE. I KNOW YOU'RE ASKING FOR ALL OF IT. I'M JUST ASKING WHAT BARNES & NOBLE'S PERSPECTIVE IS ON JUST LIMITED TO THE ACCUSED FUNCTIONALITY -- ACCUSED TECHNOLOGY.

**MS. BAILY (BY PHONE):** YEAH, I MEAN, IF IT IS RELATED TO THE ACCUSED FUNCTIONALITY, YOU KNOW, LIKE IN A HYPOTHETICAL WORLD I DON'T SEE A PROBLEM WITH IT. THIS IS SORT OF --

**THE COURT:** OKAY.

**MS. BAILY (BY PHONE):** THIS IS NOT CRYSTALLIZED DURING THE MEET AND CONFER SO I REALLY --

**THE COURT:** THIS IS THE PROBLEM WITH THE HIGH LEVEL LETTER. SO --

**MS. BAILY (BY PHONE):** RIGHT.

**THE COURT:** -- YOU GUYS JUST CONTEXTUALIZE -- HIGH LEVEL DOESN'T -- I MEAN HIGH LEVEL GETS YOU WHAT YOU ASK FOR: A HIGH LEVEL DECISION. OKAY?

**MS. DEMARCHI (BY PHONE):** YOUR HONOR, I'M SORRY. I HAVE TO OBJECT. WE HAVE DISCUSSED THIS IN DETAIL WITH BARNES & NOBLE.

**THE COURT:** I'M NOT BEING CRITICAL. I'M JUST SAYING I CAN'T UNDERSTAND. I'M SURE YOU DISCUSSED IT. BUT I CAN'T ACCESS IT BY YOUR LETTER, WHICH IS A REALTIME -- I MEAN, I AM

JUST SO HAPPY, BY THE WAY, THAT I HAVE REAL CASE MANAGEMENT CONFERENCES WITH PEOPLE WHERE WE SIT DOWN, OFF THE RECORD, SIT AT COUNSEL TABLE AND LITERALLY TALK ABOUT AN INVESTIGATION.

I LIKE DOING IT.  IT'S FUN.  IT'S USEFUL.  IN 45 MINUTES YOU CAN ACCOMPLISH A LOT.  WHEN YOU HAVE A DISPUTE, YOU GIVE ME A HIGH LEVEL LETTER.

AND THEN, I DON'T SCHEDULE ENOUGH TIME.  I LITERALLY AM IN A COURTROOM FULL OF PEOPLE.  THAT'S WHY I WANT TO ASK ABOUT IT. AND YOU HEARD MY APPROACH.  STAGE IT.  START THERE AND MOVE FORWARD.

OKAY.  BUT I UNDERSTAND WHAT YOU WANT, AND I UNDERSTAND WHAT BARNES & NOBLE --

**MS. DEMARCHI (BY PHONE):**  BUT I DON'T THINK SO.  I AM SORRY, BUT I THINK THERE'S AN AMBIGUITY HERE, AND I WOULD LIKE TO JUST CLARIFY IT.

WITH RESPECT TO THE LICENSES IT'S THE SAME POINT WE WERE DISCUSSING A MOMENT AGO.  THE LICENSES THAT HAD BEEN ORDERED UNDER THE PROTECTIVE ORDER ARE THOSE THAT RELATE TO THE ACCUSED DEVICES AND NOT --

**THE COURT:**  I UNDERSTAND.

**MS. DEMARCHI (BY PHONE):**  -- THE ACCUSED FUNCTIONALITY.

I THINK MS. BAILY MAYBE MISSPOKE WHEN SHE SAID:

"FINE.  JUST THE ACCUSED FUNCTIONALITY," BECAUSE SHE KNOWS --

**THE COURT:** NO. NO. I UNDERSTAND THAT. I UNDERSTAND THAT. THAT'S MY UNDERSTANDING, TOO. AND THEN, NOW WE'RE TALKING ABOUT THE MICROSOFT TRANSITIONS ALMOST SEVEN MONTHS LATER AND WHAT WE'RE GOING TO DO ABOUT THAT.

SO I'M WITH YOU ON THAT FIRST POINT ABOUT EVERYTHING THAT I'VE ORDERED ALREADY. AND NOW WE'RE TALKING ABOUT THE MICROSOFT TRANSACTION.

**MS. DEMARCHI (BY PHONE):** OKAY. BUT THE MICROSOFT TRANSACTION HAS MANY PARTS. IT HAS AS A PART OF IT LICENSE AGREEMENTS TO THE ACCUSED DEVICES BETWEEN MICROSOFT AND BARNES & NOBLE. AND THAT IS SOMETHING THAT WE THINK WE OUGHT TO HAVE, BOTH UNDER THE PROTECTIVE ORDER AND BECAUSE IT'S RELEVANT FOR OTHER PURPOSES.

WITH RESPECT TO THE REQUESTS THAT RELATE TO THE INVESTMENT TRANSACTION, THERE WERE DOCUMENTS AND INFORMATION EXCHANGED BETWEEN BARNES & NOBLE AND MICROSOFT DESCRIBING BARNES & NOBLE'S BUSINESS IN A VERY CANDID WAY, WE ARE SURE.

THEY ARE INVESTOR IN THE NOOK, THE COMPANY THAT IS THE PARENT OF THE COMPANY THAT IS IN LITIGATION. SO THEY ARE MERELY AN INVESTOR, AND THEY WERE PROVIDED LOTS OF INFORMATION ABOUT THE BUSINESS FORECASTS, PROJECTIONS OF SALES THAT ARE HIGHLY RELEVANT TO DAMAGES.

**THE COURT:** AND THEY ARE HIGHLY CONFIDENTIAL ABOUT NEGOTIATIONS THAT A COMPANY INVESTMENT THAT'S VERY DIFFERENT THAN A HYPOTHETICAL LICENSE NEGOTIATION. IT'S JUST DIFFERENT.

**MS. DEMARCHI (BY PHONE):**  BUT, YOUR HONOR, THE HYPOTHETICAL NEGOTIATION IS ONLY ONE PIECE OF A DAMAGES DISCUSSION.  OUR EXPERT HAS TO TAKE INTO ACCOUNT FORECASTS OF THE PRODUCT AND THE ASSESSMENT OF WHAT DRIVES DEMAND.

**THE COURT:**  NO, I GET IT.  I GET IT.  I GET IT.  YOU THINK IT'S RELEVANT TO THE DAMAGES ANALYSIS --

**MS. DEMARCHI (BY PHONE):**  OKAY.

**THE COURT:**  -- BUT IT'S A SEVEN-MONTH -- IT'S AN ACQUISITION THAT IS SEVEN MONTHS -- I MEAN, IT'S AFTER THE OCTOBER 11TH PATENT THAT YOU -- OKAY.  I UNDERSTAND THE ARGUMENT.  I TOTALLY UNDERSTAND.

**MS. DEMARCHI (BY PHONE):**  YOUR HONOR, THE AGREEMENT WAS ANNOUNCED IN APRIL.  THE NEGOTIATIONS, I HAVE NO DOUBT, TOOK MANY, MANY MONTHS.  THEY WERE NEGOTIATING AND EXCHANGING THIS INFORMATION AT EXACTLY THE TIME THE HYPOTHETICAL NEGOTIATION WOULD HAVE TAKEN PLACE.

**THE COURT:**  SO I HEAR YOU ABOUT WHY IT'S RELEVANT. BUT, YOU KNOW -- AND, AGAIN -- AND ON THIS RECORD MY REACTION IS IS THAT GETTING ILLUMINATION ABOUT LICENSES THAT HAVE BEEN NEGOTIATED EVEN A LITTLE BROADER -- YOU KNOW, AND I'VE DONE IT MORE BROADLY -- TO REFLECT YOUR ARGUMENT THAT THE ACCUSED TECHNOLOGY CAN BE ASSESSED ONLY IN THE BUNDLE OF ATTRIBUTES THAT THE DEVICE HAS.

SO THAT'S WHY I SAY "THE ACCUSED DEVICES."  AND THAT'S FAIR, I THINK.

BUT THEN, PULLING IT OUT FOR DAMAGES ANALYSIS TO THE KIND OF FRANK COMMUNICATIONS THAT ARE MADE WITH A COMPANY LEVEL INVESTMENT, OF COURSE YOU WANT TO KNOW IT.  BUT IT'S JUST QUALITATIVELY VERY DIFFERENT.

**MS. DEMARCHI (BY PHONE):**  ABSOLUTELY, YOUR HONOR.

**THE COURT:**  AND THE RELEVANCE IS DIFFERENT BECAUSE IT'S IN THE CONTEXT OF AN ACQUISITION.  IT'S JUST --

**MS. DEMARCHI (BY PHONE):**  IT'S NOT AN ACQUISITION, YOUR HONOR.

**THE COURT:**  WELL, INVESTMENT.  INVESTMENT.  SORRY. INVESTMENT.

**MS. DEMARCHI (BY PHONE):**  IT'S MERELY AN INVESTMENT WHICH WAS A CRITICAL DISTINCTION THAT JUDGE CHEN MADE IN THE NYDEX DECISION.

I WOULD LIKE TO BRIEFLY ADDRESS THE POINT THAT MS. BAILY RAISED ABOUT HOW THERE IS SOME KIND OF COMMON INTEREST PRIVILEGE HERE THAT COMES INTO PLAY.

THIS IS THE FIRST TIME THAT THE COURT IS ADDRESSING OUR DOCUMENT REQUEST NUMBER 165.

**THE COURT:**  RIGHT.

**MS. DEMARCHI (BY PHONE):**  IT ASKED FOR ALL DOCUMENTS PROVIDED TO MICROSOFT ABOUT THE PATENTS-IN-SUIT, THE LITIGATION, LSI OR AGERE.  THE REASON THIS WAS NOT BEFORE YOUR HONOR BEFORE IS BECAUSE BARNES & NOBLE TOLD US THERE WERE NO RESPONSIVE DOCUMENTS.

NOW WE UNDERSTAND THAT THERE ARE, AND IT'S FOR THAT CATEGORY OF INFORMATION THEY ARE NOW FOR THE FIRST TIME ASSERTING THIS COMMON INTEREST PRIVILEGE.

IF BARNES & NOBLE HAD SHARED PRIVILEGE OR WORK PRODUCT INFORMATION WITH MICROSOFT ABOUT THOSE SUBJECTS IN CONNECTION WITH THIS INVESTMENT, THEN THEY HAVE WAIVED THE PRIVILEGE.  BUT IN THE FIRST INSTANCE, THEY HAVE ACTUALLY MADE NO SHOWING THAT THERE IS ANY PRIVILEGED DOCUMENT OR ANY WORK PRODUCT DOCUMENT THERE.

THEY HAVE MERELY MADE A BLANKET ASSERTION.  I THINK THE NYDEX DECISION BY JUDGE CHEN MAKES IT VERY CLEAR THAT IN THIS CIRCUMSTANCE THERE'S ABSOLUTELY NO COMMON INTEREST.  THERE IS NO JOINTLY ANTICIPATED LEGAL EFFORT BY BARNES & NOBLE AND MICROSOFT.

**MS. BAILY (BY PHONE):**  YOUR HONOR, COULD I -- I APOLOGIZE.

**MS. DEMARCHI (BY PHONE):**  IF I COULD JUST FINISH.

SO THE FACT THAT THIS IS HIGHLY SENSITIVE INFORMATION FROM BARNES & NOBLE'S PERSPECTIVE, AND THEY MIGHT HAVE WAIVED PRIVILEGE OR WORK PRODUCT DOESN'T MEAN THAT IT'S NOT ABSOLUTELY DISCOVERABLE.

**THE COURT:**  I UNDERSTAND THAT.  AND YOU UNDERSTAND THAT THE CONTEXT YOU GUYS HAVE GIVEN ME -- AND I'M NOT SAYING THIS CRITICALLY, BECAUSE WE'VE DEFINED THE LETTER BRIEF PROCESS THAT PERHAPS DOESN'T GIVE YOU ENOUGH TIME TO ILLUMINATE

SUFFICIENTLY -- BUT YOU GUYS HAVE GIVEN ME A CUMULATIVE TOTAL OF A PAGE.  AND I CAN ONLY REACT TO HOW MY BEST PRACTICAL ANALYSIS OF THE PROBLEM AS I SEE IT, AND THEN LOOKING AT THE RELEVANCE TO YOUR -- OF COURSE IT'S RELEVANT TO YOUR DAMAGES ANALYSIS.  THE QUESTION IS IT'S JUST -- YOU HAVE HEARD HOW I'VE FRAMED IT.  IT'S JUST ENTIRELY DIFFERENT THAN WHAT I PREVIOUSLY ORDERED.

IT'S NOT ENTIRELY DIFFERENT, BUT IT'S IN A DIFFERENT CONTEXT.  OKAY.

**MS. BAILY (BY PHONE):**  YOUR HONOR, IS THERE TIME FOR ME TO MAKE TWO QUICK POINTS REALLY QUICK?

**THE COURT:**  YES.

**MS. BAILY (BY PHONE):**  THE FIRST IS WITH RESPECT TO THE COMMON INTEREST PRIVILEGE.  IT'S MORE THAN A COMMON INTEREST PRIVILEGE.  IT'S A WORK PRODUCT PRIVILEGE. AND THE LAW IS VERY CLEAR.  155 FRD 195, 109 FRD 323, THAT DISCLOSURE OF WORK PRODUCT TO THIRD PERSONS DOES NOT AUTOMATICALLY WAIVE THE PROTECTION.  THERE HAS TO BE AN INCREASE IN THE CHANCES THAT THE ADVERSARY IN THE LITIGATION WOULD HAVE ACCESS TO THE WORK PRODUCT.  AND, OBVIOUSLY, EVERYTHING BETWEEN BARNES & NOBLE AND MICROSOFT IS VERY, VERY CONFIDENTIAL.

SO THERE IS NO WAY THAT THAT IS GOING TO HAPPEN.  SO THERE'S A VERY CLEAR WORK PRODUCT PROTECTION HERE.  THAT'S THE FIRST POINT.

AND THE SECOND POINT, JUST TO SORT OF GO BACK TO WHAT LSI

WAS SAYING EARLIER IS JUST -- I MEAN, JUST QUALITATIVELY THE NOTION THAT EVERYTHING RELATED TO A BIG INVESTMENT TRANSACTION IS RELEVANT TO A HYPOTHETICAL NEGOTIATION REGARDING A TIDBIT OF WI-FI IS JUST -- YOU KNOW, IT JUST SORT OF STRETCHES THE BOUNDS OF RELEVANCE IN LIGHT OF THE BURDEN.  AND I JUST WANTED TO REITERATE THAT POINT.

**THE COURT:**  AND THAT WAS PRETTY MUCH WHAT I WAS SAYING.  I MEAN --

**MS. DEMARCHI (BY PHONE):**  IF I MAY JUST RESPOND VERY BRIEFLY.  I WOULD ENCOURAGE THE COURT TO HAVE A LOOK SPECIFICALLY AT OUR REQUEST NUMBER 165.

**THE COURT:**  NO.  NO.  I READ THEM.  I READ THEM. THEY WERE ATTACHED TO YOUR JOINT DISCOVERY LETTER BRIEF, ECF NUMBER 145.  I LOOKED AT IT.  SO I'LL LOOK AT IT AGAIN.

OKAY.  THANK YOU GUYS.  I APPRECIATE YOU BEING AVAILABLE BY PHONE.

**MR. RIBERA (BY PHONE):**  THANK YOU.

**MS. DEMARCHI (BY PHONE):**  THANK YOU.

**MS. BAILY (BY PHONE):**  THANK YOU.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTIONS IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

SIGNATURE OF TRANSCRIBER

Kathy Wyatt

9-25-13 DATE