PAGES 1 – 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LAUREL BEELER

| | |
|---|---|
| BARNES & NOBLE, INC., AND BARNESANDNOBLE.COM, LLC, | ) ) |
| | ) |
| PLAINTIFFS, | ) |
| | ) |
| VS. | ) NO. 11-2709 EMC (LB) |
| | ) |
| LSI CORPORATION AND AGERE SYSTEMS, INC., | ) ) |
| | )  SAN FRANCISCO, CALIFORNIA |
| DEFENDANTS. | )  THURSDAY |
| | )  OCTOBER 10, 2013 |
| _____) | )  10:38 A.M. |

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**APPEARANCES**:

**FOR PLAINTIFFS:**          QUINN, EMANUEL, URQUHART &
                             SULLIVAN, LLP
                             50 CALIFORNIA STREET
                             SAN FRANCISCO, CALIFORNIA  94111
                        BY:  **MELISSA J. BAILY, ESQUIRE**


**FOR DEFENDANTS:**          FENWICK & WEST, LLP
                             555 CALIFORNIA STREET
                             12TH FLOOR
                             SAN FRANCISCO, CALIFORNIA  94104
                        BY:  **VIRGINIA K. DEMARCHI, ESQUIRE**

**FOR DEFENDANTS**           FISH & RICHARDSON
                             801 CALIFORNIA STREET
                             MOUNTAIN VIEW, CALIFORNIA 94041
                        BY:  **RAVI RANGANATH, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, TRANSCRIBER*

**APPEARANCES (CONTINUED):**


**FOR DEFENDANTS**          SIDLEY AUSTIN
                           1001 PAGE MILL ROAD
                           FIRST FLOOR
                           PALO ALTO, CALIFORNIA  94304
                      BY:  **DIANE GABL, ESQUIRE**
                           **(APPEARING TELEPHONICALLY)**

**PROCEEDINGS; THURSDAY, OCTOBER 10, 2013; 10:38 A.M.**

**THE CLERK:** CALLING CIVIL ACTION C 11-2709 BARNES & NOBLE, INC. VERSUS LSI CORPORATION, ET AL.

COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

**UNIDENTIFIED SPEAKER:** (UNINTELLIGIBLE.)

**THE COURT:** OKAY.

**MS. DEMARCHI:** VIRGINIA DEMARCHI FOR DEFENDANT LSI. AND WITH ME ATTENDING IN THE COURTROOM IS RAVI RANGANATH, AND BY PHONE DIANE GABL.

**THE COURT:** OKAY.

**MS. BAILY:** MELISSA BAILY FROM QUINN EMANUEL FOR BARNES & NOBLE.

**THE COURT:** ALL RIGHT. GREAT. YEAH.

I THINK I LEFT MY OWN CHART ON MY DESK. I'LL BE BACK IN ONE SECOND.

(PAUSE IN PROCEEDINGS.)

**THE COURT:** OKAY. SO, FIRST OF ALL, SORRY FOR THE CONFUSION ABOUT YOUR BEING HERE IN PERSON. I WAS WORKING ON IT THIS WEEKEND. I DID MY OWN CALENDARING. I PUT "TELEPHONIC, APPEAR BY COURT CALL," BECAUSE I DIDN'T KNOW THAT I COULDN'T SELF SELECT A COURTROOM WHEN I'M LIKE USING -- DOING MY OWN DOCKETING. THE DROP-DOWN MENU, I PUT IN COURTROOM C, AND LASHANDA TELLS ME I DON'T HAVE TO DO THAT.

SO WHILE I'M HAPPY TO SEE YOU HERE, I'M SORRY BECAUSE IT DRIVES UP COSTS, AND MY WHOLE ABBREVIATED DISCUSSION PROCEDURES ARE MEANT TO SPARE YOU THE TRIP, SPARE YOU THE MONEY, AND ALLOW US TO TALK.  BUT NOW I KNOW WHEN I CALENDAR IN THE FUTURE ON WEEKENDS, AS OPPOSED TO LETTING LASHANDA DO IT FOR ME, I'LL KNOW I DON'T HAVE TO SELECT MY COURTROOM FOR THE DROP-DOWN MENU.  OKAY.  USUALLY I SAY SHOW UP IN PERSON. SOMETIMES THINGS ARE SHOW UP IN PERSON, AND SOMETIMES THEY'RE JUST NOT.  BUT THAT'S FINE.

OKAY.  SO I WANTED TO -- I THOUGHT WE MIGHT AS WELL JUST GO THROUGH AND TALK THROUGH THE CATEGORIES WITH YOU A LITTLE BIT.  I MEAN, THE TENSION IN TIMING WITH DISCOVERY IS IF YOU DON'T HAVE FINANCIAL INFORMATION, CASES CAN'T SETTLE.  MY VIEW IS CASES -- IN VIEW OF PROCESS ALONG THE WAY.  THAT BEING SAID, YOU ALL HAVE POINTED TO, YOU KNOW, CERTAIN TIMING ISSUES ABOUT WHAT SETTLEMENT LIKELY IS GOING TO BE PRODUCTIVE OR NOT. SO IN THE CONTEXT OF YOUR LETTER, I JUST THOUGHT WE WOULD TALK ABOUT WHAT YOU SAID, AND THEN THAT WOULD JUST BE A HELPFUL POINT OF REFERENCE FOR ME.

SO LET ME GO BACK TO YOUR CHART.  THANK YOU FOR GIVING ME YOUR CHART.  I LOVE CHARTS.

OKAY.  SO MY OVERALL -- SO THE LAST -- IT SEEMS TO ME JULY 2014 IS LATE IN THE GAME, AND I -- I -- YOU MORE OR LESS -- SO WE'RE ALREADY ALMOST INTO 2014.

SO WHAT IS -- SO REMIND ME AGAIN OF THE STATUS OF THE

CORRECTION OF THE FINANCIAL STATEMENTS, BECAUSE MY ONLY THING IS, IS IF YOU'RE GOING THROUGH AN ORDINARY -- WEREN'T YOU AMENDING YOUR FINANCIAL STATEMENTS?  DIDN'T WE TALK ABOUT THAT? FOR CALENDAR YEAR 2012?

**MS. BAILY:**  THERE IS AN AMENDMENT WITH RESPECT TO THE AUDITED FINANCIAL STATEMENTS.

**THE COURT:**  OKAY.

**MS. BAILY:**  THAT DOESN'T REALLY AFFECT --

**THE COURT:**  OKAY.

**MS. BAILY:**  -- THE UNDERLYING DATA THAT WE HAVE BEEN PRODUCING.

**THE COURT:**  OKAY.  SO YOU PRODUCED THROUGH DECEMBER 2012.

**MS. BAILY:**  THAT'S RIGHT.  AND I GUESS --

**THE COURT:**  AND WHY ISN'T IT THAT YOU SHOULDN'T PRODUCE THROUGH -- YOU KNOW, I ALWAYS THINK DURING THE END OF THE FIRST QUARTER FOLLOWING PREVIOUS FINANCIAL YEAR, SO YOU DO FINANCIAL INFORMATION THROUGH DECEMBER 2013, AND YOU DO IT BY, YOU KNOW, THE BEGINNING OF APRIL?  I MEAN, LEAVING ASIDE THE TIMING OF THE MARKMAN HEARING, I HEAR THAT, BUT MY INCLINATION IS FINANCIAL INFORMATION HAS GOT -- AND YOU PROPOSED, I THINK, SUPPLEMENTING ON AN ANNUAL BASIS THEREAFTER.

**MS. DEMARCHI:**  YOUR HONOR, WE WERE TRYING TO BE SENSITIVE TO BARNES & NOBLE'S FISCAL YEAR, WHICH ENDS IN APRIL --

**THE COURT:** YES.

**MS. DEMARCHI:** -- AND THE TIMING OF --

**THE COURT:** GOT IT.

**MS. DEMARCHI:** -- WHEN THEY WOULD NORMALLY MAKE THEIR --

**THE COURT:** THAT'S RIGHT.

**MS. DEMARCHI:** -- FILINGS.

**THE COURT:** THAT WAS THE JULY?

**MS. DEMARCHI:** THAT'S WHY WE PICKED THROUGH THE END OF APRIL, THE END OF THEIR FISCAL YEAR, PRODUCE THAT NOW, SUPPLEMENT ON AN ANNUAL BASIS FOLLOWING THE END OF THE NEXT FISCAL YEAR.

**THE COURT:** SO THAT'S WHY YOU PICKED JULY?

**MS. DEMARCHI:** THAT'S WHY WE PICKED THOSE DATES AND WHY WE THOUGHT IT WOULD BE APPROPRIATE TO SUPPLEMENT NOW.

AND ONE OTHER CONSIDERATION IS THAT FOR SOME OF THE NEWER PRODUCTS, WE ONLY HAVE THREE MONTHS OF DATA BECAUSE, AS BARNES & NOBLE POINTED OUT, THE PRODUCTS WERE RECENTLY RELEASED. THEY WERE RELEASED IN THE LEAD UP TO THE HOLIDAY SEASON. SO WHAT WE HAVE RIGHT NOW IS PRODUCT LEVEL DETAIL THAT IS HIGHLY SKEWED. AS YOU CAN IMAGINE, THESE PRODUCTS ARE SEASONAL.

**THE COURT:** RIGHT. EXACTLY.

**MS. DEMARCHI:** SO WITHOUT SORT OF A MORE COMPLETE PICTURE FOR THE CURRENT PRODUCTS -- SOME OF THE OLDER ONES HAVE

NOW BEEN DISCONTINUED -- WE DON'T REALLY HAVE A GOOD BASIS TO ASSESS THE TRENDS AND THE ACTUALS FOR REVENUE UNITS, AND, VERY IMPORTANTLY, COSTS.  SO WE WOULD LIKE SUPPLEMENTATION NOW.

IF I JUST MAY MAKE ONE OBSERVATION?  IT'S JUST NOT ABOUT SETTLEMENT.  DOING DAMAGES --

**THE COURT:**  RIGHT, RIGHT, RIGHT.

**MS. DEMARCHI:**  -- IS VERY COMPLICATED.

**THE COURT:**  I APPRECIATE THAT, TOO.

**MS. DEMARCHI:**  WE'RE TRYING -- OUR CLIENT IS LOOKING TO US FOR ADVICE ABOUT WHAT'S AT STAKE IN THE LITIGATION AND WHAT THEY CAN EXPECT, AND THEY'RE SPENDING A LOT OF RESOURCES, AND WE FEEL LIKE IT'S RESPONSIBLE FOR US TO BE ABLE TO ADVISE THEM ALONG THE WAY ABOUT THESE ISSUES.

**THE COURT:**  ALL RIGHT.  JUST -- SO LET ME JUST -- I WAS THINKING ABOUT FISCAL YEAR.  SO YOUR FISCAL YEAR ENDS IN APRIL?

**MS. BAILY:**  RIGHT, YOUR HONOR.  SO IF I COULD ADDRESS A COUPLE OF THINGS.  SO BASICALLY --

**THE COURT:**  YEAH.

**MS. BAILY:**  I MEAN, IF WE WERE TO UPDATE OUR FINANCIAL INFORMATION THROUGH CLOSE OF THE LAST FISCAL YEAR, WE WOULD ONLY BE PROVIDING THEM FOUR MORE MONTHS OF INFORMATION. SO -- BECAUSE WE'VE ALREADY PROVIDED THROUGH --

**THE COURT:**  BUT IT WOULD BE THROUGH THE HOLIDAY SEASON.

**MS. BAILY:**  WE'VE ALREADY PROVIDED THROUGH THE HOLIDAY SEASON.  WE'VE ALREADY PROVIDED THROUGH DECEMBER 2012.  SO IT WOULD ESSENTIALLY BE FOUR MORE MONTHS OF INFORMATION.  AND I UNDERSTAND THAT THEY WOULD LIKE TO START PREPARING THEIR DAMAGES NOW.  IF I COULD JUST SAY THAT THEIR -- WE WOULD BE LUCKY TO HAVE A CLAIM CONSTRUCTION RULING BY THE TIME OF OUR PROPOSED SUPPLEMENTATION, WHICH IS AT THE END OF THE NEXT FISCAL YEAR.

SO SKIPPING THAT ONE PRODUCTION OF FOUR MONTHS WOULD SAVE US A LOT OF BURDEN, AND WE WOULD BE ABLE TO PRODUCE IT ALL UP THROUGH FISCAL -- YOU KNOW, THIS CURRENT FISCAL YEAR BEFORE A DEADLINE FOR DISCOVERY IS EVEN SET, BEFORE ANYONE EVEN THINKS ABOUT TAKING A DEPOSITION.

AND SO, IN LIGHT OF THE BURDEN -- AND I'D JUST LIKE TO SAY THAT WE'VE IDENTIFIED -- SO THERE'S NO CATEGORY HERE THAT LSI SAYS IT NEEDS MORE THAN ANY OTHER CATEGORY.  BUT WE'VE IDENTIFIED THE CATEGORIES THAT ARE NOT BURDENSOME FOR US TO PRODUCE ON A ROLLING BASIS, AND WE'VE AGREED TO DO THAT IN THIS CHART.

BUT FOR THE OTHER CATEGORIES, IT'S VERY BURDENSOME, AND IT SEEMS LIKE WHAT THEY GET OUT OF IT IS ONLY FOUR MONTHS EARLY, AND IT'S NOT EVEN THAT MUCH EARLIER THAN WE'D BE PRODUCING ALL OF THE REST OF THE INFORMATION, AND WE'D ONLY HAVE TO DO IT ONCE AND THERE'S NO DEADLINES FOR ANYTHING.

**THE COURT:**  OKAY.  I GET THAT THERE ARE NO DEADLINES.

THE ONLY ISSUE IS THAT THEY'RE JUST DIFFERENT -- THEY'RE DIFFERENT YEARS ENTIRELY, SO YOU WOULD HAVE TO DO IT, STAGE IT, START WITH ONE, MOVE TO THE OTHER.

**MS. BAILY:**  THAT'S ACTUALLY NOT TRUE IN TERMS OF THE WAY THAT THE MINUTIA --

**THE COURT:**  OKAY.

**MS. BAILY:**  -- DATA IS KEPT.

SO, YES, IT IS EASIER TO COLLECT FOR VARIOUS REASONS THE WAY THEY CLOSE OUT THE SYSTEMS AT THE END OF THE FISCAL YEAR.  BUT IN TERMS OF SORT OF THE -- IT'S NOT -- IT WOULD BE DOING THE EXACT SAME THING TWICE TO DO IT NOW AND LATER. THERE'S NO -- THERE'S NO --

**THE COURT:**  SO, REALLY, THE ONLY DIFFERENCES THAT DIVIDE YOU, THOUGH, I MEAN, IS THAT -- ALTHOUGH YOU HAVE THE ANNUAL SUPPLEMENTATION THEREAFTER, WHICH IS FINE.  I MEAN, THAT MAKES A LOT OF SENSE.

**MS. BAILY:**  YEAH.

**THE COURT:**  I MEAN, THAT'S FINE.  SO THE ONLY ISSUE THAT DIVIDES YOU IS OCTOBER NOW VERSUS JULY.

(COUNSEL SPEAKING SIMULTANEOUSLY.)

**MS. DEMARCHI:**  SORRY.  I DIDN'T MEAN TO INTERRUPT, COUNSEL.  THIS IS VIRGINIA DEMARCHI, FOR THE RECORDING.

SO WE WOULD BE DELIGHTED TO GET MORE CURRENT INFORMATION.  ALL I WAS TRYING TO EXPRESS IS AS AN ACCOMMODATION TO BARNES & NOBLE GIVEN THEIR EXPRESSED BUT

UNSUPPORTED CONCERNS ABOUT BURDEN.

AND I SHOULD NOTE I THINK THIS IS A PERSISTENT PROBLEM IN THIS CASE.  WE HAVE CLAIMS OF COUNSEL ABOUT BURDEN.  NO DECLARATION, NO ANYTHING.  IF YOUR HONOR WISHES, WE CAN SUBMIT THE DOCUMENTS WE'VE GOTTEN SO FAR.  THEY APPEAR TO BE AUTOMATED ON LARGE PART.  THESE ARE TO SOPHISTICATED, YOU KNOW, COMPANIES WITH MEANS OF TRACKING THEIR COSTS.  I MEAN, THE BURDEN COMPLAINT IS UNSUPPORTED AND, FRANKLY, IMPLAUSIBLE.

THE COURT:  SO LET'S GO THROUGH SOME OF THE CATEGORIES JUST TO GIVE POINTS OF ILLUSTRATION AND THEN -- ALL RIGHT.  SO --

MS. DEMARCHI:  WOULD IT BE HELPFUL, YOUR HONOR, FOR ME TO FRAME THE ISSUE WITH THE COSTS WITH RESPECT TO COMPONENT COST DATA?

THE COURT:  I THINK THAT'S RIGHT.  YEAH.

MS. DEMARCHI:  WE HAVE TWO CONCERNS HERE.  WE DO HAVE SOME COMPONENT COST DATA THROUGH THE END OF DECEMBER 2012, BUT THAT DATA IN ITSELF IS INCOMPLETE.  WE HAVE SOME HARDWARE AND COMPONENT COSTS, BUT WE DON'T HAVE SOFTWARE COSTS OR OTHER ALLOCATED EXPENSES.

SO OUR COMPLAINT WAS THAT WE NEEDED THE COMPLETE COSTS, BUT WE WOULD LIKE TO HAVE IT THROUGH AT LEAST FISCAL YEAR THAT ENDED IN APRIL OF THIS YEAR.

THAT, OF COURSE, IS VERY IMPORTANT FOR OUR DAMAGES CALCULATION TO BE ABLE TO UNDERSTAND WHAT ALL OF THE COST

COMPONENTS ARE IN THE ACCUSED DEVICES, ESPECIALLY IF WE ARE GOING TO BE USING SOME KIND OF COST APPORTIONMENT ANALYSIS.

SO WE WOULD LIKE TO HAVE THAT COMPLETE INFORMATION, AND WE DO -- IT APPEARS FROM THE DOCUMENTS WE HAVE THAT THIS IS MAINTAINED IN THE ORDINARY COURSE OF BUSINESS, AND THERE IS -- THERE IS REALLY NO BASIS, NO FACTUAL BASIS, FOR A FINDING THAT THIS IS SO BURDENSOME THAT IT CAN'T BE DONE THROUGH THE END OF APRIL AND THEREAFTER ON AN ANNUAL BASIS.

**THE COURT:**  LET ME JUST THINK FOR A SECOND JUST ABOUT WHAT -- I'M JUST GOING TO LOOK AT THE COST --

OKAY.  I MEAN, YOU KNOW, ON THE ONE HAND, I HAVE A JOINT LETTER PROCESS THAT IS MEANT TO SAVE PEOPLE FROM REALLY INTENSIVE DECLARATIONS TO SUBSTANTIATE WHAT REALLY IS A PRACTICAL ISSUE ABOUT WHAT IT TAKES TO DO IT, AND IT SEEMS TO ME A CONVERSATION IS EASIER TO GET AT IT.

WHY IT IS THAT COST DATA LIKE THIS, WHICH IS LIKELY TO BE AUTOMATED, KEPT IN SOME KIND OF A DATABASE THAT COULD BE SPIT OUT INTO -- YOU KNOW, IN COMMON DELINEATED FORMAT INTO SOME KIND OF ELECTRONIC FORMAT THAT CAN BE REVIEWED, WHY IS THAT SUCH A BURDEN, AND WHY IS IT THAT IT'S EASIER TO DO IT TOGETHER, AND WHAT ARE THE BURDENS THERE?

**MS. BAILY:**  SURE.  SO THERE ARE ACTUALLY A LOT OF BURDENS BECAUSE IT'S NOT ALL IN ONE DATABASE, AND IT ACTUALLY STRETCHES ACROSS DIFFERENT DIVISIONS AT BARNES & NOBLE.  SO THERE ARE ACTUAL MULTIPLE BARNES & NOBLE EMPLOYEES WHO HAVE TO

SIT DOWN AND GATHER THIS INFORMATION THROUGH DIFFERENT DATABASES.  AND IT MIGHT LOOK LIKE IT'S EASY TO PUSH A BUTTON BECAUSE WE'VE PRODUCED IT IN SUCH A WAY THAT IT'S PRETTY BECAUSE WE'RE JUST PROVIDING THE INFORMATION THAT WAS REQUESTED, BUT IT ACTUALLY TAKES A LOT OF TIME AND NUMEROUS PEOPLE AT BARNES & NOBLE TO PUT THE INFORMATION TOGETHER.

WITH RESPECT TO THIS CATEGORY IN PARTICULAR, WE'RE TALKING ABOUT 45-PLUS COMPONENTS THAT LSI WANTS COST INFORMATION ON.  THESE ARE THIRD-PARTY COMPONENTS, AND ALSO FROM DIFFERENT VENDORS THAT FEED INTO DIFFERENT DIVISIONS AT BARNES & NOBLE.

**THE COURT:**  OKAY.

**MS. BAILY:**  AND SO IT IS ACTUALLY NOT NOT BURDENSOME.

LIKE I SAID, THERE'S MULTIPLE PEOPLE AT BARNES & NOBLE.  THERE'S DIFFERENT KINDS OF COMPONENTS.  THERE'S THE SORT OF COMMODITY COMPONENTS.  THEN THERE'S THE DESIGN COMPONENTS.  AND THEY FEED INTO DIFFERENT DIVISIONS.  THEY ARE IN DIFFERENT DATABASES.

YES, AT SOME POINT YOU CAN GATHER PEOPLE AT BARNES & NOBLE AND PROVIDE THE INFORMATION.  IT IS DOABLE, AND WE WILL DO IT, BUT IT IS NOT NOT BURDENSOME.

LIKE I SAID, THERE IS INFORMATION THAT IS KEPT IN A WAY THAT WE CAN JUST CLICK A BUTTON AND PRODUCE IT.  WE'VE IDENTIFIED THOSE CATEGORIES, AND WE ARE WILLING TO PROVIDE THOSE.  WE ARE HAPPY TO PROVIDE A DECLARATION.  I'LL SAY LSI

REALLY WANTED US TO STICK TO 250 WORDS HERE, SO --

**THE COURT:**  I JUST WANTED TO -- HERE'S THE THING.  I WANT TO GO THROUGH CATEGORY BY CATEGORY JUST TO HAVE THE CONVERSATION BECAUSE I THINK IT'S IMPORTANT.

I HEAR THAT YOU'RE TELLING ME THAT THERE COULD BE SOME ECONOMIES OF PRODUCTION BY HAVING SOMEONE DO IT ONCE AND THAT IT DOESN'T MATTER NOW BECAUSE YOU'RE NOT EVEN -- YOU DON'T HAVE ANY DEADLINES AT ALL.  AND, OF COURSE, THAT CREATES ITS OWN SETS OF TENSIONS BECAUSE WITHOUT DEADLINES, THERE'S NO URGENCY, AND DEADLINES HELP YOU GET AN UNDERSTANDING OF WHAT'S AT STAKE FROM A DAMAGES PERSPECTIVE.

**MS. BAILY:**  THIS IS NOT LIKE LSI DOES NOT HAVE THE INFORMATION.

**THE COURT:**  WELL, THEY'RE SAYING THAT FOR -- I MEAN, AGAIN, I CAN'T TELL YOU.  THIS IS ONE OF THE SORT OF THINGS THAT ATTACH, HAVING SOMEONE RENDER A TOP-DOWN SOLUTION.  I CAN'T POSSIBLY KNOW THE ANSWER TO THAT.

**MS. BAILY:**  WELL --

**THE COURT:**  BECAUSE THEY SAY THEY'RE MISSING COMPONENT PARTS AND THAT THOSE MISSING -- THAT YOU'VE GIVEN SOME BUT NOT ALL, AND THAT MATTERS TO THEM IN THEIR DAMAGES ASSESSMENT, AND BECAUSE I'M NEVER GOING TO HAVE THE GRANULAR UNDERSTANDING OF YOUR DISCOVERY, I'M NEVER GOING TO BE IN A POSITION TO EVALUATE IT, AND YOU GUYS ARE JUST GOING TO END UP DISAGREEING, AND I WON'T BE ABLE TO TELL.  AND THEN WHAT I DO

IS I USE PROXIES TO SEE WHAT SEEMS REASONABLE.  AND I'M NOT SAYING WE'LL GO THROUGH THE CATEGORIES BECAUSE I COMPLETELY -- I'M NOT DISCOUNTING A SINGLE THING THAT YOU'RE SAYING.  I'M ACTUALLY NOT -- AND I HEAR IT.

IT COULD BE MORE -- IT -- DEFINITELY I CAN ASSUME BASED ON PERSONAL KNOWLEDGE OF DOING MY OWN INVESTIGATIONS THAT THERE'S ECONOMIES TO DOING IT ONCE, AND YOU WOULDN'T DISAGREE. LSI WOULDN'T DISAGREE.  AND THE ORDINARY WAY IS USUALLY ANNUAL BASIS DATA, AND YOUR -- LSI'S POINT IS, HEY, WE ARE THERE ALREADY, YOU KNOW, WE WERE THERE IN JULY OF THIS YEAR, WE'RE NOT -- SO THAT'S THE TENSION THAT WE HAVE HERE, WHERE YOU'RE BOTH RIGHT ON THOSE POINTS, AND THE QUESTION IS WHAT'S THE ANSWER.

SO LET'S JUST FOR -- TO TICK THROUGH THEM -- I MEAN, I DEFINITELY UNDER -- AND THEN THAT'S THE COST OF LITIGATION, TOO.

**UNIDENTIFIED SPEAKER:**  RIGHT.  WELL --

**THE COURT:**  SO THAT'S JUST PART OF IT.  SO, I APPRECIATE THE POINT, THOUGH, AND I OBVIOUSLY ACCEPT IT.  I DON'T THINK YOU NEED TELL ME THOSE BURDENS.  I ACCEPT THEM.  I CAN IMAGINE WHAT THEY WOULD BE.  SO THAT'S FINE FOR THE COST COMPONENTS THAT WE JUST TALKED ABOUT.

THE MONTHLY SALES DATA, AGAIN THAT DOESN'T -- I MEAN, AGAIN, FROM --

**MS. BAILY:**  WE SAID HERE THIS INFORMATION IS NOT

BURDENSOME TO DO.

THE COURT:  OKAY.

MS. BAILY:  SO WE WOULD BE WILLING TO UPDATE IT THROUGH JULY 30, 2013, BECAUSE WE ACTUALLY WENT THROUGH.

THE COURT:  BECAUSE THAT IS A PRESS-THE-BUTTON KIND OF --

MS. BAILY:  YEAH.

THE COURT:  -- APPROACH.

MS. BAILY:  I MEAN, IT'S NOT JUST PRESS THE BUTTON, BUT IT IS DEFINITELY SOMETHING THAT WE CAN DO MORE EASILY WITHOUT TAKING A LOT OF TIME FROM BARNES & NOBLE'S EMPLOYEES.

THE COURT:  OKAY.

MS. BAILY:  AND SO WE'VE AT LEAST THE TIME TO DIFFERENTIATE THE CATEGORIES.  YOU KNOW, LSI HASN'T SORT OF ENUNCIATED ANY -- BUT YOU KNOW AT THE LAST HEARING, YOUR HONOR KIND OF SAID, YOU KNOW, LIKE, TELL US WHAT YOU MIGHT NEED NOW AS OPPOSED TO LATER.

THE COURT:  RIGHT.

MS. BAILY:  YOU KNOW, LSI JUST DIDN'T DO THAT.  THEY JUST SAY THEY NEED EVERYTHING.  AND, YOU KNOW, AT LEAST WE'VE IDENTIFIED CATEGORIES WHERE IT IS LESS BURDENSOME, AND WE'RE WILLING TO DO IT.

THE COURT:  NO, I UNDERSTAND THE ARGUMENT.  I MEAN, THEIR POINT IS, LOOK, WE JUST NEED IT FOR OUR DAMAGES ASSESSMENT WHICH IS RELEVANT TO ALL SORTS OF THINGS, AND WE DO

THESE THINGS ALONG THE WAY, BECAUSE IF WE DON'T DO IT ALONG THE WAY, WE'RE NOT ADEQUATELY -- OUR CLIENT CAN'T MAKE REASONABLE DECISIONS ABOUT WHAT THEY'RE GOING TO DO IN LITIGATION.  YOUR RESPONSE IS NOTHING IS GOING TO HAPPEN AFTER CLAIMS CONSTRUCTION.

          **MS. BAILY:**  I MEAN, LOTS OF COURTS --

          **THE COURT:**  ANYWAY, BECAUSE THAT'S HOW IT ALWAYS GOES.

          **MS. BAILY:**  THAT'S WHY COURTS, YOU KNOW, BIFURCATE, YOU KNOW, DISCOVERY, AND DON'T DO NON-CLAIM CONSTRUCTION RELATED DISCOVERY UNTIL AFTER.

          **THE COURT:**  RIGHT.

          **MS. BAILY:**  WE ARE NOT SAYING THAT HERE.  WE'VE PRODUCED 13,000 --

          **THE COURT:**  I KNOW.  I HEAR --

          **MS. BAILY:**  I KNOW YOU HEAR ME.  I'M SORRY.

          **THE COURT:**  THAT'S FINE.  NOT THAT IT'S GOOD TO -- ALL RIGHT.  SO LET'S --

          **MS. DEMARCHI:**  MAY I RESPOND?

          **THE COURT:**  YES, SURE.

          **MS. DEMARCHI:**  OKAY.

          **THE COURT:**  BUT THAT PART'S EASY BECAUSE SHE'S ALREADY SAYING SHE'LL GIVE IT TO YOU THROUGH THE END OF THE MONTH.

          **MS. DEMARCHI:**  OH, NO.  I TOTALLY APPRECIATE THAT.

BUT BARNES & NOBLE WILL BE ARGUING THAT THE DAMAGES THAT WE ARE REQUIRED TO PROVE IN THIS CASE CAN'T BE BASED ON THE MONTHLY SALES AND UNITS REVENUE.

**THE COURT:** RIGHT.  SO IT COSTS THEM NOTHING TO GIVE YOU THIS DATA.

**MS. DEMARCHI:** THEY'RE GOING TO SAY YOU CAN'T USE THE ENTIRE MARKET VALUE OF THAT DEVICE.

**THE COURT:** RIGHT.

**MS. DEMARCHI:** WE NEED COSTS.  THE ENTIRE MARKET VALUE OF THE DEVICE IS NICE TO HAVE, AND WE MAY WELL BE ABLE TO MAKE AN ARGUMENT ON THAT BASIS.  BUT THEY'RE GOING TO BE ARGUING THE OPPOSITE AND AT THE SAME TIME WITHHOLDING THE INFORMATION WE NEED.

**THE COURT:** YEAH.

**MS. DEMARCHI:** SO, I MEAN, WE'RE ONLY ASKING FOR IT ANNUALLY.  I DON'T THINK THAT'S BURDENSOME.  IT'S CERTAINLY -- IT'S A CASE THAT WILL GO ON FOR A COUPLE OF YEARS, AND THERE IS NO BIFURCATION.  THERE'S NO PHASE DISCOVERY.  EVERYBODY HAS TAKEN DISCOVERY OF EVERYTHING ALL THE TIME, AND IT'S AN IMPORTANT CASE TO MY CLIENT.  WE NEED TO DECIDE HOW WE DO ABOUT OUR RESOURCES.

**THE COURT:** OKAY.  ALL RIGHT.  SO -- SO MONTHLY -- ON THE PLUS SIDE, IT HELPS ME UNDERSTAND YOUR LITIGATION A LITTLE BETTER JUST TO HAVE THE CONTEXT OF YOUR DAMAGES, NOT THAT IT MATTERS, SINCE I'M NOT EVEN THE DECISION MAKER.  BUT EVERY CASE

IS AN EDUCATION, RIGHT?

SO LET'S SEE.  SO THAT'S THE SALES DATA.

THE DOWNLOAD DATA BY DEVICE FOR DIGITAL CONTENT, AND WHY DOES THAT --

**MS. DEMARCHI:**  SO WE HAVE TWO CATEGORIES OF DOWNLOAD DATA.

**THE COURT:**  YEAH.

**MS. DEMARCHI:**  IF I COULD -- MAYBE WE CAN TAKE THE TWO --

**THE COURT:**  OKAY.

**MS. DEMARCHI:**  -- CATEGORIES TOGETHER.  IT MIGHT BE EASIER TO EXPLAIN THEM THAT WAY.

SO WE HAVE -- CONTENT IS AN ISSUE IN A COUPLE OF WAYS.  IT MAY BE PART OF THE BASE FOR CERTAIN CLAIMS, AND IT MAY BE PART OF THE VALUE OF THE PATENT AS THE CONVOY SALE ASPECT OF IT.  THERE'S DEVISE-BASED INFRINGEMENT, AND THERE'S INFRINGEMENT BASED ON USE OF THE IN-STORE WIRELESS FUNCTIONALITY IN THE BARNES & NOBLE STORE.

**THE COURT:**  OKAY.

**MS. DEMARCHI:**  SO THE FIRST CATEGORY TALKS ABOUT DEVICE-BASED DOWNLOADS THAT RELATE TO THE DIFFERENT PATENTS. AND SO WE NEED THE REVENUE FOR THE DIGITAL CONTENT THAT IS PURCHASED AND DOWNLOADED ON THE NOOK, THE CASE NOOK DEVICES. THAT'S THE FIRST CATEGORY.

**THE COURT:**  THEN THE SECOND CATEGORY IS ABOUT THE

IN-STORE WIFI?

MS. DEMARCHI:  THE SECOND CATEGORY -- I SHOULD MENTION THERE'S ONE OTHER ASPECT OF THIS FOR THE AUDIO PATENTS, THE '730 GREWE PATENT, THAT PATENT IS DIRECTED TO THE AUDIO FORMAT, SO THE FORMAT OF THE FILE ITSELF.  SO IT'S -- IT'S NOT TIED TO WHETHER THE DOWNLOAD IS DONE BY A DEVICE OR IN-STORE WIRELESS.  IT JUST HAS TO DO WITH THE FORMAT OF THE FILE THAT'S SOLD ANYWHERE BY BARNES & NOBLE.  SO IT'S MAYBE A THIRD FEATURE.

THE COURT:  OKAY.

MS. DEMARCHI:  SO FOR THIS NEXT CATEGORY WE WANT MONTHLY DOWNLOADS OF THE MULTIMEDIA BOOKS AND THE MP3 AUDIO FILES IRRESPECTIVE OF DEVICE.

THE COURT:  OKAY.

MS. DEMARCHI:  NOW, IT MAY BE THAT THERE'S SOME OVERLAP.  THERE WILL BE AUDIO BOOKS THAT ARE DOWNLOADED BY A NOOK DEVICE AND AUDIO BOOKS THAT ARE NOT, AND WE NEED TO ACCOUNT FOR THAT OVERLAP.  SO THE INFORMATION HAS TO BE SUFFICIENTLY DETAILED, BUT WE NEED BOTH KINDS OF DATA.  THIS IS MATERIAL THAT BARNES & NOBLE HAS SUPPLIED BEFORE.  IT HAS NOT SUPPLIED VIDEO CONTENT SPECIFICALLY BEFORE, WHICH IS DIRECTED TO THE NEWER PATENTS -- I'M SORRY -- THE NEWER PATENTS AND THE NEWER ACCUSED PRODUCTS THAT HAVE VIDEO CONTENT.  BUT WE NEED BOTH FORMS OF DIGITAL DOWNLOAD DATA.

THE COURT:  OKAY.  SO TELL ME ABOUT THE BURDENS HERE,

THE ECONOMIES OF DOING IT TOGETHER VERSUS THE BURDENS OF DOING IT SEPARATELY.

**MS. BAILY:** SURE.  CAN I JUST MAKE ONE COMMENT --

**THE COURT:** SURE.

**MS. BAILY:** -- FIRST --

**THE COURT:** OKAY.

**MS. BAILY:** -- AND THEN I'LL TALK ABOUT THAT.

**THE COURT:** OKAY.  SURE.

**MS. BAILY:** I MEAN, THIS SORT OF ILLUSTRATES HOW PREMATURE THIS IS.  I MEAN, THE VIDEO PATENTS WEREN'T JUST ADDED TO THE CASE, RIGHT?  I MEAN, THE NOTION THAT DAMAGES DISCOVERY NEEDS -- YOU KNOW, NEEDS TO SNAP YOUR FINGERS AND HAVE DAMAGES DISCOVERY WHEN LSI IS STILL ADDING PATENTS TO THE CASE AND WE'RE JUST EXCHANGING CLAIMS TERMS FOR CONSTRUCTION JUST -- IT JUST STRIKES ME AS LSI INTENTIONALLY TRYING TO INFLICT BURDEN ON BARNES & NOBLE.

AND THE REASON WHY I SAY THAT IS BECAUSE DOING THIS FOR A YEAR NOW, WITH, YOU KNOW, THE SORT OF DEMANDS THAT WE SNAP OUR FINGERS AND PRODUCE EVERYTHING.

AND SO, YOU KNOW, I THINK I SEE IT IN PROBABLY A DIFFERENT PERSPECTIVE THAN YOU DO, BUT THAT'S REALLY HOW BARNES & NOBLE SEES IT.

I MEAN, I JUST WANTED TO SAY WHEN THE VIDEO -- YOU KNOW, PATENTS ARE BEING ADDED, AND THE NOTION THAT WE SHOULD JUST PRODUCE ALL THE DAMAGES DISCOVERY AND SPEND ALL THE TIME

AND ENERGY DOING THAT, YOU KNOW, WITHIN, YOU KNOW, FIVE MINUTES OF THE ADDITION OF THE PATENTS JUST SEEMS A LOT.

THE BURDEN HERE IS -- LIKE LSI'S COUNSEL MENTIONED, THEY'VE REQUESTED VERY DETAILED INFORMATION, AND LIKE LSI'S COUNSEL MENTIONED, WE'VE DONE THE WORK TO GET THAT TO THEM THROUGH DECEMBER 2012 IN ALL THE DETAIL THEY'VE REQUESTED.

THE DIFFERENT KINDS OF DOWNLOADS AND REVENUE DATA ARE KEPT SEPARATELY AT BARNES & NOBLE.  IT'S NOT A PUSH-THE-BUTTON KIND OF COLLECTION OF INFORMATION.  THERE'S REBATES AND RETURNS THAT GO INTO A DIFFERENT DATABASE THAT THEN HAVE TO BE COMPILED INTO THE MASTER.

IT'S -- YOU KNOW, I DON'T FRANKLY KNOW ALL OF THE DETAILS.  I KNOW IT'S NOT A PRESS-YOUR-BUTTON KIND OF THING AT THE LEVEL OF DETAIL THAT THEY'RE ASKING FOR.  YOU KNOW, THERE MIGHT BE A GREATER GENERAL -- GENERALIZATION WHERE YOU COULD PRESS A BUTTON.  I DON'T KNOW WHAT THAT IS.  I'M WILLING TO FIGURE OUT WHAT THAT IS.

**THE COURT:** JUST SO YOU KNOW, I MEAN, FOR ANY OF THIS THAT REQUIRES, YOU KNOW, YOU TO GO OUT AND GATHER IT AND DO IT, I WOULDN'T -- EVEN ACCEPTING LSI'S ARGUMENT, I WOULDN'T IMPOSE TIMING THAT WOULD CREATE SOME KIND OF AN URGENCY, JUST BECAUSE IT'S JUST NOT PRACTICAL.  I MEAN, THE REAL DIFFERENCE THAT WE'RE TALKING HERE IS DO YOU GET IT, YOU KNOW, AROUND THE TIME -- I MEAN, THE WAY I'M THINKING IS, THE WAY IT WORKS, DO THEY GET IT FOR YOU KNOW THE FISCAL YEAR APRIL 2013, DO THEY

GET THAT IN AROUND MARCH OR APRIL 2014 AS OPPOSED TO JULY?  I MEAN, THAT'S -- JUST BECAUSE I JUST DON'T THINK -- IT'S ALREADY THE END OF OCTOBER BY THE TIME WE FINISH TODAY.  I'M KIND OF EXAGGERATING FOR LITERARY EFFECT.  BUT IT'S JUST GOING TO TAKE TIME, AND IT WOULDN'T BE YOU GET IT SOMETIME EARLIER IN 2014, WHATEVER THAT TIMING IS THAT'S REASONABLE, AS OPPOSED TO DO YOU GET IT ALL IN JULY.

AND SO -- BUT MY REACTION, I MEAN STILL HEARING YOUR ARGUMENTS, WAS THAT, YOU KNOW, THAT'S WAS KIND OF THE -- YOU KNOW, I WASN'T GOING TO SAY, IT'S ALL GOT TO BE DONE LIKE BY THE END OF NOVEMBER.  I WASN'T GOING TO DO THAT.

**MS. BAILY:**  THAT'S MUCH APPRECIATED, BECAUSE THAT'S THE TYPICAL LSI POSITION, IS THAT, YOU KNOW, WE BE DONE BY OCTOBER 15TH, OR OCTOBER 20TH, OR -- AND, YOU KNOW, AND THEN WE GET INTO THE HOLIDAY SEASON.  AND FRANKLY, THE PEOPLE WHO NEED TO --

**THE COURT:**  WHAT ENDS UP HAPPENING FROM THE CLIENT'S PERSPECTIVE I COMPLETELY UNDERSTAND, BECAUSE I ACTUALLY HAD ONE OF THESE CASES -- NOT BARNES & NOBLE, BUT, YOU KNOW, I KNOW HOW IT WORKS.  EVERYTHING GETS DONE A WHOLE YEAR IN ADVANCE FOR THE HOLIDAY SEASON, AND WHEN YOU START TO TALK TO CLIENTS ABOUT HAVING TO DO STUFF AROUND THE -- YOU HAVE YOUR PERSPECTIVE, TOO.  I GET IT.

BUT WHEN THEY LITERALLY START TO FLIP OUT AND THEN THAT'S WHAT -- AND THEN THAT, OF COURSE, THAT ALL GETS VISITED

ON YOU WHO'S HANDLED IT FOR A WHOLE YEAR.

**MS. DEMARCHI:**  YOUR HONOR?

**THE COURT:**  THEY STAGED THIS A YEAR IN ADVANCE. THAT'S OKAY, BUT I UNDERSTAND.

**MS. DEMARCHI:**  MAY I ACTUALLY SPEAK FOR LSI INSTEAD HAVING COUNSEL SAY WHAT MY POSITION IS?

**THE COURT:**  RIGHT.

**MS. DEMARCHI:**  SO THIS DISCOVERY HAS BEEN SOMETHING WE HAVE BEEN ASKING FOR FOR MANY MONTHS.  IF IT'S A CRISIS NOW BECAUSE IT'S APPROACHING THE HOLIDAY SEASON, IT'S A CRISIS OF THEIR OWN MAKING.

WHEN WE HAD TO HAVE DISCOVERY OF THIS MATERIAL BEFORE THE NEW PATENTS WERE ADDED BUT BEFORE THE MEDIATION THAT WAS COURT ORDERED AT THE END OF THE YEAR, IT DID NOT REQUIRE SIX MONTHS' TIME FOR BARNES & NOBLE TO PROVIDE IT.

**THE COURT:**  WHEN WAS YOUR MEDIATION AGAIN?

**MS. DEMARCHI:**  I BELIEVE IT WAS IN JANUARY.

**THE COURT:**  OKAY.

**MS. DEMARCHI:**  OF THIS YEAR.  SO JUDGE MICHEL JUST SAID, LOOK, THIS IS IMPORTANT INFORMATION, YOU'VE GOT TO PROVIDE IT, AND WE GOT IT.  THE MATERIAL WE HAVE NOW IS STAMPED FRE 408, SO WE'RE NOT ALLOWED TO USE IT EXCEPT FOR MEDIATION. THEY SAID, OH, WE'LL TAKE THAT NUMBER OFF.

BUT THIS IS NOT SOMETHING THAT REQUIRES SIX MONTHS, NOR HAVE WE DEMANDED IT BE DONE WITHIN TWO WEEKS AS A MATTER OF

COURSE.

THE COURT:  NO, I UNDERSTAND.

MS. DEMARCHI:  WE HAVE BEEN ASKING FOR IT FOR MONTHS AND MONTHS AND MONTHS.

AND AS TO THE AMENDMENT OF THE COMPLAINT TO ADD THE NEW PATENTS, THAT WAS DONE IN JULY OF THIS YEAR BY CONSENT.

THE COURT:  RIGHT.  I DO UNDERSTAND.  I DO UNDERSTAND.  I DO UNDERSTAND THAT, AND I DO GET THE CONTEXT.  I ALSO KNOW THE WAY THIS RETAIL MARKET WORKS.  I JUST KNOW IT BECAUSE I LITERALLY HAD THE SAME CASE WITH A DIFFERENT KIND OF E-READER DEVICE.  BUT, I MEAN, THEY ARE -- IT ALL AMPS UP A FULL YEAR IN ADVANCE.  SO FOR CHRISTMAS 2013, IT AMPS UP IN SEPTEMBER OR EARLIER, 2012.  AND THE TIMING RIGHT NOW IS WHAT'S CAUSING THE ANXIETY, AND THAT'S -- AND I KNOW YOU'RE SAYING THAT'S TOO BAD.

MS. DEMARCHI:  IT'S OF THEIR OWN --

THE COURT:  -- TOO BAD, WE BROUGHT IT UP FOR A LONG TIME.

MS. DEMARCHI:  IT'S OF THEIR OWN CREATION.  AND THE PEOPLE WHO ARE RESPONSIBLE FOR MARKETING AND SELLING THIS DEVICE ARE NOT THE PEOPLE IN ACCOUNTING --

THE COURT:  RIGHT.

MS. DEMARCHI:  -- CREATING THE SPREADSHEETS.

THIS IS WHY IT'S A PROBLEM THAT THERE'S NO DECLARATION EVIDENCE HERE.  THEY'RE RELYING -- THE COURT IS

BEING IN A POSITION OF RELYING ON COUNSEL WHO CONCEDES SHE DOESN'T KNOW ALL THE DETAILS.  AND IT'S VERY DIFFICULT TO MAKE FINDINGS OF FACT ON THAT BASIS.

**THE COURT:**  NO.  I UNDERSTAND.

**MS. DEMARCHI:**  AND, FRANKLY, WHEN LSI WAS IN A SIMILAR POSITION WITH RESPECT TO THE LICENSE AGREEMENTS, THE COURT REQUIRED US TO SUBMIT A DECLARATION.

**THE COURT:**  NO, I UNDERSTAND.

**MS. DEMARCHI:**  AND WE DID.

**THE COURT:**  I MEAN, OF COURSE, FOR ME -- AND, AGAIN, I APPRECIATE YOUR POINT, WHICH IS THAT YOU'RE RELYING ON WHAT THE CLIENT TELLS YOU AND THAT'S DIFFERENT THAN SUBMITTING A DECLARATION UNDER PENALTY OF PERJURY.  I BELIEVE, BECAUSE I JUST DO IT IN MY OWN CASES, THAT ALMOST EVERYTHING IS CAPABLE OF BEING CASE MANAGED TO A REASONABLE RESULT.  IF IT IS NOT BY LITIGATION, THAT'S THE THING ABOUT DISCOVERY REFERRALS, IT'S NOT.  SO MAYBE SOME OF THE PROXIES I IMPOSE TO KIND OF SPEED US THROUGH AND NOT REQUIRE YOU GUYS TO SPEND THE TIME TO DO THOSE DECLARATIONS, THEY'RE MEANT TO BE PRACTICAL AND STILL GET YOU THE INFORMATION YOU NEED AT THE TIME THAT YOU NEED IT.

AND THE TRUTH OF IT IS YOUR DAMAGES EXPERT -- LET'S SAY I WERE TO SAY -- AND YOU ARE STARTING TO DO ROLLING REVIEW OF THINGS, AND IF I WERE GOING TO SAY, OKAY, FINE, BEGINNING OF DECEMBER, WHICH I'M NOT SAYING I'M GOING TO DO, YOUR GUY IS NOT GOING TO LOOK AT IT UNTIL JANUARY 15TH AT THE BEGINNING, AND

PROBABLY DOESN'T EVEN WANT TO LOOK AT IT UNTIL THEN. AND SO THE TIMING OF THESE ISSUES PRACTICALLY AND ARE UTILITY TO YOU. I JUST PREFER TO DO THEM -- I MEAN, LOOK, YOU KNOW WITH THE LICENSING AGREEMENTS, YOU KNOW, I UNDERSTAND THAT ISSUE, AND I DO UNDERSTAND THE ISSUE, AND, OF COURSE, WE GOT IN DISCOVERY INTO THE AREAS WHERE NO LAWYER WANTS ANY OPPOSING PARTY TO GET INTO, SO -- AND I GET -- AND THERE'S THAT TENSION IN THAT -- IN THAT CONTEXT TOO. BUT I BELIEVE THAT IS SLIGHTLY DIFFERENT THAN FOR THE PRACTICAL REALITIES OF HOW INFORMATION GETS PRODUCED WITH AN ONGOING BUSINESS. AND I FEEL LIKE IT DOESN'T NECESSARILY HAVE TO BE GROUNDED IN THAT KIND OF FACT RECORD. SO THAT'S FINE.

SO LET'S JUST MOVE ON TO THE CATEGORIES, AND THEN WE'LL COME BACK TO THAT POINT AT THE END.

SO WE GOT THROUGH THE TWO MONTHLY DOWNLOADS. MONTHLY SUBSCRIPTION AND SINGLE-ISSUE DOWNLOADS.

**MS. DEMARCHI:** AGAIN, THIS IS JUST A REQUEST FOR SUPPLEMENTATION. WE DON'T UNDERSTAND THAT THERE'S ANY OBJECTION TO HAVING IT BE PROVIDED. THERE IS THIS, AGAIN, UNSUPPORTED ALLEGATION OF BURDEN. BUT, AGAIN, THIS WAS A MATERIAL THAT WAS ORDERED TO BE PROVIDED FOR THE SETTLEMENT THAT WE DID WITH JUDGE MICHEL, THE MEDIATION, AND, YOU KNOW, IT WASN'T THAT HARD AT THE TIME. SO, AGAIN, IT'S SOMETHING THAT WE FIND A VERY SKEPTICAL AND PLAUSIBLE CLAIM.

**THE COURT:** OKAY. SO HERE'S WHAT I THINK I WOULD

LIKE TO DO -- I MEAN, I WOULD PREFER TO CASE MANAGE IT, BUT IT'S NOT MY CASE.  AND POOR JUDGE CHEN, YOU KNOW, MY JOB IS TO TRY TO FIX THINGS HERE, IF I CAN, SO YOU DON'T HAVE TO GO THERE.

SO WHY DON'T YOU PROVIDE A SUPPLEMENTAL -- I'M SORRY TO DO THAT TO YOU, BUT JUST DO A SMALL SUPPLEMENTAL DECLARATION, IF YOU CAN, ADDRESSING BY CATEGORY THE BURDEN ISSUES.  WHAT DO YOU THINK -- I MEAN, WHAT DO YOU THINK IS A REASONABLE AMOUNT OF TIME TO PROVIDE THAT?  TWO WEEKS?

**MS. BAILY:**  I THINK WE CAN DO IT IN TWO WEEKS, YES, YOUR HONOR.

**THE COURT:**  OKAY.  SO WHY DON'T WE DO TWO WEEKS?  AND JUST A DECLARATION -- I MEAN, YOU'VE GOT THE CATEGORIES HERE. I WOULD SUGGEST THAT YOU REFER TO THE CATEGORIES IN YOUR DECLARATION AND JUST PUT THE SUPPORTING FACTS TO -- YOU KNOW, JUST A LITTLE BIT MORE ROBUST.  AND IF THERE ARE MULTIPLE CATEGORIES TO WHICH THAT APPLIES, SAY IT.

YOU CAN -- UNLESS CONVINCED -- BUT YOU'VE ALREADY SAID IT, ABOUT THE ECONOMIES OF DOING IT TOGETHER, BECAUSE IN THE END I THINK THAT ANNUAL DATA MAKES GOOD SENSE HERE, AND -- BUT PROVIDE MORE EXPLICITLY WHAT THE BURDENS ARE.  WHY DON'T YOU DO THAT.

AND THEN FROM LSI'S PERSPECTIVE, WHAT THEY SAY THE BURDENS ARE -- WHAT I PROPOSE DOING -- TODAY IS THE 10TH.  SO THAT MEANS IT WOULD BE DUE ON THE 24TH.  AND THEN MAYBE WE JUST

HAVE A TELEPHONE CALL ABOUT IT AFTERWARDS, JUST -- AND YOU'LL FILE IT.  YOU'LL GIVE IT TO ME.  YOU'LL HAVE IT.  YOU'LL LOOK IT AT.  AND THEN WE'LL JUST GET ON THE PHONE AND JUST HAVE A FOLLOW-UP CONVERSATION ABOUT THIS.

**MS. DEMARCHI:**  SO YOU'D RATHER NOT HAVE LSI RESPOND TO THE DECLARATION ANYWAYS?

**THE COURT:**  DO YOU NEED TO -- HOW WOULD YOU RESPOND TO THEIR BURDEN ARGUMENTS EXCEPT BY ARGUMENT?  TELL ME IF YOU THINK THAT YOU HAVE A RESPONSE.

**MS. DEMARCHI:**  SO, FOR EXAMPLE, IF WHAT THEY SAY IS NOT -- YOU KNOW, IF THEY'RE MAKING AN ARRANGEMENT THAT'S BURDENSOME AND A PERSON'S EXPLANATION IS IT'S BURDENSOME BECAUSE I HAVE TO DO WORK, AND IT'S REALLY NOT BURDENSOME, YOU CAN TELL THAT FROM THE DECLARATION, CERTAINLY THAT'S SOMETHING WE CAN ADDRESS IN A HEARING.  I'M NOT GOING TO HAVE ANY INFORMATION ABOUT HOW THEIR COMPANY WORKS, BUT --

**THE COURT:**  I JUST THINK YOU WOULDN'T NECESSARILY HAVE A FACT DECLARATION.

**MS. DEMARCHI:**  NO.  WE WOULD NOT BE SUBMITTING A FACT DECLARATION.

**THE COURT:**  YOU WOULD HAVE AN ARGUMENT.

**MS. DEMARCHI:**  WOULD MERELY BE SAYING, YOU KNOW, THIS DECLARATION ISN'T SUPPORTING WHAT THEY CLAIM IT SUPPORTS.

**THE COURT:**  MAYBE IT WOULD BE EASIER FOR US JUST TO TALK THROUGH IT.

**MS. DEMARCHI:**  THAT WOULD BE FINE.

**THE COURT:**  AND THAT GIVES YOU YOUR POINT OF REFERENCE, YOU SAY, HEY --

**MS. DEMARCHI:**  YEAH.

**THE COURT:**  -- YOU MADE ME DO FACTS, LET THEM DO FACTS.

**MS. DEMARCHI:**  AND IT'S NOT JUST TO INFLICT --

**THE COURT:**  NO, I UNDERSTAND.  I UNDERSTAND.

**MS. DEMARCHI:**  IT REALLY IS BASED ON OUR PAST EXPERIENCE WITH THIS WHEN WE WERE -- WHEN THEY WERE REQUIRED TO DO IT FOR MEDIATION.

**THE COURT:**  YEAH.

**MS. DEMARCHI:**  AND THE FACT THAT THERE ARE DIFFERENT EMPLOYEES IN THE ORGANIZATION RESPONSIBLE FOR SELLING THE DEVICE AND DOING THE ACCOUNTING RELATING TO IT --

**THE COURT:**  OKAY.

**MS. DEMARCHI:**  -- IT JUST STRIKES ME THAT THE HOLIDAY SEASON APPROACHING IS REALLY NOT A GOOD EXCUSE.

**THE COURT:**  EXCEPT FOR I HAVE SEEN --

**MS. DEMARCHI:**  HOW LONG IT'S --

**THE COURT:**  I HEAR YOU.  I DO HEAR YOU.  I KNOW FROM THE LAWYER'S PERSPECTIVE THERE'S KIND OF LIKE, TOUGH, HERE IT IS.

I WILL TELL YOU THAT ON THE BARNES & NOBLE END, WHEN YOU GO TO TALK TO THEM, DOING ANYTHING JUST INSPIRES PANIC.

WHETHER THAT'S FAIR OR NOT, WHETHER THEY BOUGHT IT OR NOT -- AND, OF COURSE, IT'S NOT THE HIGH LEVEL PEOPLE WHO HAVE TO BEAR THE BURDENS OF IT.  IT'S THE PEOPLE -- IT'S THE REGULAR PEOPLE WHO GET PAID NORMAL SALARIES, NOT THE LAWYERS, NOT EVEN YOU AT THE END OF THE DAY, BECAUSE THEY'LL BE PROVIDING IT TO YOU IN NICE PRETTY FORMAT THAT YOU CAN TURN OVER, SO ALL THE PAIN THAT'S GOING TO BE FELT IS GOING TO BE VERY MUCH ON THE -- YOU KNOW, THAT LEVEL.

SO I WILL TELL YOU THAT -- SO HERE'S WHAT WE'LL DO -- YOU KNOW, I'M NOT SAYING YOU'RE WRONG.  I DON'T THINK YOU'RE WRONG.

WHAT I WOULD SUGGEST YOU DO IS YOU TALK TO YOUR CLIENTS, BECAUSE MY PROPOSAL WOULD BE TO PRODUCE IT IN -- FOR THE 2013 DATA, EXCEPT FOR THE STUFF YOU SAID YOU'LL PRODUCE NOW, WHICH YOU SHOULD PRODUCE NOW.  YOU SHOULD GET THAT GOING NOW.  YOU SAY THAT'S NOT GOING TO BE ENOUGH, FAIR ENOUGH.  BUT YOU PRODUCE THAT NOW.

FOR THE 2013 DATA, MY INCLINATION WOULD BE TO PRODUCE IT IN FEBRUARY, MID FEBRUARY.  WHAT I WOULD SUGGEST IS YOU TALK TO YOUR CLIENTS, AND I PROBABLY NO MATTER WHAT -- I MEAN, JUST BECAUSE OF THE REALITIES OF IT, I HEAR THE DOCUMENTS, BUT I JUST THINK IT'S NOT REALISTIC.  IT'S BETTER TO HAVE IT DONE PROPERLY ON A FIXED TIMELINE AND THAT'S GOING TO BE CONSISTENT WITH YOUR EXPERT'S AVAILABILITY ANYWAY.  SO THAT'S MY INCLINATION.

IF YOUR CLIENT CAN LIVE WITH THAT COMPROMISE, YOU DON'T HAVE TO DO THE -- YOU DON'T HAVE TO DO THE DECLARATION, BECAUSE THAT WILL BE THE ORDER.  I'LL WRITE A LITTLE SOMETHING SAYING THAT.  AND THEN YOU CAN -- HOW LONG DO YOU THINK -- YOU SHOULD -- YOU'VE GOT A LITTLE BIT OF TIME BECAUSE YOUR DECLARATION IS NOT DONE IN TWO WEEKS, BUT I SUGGEST YOU SEE IF YOU CAN'T WORK IT ON CLIENT LEVEL NOW.

AND THEN -- BECAUSE I JUST -- AGAIN, MAYBE IT'S JUST WRONG OF ME TO TAKE MY OWN INFORMATION FROM THE CASE THAT I HAD TO LAY IT ON HERE, BUT I THINK IT'S A -- YOU KNOW, GIVEN THE KIND OF DISCRETIONARY ASPECT OF HOW ONE ORDERS DISCOVERY AND THE CONTEXT OF THE DEADLINES HERE, I THINK I CAN DO IT ON THIS RECORD.

THAT BEING SAID, IF YOU HAVE TO DO THE DECLARATION, WHICH IS PROBABLY GOING TO GET YOU THERE ANYWAY, MAYBE YOUR CLIENT WILL, YOU KNOW, JUST BE ON BOARD WITH THIS APPROACH.  IT WILL BE CHEAPER, ET CETERA.  THEN YOUR DECLARATION WILL BE OTHERWISE DUE IN TWO WEEKS.

IF -- I SUPPOSE -- I THINK -- MY GUESS IS, BUT YOU CAN TELL ME SOMETHING DIFFERENT AFTER YOU SEE IT, IF THEY GO THAT APPROACH AND YOU THINK IT'S WORTH, YOU KNOW, FILING A SUPPLEMENTAL -- SOME KIND OF RESPONSE, BUT MY GUESS IT WILL BE ARGUMENT NOT FACT, MY GENERAL THING WOULD BE A WEEK LATER I'D TALK TO YOU ON THE PHONE ABOUT IT JUST TO KIND OF GO THROUGH THE ARGUMENTS.

IF YOU THINK THAT, AFTER REVIEWING IT, THERE'S SOMETHING ELSE THAT'S MORE USEFUL, LIKE YOU THINK YOU WANT TO FILE SOME SORT OF SUPPLEMENTAL DECLARATION ABOUT HOW THIS MAKES NO SENSE, I HAVE NO OBJECTION TO THAT. WE'LL JUST WORK OUT THE DEADLINES LIKE ONE WEEK AFTER THAT. SO YOU'LL DO ONE WEEK AFTER THAT, AND I'LL TALK TO YOU A WEEK AFTER THAT.

**MS. BAILY:** SURE. YOUR HONOR, JUST TO BE CLEAR, WHEN THEY'RE THE CATEGORIES THAT WE'VE AGREED TO PRODUCE, AND YOU SAID TO PRODUCE THEM NOW --

**THE COURT:** NOW, OCTOBER. RIGHT, EXACTLY. REASONABLY -- TWO WEEKS?

**MS. BAILY:** RIGHT.

**THE COURT:** THIS IS OCTOBER.

**MS. BAILY:** SOMETIMES WE GET LIKE A LETTER FROM LSI A WEEK AFTER YOUR ORDER, WHY HAVEN'T YOU PRODUCED 732,000 CODES?

**THE COURT:** I WILL BE MORE SPECIFIC.

**MS. DEMARCHI:** A DEADLINE FOR PRODUCTION WOULD BE HELPFUL BECAUSE WE DO OFTEN HAVE TO GO BACK TO BARNES & NOBLE TO GET COMPLIANCE.

**THE COURT:** YES, I WILL DO THAT, AND I WILL TICK OUT A LITTLE ORDER THAT WILL TAKE CARE OF IT. AND THANK YOU VERY MUCH FOR COMING.

**MS. DEMARCHI:** THANK YOU.

**MS. BAILY:** THANK YOU, YOUR HONOR.

**THE CLERK:** THAT CONCLUDES COURT CALL. THANK YOU.

(PROCEEDINGS ADJOURNED AT 11:12 A.M.)

**CERTIFICATE OF TRANSCRIBER**

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTIONS IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

_____

JOAN MARIE COLUMBINI

MONDAY, OCTOBER 21, 2013