Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

| | | |
|---|---|---|
| BARNES & NOBLE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. C11-2709 EMC |
| | ) | |
| LSI, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

SAN FRANCISCO, CALIFORNIA
TUESDAY, APRIL 22, 2014

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES:**

For Plaintiff:          Quinn Emanuel Urquhart & Sullivan
                        50 California Street, 22nd Floor
                        San Francisco, CA 94111
                 BY:    **DAVID EISEMAN, ATTORNEY AT LAW**
                        **CARL ANDERSON, ATTORNEY AT LAW**

For Defendant:          Fenwick & West LLP
                        Silicon Valley Center
                        801 California Street
                        Mountain View, CA 94041-2008
                 BY:    **CHARLENE MORROW, ATTORNEY AT LAW**
                        **HECTOR RIBERA, ATTORNEY AT LAW**
                        **ADAM LEWIN, ATTORNEY AT LAW**

Transcribed:            Carrie E. McKee-Parks
                        Transcriber 510-637-9897
                        McKee-Parks65@att.net

Tuesday April 22, 2014                                    9:34 a.m.

                    P R O C E E D I N G S

                         ---oOo---

          THE CLERK:  Calling case C112709; Barnes & Noble v. LSI.

     Counsel, please come to the podium and state your name for the record.  And state your name before you speak, too.  Thank you.

          MR. EISEMAN:  Morning, your Honor.  David Eiseman and Carl Anderson from Quinn Emanuel on behalf of Barnes & Noble.

          THE COURT:  Okay.  Thank you.

          MS. MORROW:  Good morning, your Honor.  Charlene Morrow, Hector Ribera, and Adam Lewin for LSI Corporation and Agere Systems.

          THE COURT:  All right.  Good morning.

     Are you all telling me that after construing 13 claims, there's -- nothing has advanced in this litigation?

          MS. MORROW:  No, your Honor.  We think we should be able to move for summary judgment on four of the nine patents in suit.  We think that as a result of the Court's claim construction, the Court has material need (phonetic) advance the status of the case.

     And we think that as a result of the Court's claim construction, LSI is well positioned to move for summary judgment of infringement on four of the nine asserted patents.

Those would be the Chow (phonetic) 087, the Winger (phonetic) 663, the Seshadri 420, and the Old (phonetic) 006.  And I'd like to briefly explain that if I could.

With regard to the Chow, which is the patent on the Mpeg deodar with unified memory, the Court ruled against Barnes & Noble on the two claim limitations they wanted to read in, which were a single piece of silicon and only the exclusive use of the memory in the system.

And since the Court rejected those arguments and there's no dispute about how the product otherwise operates, I think Chow is well situated for summary judgment.

Similarly, with regard to the Winger (phonetic) patent, that's the patent on coding video signals.  And you may recall Mr. Schumann showing you a figure from the patent -- on the 663 patent, which showed it had small words that uniry (phonetic) coding and larger code words; got the exponential galon (phonetic) coding at pendidus (phonetic) as well.

And in the accused products, the same -- exact same process is used so we think there's going to be no question with regard to infringement on that one.

With regard to the Seshadri patent, the Court rejected Barnes & Noble's argument that you have to separate the segments of the signal into separate segments prior to transmission.

And the only thing that's left in terms of a dispute on

claim construction is what, more or less, significant bits are; although, we think that's something the Court could rule on in connection with the summary judgment motion.  It's either plain meaning or plain English, but what's more or less significant isn't something the Court needs to hold a separate margin for.

And then finally with regard to the Old (phonetic) patent, the Old (phonetic) 006; that's the two part sync scheme for video decoding; the Court ruled on further parsing and rejected the argument that that also included translation.

And we think the only remaining claim construction dispute that would be relevant to the claims would be moving on this, what is an Mpeg format.

And the only issue there is that Barnes & Noble is trying to limit the claim to exactly the Mpeg version that was described in the specification.

And again, we think that's something the Court could take up in connection with the summary judgment motion.  And in that respect, substantially narrow the case by holding that there are no triable issues of fact with regard to infringement on four of the nine patents.  The others would suggest reserving for motions practice in the usual course.

THE COURT:  And what would that be?

MS. MORROW:  After we've had the additional claim constructions and expert discovery.

So the remaining five patent claims we think are viable

after the Court's claim construction, but they're just not teed up for summary judgment on infringement either because there are more substantial claim construction disputes yet to be resolved or we do need some fact or expert discovery.

MR. EISEMAN:  Your Honor, obviously Barnes & Noble disagrees with LSI's characterization both of your Honor's claim construction as it affects the four patents that LSI says they want to move for summary judgment on.

We also think that if they do move for summary judgment now, that we're going to raise factual disputes at the very least.  And we will -- we also have substantial umbilicated (phonetic) defenses with respect to those four patents.

So while we believe that your Honor's claim construction order did advance the case, our view is that we should move forward on a normal schedule.

We will participate in mediation as your Honor indicated you wanted us to; whether we can get very far right now remains to be seen.  But we don't think that their patents are right for summary judgment; and although, we have summary judgment arguments based on your Honor's claim construction order with respect to all the patents in suit, we think they're better brought later in the case.

THE COURT:  Well, let's be specific.  Give me a nutshell your response to the Chow 087, for instance.

MR. EISEMAN:  Well, first of all, with respect to

Ms. Morrow's characterization of your Honor's claim construction, she said that you rejected both of our claim construction positions -- Barnes & Noble's claim construction positions and that's not exactly true.

In fact, your Honor adopted our proposed claim construction as modified during the hearing with respect to one of the claims.  So that's one where we belief we will definitely not only defeat summary judgment, but have a chance to get summary judgement of non-infringement ourselves once the record is fully developed.  That's an example with respect to 087.

THE COURT:  So there's a question about unified memory that Ms. Morrow represents that that was key.  And that as construed, there's clear infringement here.

MR. EISEMAN:  Would agree because your Honor said that it had to be -- you didn't say that it had to be a single memory chip, but you said it had to be a single unified memory.  And we still believe the way that Barnes & Noble refused products operate, that there's not going to be infringement based on that claim construction.

THE COURT:  Well, is there a dispute on the facts as to how it operates -- how it operates in that regard?  Is that just a legal question about whether or not my construction yields an answer or not?

MR. EISEMAN:  I think the answer is, your Honor, that these are the -- the chip functionality that is accused is not

a Barnes & Noble developed chip.  And so I think that that remains to be seen because I don't believe that LSI has taken discovery with respect to the third parties who make the chip on this issue and so I think the record needs to be more fully developed.

MS. MORROW:  On that issue, your Honor, we do have experts and consultants who've been reviewing the third party and Barnes & Noble code and firmware across the board on all of these claims.  They spent hundreds of hours on that so we do think we're in a position to move for summary judgment of infringement on Chow based on the analysis of the TIO map processor source code that Barnes & Noble has had equal opportunity to review, as well as the other associated firmware.

THE COURT:  How many claims are involved in these four patents?

MS. MORROW:  I apologize.  I don't have the number of asserted claims with me.

THE COURT:  Well, let me ask with respect to Barnes & Noble.  You say if we're doing to allow summary judgment, you want a reciprocal right; you be more specific which matters would you be moving on?

MR. EISEMAN:  Well, I'm -- sitting here right now, I think I would need to talk to the client to give you a final answer, but I think that there would be invalidity motions;

potentially cross motion as it were or invalidity motion with respect to one or more of the four.  And we would move for non-infringement on a WiFi patents; all three of them; and I think that's definitely the case.

But I think at this point, we were hoping your Honor was going to adopt the schedule that we just move the case forward so I'm not really in a position to give you a final answer on that.

THE COURT:  Well -- and so what does that mean to move a case forward?  If LSI -- you gave me two tables; one is they reduce their asserted claims; second, they don't.

Is this, at this point, just sort of unguided fact discovery that will run until March of next year?  Close of expert discovery June?  And then sheathe of dispositive motions filed in July?  I mean, and then we go to trial?

Where in that process do we get to the point where we know we're not going to try in one trial 146 claims?

MR. EISEMAN:  Your Honor, the premise of our original proposed schedule; the one that has fact discovery ending this fall; is that your Honor orders LSI to reduce the number of asserted claims as is common in many jurisdictions and judge -- and other judges in this court have done before.  So that's the sort of the gating item on our schedule.

Once that happens, then it may be the case once we see what claims are asserted that you would be in a position to file

summary judgment motions and maybe LSI would be too.

But when we've got 146 claims and nine patents, it's very difficult to predict how to move forward in the case without some limitations.

THE COURT:  All right.  Let me ask you Ms. Morrow; if I were to adopt the structure of the Federal Circuit Model Order and require some identification and narrowing of claims, at least as we proceed to this first phase of this case, why would that be consistent with your still being able to bring the summary judgment motion?

You think you're going to win.  It sounds like you feel these are almost slam dunks on the four.  I don't know how many claims are involved, but you conclude that if you were -- if I were to direct you to identify X number of claims or patents, that we're going to put front and center with the correlative responsibility on the part of Barnes & Noble to then identify their sort of what's called an not an order, but final selection of asserted priorate, which will have a limit as well.

Why does that make sense?  At least we prioritize, containerize, and summary judgment is top of your list on these four.  I would think claims from these four claims would be in that universe.

MS. MORROW:  So first of all, we do think the best way to move forward is to narrow the case by moving for summary

judgment on four of the nine patents.  We do think they're slam dunks based on our review of the Barnes & Noble documentation and the firmware or source code.

With regard to the rest of the claims and on each patent, we're asserting on average 10 to 15 claims per patent right now.  So Barnes & Noble likes to add all those up and say it's a lot of claims, but it's no more than are asserted in a usual patent case at this point in the case.

And in addition, we don't think it's proper to try to force LSI to narrow those claims down now.  We still have claim construction issues outstanding that are substantial on some of the other patents.  And so we don't think it would be fair to ask LSI to pick which claims to move forward on before we know what scope the Court is ultimately going to give those.

And we've also gotten a lot of information and spent hundreds of hours reviewing source code and firmware, but our experts, you know, we still have not had the opportunity to finish up the Barnes & Noble and third party discovery we would need to make the final decision on which claims are the best for infringement purposes; other than the ones that I've already flagged for the summary judgment motion.  So here, I'm talking about the other five.

And then finally, Barnes & Noble has asserted an unusually dense set of invalidity defenses.  On the Grewe (phonetic) 730 patent, they've asserted more than 50 priorate references.

They've made similarly huge assertions of numerous priorate references on each of the other asserted patents, as well as asserting a stack of 112 defenses that are usually, you know, a page long.  And we think we should be entitled to get some discovery and figure out which of those they're really moving forward on and then we can figure out which claims are the best to take to trial.

And then finally, Barnes & Noble has asserted a very complicated set of unenforceability defenses.  Their discovery responses on this are vague.  At a hearing before Magistrate Judge Beeler, they agreed to supplement them twice before the close of fact discovery and we don't yet have those updates.

And so we think that what we need to do is finish expert discovery on those contentions, understand that -- where that's headed; and then at that point, can make the final determination.

So with regard to any narrowing of claims, we think that what Barnes & Noble's proposing to do is a due process violation.  They have the burden to show that any of these two patent claims that they're claiming are duplicative; have the same scope for liability and damages or else we're entitled to move forward on them.  And they haven't identified any two claims that have exactly the same non-infringement invalidity, the unenforceability, and damages issues such that it would be proper to tell LSI that we can't move forward on those.

THE COURT: Well --

MS. MORROW: I think the burden is --

THE COURT: When you say can't move forward, I don't think you are asserting that you have a due process right to bring all nine patents and 194, however claims, before one jury?

MS. MORROW: We do have what -- what the Federal Circuit has said in Cats (phonetic), which is that we do have a due process right to move forward on any patent claims that present unique issues of liability or damages.

Now, obviously, how the Court ultimately handles that at trial, we would suggest the Court take up closer to trial when it sees what's left for trial.

THE COURT: Well, how many -- how many trials? So we're not talking about due process. I'm not saying I'm going to dismiss these claims. I'm saying it's going to be a little while before you get to these other claims; the ones that we don't prioritize as we do in all other cases. We're going to prioritize and limit so it's suggestible for either summary judgment proceedings or further motions or trial.

And, you know, if you insist on all 194 claims, I guess we'll have a series of about ten trials if that's what you want to do.

MR. EISEMAN: Your Honor --

THE COURT: But my goal is to get front and center

the most important and claims of value to your client heard and then we'll go from there.

MS. MORROW:  Well -- and I think we've been able to identify from the current claim construction four that are most important to us to move forward on at this point.

And I think that, you know, towards the close of fact discovery or when we're in expert discovery, we'll be able to further narrow these down.

THE COURT:  Well -- but what I don't want to do is multiple iterations of motion for summary judgment.  Okay, let's take these four; you win some; you lose some; or you win most; or whatever.  How do we get the other five?  We're going to do more discovery on the other five and now we're going to bring two more series of summary judgment motions; we're not going to do that.

MR. EISEMAN:  Your Honor --

THE COURT:  So -- it's up to me; I can say, look, you've got to choose now; at least for this first phase; you pick among the four patents X number of claims.  You can -- from the other five, you can choose X number of claims and then the burden is going to be on them to identify a limited and they're going to have to prioritize as well priorate references.

MR. EISEMAN:  We're prepared to do that, your Honor.

THE COURT:  And then, you know, if summary judgment

or cross motions at that point -- I don't know if you want to call them bell weather or priorate; whatever it is; that we go forward on those and see what happens.

MS. MORROW:  What I'm concerned about is that we end up in a situation where we're asking, ultimately, multiple triers of fact to review the same evidence.  I mean, what their business is; what our business is; what our licensing practices have been; all of that evidence would be repeated amongst what the Court may be envisioning as multiple trials.

And the Court may be betting we don't get to all of the multiple trials, but it is -- we're very concerned that the witnesses who are going to talk about each parties' businesses about licensing and about the overall damages analysis would be presenting repetitive evidence.

So we can see a situation where maybe the Court says we should impanel the jury and then phase the evidence so the jury decides, you know, a set of issues and then moves forward and decides another set of issues so it's not unduly confused.

What we're concerned about imposing on a jury; and frankly, on our witnesses, to come back multiple times to cover the same material.

THE COURT:  If you don't narrow this down, all I can say is what I told you from day one; we're not going to trial on 194 claims on nine complicated patents.  Model order makes reference to the fact that there ought to be even fewer claims

going to trial the more complicated these are.  And this is one of the most complicated patent cases I've seen.

MS. MORROW:  So what we would suggest, your Honor, is that we have the opportunity to be heard -- kind of fully heard on this on both sides.  So maybe Barnes & Noble can identify the claims that they think are duplicative.  We can be heard on any due process concerns we have on that and then we can move forward.  We just don't want to be in a situation where we identify some claims for patent and then other claims from the same patent still remain in the mix because they present unique issues for liability and damages.

And so maybe with some additional briefing or information on this, the Court can be in a position to make a further determination on the number of claims and the phasing that might be a bit more considered than either of us could present on the fly here this morning.

MR. EISEMAN:  Your Honor, as the Federal Circuit Model Order recognizes; as part of your Honor's case management authority, you have the power to order a reduction of asserted claims and reduction of asserted priorate.  We're prepared to move forward under the Model Order or whatever or, you know, number of claims of priorate references your Honor wants to do.

We don't need to have further briefing.  I think the case should move toward.  We're prepared to do it, but the first needing (phonetic) item is the reduction of claims and

priorate.

THE COURT:  Let me ask -- he brings up the point then in order to choose which claims, he needs additional claim construction because claim construction has been rendered on some.

So on the other five patents; besides the two issues that you say are remaining with respect to the four patents on which you want to move for summary judgment; on the other five, how many claims are absolutely essential in your view in order for you to make an intelligent choice?  Not necessarily resolve the case, but you making an intelligent choice in narrowing the claims if I so choose to go down the road of the Federal Circuit Model?

MS. MORROW:  Well, I'm just looking at the disputed terms.  And I frankly haven't done that analysis.  I'm just looking at the disputed terms.  It looks like we have three remaining on All Press; we have one remaining on van Nee; and then three remaining on Diepstraten; and I think that's it in terms of constructions that we feel we would really need to get the Court's guidance on.  That's a subset of what is still remaining in the claim construction.

THE COURT:  A set in terms that if construed would then enable you to --

MS. MORROW:  To make a decision on those patents.

THE COURT:  What other discovery do you need --

again, not to try this case, but to make an intelligent selection. What remains?

MS. MORROW: There are really two things outstanding; one is just a logistical thing that TI is getting us some documentation; the other is that we've been asking Barnes & Noble for source code. And every time they produce source code to us, they give us part of what we've asked for and not the rest so we have an outstanding request to Barnes & Noble for further source code. If we can get that source code, then it's complete. Then, we'd be in a position to make this determination.

MR. EISEMAN: Your Honor, the Model Order has the patentholder claim down to -- the Model Order is a docket in Texas. As the patentholder, reducing the number of asserted claims to 32 on the day the claim construction discovery closes. That deadline's already happened.

They should be in a position right now to go down to 32 claims; not more than ten per patent; or whatever number your Honor chooses. It doesn't have to be what the Eastern District of Texas has adopted.

And the fact of the matter is, I believe that LSI knows that your Honor's claim construction with respect to the WiFi patents is going to ultimately result in a finding of non-infringement at the summary judgment phase once they've completed this discovery they say they want to take.

The other plan to make, your Honor, is that the source code issue, we've been working with LSI.  We've produced the source code that we've been ordered to produce by Magistrate Judge Beeler.  I don't think LSI agrees with that, but we think we've fully discharged our obligations.

If they have an issue with that, they should go back to Magistrate Judge Beeler.

THE COURT:  That's something you need to resolve, I assumed, with her help or decision one way or the other fairly quickly.

So then the only thing in my mind -- I mean, we're already sort of off track from the Model Order.  The Model Order anticipates a Tuesday first stage mean of 32 after the documents -- basic documents are provided and then provides for further widdeling after the claim construction.

And I'm ready to jump to the claim construction because we kind of passed that, but I want to -- I want to be fair because I want -- you know, if there are several terms left to be construed in order to allow the parties; in particularly, LSI, to chose I'm going to say X number of claims; as reluctant as I am to reengage in claim construction, I'm just -- I'm thinking out loud whether that -- and you resolve your discovery disputes during this process, then I don't see an impediment to say all right.  Let's just go straight through the second phase of that.  Let's go to what's been called or referred to in

Model Order as a final election.

MR. EISEMAN:  Your Honor, with respect to the WiFi patents and also the 730 patent; the audio patent; we believe your Honor's claim constructions bars their infringement theories.  And so I think that if LSI wants to say to your Honor that there have to be other claim constructions in order to make a decision about those four patents; they ought to actually identify them and identify them now; why those claim terms need to be construed in order for them to make a decision.

Because we believe, ultimately, we're going to get summary judgment of non-infringement on all four of those patents.

MS. MORROW:  We -- I'm sorry.  We simply don't agree with that analysis.

The claim construction positions that Barnes & Noble have advanced may eliminate some of the aspects of the infringement, but don't eliminate the rest so we believe we still have viable claims with regard to infringement of each of the other five patents that we haven't asked for leave to move for summary judgment on.

There are some claim construction issues remaining to be resolved.  There are -- is some expert discovery that needs to be done on at least one of them, but we do believe that those claims continue to be viable.

And like I said, we have spent a lot of time with the

relevant firmware and so we feel confident that we do still have claims going forward on each of those wireless patents.

THE COURT:  Let me ask you this; and I may ask for a short letter of briefing on which claims -- for you to identify those claims and explain why they're important via responses.

For me to decide whether it makes sense to invest more judicial time into this claim and more lag time; but it may not be worth it; but I think I need to see what those are and why they're important.

In the meanwhile, I also want to get a sense if we -- if we jump and we get this discovery done and do what claim construction needs to be done; given the number of patents here, you know, what's the number of claims that you need to be represented to -- what's a reasonable number of claims? Balance against the un-wieldingness of the case in presenting to the jury, but allowing the patentholder to assert the most important claims.

I mean, the Model Order, the Federal Circuit Model Order tells us about a limit of 16, but this is a nine patent case.

MS. MORROW:  I -- I may have a different answer for the different patents depending on how extensive the claims scope is so I'm having a hard time saying the right number per patent is X.  But it seems like ten claims should be something we can live with if it's something where we are able to present evidence on all of -- on all of these that are not overlapped

in scope.  But I apologize that I really do need to do that analysis offline to make sure that that is the correct judgment.

MR. EISEMAN:  Your Honor --

THE COURT:  Grossly --

MR. EISEMAN:  Well, we think -- and I think your Honor understands the Model Order -- it's 16 claims total.

THE COURT:  Yes.

MR. EISEMAN:  And I think I just heard Ms. Morrow suggest ten claims per patent, which is not much of a limitation at all.  So we think 16 claims total; no more than five per patent; consistent with the Model Order.

THE COURT:  What's your view about the limit total of 20 priorate references?

MR. EISEMAN:  Well, we --

(Speaker was inaudible.)

THE COURT:  Okay.  But here's what I'd like to do; I'd like you, within the next week, to submit something to me that identified those seven.

(Speaker was inaudible.)

THE COURT:  Again, just to allow you to intelligently exercise your judgment as to which claims if we're going to put a limit on claims -- and we will.

I'd also like your proposal and explanation as to the number of claims that we're going to handle in this, I'll call

it phase one; because, obviously, I don't have the power to dismiss on the claims; but in this first phase, knowing that at some point there's an absolute limit that we have to present to the jury.  And so whether that number is 16 or slightly more -- I don't know -- but I'd like to know and some reasoning behind your view of the numbers.

And -- and I don't know if you have any further comments you want to submit?

MR. EISEMAN:  We'd like to have the opportunity to respond to LSI's submission.

(Speaker was inaudible.)

THE COURT:  -- as conference and I'm going to set the parameters at that point, but I do intent to move forward.  And it seems to me the way to go is to do what we need to do to get this prioritized and then you can decide how you want to exercise your summary judgment rights; whether you want to bring those cross motions and which claims you want to move on.

We'll have to talk about scope of summary judgment motions, too; but -- and then we'll also -- I also want to discuss once we get to that point when the appropriate ADR point might be.

Now, maybe if I chose to construe some additional terms that may be right at that juncture, you've got the universal items; you've identified which of the important claims; whether it's 16; 18; or whatever; and what the corresponding priorates are, that might be time to revisit ADR because now you have

your universe of the front leading cases; okay?  And you --
remind me again, you went to --

MR. EISEMAN:  Prior (phonetic) Federal Circuit Judge
Michelle (phonetic.)

THE COURT:  Find it -- go back to Judge Michelle?

MR. EISEMAN:  We're prepared to go back to Judge
Michelle.

MS. MORROW:  We've actually suggested that maybe
sometimes just bringing a different person -- we think the
world of Judge Michelle, but sometimes maybe just bringing in a
different personality in the mix might be helpful so we had
suggested some alternatives to Barnes & Noble.

THE COURT:  Okay.  Why don't you discuss that as
well.  Let's set a further status conference --

(Speaker was inaudible.)

MS. MORROW:  I apologize.  I have a conflict on a
deposition.

MR. EISEMAN:  Your Honor, I'm at a settlement
conference in New York that day, your Honor.

MS. MORROW:  I'm back in front of the Court on
another matter on May 29th.  I don't know if that would also be
an available time?

THE COURT:  I'm just worried that that's --

(Inaudible discussion off the record.)

MR. EISEMAN:  I'll be in New York.

(Inaudible discussion off the record.)

MR. EISEMAN:  Thank you, your Honor.

THE COURT:  All right.

MS. MORROW:  Thank you, very much.

THE COURT:  Great.  Thank you.

(Proceedings concluded at 10:05 a.m.)

## CERTIFICATE OF REPORTER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____ DATE 5-17-14

Carrie McKee-Parks                     Date
McKee-Parks65@att.net
510-637-9897